UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re                                                    Involuntary Chapter 11

      1934 Bedford, LLC                          Case no.  19-44751

                     Debtor.
--------------------------------------------------------x

## EX-PARTE MOTION FOR RULE 2004 EXAMINATION

      1930 Bedford Avenue LLC (the "Mortgagee"), the holder of the first mortgages on the

property owned by 1934 Bedford, LLC (the "Debtor" or "Respondent") at 1930-1934 Bedford

Avenue, Brooklyn, New York (the "Property"), as and for its motion ("Motion") for entry of an

order authorizing and directing discovery from the Debtor, Nikol L. Vonlavoff, the Debtor's sole

member, Simply Brooklyn Realty, an involuntary petitioner, Shlomo Tabak, owner/president of

Brooklyn Realty, HTC Construction Management, Inc., HTC Plumbing, Inc., and Miranda Lee,

president of HTC Construction Management, Inc. and HTC Plumbing, Inc. (collectively, the

"Respondents") in the form of the following: (i) responses to the document requests attached to

this Motion as Exhibit A, or substantially similar document requests, including follow-up

requests as to the same subject matter; and (ii) the deposition of one or more current or former

employee(s) or other agent(s) or representative(s) of the Respondents who are most

knowledgeable about the matters for examination set forth herein, pursuant to Federal Rule of

Civil Procedure 30(b)(6) (the "Rule 2004 Motion").  In support of the Rule 2004 Motion,

Mortgagee respectfully represents as follows: Rule 2004 discovery from the Respondent is

necessary in order to investigate the facts surrounding the filing of the involuntary petition

herein, and the Debtor's assets and liabilities and income and expenses.

## BACKGROUND

1.    On August 2, 2019, an involuntary petition was filed against the Debtor under section 303 of the Title 11 of the United States Code, 11 U.S.C. "101 et seq. (the "Bankruptcy Code") by Simply Brooklyn Realty asserting an $18,000 claim, HTC Construction Management, Inc. asserting a $100,000 claim, and HTC Plumbing, Inc. asserting a $25,000 claim (the "Petitioners").

2.    The Debtor owns the real property located at 1930-1934 Bedford Avenue, Brooklyn, New York (the "Property") pictured below:



square feet and the net rentable area is 50,187 square feet.  When fully leased, the rent roll

indicates aggregate rents of $2,436,744 per year, or more than $200,000 per month.

4.      According to an appraisal the Debtor submitted on June 23, 2019 in the

foreclosure action, the Property value is $38,600,000.

5.      The Mortgagee holds first mortgages in the principal amount of

$15,000,000.  As set forth in Mortgagee's August 31, 2019 payoff letter (Exhibit A), the total

amount due as of August 31, 2019 is $18,689,275. Per diem 24% interest accrues at $10,000 per

day.  Copies of the loan documents and assignment documents ("Loan Documents") are

collectively annexed hereto as Exhibit B.  The Mortgagee's June 3, 2019 foreclosure complaint

("Foreclosure Complaint"), a copy of which is annexed hereto as Exhibit C, identified additional

secured claims of record against the Property totaling about $1,686,812.  Secured claims thus

total approximately $20,377,000.  The Debtor has not disclosed the existence of unsecured

claims above the $143,000 asserted by the petitioners.

6.      In summary, until the Debtor discloses its assets and liabilities and income

and expenses, the claims against the Debtor appear to total about $20,500,000.  Based on the

Debtor's $38,600,000 appraisal, the Debtor appears to have about $18,000,000 of equity in the

Property above creditor claims, and monthly income of about $200,000.

7.      The Debtor stopped defaulted on the February 2019 note payment and the

Mortgagee's loan matured by its terms on February 28, 2019.  There has been no accounting for

the $200,000 per month of Property income (i.e. $1,400,000) since the Debtor stopped paying in

January.  On June 3, 2019 the Mortgagee filed the Foreclosure Complaint based on the February

payment defaults, an unauthorized $1,500,000 subordinate mortgage dated August 29, 2018 and

the existence of mechanics liens.

the $200,000 per month of Property income (i.e. $1,400,000) since the Debtor stopped paying in

January. On June 3, 2019 the Mortgagee filed the Foreclosure Complaint based on the February

payment defaults, an unauthorized $1,500,000 subordinate mortgage dated August 29, 2018 and

the existence of mechanics liens.

8.      By order dated June 11, 2019 (the "Receiver Order," Exhibit D), the

Supreme Court appointed the Receiver to take possession of the Property and the rental income.

9.      On June 23, 2019, the Debtor requested an emergency order to show cause

for injunctive relief vacating the Receiver Order pending determination of the Debtor's motion to

vacate.

10.     The Supreme Court denied the application for injunctive relief and set the

matter down for a hearing on the merits. The Debtor appealed both the Receiver Order and the

denial of injunctive relief. On June 27, 2019, the Appellate Division affirmed the Receiver

Order (Exhibit E). On July 10, 2019, the Supreme Court denied the Debtor's order to show

cause on the merits.

11.     Meanwhile, on June 17, 2019 the Debtor sued the Mortgagee in a special

proceeding under RPL § 274-to compel the Mortgagee to retract is prior payoff letter and replace

it with a payoff letter that did not include default interest and other charges. The Debtor falsely

argued that it had received oral default waivers, despite the loan documents prohibition on oral

waivers to preclude such self-serving arguments. The Debtor falsely argued further that the

Mortgagee failed to give default notices, despite there being no obligation in the loan documents

to give notice of unauthorized subordinate liens.

12.     RPL § 274-a is limited to compelling delivery of a payoff letter.  It can't be used to dispute the amounts asserted in a payoff letter.  The Supreme Court advised the Debtor that the relief it was seeking went beyond the statute and that the Debtor must dispute the Mortgagee's payoff letter in the foreclosure action.  Since then, the Debtor has done nothing in the foreclosure action to raise any such dispute.  Instead, the Debtor retained additional foreclosure counsel who specializes in Kings County politics. There is no pending objection to the Mortgagee's claim in any court.

13.     On August 2, 2019, the Receiver filed his bond.  The same day, the Petitioners filed this case.

14.     As explained by *Collier on Bankruptcy,* the rule is that it is improper to file a collusive involuntary petition to stall a foreclosure action.  2 *Collier on Bankruptcy* para 303.06 and 303.33.  *Collier* notes further that the bankruptcy courts in *In re Stern* 268 B.R. 390 (Bankr. S.D.N.Y. 2001) and *In re Grossinger*, 268 B.R. 386, 387 (Bankr. S.D.N.Y. 2001) have given notice that such collusive involuntary petitions do not go unpunished.  In *Grossinger,* the Court observed that "[w]ithin the past year or so courts in the Southern and Eastern Districts have experienced a number of patently baseless and improper involuntary filings."  And the Court in *Stern* stated that: "Sanctions are assessed, and the decision here and in *In re Grossinger* are published, to give notice to the bar and future petitioning creditors that sham involuntary petitions may not be filed in this court without consequences."  *Stern* at 268 B.R. at 395, as cited in 2 *Collier* at para 303.33, notes 3 and 6.

15.     Here, the timing of the involuntary was no coincidence.  It was filed the day the Receiver filed his bond and was qualified to take possession of the Property and its rental

income.  Having exhausted its State Court options, the only way left to obstruct the Receiver was a bankruptcy filing.  For undisclosed reasons, the Debtor was unwilling to file a voluntary petition.  The Debtor undoubtedly prevailed upon the Petitioners to file the involuntary Petition to achieve the same result.

16.    Absent collusion, it is unlikely that vendors with (alleged) claims totaling only $143,000 would track their customer's foreclosure action so closely that they would know that a receiver had been appointed, let alone when the receiver would file his bond.  And have bankruptcy counsel lined up that day to file an involuntary petition.

17.    Were they following the foreclosure so closely, and their goal was to avoid non-payment, Petitioners would have known that the Debtor appears to have $18,000,000 of equity in the Property and $200,000 of monthly income.

18.    Objectively, the Receiver's appointment did not put them at greater risk of nonpayment than a Chapter 11 filing.  Either way, the Debtor had sufficient resources to pay Petitioners' claims, and either way Petitioners were unlikely to be paid until the Property was sold or refinanced.

19.    An involuntary petition would not, therefore, benefit the Petitioners. But a *legitimate* non-collusive involuntary petition would put the Petitioners at serious risk under section 303(i) of the Bankruptcy Code for damages and legal fees if the Debtor successfully dismissed the involuntary petition.  With $38,000,000 of Property value and $200,000 of monthly income affected by an involuntary filing, such legal fees and damages could easily exceed Petitioners' (alleged) claims.  Petitioners retained experienced counsel who would not

have exposed Petitioners to such serious risk for no serious benefit, absent the Debtor's support for the Petition.

20.     The conclusion that Debtor thus orchestrated a sham involuntary petition is inescapable.

21.     The Debtor's post-filing conduct confirms the likelihood that this is a collusive filing.  The Debtor has neither answered the involuntary petition nor consented to Chapter 11 relief.  Instead, the Debtor is flaunting its control over the $200,000 of monthly income while paying no debt service, providing no accounting, and answering to no one.

22.     For example, when the Mortgagee inquired as to the Debtor's intentions regarding the involuntary Petition, the Property and the rental income, the Debtor's counsel told the Mortgagee it would consent to payment of debt service, a cash collateral stipulation and entry of an order of relief only if the Mortgagee consented to bankruptcy stay relief <u>solely</u> to permit determination of the Mortgagee's claim in the foreclosure action.  This, despite the fact that (a) there is no pending motion in the foreclosure action disputing those amounts, and (b) claims objections are subject to the Bankruptcy Court's core jurisdiction.

23.     The Mortgagee is prepared to litigate in either the Supreme Court or this Court.  But the Mortgagee will not agree to proceed in both forums with the Debtor dictating which judge hears which issues.

24.     The Debtor can't have its cake and eat it too. The Debtor should not be permitted to exploit a sham involuntary bankruptcy to delay this case while enjoying the benefits of bankruptcy with none of the burdens.  With no controls over the $200,000 of monthly cash

collateral and with interest running at $10,000 per day, the damage to the Debtor's estate accrues daily.

## RELIEF REQUESTED HEREIN

25.     Rule 2004 provides "on motion of any party in interest, the court may order the examination of any entity" with regard to "acts, conduct or property or to the liabilities and financial condition of the Debtor; or to any matter which may affect the administration of the Debtor's estate . . ."  *See  In re CENA's Fine Furniture Inc.*, 109 B.R. 575, 577 n.2 (E.D.N.Y. 1990) (the scope of a Rule 2004 examination is unfettered and broad. . . .examinations under Rule 2004 are allowed for the purpose of discovering assets and unearthing frauds)  (internal citations omitted); *In re Bakalis,* 199 B.R. 443, 447 (Bankr. E.D.N.Y 1996) (noting that Rule 2004 Examinations have been likened to "fishing expeditions into general matters and issues regarding the administration of the bankruptcy estates").

26.     Consistent therewith, the Movant requests the entry of an order substantially in the form annexed hereto, authorizing the Mortgagee to conduct an examination and for the production of documents specified therein.

27.     The Petition is opaque and the Debtor has filed nothing in this case.  But the case has the earmarks of a bad faith filing and just since the filing there is no accounting for what appears to be $200,000 of rental income.  In order to determine the best course of action for this case, discovery is necessary to determine the facts and circumstances surrounding the filing and the Debtor's income and expenses and assets and liabilities both before and after the Petition was filed.

28.    No previous application for the relief requested herein has been made to this or any other court.

## **CONCLUSION**

WHEREFORE, Movant respectfully requests that the Court enter an order substantially in the form annexed hereto, and that the Court grant such other, further and different relief as may be just and proper.

Dated: New York, New York
       August 22, 2019

                                        BACKENROTH FRANKEL & KRINSKY,
                                        LLP

                              By:      s/ Mark Frankel
                                        800 Third Avenue
                                        New York, New York  10022
                                        (212) 593-1100

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re                                                                    Involuntary Chapter 11

     1934 Bedford, LLC                              Case No.  19-44751

                 Debtor.

----------------------------------------------------------x

## <u>ORDER PURSUANT TO BANKRUPTCY RULE 2004</u>

Upon the application ("Application") of 1930 Bedford Avenue LLC (the "Mortgagee" or "Movant") seeking entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure authorizing and directing the examination of the 1934 Bedford, LLC, (the "Debtor"), Nikol L. Vonlavoff, the Debtor's sole member, Simply Brooklyn Realty, an involuntary petitioner, Shlomo Tabak, owner/president of Brooklyn Realty, HTC Construction Management, Inc., an involuntary petitioner, HTC Plumbing, Inc., and involuntary petitioner, and Miranda Lee, president of HTC Construction Management, Inc. and HTC Plumbing, Inc. (collectively, the "Respondents"), (collectively, the "Respondents") upon the demand annexed hereto, and after due deliberation and sufficient cause appearing thereafter, it is hereby

**ORDERED**, that the Respondents, be and they hereby are, directed to (a) produce the documents described on the annexed demand at the offices of Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York 10022, not less than fourteen (14) days' after service of this Order by overnight delivery upon Bruce Weiner as counsel to the involuntary petitioners and Wayne Greenwald, as counsel to the Debtor, and (b) to appear for an examination pursuant to Rule 2004 of the Bankruptcy Rules at a mutually agreed upon time(s) at the offices Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York 10022.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                                                      Involuntary Chapter 11

      1934 Bedford, LLC                                          Case no.  19-44751

               Debtor.
-------------------------------------------------------------x

## DEMAND FOR THE PRODUCTION OF DOCUMENTS

PLEASE TAKE NOTICE that pursuant to Rule 2004 of the Federal Rules of

Bankruptcy Procedure, 1930 Bedford Avenue LLC ("Mortgagee"), the holder of a first mortgage

on the property owned by 1934 Bedford, LLC (the "Debtor") demands for inspection and copying

the original and all copies of each of the documents listed below in respondent's possession,

custody or control or subject to the possession, custody or control of any agent, servant, or

representative of respondent, including its counsel.

## INSTRUCTIONS

1.      Documents are to be produced as they are kept in the usual course of

business or organized and labeled to correspond with the categories in this request. In addition,

documents are to be produced in full and unexpurgated form.

2.      This request shall be deemed continuing so as to require further

supplemental production in the event that you obtain or discover additional information or

documents between the time of the initial production and the time of hearing or trial.

3.      Each request for documents requires the production of all documents

described herein, including all drafts and non-identical copies.

4.      Each request for documents requires the production of all documents described herein, in your possession, custody, or control, including all documents held by agents, accountants, attorneys, or others with whom you have or have had a professional relationship.

5.      In the event that any document called for by this request is to be withheld on the basis of a claim of privilege, work product or other ground of nonproduction, a list is to be furnished at the time that documents are produced identifying any such document for which the privilege is claimed specifically by its nature (e.g., letter, memorandum, etc.) together with the following information with respect to any such document withheld: author(s); recipient(s); sender(s); indicated or blind copies; date; subject matter; basis on which the privilege is claimed; number of pages; and the paragraphs of this Request to which such document relates.

6.      If a portion of an otherwise responsive document contains information subject to a claim of privilege, those portions of the document subject to the claim of privilege shall be deleted or redacted from the document and the rest of the document shall be produced.

7.      If information stored in, or accessible through, computer or other data retrieval system is produced, it must be accompanied by instructions and all other materials necessary to use or interpret such data.

8.      If any document called for by any request herein has been destroyed, lost, discarded, or otherwise is not capable of being produced, at the time that documents are produced, identify any such document; identify any person who has possession, custody, or control of the document; indicate the paragraph(s) of this Request to which such document related; and set forth

3

the circumstances under which the document was destroyed or discarded or an explanation of why the document is not capable of being produced.

9.      The time period applicable to these Requests, unless otherwise noted, is from and including August 2, 2013 to the time of production.

## **DEFINITIONS**

1. 1934 Bedford, LLC, Nikol L. Vonlavoff, Simply Brooklyn Realty, Shlomo Tabak, HTC Construction Management, Inc., HTC Plumbing, Inc., and Miranda Lee means each of such entities in their own capacity or in any other capacity including trustee, agent, employee or any other capacity.

2. The term "document" is used in the broadest sense and includes, but is not limited to, the following items, whether typed, printed, recorded, written out by hand, photographed, microfilmed, microfiched, or reproduced by any other mechanical or electronic process, including any information maintained on computer memory disk or electronic or magnetic media, whether or not printed out, and any information to which you have access by reason of any computer, including, without limitation: agreements; contracts; communications, including intracompany communications; correspondence; e-mails; envelopes; telegrams; telecopies; telefacsimiles; memoranda; agenda; books; summaries of records of personal or telephone conversations or interviews; telephone logs; diaries; articles; newspapers; circulars; brochures; pamphlets; forecasts; statistical statements; accountants' work papers; graphs; charts; slides; drawings; diagrams; films; video tapes; visual aids; audio tapes; discs; accounts; analytical records; worksheets; worksheet files; spreadsheets; word processor files; minutes or records of meetings or conferences; reports or summaries of interviews; reports or summaries of investigations; opinions or reports of consultants; appraisals; records; reports or summaries of negotiations; trade letters; press releases; notes;

5

projections; drafts of any documents; working papers; securities ledgers; checks, front and back; check stubs or receipts, including any other document or writings of whatever description.

3. The term "Debtor" means 1934 Bedford, LLC.

4. The term "Respondents" means 1934 Bedford, LLC, Nikol L. Vonlavoff, Simply Brooklyn Realty, Shlomo Tabak, HTC Construction Management, Inc., HTC Plumbing, Inc., and Miranda Lee.

5. The term "communication" is used in the broadest sense and means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) whether written or oral, and includes without limitation all forms of electronic mail, voice mail or other recorded forms of communication. It includes, but is not limited to, documents, meetings and conversations. To the extent the communication is a meeting or conversation, you are requested to (a) identify all participants in the meeting or conversation, and (b) state the nature and substance of the meeting or conversation.

6. The term "person" is defined as any natural person or any business, legal or governmental entity or association.

7. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

8. The term "Property" shall mean 1930-1934 Bedford Avenue, Brooklyn, New York.

9. The term "representative" shall mean, with respect to a person, any past or present officer, director, employee, agent, attorney, financial advisor, investment banker or accountant of

the person, including, but not limited to, a representative acting or purporting to act on such person's behalf or at the request or instructions of such person.

10. As used herein, the singular includes the plural and the plural includes the singular; the words "and" and "or" shall be both conjunctive and disjunctive; "any" means "any and all"; the word "including" means including without limitation.

11. As used herein, the past tense shall include the present tense and vice versa.

## DOCUMENTS TO BE PRODUCED

1.  All documents that support any allegation in the of the August 2, 2019 Involuntary
    Petition.

2.  All documents that support the allegation made by Petitioners in their August 2, 2019
    Involuntary Petition that, "Each petitioner is eligible to file this petition under 11 U.S.C.
    section 303(b)."

3.  All documents that support the allegation made by Petitioners in their August 2, 2019
    Involuntary Petition that, "The debtor may be the subject of an involuntary case under 11
    U.S.C. section 303(a)."

4.  All documents that would support an allegation that debtor is generally not paying its
    debts as they become due, unless they are the subject of a bona fide dispute as to liability
    or amount.

5.  All documents that support the allegation made by Petitioners in their August 2, 2019
    Involuntary Petition that Simply Brooklyn Realty has a claim for $18,000.00.

6.  All documents that support the allegation made by Petitioners in their August 2, 2019
    Involuntary Petition that HTC Construction Management, Inc. has a claim for $100,000.

7.  All documents that support the allegation made by Petitioners in their August 2, 2019
    Involuntary Petition that HTC Plumbing Inc. has a claim for $25,000.00.

8.  Copies of all Federal, State, City and other income tax returns of the Respondents and
    any entities they own or control, directly or indirectly, for the 2013 through 2018 years,

complete with all filed schedules, and together with W-2 statements, Form 1099's, schedules and worksheets thereof and all papers, documents and memoranda referring to any adjustment or audit made in connection therewith.

9. Any and all records, documents, papers and memoranda pertaining to all business dealings by, between and among each of the Respondents and any entities they own or control directly or indirectly for the years 2013 through the date of response.

10. Records of all transfers of property of any kind by between and among each of the Respondents and any entities they own or control directly or indirectly for the years 2013 through the date of response.

11. Records, including, but not limited to, partnership agreements, identifying each and every general or limited partnership involving each of the Respondents, in which such entities has an interest and its percentage interest in the partnership, and the value of its interest in each such partnership, including, but not limited to, financial statements and tax returns for the period 2013 through the date of response.

12. All communications by between and among each of the Respondents for the period 2013 through the date of response.

13. Records, including, but not limited to, stockholders' agreements, stock certificates and corporate minute books identifying each and every corporation in which each of the Respondents has an ownership interest or is an officer or director, and the percentage of such interest in the corporation.

14. All communications, documents, lease, agreements and/or memorandum by, between and among each of the Respondents.

15. Names and addresses of all equity holders or interest holders of the Debtor.

16. All documents relating to the Property, including without limitation, all cancelled checks, all books and records, all general ledgers, all receipts, all agreements, workpapers, analyses, notes, and mortgages.

17. All documents relating to the finances and operations of the Property for the period 2013 through and including the present, including income and revenues of the Property from any and all sources and any and all expenditures made for any purposes;

18. All documents relating to the value of the Property.

19. All documents relating to the physical condition of the Property, including all expenditures made for maintenance, improvement or renovation of the Property since 2013;

20. All documents relating to plans, specifications, budgets, schedules, surveys, drawings, reports and governmental applications, permits, approvals and licenses issued by any federal, state or local governmental authority or agency pertaining to the ownership, operation, maintenance, development, construction or use of  the Property, including, without limitation all documents relating to the building plans approved by the City of New York, Department of Buildings;

21. All documents relating to the management of the Property, including any management agreements;

22. All documents relating to the extent, validity and priority of any and all encumbrances on the Property, including such documents as they relate to the claim of the Mortgagee;

23. All documents relating to all attempts and/or inquiries made since 2013 to sell, refinance or recapitalize the Debtor and or the Property, and the dates and terms of any offer or contract relating thereto;

24. All documents or proposals relating to any contracts with any brokers or other agents with regard to a possible sale, refinancing, recapitalization or lease of some or all of the Property;

25. Contact information of any parties, brokers, or agents who've discussed a possible sale, refinancing, recapitalization or lease of some or all of the Property with the Debtor or any agent thereof;

26. All documents relating to the date and amount of any property tax payments made by the Debtor;

27. All documents relating to the amount of all taxes on the Property that are past due and the taxing authority and the applicable tax years;

28. All documents relating to any and all bank accounts which have been, or currently are, maintained by or on behalf of the Debtor and the source of funds contained therein;

29. All documents relating to any and all retainer agreements between any professional firms and the Debtor from 2013 to present.

30. All documents relating to any and all billing records of counsel to the Debtor and any and all professional bills received and/or paid by the Debtor;

31. Provide a list of all persons with knowledge concerning the documents referred to herein.

Exhibit A

**1930 BEDFORD AVE LLC**
**c/o Andriola Law, PLLC**
**1385 Broadway, 22nd Floor**
**New York, NY 10018**
**646-209-9863**
**james@andriolalaw.com**

August 23, 2019

**Borrower:  1934 Bedford LLC**
**Original Lender:  S III Capital Group LLC**
**Aggregate Principal Amount of Loans: $15,000,000.00**
**Property:  1930 and 1934 Bedford Avenue, Brooklyn, New York**
**Loan Type:  Commercial**

Dear Sir/Madam,

The amount needed to pay off the above-referenced loan in full as of August 31, 2019 is **$18,689,274.51**, allocated as follows:

| | |
|---|---|
| Principal: | $15,000,000.00 |
| Interest: | $3,390,312.51 |
| Late Fees | $23,962.00 |
| Yield Maintenance Premiums: | $250,000.00 |
| Legal fees: | $25,000.00 |

After August 31, 2019, add per diem of $10,000.00 in interest to the above amount.  Also, all legal fees incurred after today's date will be added to the total payoff amount.

Finally, the above-referenced loan is in default and Lender reserves all rights at law and equity, and nothing herein shall be deemed a waiver of any such rights and remedies.

Sincerely,

1930 BEDFORD AVE LLC

Exhibit B

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 4    RECEIVED NYSCEF: 06/03/2019

## ALLONGE

ALLONGE to that certain Consolidated, Restated and Extended Building Loan Promissory Note dated as of February 22, 2018, in the consolidated principal amount of SEVEN MILLION AND 00/100 DOLLARS ($7,000,000.00) executed by 1934 BEDFORD LLC, a New York limited liability company, payable to the order of S III CAPITAL GROUP LLC, a Delaware limited liability company.

Pay to the order of S3 RE FUNDING III LLC, a Delaware limited liability company, and its successors and/or assigns, without recourse, warranty or representation.

Dated: As of ___August___ __8__ , 2018

SIGNATURE ADDENDUM ATTACHED

4776578Rv.2

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
INDEX NO. 512224/2019
NYSCEF DOC. NO. 4
RECEIVED NYSCEF: 06/03/2019

SIGNATURE ADDENDUM

S III CAPITAL GROUP LLC,
a Delaware limited liability company

By: _____
      Name: Joshua Crane
      Title: Authorized Person

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM       INDEX NO. 512224/2019
NYSCEF DOC. NO. 4                                    RECEIVED NYSCEF: 06/03/2019

## ALLONGE TO PROMISSORY NOTE

This Allonge to Promissory Note is to be affixed to and made a part of that certain Consolidated, Restated and Extended Building Loan Promissory Note, dated as of February 22, 2018, in the stated principal amount of $7,000,000.00 executed by **1934 BEDFORD LLC**, a New York limited liability company and made to the order of **S III CAPITAL GROUP LLC**, a Delaware limited liability company.

Pay to the order of **1930 BEDFORD AVE LLC**, its successors and assigns forever, without recourse or warranty.

Dated as of May 10, 2019.

S3 RE FUNDING III LLC,
a Delaware limited liability company

By: _____
Name: Robert Schwartz
Title: Authorized Signatory

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 4

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

## CONSOLIDATED, RESTATED AND EXTENDED

## BUILDING LOAN PROMISSORY NOTE

$7,000,000.00

**THIS CONSOLIDATED, RESTATED AND EXTENDED BUILDING LOAN PROMISSORY NOTE** (this "**Note**") dated as of February 22, 2018, is in substitution for, replaces, extends and completely supersedes the following existing notes (the "**Existing Notes**") held by S III Capital Group LLC ("**Payee**"):

1. Building Loan Promissory Note, dated as of December 5, 2016, made by 1934 Bedford LLC in favor of S III Capital Group LLC in the principal amount of $6,500,000.00.

2. Gap Building Loan Promissory Note, dated as of the date hereof, made by 1934 Bedford LLC in favor of S III Capital Group LLC in the principal amount of $500,000.00.

This Note is being delivered concurrently with the execution and delivery of a Building Loan Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement (which agreement consolidated the mortgages identified therein, collectively, the "**Mortgage**") dated the date hereof between Maker and Payee, which Mortgage consolidates, modifies and extends those certain mortgages described in Schedule B of the Mortgage, and secures the Existing Notes.

**FOR VALUE RECEIVED, 1934 Bedford LLC**, a New York limited liability company, with an address at c/o Gutman Weiss PC, 2276 65th Street, 2nd Floor, Brooklyn, New York 11204 ("**Maker**"), promises to pay to the order of Payee or order, at 444 Madison Avenue, 41st Floor, New York, New York 10022, or at such other place as may be designated in writing by the holder of this Note, the principal sum of **SEVEN MILLION and 00/100 DOLLARS ($7,000,000.00)** or so much thereof as shall have been advanced pursuant to that certain Building Loan and Project Loan Agreement, of even date herewith, between Maker and Payee, on the terms and with an interest rate as set forth herein. Capitalized terms not otherwise defined herein have the respective meanings ascribed to them in the Mortgage encumbering that certain real property located at and commonly known as 1930 Bedford Avenue, Brooklyn, New York and 1934 Bedford Avenue, Brooklyn, New York (the "**Mortgage**").

## IT IS HEREBY EXPRESSLY ACKNOWLEDGED AND AGREED THAT:

1. Payments under this Note shall be due and payable as follows:

(a) Payments of interest only on the amount drawn down, in arrears, on the first (1st) day of each calendar month, commencing after the initial draw down, and continuing on the first (1st) day of each calendar month thereafter with a final payment on February 28, 2019 (the "**Maturity Date**").

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 4                                     RECEIVED NYSCEF: 06/03/2019

(b) On the Maturity Date, all outstanding principal, together with all accrued and unpaid interest, and any other sums payable under the Loan Documents, including, without limitation, the Yield Maintenance Premium, if any, shall be due and payable in full.

2.  The interest rate in effect on any date for the period beginning on the date hereof through and including the date that this Note is paid in full, shall be the greater of (A) the per annum rate derived by adding 6.50% to the prime, base or reference rate being quoted by the Wall Street Journal (the "**Prime Rate**") on any day, or (B) 10.00% per annum and shall be computed on the basis of a three hundred sixty (360) day year and actual days elapsed. Interest shall be adjusted as and whenever the Prime Rate shall change. Notwithstanding the foregoing, upon the occurrence of an Event of Default, the rate of interest due on the Loan shall, commencing on the date of the occurrence of such Event of Default and without notice to Borrower, accrue at the Default Rate until this Note is paid in full.

3.  The principal sum secured by this Note shall become due at the option of the holder thereof (or as otherwise provided in the Mortgage) on the happening of any default or event by which, under the terms of the Mortgage securing this Note, said principal sum may or shall become due and payable; also, that all of the covenants, conditions and agreements contained in the Mortgage are hereby made part of this instrument.

4.  Presentment and demand for payment, notice of dishonor, notice of intention to accelerate, notice of acceleration, protest and notice of protest and non-payment are hereby waived.

5.  It is expressly stipulated and agreed to be the intent of Maker and Payee at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Payee to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this paragraph shall control every other covenant and agreement in this Note and the other Loan Documents (as such term is defined in the Mortgage). If the applicable law (state or federal) is ever judicially interpreted so as to render usurious any amount called for under this Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the indebtedness evidenced by this Note, or if Payee's exercise of the option to accelerate the Maturity Date, or if any prepayment results in Maker having paid any interest in excess of that permitted by applicable law, then it is Payee's express intent that all excess amounts theretofore collected by Payee shall be credited on the principal balance of this Note and the provisions of this Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Payee for the use, forbearance, or detention of the indebtedness evidenced by this Note shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Note until payment in full so that the rate or amount of interest on account of the indebtedness evidenced by this Note does not exceed the maximum lawful rate from time to time in effect and applicable to such indebtedness for so long as such indebtedness is outstanding.

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
INDEX NO. 512224/2019
NYSCEF DOC. NO. 4
RECEIVED NYSCEF: 06/03/2019

6. This Note is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of New York and shall in all respects be governed, construed, applied and enforced in accordance with the laws of the State of New York without regard to the principles of conflicts of law of such State. No defense given or allowed by the laws of any other state or country shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of New York. Borrower irrevocably submits to the jurisdiction of the state and federal courts sitting in the State, City and County of New York waives any objection to said venue.

7. Borrower hereby irrevocably and unconditionally waives any and all rights to trial by jury in any action, suit or counterclaim arising in connection with, out of or otherwise relating to this Note.

8. This Note may not be changed or terminated orally.

[Signature Page Follows.]

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019
NYSCEF DOC. NO. 4    RECEIVED NYSCEF: 06/03/2019

IN WITNESS WHEREOF, Maker has duly executed this Note as of the day and year first above set forth.

MAKER:

**1934 BEDFORD LLC,**
a New York limited liability company

By: _____
Name:  Arthur Gutman
Title:  Authorized Signatory

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

On this 22nd day of February, 2018, before me, the undersigned, personally appeared Arthur Gutman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public

JOEL SANDER
Notary Public, State of New York
Registration #01SA6332466
Qualified In Kings County
Commission Expires Nov. 2, 2019

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019
NYSCEF DOC. NO. 5                                 RECEIVED NYSCEF: 06/03/2019

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2018022800520005001E26F6

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 50 |
|---|---|

| Document ID: 2018022800520005 | Document Date: 02-22-2018 | Preparation Date: 02-28-2018 |
|---|---|---|
| Document Type: AGREEMENT | | |
| Document Page Count: 48 | | |

**PRESENTER:**
LANDMARK ABSTRACT AGENCY LLC
207 ROCKAWAY TURNPIKE
LAWRENCE, NY 11559
212-805-8120
LAA-2826

**RETURN TO:**
SEYFARTH SHAW LLP
ATTN: CHRISTOPHER PALMESE
620 EIGHTH AVENUE
NEW YORK, NY 10018

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5042 | 60 | Entire Lot | 1930 BEDFORD AVENUE |

Property Type: APARTMENT BUILDING

**CROSS REFERENCE DATA**

CRFN: 2016000450366
☒ Additional Cross References on Continuation Page

**PARTIES**

| PARTY 1: | PARTY 2: |
|---|---|
| 1934 BEDFORD LLC | S III CAPITAL GROUP LLC |
| C/O GUTMAN WEISS PC, 2276 65TH STREET | 444 MADISON AVENUE, 41ST FLOOR |
| BROOKLYN, NY 11204 | NEW YORK, NY 10022 |

**FEES AND TAXES**

| Mortgage : | | Filing Fee: | |
|---|---|---|---|
| Mortgage Amount: | $  7,000,000.00 | | $  0.00 |
| Taxable Mortgage Amount: | $  0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | 255 | | $  0.00 |
| TAXES:  County (Basic): | $  0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $  0.00 | | $  0.00 |
| Spec (Additional): | $  0.00 | | |
| TASF: | $  0.00 | |
| MTA: | $  0.00 | |
| NYCTA: | $  0.00 | |
| Additional MRT: | $  0.00 | |
| TOTAL: | $  0.00 | |
| Recording Fee: | $  277.00 | |
| Affidavit Fee: | $  8.00 | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed        03-02-2018 10:56
City Register File No.(CRFN):
           2018000073256

*Annette M Hill*

*City Register Official Signature*

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 5

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2018022800520005001C2476

### RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)     PAGE 2 OF 50

**Document ID: 2018022800520005**          Document Date: 02-22-2018          Preparation Date: 02-28-2018
Document Type: AGREEMENT

**CROSS REFERENCE DATA**
**Document ID:** 2018022800520004

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 5

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

**DATED AS OF:** February 22, 2018

**RECORD AND RETURN TO:**
Seyfarth Shaw LLP
620 Eighth Avenue
New York, New York 10018
Attn: Christopher Palmese, Esq.

# BUILDING LOAN MORTGAGE CONSOLIDATION, MODIFICATION AND EXTENSION AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

from

**1934 BEDFORD LLC, as Mortgagor**

to

**S III CAPITAL GROUP LLC, as Mortgagee**

| | |
|---|---|
| Premises: | 1930 and 1934 Bedford Avenue<br>Brooklyn, New York 11225 |
| Block: | 5042 |
| Lot(s): | 60 (f/k/a 60 and 62) |
| County of: | Kings |
| State of | New York |

44601007v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

# TABLE OF CONTENTS

                                                                        Page

1.    CERTAIN DEFINITIONS...................................................................... 3

2.    PAYMENT OF INDEBTEDNESS............................................................ 6

3.    PAYMENT OF IMPOSITIONS, INSURANCE PREMIUMS,
      TRANSFER TAXES.............................................................................. 7

4.    DEPOSITS FOR IMPOSITIONS, INSURANCE PREMIUMS, ETC....... 8

5.    INSURANCE........................................................................................... 9

6.    DAMAGE OR DESTRUCTION; APPLICATION OF INSURANCE
      PROCEEDS.......................................................................................... 11

7.    CONDEMNATION................................................................................. 14

8.    MAINTENANCE AND REPAIR............................................................. 16

9.    COMPLIANCE WITH LAWS, ORDINANCES; ENVIRONMENTAL
      MATTERS.............................................................................................. 16

10.   MORTGAGEE'S RIGHT TO PERFORM............................................... 20

11.   LIENS.................................................................................................... 21

12.   LATE CHARGES AND DEFAULT INTEREST........................................ 22

13.   RIGHT OF ACCESS AND ENTRY; INSPECTIONS............................. 23

14.   INDEMNITY; EXPENSES...................................................................... 23

15.   MORTGAGEE NOT RESPONSIBLE FOR DAMAGE OR INJURY...... 24

16.   DEFAULTS............................................................................................. 24

17.   REMEDIES UPON DEFAULT................................................................ 25

18.   WAIVERS; CUMULATIVE REMEDIES................................................. 28

19.   TRANSFERS OF THE MORTGAGED PROPERTY.............................. 28

20.   TENANT LEASES................................................................................... 28

21.   ASSIGNMENT OF LEASES AND RENTS.............................................. 29

i

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM          INDEX NO. 512224/2019
NYSCEF DOC. NO. 5                                      RECEIVED NYSCEF: 06/03/2019

22.    PAYMENTS FROM DEPOSITS; MORTGAGEE'S LIABILITY. .......................... 31

23.    PREPAYMENT/ASSIGNMENT. ....................................................................... 32

24.    PROCEDURE FOR PAYMENT AT MATURITY OR UPON
       PREPAYMENT. ................................................................................................ 32

25.    REDUCTION OF PRINCIPAL BALANCE BY INSURANCE AND
       CONDEMNATION PROCEEDS. ........................................................................ 33

26.    JUNIOR MORTGAGES. .................................................................................... 33

27.    NOTICES. ......................................................................................................... 33

28.    MORTGAGOR'S CERTIFICATE; STATEMENT OF BALANCES. .................... 34

29.    FINANCIAL STATEMENTS AND OTHER INFORMATION. ............................. 34

30.    LIEN LAW. ....................................................................................................... 35

31.    GOOD STANDING OF MORTGAGOR. .......................................................... 35

32.    INSTRUMENTS OF FURTHER ASSURANCE; CERTAIN
       SUPPLEMENTAL MANAGEMENT RIGHTS. .................................................. 35

33.    MISCELLANEOUS. .......................................................................................... 37

34.    RELIEF FROM BANKRUPTCY STAY. ........................................................... 40

35.    1-6 RESIDENTIAL UNITS. .............................................................................. 41

Building Loan Mortgage and Assignment of Leases and Rents and Security Agreement
44601007v.1

**FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM**   INDEX NO. 512224/2019

NYSCEF DOC. NO. 5   RECEIVED NYSCEF: 06/03/2019

# BUILDING LOAN MORTGAGE CONSOLIDATION, MODIFICATION AND EXTENSION AGREEMENT
## AND ASSIGNMENT OF LEASES AND RENTS
## AND SECURITY AGREEMENT

THIS **BUILDING LOAN MORTGAGE CONSOLIDATION, MODIFICATION AND EXTENSION AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT** (this "**Mortgage**"), made as of the 22nd day of February, 2018 by **1934 BEDFORD LLC**, a New York limited liability company, having an address at c/o Gutman Weiss PC, 2276 65th Street, 2nd Floor, Brooklyn, New York 11204 ("**Mortgagor**"), to **S III CAPITAL GROUP LLC**, a Delaware limited liability company having an address at 444 Madison Avenue, 41st Floor, New York, New York 10022 ("**Mortgagee**").

(a)   **WHEREAS**, Mortgagee is the holder of the mortgages and notes secured thereby described on **Schedule B** annexed hereto and made a part hereof (the "**Existing Notes**"), which Existing Notes have been combined, consolidated, modified and extended by a Consolidated, Restated and Extended Building Loan Promissory Note dated the date hereof (hereinafter, the "**Note**"); and

(b)   **WHEREAS**, Mortgagee and Mortgagor have agreed to combine, consolidate, coordinate, modify and extend the liens of said mortgages securing the Note as hereinafter set forth.

(c)   **NOW, THEREFORE**, in consideration of the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, Mortgagor and Mortgagee hereby agree that (i) the liens of the mortgages described above are hereby combined, consolidated, coordinated, modified and extended so that together they shall hereinafter constitute a single mortgage, all of the terms and provisions of which are evidenced by this Building Loan Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement (which agreement consolidated the mortgages identified therein, collectively, the "**Mortgage**"); (ii) the Mortgage secures the payment of an indebtedness on the date hereof in the consolidated principal sum of **SEVEN MILLION and 00/100 Dollars ($7,000,000.00)** (the "**Loan**") lawful money of the United States, to be paid with interest thereon to be computed from the date hereof according to Paragraph 2 hereof and the other terms and provisions of this Mortgage, and further secures the payment of all amounts that are or become due under this Mortgage and the compliance with all of the terms of this Mortgage, (iii) the consolidated lien of this Mortgage is hereby spread over those portions of the Mortgaged Property (hereinafter defined) not already covered the liens of the mortgages described above, and (iv) this Mortgage constitutes a lien on, and the Mortgagor hereby grants, bargains, sells, mortgages, warrants, pledges, assigns, transfers and conveys to Mortgagee, and grants to Mortgagee a security interest in, the property described in the following paragraphs (a) through (j) (collectively, the "**Mortgaged Property**"):

(d)   the land described on **Schedule A** annexed hereto and made a part hereof;

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 06/03/2019

(e)    all additional lands or estates or interests therein hereafter acquired by Mortgagor for use in connection with the land described in subclause (a) above, and all lands or estates or interests therein that may, from time to time, by supplemental mortgage or additional agreement, be made subject to the lien of this Mortgage (the land described in subclause (a) above and the lands or estates or interests therein described in this subclause (b) are referred to, collectively, as the "**Land**");

(f)    all improvements, structures and buildings, and any alterations thereto or replacements thereof, now or hereafter erected upon the Land, all fixtures, fittings, appliances, apparatus, machinery, materials and replacements thereof (other than those articles of personal property owned by tenants under "Leases," as defined in paragraph (d) below), now or at any time hereafter affixed to, attached to, placed upon or used in any way in connection with the use, enjoyment, occupancy or operation of the Land or such improvements, structures or buildings, including, without limitation, furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, washtubs, sinks, gas and electric fixtures, stoves, ranges, ovens, disposals, dishwashers, hood and fan combinations, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, kitchen equipment, laundry equipment, plants and shrubbery and all other furniture, furnishings, equipment and machinery, appliances, fittings and fixtures of every nature whatsoever now or hereafter owned or acquired by the Mortgagor and located in or on, or attached to, and used or intended to be used in connection with or with the operation of, the Land, buildings, structures or improvements, or in connection with any construction being conducted or which may be conducted thereon, and owned by Mortgagor, and all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing (collectively, the "**Improvements**") (the Land and the Improvements are hereinafter referred to collectively as the "**Premises**");

(g)    any and all leases, subleases and all other occupancy agreements (written or oral), by concession, license or otherwise, for the Premises or any part thereof, now existing or hereafter entered into between Mortgagor and tenants and occupants of the Premises (the "**Leases**"), and all right, title and interest of the Mortgagor therein and thereunder, including cash or securities deposited thereunder to secure performance by the tenants and occupants under the Leases of their obligations thereunder, and any advanced rentals paid thereunder;

(h)    any and all furniture, furnishings, equipment and other articles of personal property, together with all replacements and renewals thereof, other than those articles of trade fixtures and other personal property owned by tenants under the Leases, now or at any time hereafter placed upon, located in or used in any way in connection with the use, enjoyment, occupancy and operation of the Premises (hereinafter collectively referred to as the "**Equipment**");

(i)    Mortgagor's interest in any and all agreements, contracts, certificates, licenses, permits, approvals, instruments and other documents, now or hereafter entered into pertaining to the construction, reconstruction, operation or management of the Improvements or any part thereof, and all right, title and interest of the Mortgagor therein and thereunder, including the right upon the happening of any Event of Default hereunder to receive and collect any sums payable to Mortgagor thereunder;

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

(j)    Mortgagor's interest in the franchises, permits, licenses and rights therein and thereto respecting the use, occupation and operation of the Mortgaged Property and respecting any business or activity conducted on the Premises, including, to the extent permitted by law, the name or names, if any, now or hereafter used for the Improvements, and the good will associated therewith;

(k)    Mortgagor's interest in and to the land lying in the bed of any street, road, avenue or right-of-way in front of or adjoining the Land, and any and all easements, rights-of-way, gores of land, estates, interests, hereditaments (corporeal and incorporeal), streets, ways, alleys, passages, sewer rights, water courses, water rights and powers, and all other rights, benefits, privileges and appurtenances whatsoever, in any way belonging, relating or appertaining to any of the property described in the preceding paragraphs (a) through (g), or that hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by the Mortgagor;

(l)    any and all unearned premiums, accrued or to accrue under insurance policies now or hereafter obtained by Mortgagor, all proceeds of such insurance (including title insurance) policies, and all awards, including interest thereon, heretofore and hereafter made to Mortgagor for taking by eminent domain of the whole or any part of the property described in the preceding paragraphs (a) through (h), including any awards for change of grade of streets, which said premiums, proceeds and awards are hereby assigned to Mortgagee, which is hereby authorized to collect and receive the proceeds of such insurance policies and awards and to give proper receipts and acquittances therefor; and

(m)    any and all rents, income and other benefits to which Mortgagor may now or hereafter be entitled to from, and all proceeds of, the property described in the preceding paragraphs (a) through (i).

**AND,** without limiting any of the other provisions of this Mortgage, Mortgagor expressly grants to Mortgagee, as secured party, a security interest in all of those portions of the Mortgaged Property that are or may be subject to the provisions of the Uniform Commercial Code of the State in which the Mortgaged Property is located and of the State in which Mortgagor was organized, applicable to secured transactions, and this Mortgage shall constitute a security agreement and financing statement for purposes of the Uniform Commercial Code.

**TO HAVE AND TO HOLD,** the Mortgaged Property and all parts thereof unto Mortgagee, its successors and assigns forever (but subject to defeasance upon the payment of all sums at any time secured by this Mortgage), and Mortgagor hereby binds itself and its successors and assigns to warrant and forever defend title to the Mortgaged Property unto Mortgagee and its successors and assigns against any and every person whomsoever claiming the same or any part thereof.

**AND,** Mortgagor covenants for the benefit of the Mortgagee as follows:

1.    **CERTAIN DEFINITIONS.**

For purposes of this Mortgage, the following terms shall have the following meanings:

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

(a) **"Additional Payment"** shall mean all sums, other than Debt Service and Deposits, that may become payable by Mortgagor to Mortgagee under this Mortgage for any reason (whether or not specifically designated in this Mortgage as an Additional Payment), including, but not limited to, (i) any late payment charge, liquidated damages or interest charge that may be assessed under this Mortgage, (ii) any fees due to Mortgagee or expenses of Mortgagee required to be paid by Mortgagor under this Mortgage, (iii) any funds advanced by Mortgagee, a receiver or any other person on Mortgagee's behalf to satisfy any obligation of Mortgagor under this Mortgage, (iv) any Yield Maintenance Premium that may be due under this Mortgage, (v) any amount of damages, costs or expenses, including reasonable attorneys' fees and disbursements, that Mortgagee may incur as a result of Mortgagor's failure to perform any of its obligations or pay any amount that it is required to pay under this Mortgage, and (vi) any amount for which Mortgagee is entitled to receive indemnity from Mortgagor under this Mortgage. All Additional Payments shall be secured by this Mortgage.

(b) **"Banking Day"** shall mean a day on which both state and federally chartered banks are open for business in New York City.

(c) **"Building Loan and Project Loan Agreement"** shall mean the Building Loan and Project Loan Agreement, of even date herewith, between Mortgagor and Mortgagee, relating to the Mortgaged Property.

(d) **"Debt Service"** shall mean all payments of interest or principal that may at any time be due under the Note or this Mortgage, including the principal balance at such time as it may be or become payable in full.

(e) **"Default Rate"** shall mean a rate of interest equal to the lesser of 24% per annum or the maximum legal rate at the time any such interest is to be calculated.

(f) **"Deposits"** shall mean all sums that Mortgagor may be required to deposit with Mortgagee for any reason under Paragraph 4.

(g) **"Event of Default"** shall have the meaning set forth in Paragraph 16.

(h) **"First Mortgage Loan"** shall mean that certain mortgage loan, in the principal amount of $8,000,000.00, made by Mortgagee to Mortgagor on or about the date hereof.

(i) **"Impositions"** shall mean all taxes, assessments, water rates, water meter charges, sewer rents, charges for public utilities, excises, levies, license and permit fees and other governmental charges, general and special, ordinary and extraordinary, unforeseen and foreseen, of any kind and nature whatsoever (including any fines, penalties or interest due as a result of the deferred or late payment of any of the foregoing) that at any time during the term of this Mortgage may be assessed, levied, confirmed, imposed upon, or grow or become due and payable out of or in respect of, or become a lien on, the Mortgaged Property or any part thereof or any appurtenance thereto, the rent and income received by Mortgagor from tenants, or for any use or occupation of the Mortgaged Property, and such franchises as may be appurtenant to the use of the Mortgaged Property, this transaction or any document to which Mortgagor is a party, creating or transferring an interest or estate in the Mortgaged Property or any part thereof.

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM          INDEX NO. 512224/2019

NYSCEF DOC. NO. 5                                      RECEIVED NYSCEF: 06/03/2019

(j)    **"Insurance Premiums"** shall mean all premiums and any other payments that may be due with respect to all policies of insurance that Mortgagor may be obligated to maintain under Paragraph 5.

(k)    **"Loan Documents"** shall mean the documents evidencing, securing or otherwise relating to the loan, including, without limitation, the Note, the Building Loan and Project Loan Agreement, the Mortgage and any guaranty executed in connection therewith.

(l)    **"Mortgage"** shall mean this building loan mortgage, as the same may be amended, restated, consolidated, split, severed or otherwise modified from time to time.

(m)    **"Mortgagee"** shall mean the Persons who at any time are the record owners of this Mortgage. The term "Mortgagee" shall not include any former owner of this Mortgage or an interest therein who is no longer a record owner thereof.

(n)    **"Mortgagor"** shall mean the Persons executing this Mortgage as mortgagor, and in the event of any Transfer, shall mean the Persons who at any time are the record owners of the Premises.

(o)    **"Note"** shall have the meaning given to such term in the recitals hereto.

(p)    **"Person"** shall mean any individual, corporation, partnership, trust, estate, limited liability company or other form of entity or association.

(q)    Intentionally Omitted.

(r)    **"Transfer"** shall mean any of the following:

(i)    any sale, transfer, assignment (including an assignment of rents), lease, ground or master lease, mortgage (including purchase money mortgage), pledge or other encumbrance of any interest of Mortgagor in the Mortgaged Property, or of any interest of any other Person in the Mortgaged Property that is derived from Mortgagor, other than the mortgage and other security documents given to Mortgagee in connection with the First Mortgage Loan;

(ii)    any sale, transfer, assignment, pledge or other encumbrance of any ownership interest (beneficial or otherwise) in the Mortgagor or any other Person who derives from Mortgagor an interest in the Mortgaged Property (other than by reason of death), other a pledge given to Mortgagee in connection with the First Mortgage Loan;

(iii)    the execution of any agreement, however named or the occurrence of any event that has the effect of transferring dominion and control of the Mortgaged Property or any part thereof to any Person other than Mortgagor, or that has the effect of transferring control of any ownership interest (beneficial or otherwise) in Mortgagor or any other person who derives from Mortgagor an interest in the Mortgaged Property.

(s)    **"Transfer Closing"** shall mean the event on a Transfer Date as a result of which a Transfer occurs.

5

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

(t)    **"Transfer Date"** shall mean the effective date of any Transfer. For this purpose, the effective date of a Transfer shall be the earliest of the date of closing, the date of delivery of any document that conveys an interest in the Mortgaged Property or Mortgagor, or the date on which dominion or control of the Mortgaged Property or part thereof, or control of an interest in Mortgagor, passes to the transferee.

(u)    **"Transfer Taxes"** shall mean any and all federal, state and local taxes now or hereafter imposed on any Transfer, or that may be imposed on any other transfer of any interest in the Mortgaged Property (other than a transfer by Mortgagee of this Mortgage) that may be excluded from the definition of Transfer, or imposed on any gain resulting from any Transfer or such other transfer, or imposed by reason of the making or recording of this Mortgage or the Note or any modification, extension or termination of this Mortgage, or imposed in connection with any foreclosure of the Mortgaged Property by Mortgagee, but shall not include any regular federal, state or local income taxes imposed on Mortgagee's income generally. Transfer Taxes shall include, but shall not be limited to, the New York City Real Property Transfer Tax and the New York State Real Estate Transfer Tax.

(v)    **"Yield Maintenance Premium"** shall mean an amount equal to $125,000.00; provided, however, that if the maximum principal amount of the Note is less than $2,500,000.00, the Yield Maintenance Premium shall be limited so that the total of the Yield Maintenance Premium plus all amounts paid to Mortgagee as interest under the Note does not produce a return in excess of 25 percent per annum on the amount outstanding from time to time of the loan secured hereby. The Yield Maintenance Premium shall be in addition to all accrued interest due on the principal balance of this Mortgage through and including the date of the payment and any and all Additional Payments due hereunder. The Yield Maintenance shall be payable upon (i) payment of the obligations secured by this Mortgage (including, without limitation, payment at maturity and/or payment as a result of default, prepayment, whether pursuant to Paragraph 6, 7, 23 or otherwise (except prepayment resulting from acceleration following receipt of insurance proceeds)) or, (ii) Mortgagor's default and a subsequent acceleration of the maturity of this Mortgage (whether or not followed by foreclosure). Notwithstanding anything to the contrary herein, the Yield Maintenance Premium shall not be payable if payment of the obligations secured by this Mortgage occurs prior to May 31, 2018.

2.    **PAYMENT OF INDEBTEDNESS.**

(a)    The Mortgagor covenants and agrees to pay the indebtedness evidenced by and as provided in the Note and this Mortgage.

(b)    Except as otherwise specifically provided in this Mortgage, all payments shall be made by Mortgagor to Mortgagee by good unendorsed check drawn in U.S. dollars on a New York banking institution that is a member of the New York Clearing House, and received by Mortgagee at its offices at or before 3:00 p.m. on a Banking Day, at the address of Mortgagee specified at the beginning of this Mortgage or furnished pursuant to the provisions of Paragraph 27.

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 5

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

### 3.    PAYMENT OF IMPOSITIONS, INSURANCE PREMIUMS, TRANSFER TAXES.

(a)    Mortgagor shall pay all Impositions and Insurance Premiums when due. Notwithstanding that by law any Imposition may at the option of the taxpayer be paid in installments, then except if and to the extent that Mortgagor is making Deposits under Paragraph 4 specifically allocated for such Imposition, the same shall not be paid in installments but shall be paid by Mortgagor in full on the date such Imposition first becomes payable. All such payments of Impositions and Insurance Premiums shall be paid by Mortgagor by check, and Mortgagor shall obtain a receipt for payment. Mortgagor shall furnish to Mortgagee, within 10 days upon request, a copy of the bill for the Imposition or Insurance Premium, the check and the receipt for payment. Mortgagor shall be deemed to have made payment of any item of Impositions or insurance Premiums if Mortgagor (i) has made a Deposit under Paragraph 4 specifically allocated for such item of Impositions or Insurance Premiums, (ii) has delivered to Mortgagee a copy of the bill for such item of Impositions or Insurance Premiums no less than thirty (30) days' prior to the due date of any such Imposition or Insurance Premiums, as the case may be, (iii) has timely made all Deposits for any purpose that may be required or demanded by Mortgagee under Paragraph 4, and (iv) no Event of Default under this Mortgage has occurred and is continuing beyond any cure period provided in this Mortgage for such Event of Default. It shall be the express obligation of Mortgagor to obtain bills for all Impositions and Insurance Premiums from the appropriate taxing authorities or insurance broker or company, as the case may be, and forward copies of such bills to Mortgagee no less than thirty (30) days' prior to the due date of any such Imposition or Insurance Premium. If Mortgagor pays directly any item of Imposition or Insurance Premiums, and Mortgagee makes payment of the same item from Deposits, it shall be Mortgagor's obligation to apply for any refund that may be due, and Mortgagee shall not have any obligation to apply for such refund or have any liability with respect to the double payment.

(b)    It shall be the obligation of Mortgagor to pay all Transfer Taxes when due. Notwithstanding that by law any Transfer Tax may at the option of the taxpayer be paid in installments, the same shall not be paid in installments, but shall be paid by Mortgagor in full on the date such Transfer Tax first becomes payable. All such Transfer Taxes shall be paid by Mortgagor by unendorsed certified check of Mortgagor or unendorsed bank check, drawn in U.S. dollars on a New York bank that is a member of the New York Clearing House, made payable directly to the taxing authority, title company or Mortgagee, as Mortgagee shall direct. If at any time notice is given by any taxing authority having jurisdiction that any additional mortgage tax is due on this Mortgage by reason of any Additional Payments that may become due and be secured by this Mortgage, Mortgagor shall pay such additional mortgage tax by not later than the date specified for payment in the notice from the taxing authority, or if no such date is specified, within 10 days after the date of such notice. If Mortgagor fails to pay the additional mortgage tax by such date, then Mortgagee at its option may pay any such additional mortgage tax, interest and penalties (even if a foreclosure, bankruptcy or insolvency proceeding shall have been commenced), and the amount so paid by Mortgagee shall become immediately due and payable to Mortgagee as an Additional Payment, shall be secured by this Mortgage and shall be recoverable as part of the indebtedness secured by this Mortgage in any foreclosure, bankruptcy or insolvency proceeding.

Building Loan Mortgage and Assignment of Leases and Rents and Security Agreement
44601007v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM          INDEX NO. 512224/2019
NYSCEF DOC. NO. 5                                                   RECEIVED NYSCEF: 06/03/2019

(c)     Mortgagor shall have the right to contest the amount or validity, in whole or in part, of any Imposition by appropriate proceeding diligently conducted in good faith, but only after Mortgagor has either paid such Imposition in full, or made a Deposit under Paragraph 4 specifically allocated for such Imposition, and only if Mortgagor has timely made all Deposits for any purpose that may be required or demanded by Mortgagee under Paragraph 4. Mortgagee shall be entitled to apply Deposits to the payment of such Imposition when due even though Mortgagor may be contesting such Imposition.

4.    **DEPOSITS FOR IMPOSITIONS, INSURANCE PREMIUMS, ETC.**

(a)     At any time, at Mortgagee's election and upon written notice by Mortgagee to Mortgagor, in order to more fully protect the security of this Mortgage, to insure the payment of Impositions and Insurance Premiums, and as further security for the indebtedness and other obligations secured hereby, Mortgagor shall deposit funds with Mortgagee as follows:

(i)     Mortgagor shall deposit with Mortgagee, on the first day of each and every calendar month during the term of this Mortgage, an amount, calculated as provided in this paragraph, for the payment of Impositions and Insurance Premiums. The amount of the deposit due on the first day of any calendar month shall be one-twelfth of 110% of the amount of the total payments for Impositions and Insurance Premiums that shall be due at any time during the twelve month period that begins on the first day of the following month (the "**Deposit Calculation Period**"). For purposes of computing the deposit, "total payments for Impositions and Insurance Premiums" as used in the preceding sentence shall mean for each item of Impositions or Insurance Premiums, the amount estimated by Mortgagee to be necessary to pay each such item that becomes due during the Deposit Calculation Period. There shall be included in the amount due in any Deposit Calculation Period any increases in or supplemental payments of Impositions or Insurance Premiums made with respect to any previous year. It is the intention of Mortgagor and Mortgagee that on a date one month prior to the due date of any Imposition or Insurance Premium, Mortgagee shall have on hand Deposits specifically allocated to such item in an amount equal to 110% of the amount of such item due on the due date thereof. The amount of the deposit that would be due on the first day of the calendar month following the date of this Mortgage shall be due instead on the date of this Mortgage.

(ii)     If at any time Mortgagee shall not have Deposits on hand equal to the amounts computed in accordance with subparagraph (i) above (based on Mortgagee's latest estimate of the total payments for Impositions and Insurance Premiums due during a Deposit Calculation Period), Mortgagor shall deposit additional funds, within ten days after demand, in order to bring the Deposits on hand up to the amount as so computed.

(iii)     If Mortgagor maintains any insurance required under this Mortgage under a blanket policy, then if Mortgagor submits to Mortgagee proof reasonably satisfactory to Mortgagee that Mortgagor has paid, under such blanket policy, the Insurance Premiums for the insurance provided by such blanket policy, and if Mortgagor has made all Deposits for any purpose that may be required or demanded by Mortgagee hereunder and is not overdue (without regard to cure periods) in the payment of any Debt Service or Additional Payments due under this Mortgage, then Mortgagee shall refund to Mortgagor the amount of Deposits made with respect to the Insurance Premiums that Mortgagor has so paid under such blanket policy.

8

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

INDEX NO. 512224/2019

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/03/2019

(iv)    Mortgagor shall pay to Mortgagee a sum equal to $15.00 for each check paid from the Deposits held by Mortgagee hereunder and $50.00 for each bank or certified check paid from the Deposits held by Mortgagee hereunder. Mortgagee shall deduct such amount from the Deposits.

(b)    Mortgagee, at its option, and without notice to Mortgagor, may use the Deposits for one item of Impositions or Insurance Premiums for the payment of another, or for the payment of any amount of Debt Service that is not paid within any applicable grace period after the due date, or for the payment of any Additional Payments that are not paid on the date when due (without regard to grace periods), or for the payment of any Transfer Taxes or other amounts that Mortgagor may be required to pay to any party other than Mortgagee and that is not paid on the date when due taking into account any applicable grace periods. It is the intention of Mortgagee and Mortgagor that Mortgagee have the broadest possible power in applying Deposits, and the language of this Paragraph 4 should be interpreted as broadly as possible to permit any application of Deposits that Mortgagee may seek to make. Mortgagor grants to Mortgagee a security interest in Deposits as additional security for the obligations secured by this Mortgage, provided that such security interest shall not prevent the application of Deposits by Mortgagee in accordance with this Paragraph 4.

(c)    Deposits shall bear no interest. Mortgagee shall be entitled to make payment from Deposits of any Imposition for a fiscal year of the taxing authority in one lump sum, even if such payment would thereby be made prior to the date when due. Mortgagee shall not be liable or accountable for any Deposits paid over to the appropriate taxing authority, insurance company or broker, as the case may be.

(d)    Upon an assignment of this Mortgage by any Mortgagee, such Mortgagee shall have the right to pay over the balance of Deposits in its possession to the assignee, and if Mortgagee does so pay over such balance, the assigning Mortgagee shall thereupon be completely released from all liability with respect to Deposits and Mortgagor shall look solely to the assignee or transferee in reference thereto. This provision shall apply to each and every transfer of Deposits to a new assignee.

5.    **INSURANCE.**

(a)    Mortgagor shall, for the benefit of Mortgagee, keep the Improvements and Equipment insured under an all-risk policy, and such other hazards as Mortgagee in its reasonable discretion may require Mortgagor, by notice, to provide, and shall also provide such comprehensive general liability insurance, loss of rent insurance, boiler and machinery insurance, workers compensation insurance, disability insurance, flood insurance and other kinds of insurance, as are required by the Building Loan and Project Loan Agreement or as Mortgagee in its reasonable discretion may require Mortgagor, by notice, to provide. All amounts and scope of coverage of all such policies, and the insurers with whom such policies are carried, shall be as Mortgagee may specify in its reasonable discretion, and the amounts and scope of coverage shall be increased by Mortgagor at such times and to such amounts and scope as Mortgagee may require in its reasonable discretion.

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

(b)    If there is a loss or claim of liability, Mortgagor shall give immediate notice thereof to Mortgagee. Mortgagor shall obtain the written consent of Mortgagee, which consent shall not be unreasonably withheld or delayed, to the adjustment with insurance carriers of all losses or liability of any kind. The selection of the insurance adjuster shall be made by Mortgagor subject to the approval of Mortgagee, which shall not be unreasonably withheld or delayed. Notwithstanding anything herein contained to the contrary, Mortgagee may, but shall not be required to, make proof of loss to the insurance carrier. Mortgagor hereby irrevocably appoints Mortgagee as Mortgagor's attorney-in-fact, coupled with an interest, to endorse any draft for any payment under any insurance policy that is made payable to Mortgagor or to Mortgagor and Mortgagee jointly.

(c)    The following are the requirements for the policies of insurance that Mortgagor is required to provide pursuant to Paragraph 5(a):

(i)    the aggregate deductible applicable to property insured thereunder shall not be in excess of $5,000.00, and there shall be no deductible applicable to any other type of loss or liability insured thereunder;

(ii)    all policies applicable to property shall provide for 100% replacement cost coverage without offset for depreciation;

(iii)    all property and rental value insurance shall be provided in an amount sufficient to prevent co-insurance;

(iv)    except for workers' compensation insurance, all policies shall name Mortgagor and Mortgagee as insured as their respective interests may appear;

(v)    except for workers' compensation and public liability insurance, all policies shall contain a standard New York form of non-contributory mortgagee clause and Mortgagee's loss payable endorsement in favor of Mortgagee;

(vi)    each policy of insurance shall include effective waivers by the insurer of all claims for insurance premiums against Mortgagee;

(vii)    each policy of insurance shall provide that any loss shall be payable to Mortgagee notwithstanding (A) any act, failure to act or negligence of or violation of any warranty, declaration or condition contained in any such policy by any named insured, (B) the occupation or use of the Mortgaged Property for purposes more hazardous than permitted by the terms of such policy, (C) any foreclosure or other action or proceeding, taken by Mortgagee or any other holder of a mortgage on the Mortgaged Property pursuant to any provision of the Mortgage or such other mortgage, or (D) any change in title to or ownership of the Mortgaged Property or any portion thereof;

(viii)    each policy of insurance shall provide an endorsement that 30 days advance written notice of any cancellation, expiration, non-renewal or material change affecting the interest of Mortgagee shall be sent to Mortgagee in the manner provided in this Mortgage for notices;

10

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM   INDEX NO. 512224/2019

NYSCEF DOC. NO. 5   RECEIVED NYSCEF: 06/03/2019

(ix)    no policy of insurance of any kind shall provide for installment payments more frequently than annually;

(x)    each insurance company issuing any such policy of insurance shall (A) be organized and existing under the laws of one of the states of the United States and shall be licensed to do business as an insurance company and authorized to issue the type of insurance policy it is issuing with respect to the Mortgaged Property, in the State of New York, (B) have a Best's rating of at least A-, IX and (C) be satisfactory to Mortgagee in its reasonable discretion;

(xi)    where any insurance is provided under a blanket policy, the policy shall contain an endorsement specifying the amount of the total coverage of the policy that is allocated to the Mortgaged Property and that will be payable notwithstanding the amount of any losses with respect to any other properties that may be covered under such blanket policy; and

(xii)    each policy of insurance shall be satisfactory in all other respects to Mortgagee in its reasonable discretion.

(d)    Mortgagor shall deliver to Mortgagee on the date of execution of this Mortgage Evidence of Insurance (Acord Form 27) for the insurance coverage to be provided by all policies of insurance called for pursuant to this Paragraph 5 other than general public liability insurance, and Certificate of Insurance (Acord Form 25s) for all general public liability insurance. All of the actual policies (or certified copies where coverage is provided by a blanket insurance policy) shall be delivered to Mortgagee within thirty days following the commencement of the term of this Mortgage. Mortgagor shall furnish to Mortgagee, no less than thirty days prior to the expiration of any insurance policy, Evidence of Insurance (Acord Form 27) and Certificate of Insurance (Acord Form 25s), in form satisfactory to Mortgagee, extending the insurance or providing new insurance to replace the same, and shall deliver the new insurance policy (or certified copies where coverage is provided by a blanket insurance policy) to Mortgagee within thirty days after the expiration of the old policy. Mortgagor shall pay to Mortgagee, immediately upon demand, a service fee of $100.00 each time that Mortgagee receives a notice of cancellation and/or notice of nonrenewal of any insurance policy. Mortgagee, at its election, may deduct this charge from the Deposits.

6.    **DAMAGE OR DESTRUCTION; APPLICATION OF INSURANCE PROCEEDS.**

(a)    If the Improvements or Equipment on the date of this Mortgage or thereafter erected or acquired shall be damaged or destroyed in whole or in part by any cause, Mortgagor shall give to Mortgagee immediate notice thereof, and Mortgagor, at its own cost and expense, whether or not insurance proceeds, if any, shall be sufficient or shall be made available for the purpose, shall promptly repair, replace and rebuild the same as nearly as possible to the character and quality of the Improvements and the Equipment therein existing immediately prior to such occurrence. Mortgagee shall in no event be called upon to repair, replace or rebuild any such Improvements or Equipment, or to pay any of the costs or expenses thereof. The work of repairing, replacing or rebuilding (which shall be deemed to include the preparation of plans where necessary) damaged or destroyed Improvements or Equipment shall be commenced as soon as reasonably possible but in any event within 90 days from the date of any such damage or destruction, and after commencement thereof shall be expeditiously proceeded with to

11

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 06/03/2019

completion; provided that if the work of repairing, replacing or rebuilding cannot, in the exercise of diligence, be feasibly commenced within 90 days, then Mortgagor's time to commence such work shall be extended for such period of time as is reasonable and appropriate and during which Mortgagor is proceeding diligently and expeditiously. If any damage or destruction results in a condition dangerous to persons or property, or is causing continued damage to the Premises or Equipment or any part thereof, the work of repairing, replacing or rebuilding shall be commenced promptly so as to remove such dangerous or damaging condition. The quality of the repairs, replacement or rebuilding shall be subject to Mortgagee's review and approval, and Mortgagor shall be deemed not to have completed the repairs, replacement or rebuilding as required by this paragraph if Mortgagee shall have reasonably disapproved the quality thereof.

(b)    (i)    If insurance proceeds received under any insurance policy required to be maintained by Mortgagor are less than 10% of the outstanding principal balance of this Mortgage on the date the proceeds are received by Mortgagee, the proceeds shall be made available by Mortgagee for application to the cost of repair, replacement or rebuilding, in accordance with the provisions of Paragraph 6(c) below. If the amount of the insurance proceeds are 10% of the outstanding principal balance of this Mortgage on the date the proceeds are received by Mortgagee or greater but less than 75% of the outstanding principal balance of the Note on the date the proceeds are received by Mortgagee, then notwithstanding the provisions of Subdivision 4 of Section 254 of the New York Real Property Law, Mortgagee may, at its option and in its absolute discretion, apply all amounts recovered under any insurance policy required to be maintained by Mortgagor in any one or more of the following ways: (A) in reduction of the outstanding principal balance of the Note, regardless of whether part or all of the balance shall then be matured or not; (B) in payment of any other monetary obligation of Mortgagor under this Mortgage or the Note, or to fulfill any of the covenants of Mortgagor provided herein; or (C) to be released to Mortgagor for application to the cost of repair, replacement or rebuilding in accordance with the provisions of Paragraph 6(c) below. However, if Mortgagor has not commenced the work of repairing, replacing or rebuilding within the time required under Paragraph 6(a), or if such work is not prosecuted diligently and expeditiously to completion, as Mortgagee shall determine in its sole discretion, then notwithstanding that Mortgagee otherwise may be required or have elected under the provisions of this Paragraph 6(b)(i) to make insurance proceeds available to Mortgagor for application to the cost of repair, replacement or rebuilding, Mortgagee at its option may elect to apply insurance proceeds instead in reduction of the outstanding principal balance of the Note and in payment of any other monetary obligation of Mortgagor under this Mortgage or the Note and may elect to declare the entire remaining principal balance of the Note and all other amounts due under the Note and Mortgage to be immediately due and payable.

(ii)    If the amount of such insurance proceeds is equal to or greater than 75% of the outstanding principal balance of the Note on the date such proceeds are received by Mortgagee, then notwithstanding the provisions of Subdivision 4 of Section 254 of the New York Real Property Law, such proceeds shall be applied in reduction of the outstanding principal balance of the Note and in payment of any other monetary obligation of Mortgagor under this Mortgage or the Note, and the entire remaining principal balance of the Note and all other amounts due under the Note and Mortgage shall be immediately due and payable without notice.

12

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

INDEX NO. 512224/2019

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/03/2019

(c)    If Mortgagee elects or is required pursuant to Paragraph 6(b) to make available insurance proceeds received and held by Mortgagee under insurance policies for the purpose of making payment on account of the cost of repairs, replacement or rebuilding that Mortgagor is required to perform pursuant to Paragraph 6(a), such insurance proceeds shall be made available only in accordance with the following provisions:

.(i)    Net insurance proceeds (which shall mean net of all "Mortgagee's expenses" (as hereinafter defined)), shall be made available for payment to the parties whom Mortgagor may employ to perform the necessary repairs, replacement or rebuilding, as such repairs, replacement or rebuilding shall progress, or to Mortgagor as Mortgagor shall pay for such repairs, replacement or rebuilding, upon the presentation to Mortgagee of a certificate of the architect in charge of such work (or if an architect is not required, the contractor in charge of such work) certifying to the satisfactory completion of the work. The certificate shall be accompanied (as a condition to payment) by appropriate releases and lien waivers from the contractor, and by invoices for the work from the contractor (if payment is to be made directly to the contractor), or a paid receipted invoice for the work (if payment is to be made to the Mortgagor), together with copies of paid receipted invoices not previously provided to Mortgagee with respect to any prior work for which Mortgagee shall have advanced payment from net insurance proceeds.

(ii)    The disbursement of net insurance proceeds received by Mortgagee shall be made according to a schedule of payments to be prepared by Mortgagor and approved by Mortgagee, subject to the provisions of clause (vi) below if insurance proceeds held by Mortgagee at any time are insufficient. However, Mortgagee may withhold from each amount to be paid by Mortgagee 10% thereof until the work of repairing, replacing or rebuilding shall have been completed and reasonable proof shall have been furnished to Mortgagee that no lien or liability has attached or may attach to the Mortgaged Property or any part thereof or to Mortgagee in connection with such repairs, replacement or rebuilding.

(iii)    Mortgagor shall furnish to Mortgagee a list of the name, address and telephone number of each contractor and subcontractor who may perform any work or furnish any materials or services in connection with the repairs, replacement or rebuilding, and shall update the list promptly after any change in the information contained therein.

(iv)    As used herein, "**Mortgagee's expenses**" shall mean all reasonable costs, expenses (including fees and other charges provided for under this Mortgage) and reasonable attorneys' fees and disbursements incurred by Mortgagee in the adjustment, collection or disbursement of the insurance proceeds, or in any way arising out of the repairs, replacement or rebuilding. Mortgagee may, at any time and from time to time in its reasonable discretion, have an inspection made of the Premises by its representative as such repair, replacement and rebuilding progresses, and Mortgagor shall pay to Mortgagee a fee of $300.00 for each such inspection, such fee to be deemed part of "Mortgagee's expenses."

(v)    If in the course of such work any mechanic's or other lien or order for the payment of money shall be filed against the Mortgaged Property or any part thereof or against Mortgagee or Mortgagor, or if there shall be any overdue payment (without regard to cure periods) of any Debt Service, Additional Payment or Deposits due under this Mortgage,

13

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019
NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 06/03/2019

Mortgagee shall not be obligated to make any payment of such insurance proceeds until and unless such lien or order shall have been fully bonded, satisfied, canceled or discharged of record, and until such overdue payment of Debt Service, Additional Payment or Deposits shall have been paid.

(vi)    If the amount of insurance proceeds received and held by Mortgagee shall be insufficient at any time (whether at the commencement of the work or at any time during the work), as Mortgagee shall determine in its sole discretion, for the proper and effective repair, replacement or rebuilding of damaged or destroyed Improvements or Equipment in accordance with Paragraph 6(a), then Mortgagor shall pay all additional sums required for such repair, replacement or rebuilding, and no disbursements of net insurance proceeds held by Mortgagee shall be made until the remaining total amount of undisbursed net insurance proceeds held by Mortgagee is at least equal to the estimated remaining unpaid cost of such repair, replacement or rebuilding. If the amount of the net insurance proceeds held by Mortgagee shall be in excess of the portion of the cost of such repairs, replacement and rebuilding required to be paid from the proceeds as provided in this Paragraph 6 (c), the excess shall be paid to and retained by Mortgagee in reduction of the outstanding principal of this Mortgage.

(vii)    An architect shall be required for all repairs, replacement or rebuilding, except with respect to damage for which the estimated cost of repair is less than $50,000.00 and that does not involve any structural work, and the architect shall certify to the proper completion thereof in compliance with applicable codes and regulations. The selection of the architect shall be subject to the prior written approval of Mortgagee, not to be unreasonably withheld or delayed.

7.    **CONDEMNATION.**

(a)    If any portion of the Premises shall be taken or condemned by any competent authority by the exercise of any right of eminent domain or in condemnation proceedings, or if the grade of any street upon which the Premises abut shall be changed by governmental action, the entire award or the aggregate of any separate awards shall be paid to Mortgagee to the extent of an amount equal to all outstanding principal under this Mortgage, all accrued and unpaid interest and all Additional Payments that may be due under this Mortgage. Mortgagor shall have no right, title, interest, claim or demand whatsoever of, in or to any portion of the award that is due to Mortgagee as provided in the preceding sentence. Mortgagor hereby assigns to Mortgagee, as collateral security and subject to subparagraphs (c) and (d) below, all of its right, title and interest in and to any such award or awards to the extent of any amounts due to Mortgagee.

(b)    In the case of a taking or condemnation of the whole or materially all of the Premises, Mortgagor shall continue to pay Debt Service, Additional Payments and Deposits hereunder until title shall vest and thereafter until the award is paid in connection with the taking or condemnation. In the case of a taking or condemnation of only a portion of the Premises, or if there is a change of grade of a street, there shall be no reduction or change of Additional Payments, Deposits, or the rate of Debt Service.

14

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM   INDEX NO. 512224/2019

NYSCEF DOC. NO. 5   RECEIVED NYSCEF: 06/03/2019

(c)   (i)   If the proceeds paid to Mortgagee pursuant to Paragraph 7(a) are less than $20,000.00, such proceeds shall be made available by Mortgagee for application to the cost of restoration and repair in accordance with the provisions of Paragraph 7(d) below. If the amount of such proceeds is $20,000.00 or greater but less than 75% of the outstanding principal balance of the Note on the date such proceeds are received by Mortgagee, then notwithstanding any provision of applicable law, Mortgagee may, at its option and in its absolute discretion, apply proceeds paid to it pursuant to Paragraph 7(a) in any one or more of the following ways: (A) in reduction of the outstanding principal balance of the Note, regardless of whether part or all of the balance shall then be matured or not; (B) in payment of any other monetary obligation of Mortgagor under this Mortgage or the Note, or to fulfill any of the covenants of Mortgagor provided herein; or (C) to be released to Mortgagor for application to the cost of restoration or repair, in accordance with the provisions of Paragraph 7(d) below. However, if Mortgagor has not commenced the work of restoration and repair within the time required under Paragraph 6(a), or if the work is not prosecuted diligently and expeditiously to completion, as Mortgagee shall determine in its sole discretion, then notwithstanding that Mortgagee otherwise may be required or have elected under the provisions of this Paragraph 7(c)(i) to make proceeds available to Mortgagor for application to the cost of restoration and repair, Mortgagee at its option may elect to apply the proceeds instead in reduction of the outstanding principal balance of the Note and in payment of any other monetary obligation of Mortgagor under this Mortgage or the Note, and may elect to declare the entire remaining principal balance of the Note and all other amounts due under the Note and Mortgage to be immediately due and payable.

(ii)   If the amount of the proceeds is equal to or greater than 75% of the outstanding principal balance of the Note on the date the proceeds are received by Mortgagee, then notwithstanding any provision of applicable law, the proceeds shall be applied in reduction of the outstanding principal balance of the Note and in payment of any other monetary obligation of Mortgagor under this Mortgage or the Note, and the entire remaining principal balance of the Note and all other amounts due under the Note and Mortgage shall be immediately due and payable without notice.

(d)   If a partial taking or condemnation results in damage to any of the Improvements, Mortgagor shall restore and repair the damage to the Improvements. If the portion of the award payable to Mortgagor, if any (after Mortgagee has received the portion to which it is entitled pursuant to subparagraph (a)), is insufficient to restore and repair the damage, then the portion that is paid to Mortgagee and that Mortgagee elects or is required pursuant to Paragraph 7 (c) to make available for such restoration or repair, shall be made available in the same manner, and under the same terms and conditions, as insurance proceeds may be made available for repairs, replacement or rebuilding pursuant to the provisions of Paragraph 6(c). All restoration and repair work shall be done within the time periods, and shall be of the quality subject to Mortgagee's approval, provided for repair, replacement or rebuilding pursuant to Paragraph 6(a).

(e)   In case of any governmental action not resulting in the taking or condemnation of any portion of the Premises but creating a right to compensation therefor, the compensation shall be payable to Mortgagee to the extent of an amount equal to all outstanding principal under this Mortgage, all accrued and unpaid interest, and all Additional Payments that may be due under this Mortgage, such amounts to be applied by Mortgagee in payment of such principal, interest and Additional Payments.

Building Loan Mortgage and Assignment of Leases and Rents and Security Agreement
44601007v.1

(f)    For purposes of this Paragraph 7, a taking of "materially all" of the Premises, as distinguished from a taking of a "portion" of the Premises, shall mean a taking of such scope that the portion of the Premises not so taken is insufficient to permit Improvements on the Premises not so taken to be restored and repaired so as to constitute a complete tenantable, rentable building.

## 8.    MAINTENANCE AND REPAIR.

(a)    Mortgagor, at its sole cost and expense, will take good care of the Premises, will keep the same in good order and condition, and perform all necessary maintenance and make all necessary repairs thereto, interior and exterior, structural and non-structural, ordinary and extraordinary, and unforeseen and foreseen (including any repairs required as a result of any casualty loss). When used in this Paragraph 8, the terms "repairs" and "maintenance" shall include all necessary replacements, renewals, alterations, additions and betterments, and all repairs and maintenance shall be completed with first class materials and workmanship and be of a quality appropriate to the Premises and similar to that of other comparable buildings in the immediate vicinity, and in all events shall be at least equal in quality and class to the original work. Mortgagor will do or cause others to do all necessary shoring of foundations and walls of the Improvements and every other act or thing for the safety and preservation thereof that may be necessary by reason of any excavation or other building operations upon any adjoining property or street, alley or passageway. Mortgagor shall also make all necessary repairs and restorations, and maintain in good and clean condition, the sidewalks, curbs and vaults on or adjoining the Premises.

(b)    Mortgagor shall promptly perform any maintenance or make any repair reasonably necessary to maintain the Premises in accordance with the standards set forth in subparagraph (a) above that Mortgagee may request. All maintenance and repair work to be performed by Mortgagor hereunder shall be commenced by Mortgagor promptly after notice from Mortgagee, and shall be pursued diligently to completion, but in all cases shall be completed within 3 months after such notice or such longer period to which Mortgagee may consent, such consent not to be unreasonably withheld if the extension is reasonably necessary to complete the maintenance and repair work.

(c)    An architect shall be required for all maintenance and repair work that costs $50,000.00 or more or that involves structural work, and such architect shall certify to the proper completion thereof in compliance with applicable codes and regulations. The selection of the architect shall be subject to the prior written approval of Mortgagee, not to be unreasonably withheld or delayed.

## 9.    COMPLIANCE WITH LAWS, ORDINANCES; ENVIRONMENTAL MATTERS.

(a)    Mortgagor, at its sole cost and expense, shall promptly comply with all present and future laws, ordinances, orders, rules, regulations and requirements of all governments and federal, state and municipal agencies, all covenants, restrictions, easements and other matters affecting title, and all present or future orders, rules and regulations of the National Board of Fire Underwriters or any other body exercising similar functions, foreseen or unforeseen, ordinary as well as extraordinary, that now or hereafter may be applicable to the Mortgaged Property or any

Building Loan Mortgage and Assignment of Leases and Rents and Security Agreement
44601007v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

part thereof and the sidewalks, curbs and vaults, if any, on or adjoining the Premises, or that may be applicable to the use or manner of use of the Mortgaged Property or any part thereof, or to the owners, tenants or occupants thereof, whether or not such law, ordinance, rule, regulation or requirement shall necessitate structural changes or improvements or interfere with the use and enjoyment of the Mortgaged Property. Mortgagor shall at all times have a proper, current certificate of operation for the heating system, and any garbage disposal, compactor or incinerator on the Premises, and shall have a proper current certificate of occupancy for the Improvements (if required by law). Mortgagor shall likewise observe and comply with the requirements of all policies of insurance at any time in force with respect to the Mortgaged Property. Mortgagor shall obtain any and all permits that may be required with respect to any construction, repair or other work on the Premises, prior to the commencement of such work, and copies of all permits shall be submitted to Mortgagee promptly upon receipt by Mortgagor.

(b)    Mortgagee may at its option, and at Mortgagor's expense, not more than once each year, procure through a service agency tax, water, sewer rental charges, assessment, and/or state, county or municipal departmental searches (including fire, air resources, housing and building maintenance, highway and any and all other departments having jurisdiction) on the Premises. Mortgagor hereby grants to Mortgagee authority to act in its name, and for this purpose appoints Mortgagee, or any person so authorized by Mortgagee, as its attorney in fact (which power of attorney is coupled with an interest and is irrevocable and shall, to the extent permitted by law, survive any death, dissolution or legal incapacity of Mortgagor), for the purpose of accessing records of any federal, state or municipal government or agency relating to the Mortgaged Property. Mortgagor further agrees that, within ten days after request by Mortgagee, Mortgagor will execute any written authorization that Mortgagee may reasonably request for the purpose of permitting Mortgagee to access any such records.

(c)    Except as permitted by the Building Loan and Project Loan Agreement, no Improvement shall be altered, removed or demolished without the prior written consent of the Mortgagee, which consent Mortgagee may withhold in its absolute discretion, or may give upon such conditions as Mortgagee may impose in its absolute discretion. Notwithstanding the foregoing, Mortgagor may make non-structural alterations to the Premises that would not tend to decrease the value of the Mortgaged Property. All alterations permitted under this subparagraph (c) or under any other provision of this Mortgage shall be performed in a first class workmanlike manner using first class materials, and otherwise of a quality appropriate to the Premises and other comparable buildings in the immediate vicinity, and in all events, at least equal in quality and class to the original work.

(d)    All lease securities (if any) of tenants of the Premises shall be treated as trust funds but may be commingled with any other funds of the Mortgagor if, and only if, permitted by the terms of the Leases, and all such lease securities, and interest, if any, earned thereon, shall at all times be maintained, deposited and disposed of strictly in accordance with applicable legal requirements. Mortgagor shall on demand, but not more than twice in any calendar year, furnish to Mortgagee satisfactory evidence of compliance with this provision, together with a verified statement of all lease securities deposited by the tenants and copies of all leases in its possession or control (provided that if Mortgagor is a cooperative corporation, it shall obtain and furnish to Mortgagee copies of all proprietary leases, even if not in its possession at the time requested).

17

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM   INDEX NO. 512224/2019
NYSCEF DOC. NO. 5   RECEIVED NYSCEF: 06/03/2019

(e)     Without limiting the generality of any of the foregoing provisions of this Paragraph 9, Mortgagor, at its sole cost and expense, shall prepare and file by the applicable due date all reports or forms that now or at any time in the future may be required to be prepared and/or filed with any federal, state or municipal government or agency, including without limitation the annual filings with the New York City Division of Housing and Community Renewal ("**DHCR**") for the Mortgaged Property, and it shall be an Event of Default under this Mortgage if Mortgagor fails to prepare and file with the appropriate governmental agencies any such reports or forms on or before the date due.  Mortgagor, at its sole cost and expense, shall furnish to Mortgagee a copy of the annual DHCR filings promptly upon making such filing, as well as any other reports or forms that Mortgagee may request, such copies to be date stamped or the receipt of which otherwise acknowledged by the agency with which such reports or forms are filed.

(f)     (i)     As used in this subparagraph (f), "**Hazardous Substances**" shall mean and include those elements or compounds that are contained in the list of hazardous substances adopted from time to time by the United States Environmental Protection Agency ("**EPA**") or by the New York State Department of Environmental Conservation ("**DEC**"), or that are on any list of toxic or polluting materials designated by Congress, the EPA or DEC, or that are defined as hazardous, toxic, pollutant, infectious or radioactive by any other federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to, or imposing liability or standards of conduct concerning, any hazardous, toxic, polluting, infectious, radioactive, or other dangerous waste, substance or material, as now or at any time hereafter in effect, as well as medical waste, mold, mildew, fungi, bacteria, viruses and other microbial matter (the "**Hazardous Substance Laws**").

(ii)     Mortgagor covenants and agrees that (A) Mortgagor shall comply with, and insure compliance by all other parties with, all applicable Hazardous Substance Laws relating to or affecting the Mortgaged Property, and Mortgagor shall keep the Mortgaged Property free and clear of any liens imposed pursuant to any applicable Hazardous Substance Laws, all at Mortgagor's sole cost and expense; and (B) Mortgagor shall at all times obtain and/or maintain all licenses, permits and/or other governmental or regulatory authorizations and approvals necessary to comply with applicable Hazardous Substance Laws relating to or affecting the Mortgaged Property or Mortgagor's use of the Mortgaged Property (the "**Permits**"), and Mortgagor shall at all times be and remain in full compliance with the terms and provisions of the Permits.

(iii)     Mortgagor hereby agrees to indemnify Mortgagee and hold Mortgagee harmless from and against any and all losses, liabilities (including strict liability), damages, injuries, expenses (including reasonable attorneys' fees, disbursements and court costs suffered or paid by Mortgagee in any action or proceeding between Mortgagee and Mortgagor and any third party or otherwise), costs of any settlement or judgment and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against, Mortgagee by any person or entity or governmental agency for, with respect to, or as a result of, the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission, discharging or release from, the Mortgaged Property of any Hazardous Substance including, without limitation, any losses, liabilities (including strict liability), damages, injuries, expenses (including attorneys' fees, disbursements and court costs suffered or paid by Mortgagee in any action or proceeding

18

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

between Mortgagee and Mortgagor and any third party or otherwise), costs of any settlement or judgment or claims, asserted or arising under the Comprehensive Environmental Response, Compensation and Liability Act, any so called federal, state or local "Superfund" or "Superlien" laws, and any statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to or imposing liability, including strict liability, or standards of conduct concerning any Hazardous Substance, whether or not caused by or within the control of Mortgagor.

(iv)    If Mortgagor receives any notice of (A) the happening of any event involving the use, spill, release, leak, seepage, discharge or cleanup of any Hazardous Substance on the Mortgaged Property or in connection with Mortgagor's operations thereon or (B) any complaint, order, citation or notice with regard to air emissions, water discharges, or any other environmental, health or safety matter affecting Mortgagor (an "**Environmental Complaint**") from any person or entity (including, without limitation, the EPA or DEC), then Mortgagor shall immediately notify Mortgagee in writing of said notice.

(v)    Mortgagee shall have the right, but not the obligation, at its sole discretion and without limitation of Mortgagee's rights under this Mortgage, to enter onto the Mortgaged Property or to take such other actions as it deems necessary or advisable, including the appointment of a receiver of the Mortgaged Property, to cleanup, remove, resolve or minimize the impact of, or otherwise deal with any such Hazardous Substance or Environmental Complaint following receipt of any notice from any person or entity (including, without limitation, the EPA or DEC) asserting the existence of any Hazardous Substance or an Environmental Complaint pertaining to the Mortgaged Property or any part thereof that, if true, could result in an order, suit, lien or other action against Mortgagor and/or that, in the sole opinion of Mortgagee, could impair Mortgagee's security under this Mortgage. All costs and expenses incurred by Mortgagee in the exercise of any such rights shall be secured by this Mortgage and shall be payable by Mortgagor upon demand.

(vi)    Mortgagee shall have the right to require Mortgagor to perform at Mortgagor's expense (but not more frequently than once in any 18 month period), an environmental audit and/or an environmental risk assessment of the Premises. However, if an Event of Default shall have occurred and be continuing under this Mortgage, then Mortgagee shall have the right to require Mortgagor to perform at Mortgagor's expense such environmental audits and/or environmental risk assessments, without limitation on frequency, as Mortgagee may request in its absolute discretion. Promptly upon receipt of the report of any such audit or assessment, Mortgagor shall perform such remediation and make such changes in its hazardous waste management practice at the Premises as may be recommended in such report. The audit and/or risk assessment shall be performed by an environmental consultant satisfactory to Mortgagee in its absolute discretion. If Mortgagor fails to perform any such environmental audit or risk assessment within thirty (30) days of Mortgagee's written request, Mortgagee shall have the right, but not the obligation, to retain an environmental consultant to perform any environmental audit or risk assessment. All costs and expenses incurred by Mortgagee in the exercise of such rights, together with interest thereon at the Default Rate, shall be secured by this Mortgage and shall be payable to Mortgagee upon demand.

(vii)    Any breach of any warranty or representation or any breach of any covenant contained in this subparagraph 9(f) shall be an Event of Default under this Mortgage,

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
INDEX NO. 512224/2019

NYSCEF DOC. NO. 5
RECEIVED NYSCEF: 06/03/2019

and shall entitle Mortgagee, without any further notice or grace period, to exercise any and all remedies provided for default in this Mortgage, or otherwise permitted by law.

(viii)   The provisions of this subparagraph 9(f) shall survive any foreclosure or the enforcement hereof, and the provisions of clause (iii) of this subparagraph 9(f) shall survive the payment of all amounts due under this Mortgage.

(g)   Mortgagor represents and warrants to Mortgagee as follows: (i) no portion of the funds or proceeds that Mortgagor used to acquire the Mortgaged Property was obtained, directly or indirectly, from an illegal transaction or activity; (ii) Mortgagor has not used and shall not use or permit the Mortgaged Property or any portion thereof to be used for or in furtherance of any illegal purpose or activity, including, without limitation, any purpose or activity that would subject the Mortgaged Property (or any portion thereof) to the risk of seizure by or forfeiture to any governmental entity pursuant to any federal, state or local law; (iii) to Mortgagor's best knowledge, the funds or proceeds used by Mortgagor's immediate and remote predecessors in title to acquire the Mortgaged Property were not obtained, directly or indirectly, in whole or in part, from an illegal transaction or activity, and the Mortgaged Property has never been used by any person in connection with or in furtherance of any illegal purpose, activity or crime; and (iv) neither Mortgagor nor any disclosed or undisclosed principal of Mortgagor has been investigated with respect to, indicted for or otherwise formally charged with, or convicted of, any gambling offense, any violation of the federal narcotics laws, Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. § 1961 et seq., or any crime that may subject Mortgagor's property (including, without limitation, the Mortgaged Property) to the risk of seizure by or forfeiture to any governmental entity pursuant to any federal, state or local law. Mortgagor shall deliver to Mortgagee immediately upon receipt, any notice, indictment, order, judgment or other communication relating to any pending or threatened action or proceeding in which Mortgagor's property or any part thereof (including, without limitation, the Mortgaged Property) may be subject to the risk forfeiture to any federal, state or local government entity. Each of the following shall be an Event of Default, entitling Mortgagee to exercise all of its remedies for default without notice or cure period: (x) if any representation or warranty set forth above shall be untrue when made or shall subsequently become untrue; (y) the institution or threatened institution by governmental entity (including the receipt of any notice or other communication by Mortgagor or Mortgagee from a governmental entity) of any action or proceeding seeking the forfeiture of the Mortgaged Property or any part thereof; and (z) the indictment of or the filing of formal charges by a governmental entity against, or the conviction of, Mortgagor or any disclosed or undisclosed principal of Mortgagor, or the admission by Mortgagor or any disclosed or undisclosed principal of Mortgagor that it has engaged in any crime or activity prohibited by any law that may subject the property of Mortgagor or such principal to the risk of forfeiture or seizure, including, without limitation, gambling, narcotics laws and RICO.

10.   **MORTGAGEE'S RIGHT TO PERFORM.**

(a)   If Mortgagor shall at any time fail to pay any Imposition or Transfer Taxes in accordance with the provisions hereof, or to take out, pay for, maintain or deliver as and when required under this Mortgage any of the insurance policies provided for herein, or shall fail to make any other payment or perform any other act on its part to be made or performed as and

20

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

when required under this Mortgage, then Mortgagee, upon five days' notice to Mortgagor (except in the case of an emergency creating a risk of immediate harm to persons or property, in which case without notice) and without waiving or releasing Mortgagor from any obligation of Mortgagor contained in this Mortgage, may (but shall be under no obligation to): (i) pay any Imposition or Transfer Taxes payable by Mortgagor pursuant to the provisions hereof; or (ii) take out, pay for and maintain any of the insurance policies provided for herein; or (iii) make any other payment or perform any other act on Mortgagor's part to be made or performed. Notwithstanding the foregoing, if Mortgagee receives any notice of cancellation of any insurance, or receives notice of amendment or modification of any insurance such that the insurance will not meet the requirements set forth in this Mortgage, Mortgagee may immediately without notice to Mortgagor take out, pay for and maintain policies of insurance that do meet the requirements set forth in this Mortgage. Mortgagee may enter upon the Premises for any such purpose and take all such action thereon as may be necessary therefor.

(b)       All sums so paid by Mortgagee and all costs and expenses (including attorney's fees and disbursements) incurred by Mortgagee in connection with the performance of any such act, together with interest thereon at the Default Rate from the respective dates of Mortgagee's making of each such payment or incurring each such cost and expense, shall constitute an Additional Payment immediately due and payable by Mortgagor to Mortgagee.

(c)       Mortgagee shall not be limited in the proof of any damages that Mortgagee may claim against Mortgagor arising out of or by reason of Mortgagor's failure to provide and keep in force insurance as aforesaid, to the amount of the Insurance Premiums not paid or incurred by Mortgagor and that would have been payable for such insurance, but Mortgagee shall also be entitled to recover as damages for such breach the uninsured amount of any loss or liability (including all costs and expenses and attorneys' fees and disbursements), to the extent of any deficiency in the insurance required by the provisions of this Mortgage, suffered or incurred by reason of damage to, or destruction of, or liability arising in connection with, the Mortgaged Property, occurring during any period when Mortgagor shall have failed or neglected to provide insurance as aforesaid.

(d)       Mortgagee shall have no liability, and Mortgagor waives any claim that it might be entitled to assert against Mortgagee, its employees, contractors and agents, with respect to any matter or thing resulting from any act that Mortgagee is entitled to take under this Paragraph 10, or resulting from any failure by Mortgagee to act (whether or not Mortgagee had knowledge of the condition or occurrence that required action to be taken).

11.   **LIENS.**

If any mechanic's and/or materialmen's lien is filed against the Premises on or after the date of this Mortgage, or any other lien or encumbrance is filed against the Mortgaged Property or any part thereof for any reason after the date of this Mortgage, Mortgagor shall cause such lien or encumbrance to be discharged of record by payment, bonding or otherwise, within thirty (30) days after Mortgagor is given notice thereof. Failure to discharge of record any such lien or encumbrance within such thirty (30) day period shall be an Event of Default under this Mortgage, and shall entitle the Mortgagee, at Mortgagee's option and without further notice or cure period, to exercise any and all of the remedies of Mortgagee for default provided under this

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

Mortgage or by law or in equity. If Mortgagor fails to discharge of record such lien or encumbrance within such thirty (30) day period, Mortgagee may in addition, but shall not be obligated to, advance funds, bond or otherwise provide security necessary to discharge of record such lien or encumbrance, and all sums so advanced, together with interest thereon from the date of advance to the date of payment thereof at the Default Rate, shall be payable by Mortgagor to Mortgagee on demand as an Additional Payment. Any expenses incurred by Mortgagee in connection with the examination of title to the Mortgaged Property in order to ascertain the existence of any such lien or encumbrance and/or the discharge of record thereof, shall constitute advances made by Mortgagee under the provisions of this paragraph, which shall be payable by Mortgagor to Mortgagee on demand, together with interest as aforesaid, as an Additional Payment.

12.    **LATE CHARGES AND DEFAULT INTEREST.**

(a)    If the entire outstanding principal balance hereof, together with all accrued interest and any unpaid Additional Payments, is not paid in full and received by Mortgagee at its office at or before 3:00 P.M. on the maturity date (whether such date is the scheduled maturity date hereof or any earlier date by reason of acceleration or notice of prepayment), the rate of interest due on the outstanding principal balance hereof shall be increased to the Default Rate from and after the date on which payment of the outstanding principal balance was due. Mortgagor and Mortgagee intend that in the event of a foreclosure proceeding or a bankruptcy, insolvency or similar proceeding following acceleration, notice of prepayment or scheduled maturity, the rate of interest that shall accrue and be payable (and be secured by this Mortgage) during the pendency of such proceeding and until this Mortgage is paid in full, shall be the Default Rate.

(b)    If any payment of Debt Service, Deposits or Additional Payments due under this Mortgage is not paid and received by Mortgagee at its office at or before 3:00 P.M. on the date on which it is due (with no grace period), a late charge of 4¢ for each $1.00 so overdue shall become immediately due and payable to Mortgagee as liquidated damages for failure to make prompt payment, and such charge shall be due as an Additional Payment.

(c)    If any check for any payment due under this Mortgage fails due collection, Mortgagor shall immediately pay to Mortgagee a charge of $250.00 to compensate Mortgagee for its administrative cost occasioned by such failure of collection.

(d)    If any document required to be delivered by Mortgagor to Mortgagee under any provision of this Mortgage is delivered more than 30 days later than the date when due, Mortgagor shall immediately pay to Mortgagee a late charge of $250.00 with respect to each and every document that is late.

(e)    This Paragraph 12 shall not be deemed to limit Mortgagee's remedy of foreclosure for Mortgagor's default or any other remedy of Mortgagee hereunder (other than actual damages for which a payment of liquidated damages in lieu thereof is provided in this Paragraph 12), and no other remedy that Mortgagee may have shall limit Mortgagor's obligation to pay the charges provided in this Paragraph 12.

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 06/03/2019

## 13.  RIGHT OF ACCESS AND ENTRY; INSPECTIONS.

(a)  Mortgagor shall permit Mortgagee and its authorized representatives to enter the Premises at all reasonable times for the purpose of (i) inspecting the same, (ii) showing the same to prospective purchasers, tenants or mortgagees, and (iii) making any necessary repairs thereto and performing any work therein that may be necessary by reason of Mortgagor's failure to make any such repairs or perform any work that may be required under this Mortgage. Nothing herein shall imply any duty upon the part of Mortgagee to do any such work, and performance thereof by Mortgagee shall not constitute a waiver of Mortgagor's default in failing to perform the same. All inspections of the Premises by Mortgagee or its representatives shall be solely for the benefit of Mortgagee and shall create no obligation or responsibility whatsoever upon Mortgagee or its representatives to Mortgagor or any other party.

## 14.  INDEMNITY; EXPENSES.

(a)  Mortgagor shall indemnify and save harmless Mortgagee against and from all liabilities, obligations, damages, penalties, claims, costs, charges and expenses (including, without limitation, architects, accountants, engineers and other professional fees and disbursements and attorneys' fees, disbursements and court costs suffered or paid by Mortgagee in any action or proceeding between Mortgagee and Mortgagor or Mortgagor and any third party or otherwise) that may be imposed upon or incurred by or asserted against Mortgagee by reason of any matter, occurrence or thing relating to Mortgagor or the Mortgaged Property. If any action or proceeding is brought against Mortgagee by reason thereof, Mortgagor upon written notice from Mortgagee shall, at Mortgagor's reasonable expense, resist or defend such action or proceeding by counsel selected by Mortgagee, and Mortgagor's failure to so defend shall be an Event of Default under this Mortgage. Mortgagee nonetheless shall be entitled to retain its own counsel and conduct its own defense, and all expenses thereof, including attorneys' fees and disbursements, shall be paid by Mortgagor as an Additional Payment.

(b)  If Mortgagee employs an attorney or collection agent or otherwise incurs any expense (i) to collect all or any Debt Service, Additional Payments or Deposits due to Mortgagee hereunder, or (ii) to enforce any other provision hereof, or (iii) to foreclose this Mortgage or enforce other remedies to which Mortgagee may be entitled, or (iv) to represent Mortgagee in any action or proceeding (including, but not limited to, any bankruptcy or insolvency proceeding or any foreclosure action initiated by any other person or entity) involving Mortgagor or the Mortgaged Property, in which action or proceeding Mortgagee is named as a party, or issues relating to the priority, enforceability or collectibility of, or amounts secured by, this Mortgage are raised, or any seizure or claim of forfeiture is asserted by any federal, state or local government entity, or (v) in connection with any proposed Transfer or any other matter for which Mortgagor may request Mortgagee's consent or other action by Mortgagee; then Mortgagor shall reimburse Mortgagee, in addition to all other costs and fees allowed according to law, immediately for all costs, attorneys' fees and disbursements and collection agent charges incurred by Mortgagee, and the same shall be paid as an Additional Payment, shall be secured by this Mortgage and shall be recoverable by Mortgagee in any foreclosure, bankruptcy or insolvency proceeding.

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

INDEX NO. 512224/2019

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/03/2019

15. **MORTGAGEE NOT RESPONSIBLE FOR DAMAGE OR INJURY.**

Mortgagor, subject to the rights of tenants, is, and shall be in exclusive control and possession of the Mortgaged Property as provided herein, and Mortgagee shall not in any event or for any reason whatsoever be liable for any injury or damage to any property or to any person happening on or about the Premises, nor for any injury or damage to any property of Mortgagor, or of any other Person, contained therein. The provisions hereof permitting Mortgagee to enter and inspect the Premises are made for the purpose of enabling Mortgagee to be informed as to whether Mortgagor is complying with the agreements, terms, covenants and conditions hereof, and to do such acts as Mortgagor shall fail to do, and are not intended to create any obligation or impose any responsibility on Mortgagee with respect to the Premises or any condition existing thereon or therein.

16. **DEFAULTS.**

(a)    Each of the following shall be an "**Event of Default**" hereunder: (i) failure to pay any Debt Service, Additional Payment, Deposit or Transfer Taxes when due in connection with this Mortgage; or (ii) failure to pay any Imposition or Insurance Premiums when required to be paid by the terms of this Mortgage or if a notice to redeem relating to the Premises has been served in a proceeding under Article 11 of the Real Property Tax Law; or (iii) failure to exhibit to Mortgagee, within ten days after demand, receipts showing payment of all Impositions, Insurance Premiums or Transfer Taxes (except where payment of the specific item of Impositions or Insurance Premiums has been made by Mortgagee on Mortgagor's behalf from Deposits); or (iv) actual structural alteration, demolition or removal of any Improvement, or non-structural alteration of any Improvement for which Mortgagee's consent is required under Paragraph 9(c), without the prior written consent of Mortgagee; or (v) failure to comply with (and where applicable, obtain a discharge of record of) any requirement or order or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the Premises within sixty days from notice thereof (or, for violations existing on the date of this Mortgage, within six months after the date of this Mortgage), to the reasonable satisfaction of Mortgagee, provided that if same cannot be discharged of record within such sixty-day (or six-month, as the case may be) period, it shall not be an Event of Default hereunder if Mortgagor shall obtain the discharge of such violation within such longer period as is reasonably necessary to obtain the discharge of record (provided that Mortgagor has completed the work necessary to correct the violation within sixty days from notice thereof, or within six months from the date of this Mortgage for violations existing on the date of this Mortgage, and is diligently pursuing the discharge of record and the failure to obtain such discharge of record is beyond the reasonable control of the Mortgagor); or (vi) if on application of Mortgagee or Mortgagor to two or more insurance companies lawfully doing business in the state where the Premises are located refuse to issue policies insuring the Improvements on the terms and conditions required by this Mortgage; or (vii) in the event of the removal, demolition or destruction in whole or in part of any of the Equipment, unless the same are promptly replaced by similar Equipment at least equal in quality and condition to that replaced, free from chattel mortgage, security interest or other encumbrances thereon and free from any reservation of title thereto; or (viii) in the event of the passage of any law deducting from the value of land for the purposes of taxation, any lien thereon, or changing in any way the taxation of the mortgages or debts secured thereby for state or local purposes; or (ix) if Mortgagor fails to keep, observe and perform any of the other

24

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

covenants, conditions or agreements contained in this Mortgage for which no specific Event of Default is provided in this Mortgage; or (x) if proceedings under any bankruptcy or insolvency law are commenced by Mortgagor, or if proceedings under any bankruptcy or insolvency law are commenced against Mortgagor and not dismissed within 60 days, or if general assignment for the benefit of creditors is made by Mortgagor or if a trustee or receiver of the property of Mortgagor is appointed and not dismissed within ninety days (except that the appointment of an administrator under Article 7-A of the New York Real Property Actions and Proceedings Law shall be an immediate Event of Default with no grace period in which to obtain the dismissal of such appointment); or (xi) if Mortgagor requests or consents to any change in zoning affecting the Premises or any waiver of or exemption from enforcement of any applicable zoning requirement affecting the Premises, or materially varies the character or use of the Premises, or amends the certificate of occupancy, without in each such instance first obtaining the prior consent in writing thereto of Mortgagee, which consent may be withheld by Mortgagee for any or no reason; or (xii) if any representation or warranty made by Mortgagor or any of its affiliates, or any guarantor of the Mortgage, or in any other document or information submitted to Mortgagee by Mortgagor, any such affiliate or any such guarantor in connection with this Mortgage shall have been untrue or inaccurate in any material respect when made or on the date of the Mortgage; or (xiii) any "Event of Default" under, and as defined in, the Building Loan and Project Loan Agreement; or (xiv) any "Event of Default" under, and as defined in, any of the documents evidencing, securing or otherwise executed in connection with the First Mortgage Loan.

(b)     Upon the occurrence of any Event of Default described in Paragraph 16(a) or in any other provision of this Mortgage, and in the case of events of default for which a notice and/or cure period is expressly set forth, upon the expiration of such notice and/or cure period without the Event of Default having been cured, a default shall have occurred under this Mortgage that shall entitle Mortgagee, without further notice and without any further right to cure being allowed to Mortgagor, to immediately exercise any and all of its rights provided under this Mortgage or by law or in equity for default. Mortgagor acknowledges and agrees that except where this Mortgage expressly provides that Mortgagor is entitled to notice and/or an opportunity to cure a specified Event of Default, each and every Event of Default provided in this Mortgage shall, immediately upon its occurrence, constitute a default entitling Mortgagee to exercise all of such remedies. Mortgagor further acknowledges that wherever in this Mortgage it is provided that Mortgagor is entitled to notice and/or an opportunity to cure with respect to any Event of Default, then immediately following the satisfaction of any such notice requirement and/or the expiration of the specified cure period, without further notice, the Event of Default shall become a default entitling Mortgagee to exercise all of such remedies.

## 17.    REMEDIES UPON DEFAULT.

(a)     Upon any default under this Mortgage (after the expiration of any applicable notice and/or cure period provided in this Mortgage), all principal due under this Mortgage, all accrued interest, the Yield Maintenance Premium, and all other Additional Payments shall, at the option of Mortgagee, become immediately due and payable; provided that upon any default described in Section 16(a)(x) above, the all principal due under this Mortgage, all accrued interest, the Yield Maintenance Premium, and all other Additional Payments shall immediately and automatically become due and payable, without notice or demand, and Mortgagor hereby

Building Loan Mortgage and Assignment of Leases and Rents and Security Agreement
44601007v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 5                                        RECEIVED NYSCEF: 06/03/2019

expressly waives any such notice or demand, anything contained herein or in any other Loan Document to the contrary notwithstanding. If, following an exercise by Mortgagee of its option to declare such sums immediately due and payable, Mortgagor shall tender payment of an amount that by law otherwise would entitle Mortgagor to redeem the Mortgaged Property from foreclosure prior to a sale thereof, then Mortgagor shall not be entitled to so redeem the Mortgaged Property unless Mortgagor shall include in such tender, in addition to all accrued interest and the principal balance, the Yield Maintenance Premium, and all other unpaid Additional Payments.

(b)    Following an exercise by Mortgagee of its option to declare all sums immediately due and payable, Mortgagee may exercise any and all rights and remedies available hereunder and at law and in equity including the right, when authorized by law, to sell the Premises by the exercise of the power of sale hereby granted to Mortgagee, and at Mortgagee's sole option to foreclose the Mortgage by a judicial proceeding or by a non-judicial proceeding in the manner prescribed in Article 14 of the Real Property Actions and Proceedings Law, as the same may be amended from time to time.

(c)    In the event of a foreclosure of this Mortgage, the Premises or so much thereof as may be affected by this Mortgage may be sold in one parcel, any provision of law to the contrary notwithstanding. Failure to join tenants as defendants shall not constitute any defense to the foreclosure action.

(d)    In the event of any foreclosure of this Mortgage, Mortgagee shall be entitled to apply any balance of Deposits held by Mortgagee against its costs, expenses and damages incurred by reason of such foreclosure of this Mortgage, and for this purpose shall be entitled to retain all Deposits until a final determination of such costs, expenses and losses is made. Mortgagor shall also pay to Mortgagee on demand, as an Additional Payment, all Transfer Taxes for which Mortgagor is liable under this Mortgage, and all tenant security deposits held by Mortgagor or as may be reflected in leases or by receipts held by tenants, all accrued interest thereon and any penalties and/or expenses relating thereto, except that Mortgagor shall not be required to pay to Mortgagee any such security deposits that were lawfully applied by Mortgagor, as landlord, upon default of and vacating of the Premises by any tenant. All such Transfer Taxes, interest and penalties, if any, and other sums may be paid by a receiver appointed in the foreclosure action.

(e)    Nothing in this Paragraph 17 shall limit or prejudice the right of Mortgagee to prove and obtain as liquidated damages in any bankruptcy, insolvency, receivership, reorganization or dissolution proceeding an amount equal to the maximum allowed by any statute or rule of law governing such proceeding and in effect at the time when such damages are to be proved, whether or not such amount is greater, equal to or less than any amount of damages provided herein.

(f)    Upon any default under this Mortgage (after the expiration of any applicable notice and/or cure period provided in this Mortgage), or upon the occurrence of any threatened alteration or demolition of the Mortgaged Property not permitted hereunder, or any actual or threatened waste to the Mortgaged Property, Mortgagee shall be entitled, as a matter of right and without regard to the adequacy of any security for the indebtedness secured hereby (and without

26

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM          INDEX NO. 512224/2019
NYSCEF DOC. NO. 5                                        RECEIVED NYSCEF: 06/03/2019

notice in any action to foreclose this Mortgage and in such other actions or circumstances as may be permitted by law), to the appointment of a receiver for the Mortgaged Property, whether such receivership is incidental to a proposed sale of the Mortgaged Property or otherwise. Mortgagor hereby consents to the appointment of a receiver and shall not oppose any such appointment or the exercise by such receiver of all rights of Mortgagee and/or Mortgagor arising from or related to the Mortgaged Property and the enjoyment of all benefits therefrom, whether or not expressly provided herein.

(g)    Upon any default of the Mortgagor (after the expiration of any applicable notice and/or cure period provided in this Mortgage) in complying with or performing any warranty or covenant herein, Mortgagee may, at Mortgagee's option, comply with or perform the same, and the cost thereof together with interest thereon at the Default Rate, shall be paid by Mortgagor to Mortgagee on demand as an Additional Payment. If upon any default (after the expiration of any applicable notice and/or cure period provided in this Mortgage), Mortgagee or a receiver enters upon and takes possession of the Premises, Mortgagee or the receiver shall be entitled to collect the rents therefrom and apply the same to the payment of Debt Service, Additional Payments and Deposits, and to the expenses of operating the Premises, which expenses are deemed to include, without limitation, all costs of repairs and capital improvements, reasonable reserves set aside for repairs and capital improvements, management fees, receiver's fees, Impositions, Insurance Premiums and Transfer Taxes, and all other costs or expenses of any kind or nature that Mortgagee or a receiver may deem necessary or advisable to pay, or create reserves for, in connection with the Mortgaged Property. Mortgagor shall pay to Mortgagee, on demand as an Additional Payment, the amount, if any, by which all such expenses of operating the Premises exceed the net revenues collected from the Premises, together with interest thereon at the Default Rate. Mortgagee or the receiver shall be entitled to exercise all the rights and authority of Mortgagor in the operation of the Premises, including, without limitation, leasing vacant space in the Premises, or extending or modifying the term of any lease on such terms as Mortgagee or the receiver may determine in its discretion, and to make or not to make the repairs or capital improvements as Mortgagee or the receiver deems advisable in its discretion. Mortgagee or the receiver shall have no liability to Mortgagor for any action taken or not taken. Nothing in this subparagraph (f) shall in any way obligate Mortgagee or a receiver to advance any money to pay any expenses (including repairs or capital improvements) of the Premises, or to take any specific action in the operation of the Premises.

(h)    Mortgagee may, at Mortgagee's option, foreclose this Mortgage for any portion of the debt or any other sums secured hereby that are then due and payable, subject to the continuing lien of this Mortgage for the balance of the debt not then due.

(i)    With respect to any portion of the Mortgaged Property in which this Mortgage grants to Mortgagee a security interest under the Uniform Commercial Code, in addition to and without limiting any other remedies available to Mortgagee under this Mortgage or by law or in equity, Mortgagee shall be entitled to exercise all of the remedies of a secured party upon default available under the Uniform Commercial Code.

(j)    In addition to the rights and remedies herein provided, Mortgagee shall have, from and after the occurrence of an Event of Default, all rights and remedies provided under the Building Loan and Project Loan Agreement.

27

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019
NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 06/03/2019

18.    **WAIVERS; CUMULATIVE REMEDIES.**

(a)    No failure by Mortgagee to insist upon the strict performance of any covenant, agreement, term or condition of this Mortgage or to exercise any right or remedy consequent upon a breach thereof, and no acceptance of full or partial Debt Service during the continuance of any such breach, shall constitute a waiver of any such breach or of such covenant, agreement, term or condition. No covenant, agreement, term or condition of this Mortgage to be performed or complied with by Mortgagor, and no breach thereof, shall be waived, altered or modified except by written instrument executed by Mortgagee. No waiver of any breach shall affect or alter this Mortgage, but each and every covenant, agreement, term and condition of this Mortgage shall continue in full force and effect with respect to any other then existing or subsequent breach thereof.

(b)    In the event of any breach or threatened breach by Mortgagor of any of the covenants, agreements, terms or conditions contained in this Mortgage, Mortgagee shall be entitled to enjoin such breach or threatened breach and shall have the right to invoke any right and remedy allowed at law or in equity or by statute or otherwise, including proving actual damages, as though no other remedies were provided for in this Mortgage.

(c)    Each right and remedy of Mortgagee provided for in this Mortgage shall be cumulative and shall be in addition to every other right or remedy provided for in this Mortgage or now or hereafter existing at law or in equity or by statute or otherwise, and the exercise or beginning of the exercise by Mortgagee of any one or more of the rights or remedies provided for in this Mortgage or now or hereafter existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise, or be deemed a waiver, by Mortgagee of any or all other rights or remedies. Specifically, the enforcement of any provision of this Mortgage providing for payment by Mortgagor of liquidated damages, interest, costs or other charges upon the occurrence of any Event of Default hereunder shall not preclude Mortgagee from exercising any other remedies, including foreclosure, or proving actual damages, that it may have upon such Event of Default. It is also expressly agreed that Mortgagee's right to interest upon any sum in arrears owed by Mortgagor does not deprive Mortgagee of any other remedies respecting the Event of Default in question.

19.    **TRANSFERS OF THE MORTGAGED PROPERTY.**

Any Transfer made or permitted by Mortgagor shall be an Event of Default under this Mortgage, entitling Mortgagee immediately, without notice or cure period, to exercise any or all of its remedies for default provided herein or by law.

20.    **TENANT LEASES.**

Reference is made to Section 291-f of the New York Real Property Law. Mortgagor covenants and agrees to each of the following provisions with respect to Leases:

(a)    Each Lease made after the date of this Mortgage shall be subject to Mortgagee's prior written approval, and shall contain language expressly subordinating the lease to all mortgages now or hereafter affecting the Premises.

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

INDEX NO. 512224/2019

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/03/2019

(b)    All Leases shall be made only in accordance with all applicable rent regulations. Mortgagor shall comply with all applicable orders of rent regulatory authorities, and shall promptly refund all rent or other overcharges found to be due with respect to periods on or subsequent to the date of this Mortgage, and if Mortgagor or an affiliate shall have owned the Mortgaged Property prior to the date of this Mortgage, then also with respect to such period prior to the date of this Mortgage during which Mortgagor or an affiliate owned the Mortgaged Property, and pay when due any penalties, fees or damages that may be assessed, with respect to the Premises and the tenants and leases thereof.

(c)    Upon any foreclosure of this Mortgage, Mortgagor shall deliver to Mortgagee all leases, contracts, documents, rent rolls and other records used in the operation of the Premises, together with security deposits held by Mortgagor or as reflected in Leases or by receipts held by tenants, and all accrued interest due thereon. Except to the extent any security deposits have actually been delivered to Mortgagee, Mortgagor agrees to indemnify and save Mortgagee harmless from and against any claim or lien against Mortgagee or the Mortgaged Property for the return of any security deposits and interest under any leases with tenants.

(d)    Mortgagor shall not with respect to any present or future leases accept prepayment of rent prior to its due date in excess of one month.

(e)    Mortgagor shall furnish to Mortgagee, within 30 days after execution thereof, a full copy of each and every residential and commercial lease, lease renewal or lease extension, modification or amendment with respect to the Premises. Mortgagor shall exhibit to Mortgagee original signed counterparts of all leases upon request within ten days.

(f)    Except as required by law, residential leases and renewals thereof shall be for a term not exceeding two years and shall be at the maximum rental permitted by law (or if less, fair market rental). Commercial leases and renewals thereof shall be for a term not to exceed ten years and at a monthly rental of not less than the highest monthly rental of the prior leasing period (or if less, fair market rental). No lease, either residential or commercial, shall contain any right by tenant to renew or extend the same.

21.    **ASSIGNMENT OF LEASES AND RENTS.**

(a)    Mortgagor hereby assigns to Mortgagee all of Mortgagor's right, title and interest as landlord under all existing and future leases and the rents, issues and profits of the Mortgaged Property as further security for the payment of Debt Service, Additional Payments, Deposits and Transfer Taxes, and if Mortgagee exercises its rights pursuant to Paragraph 21(b), as further security for the payment of all charges and expenses of operating the Premises, and all fees, disbursements and expenses of receivers, legal counsel, accountants, managing agents and other persons employed in connection with the Mortgaged Property.

(b)    In furtherance of the assignment provided in Paragraph 21 (a), Mortgagor hereby grants to Mortgagee the following rights and powers: (i) to enter upon and take possession of the Premises; (ii) to demand payment of and collect the rents and other amounts payable under Leases, and to demand and enforce performance of the terms, covenants and conditions of Leases, by legal proceedings or otherwise; (iii) to exercise all of Mortgagor's rights, interests and

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

remedies in and under the Leases; (iv) to settle, adjust or compromise the rents and other amounts payable under the Leases, and to settle, adjust or compromise any legal proceeding brought to collect the rents and other amounts payable thereunder or to obtain performance thereof; (v) to prepare, file and sign Mortgagor's name on any proof of claim in bankruptcy, or similar document in a similar proceeding, against obligors of the Leases; (vi) to endorse the name of Mortgagor upon any payment or proceeds of the rents and other amounts payable under the Leases and to deposit the same to the account of Mortgagee; (vii) to hold, manage, lease and operate the Mortgaged Property as Mortgagee may deem proper; (viii) to make necessary capital expenditures; (ix) to apply such rents, income and profits to the payment of all charges and expenses of operating the Premises, fees, disbursements and expenses of receivers, legal counsel, accountants, managing agents and other persons employed in connection with the Mortgaged Property, and to the payment of Debt Service, Additional Payments, Deposits, Impositions, Insurance Premiums and Transfer Taxes due under this Mortgage; and (x) to do all acts and things necessary, in Mortgagee's sole discretion, to carry out any or all of the foregoing.

(c)    If the Mortgagor or any Person controlled by, controlling or under common control with, Mortgagor is an occupant of the Premises, then upon any default under this Mortgage (after the expiration of any applicable notice and/or cure period), Mortgagor or such Person will pay monthly in advance to the Mortgagee, or to any receiver appointed to collect the rents, issues and profits, the fair and reasonable rental value for the use and occupation of the Premises or of such part thereof as may be in the possession of the Mortgagor or such Person, and upon failure to make any such payment will vacate and surrender the possession of the Premises to the Mortgagee or to the receiver, and upon failure to vacate and surrender possession, may be evicted by summary proceedings.

(d)    Mortgagee hereby waives the right to enter upon and to take possession of the Premises for the purposes above set forth, including the right to take possession of the Premises for the purpose of collecting rents, issues and profits, and Mortgagor shall be entitled to collect and receive rents, issues and profits until the occurrence of any Event of Default under this Mortgage (prior to the expiration of any applicable notice and/or cure period). Mortgagor agrees to use rents, issues and profits in payment of Debt Service, Additional Payments and Deposits, and in payment of Impositions, Insurance Premiums, Transfer Taxes and expenses of operating the Premises, and after payment of all such amounts that are then due, Mortgagor shall be entitled to retain any balance of rents, issues and profits then collected by it. The right of Mortgagor to collect and receive the rents, issues and profits may be revoked by Mortgagee upon the occurrence of any Event of Default upon five days' written notice. The right of revocation by Mortgagee shall become effective whether or not any other required notice has been given or applicable cure period has expired, whether or not foreclosure has been instituted and without applying for a receiver.

(e)    The covenants herein contained on the part of Mortgagor shall be deemed to be covenants running with the land and shall be binding upon Mortgagor and any subsequent owner or owners of the Mortgaged Property or any portions thereof and its or their respective successors and assigns.  This assignment of leases and rents, together with all the covenants herein contained on the part of Mortgagor shall inure to the benefit of Mortgagee and any subsequent holder or holders of this Mortgage and its or their respective successors and assigns.

30

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

(f)     Nothing herein contained shall be construed to bind Mortgagee to the performance of any of the covenants, conditions or provisions contained in the Leases, or otherwise to impose any obligation on Mortgagee with respect thereto (including any liability under a covenant of quiet enjoyment contained in any tenant lease or under applicable law if any tenant shall have been joined as a party defendant in any foreclosure action and shall have been foreclosed of all right, title and interest and all equity of redemption in the Mortgaged Property), except that Mortgagee shall be accountable for any money actually received pursuant to this assignment of leases and rents.

(g)     Mortgagor irrevocably authorizes and directs the tenant under any tenant lease, upon demand and notice from Mortgagee of Mortgagor's default under this Mortgage, to pay all rents and other sums due under the respective tenant lease to Mortgagee without liability to the tenant for the determination of the existence of any default claimed by Mortgagee.

## 22.    PAYMENTS FROM DEPOSITS; MORTGAGEE'S LIABILITY.

(a)     Mortgagee shall make all payments of Impositions and Insurance Premiums for which it is holding Deposits by their respective due dates, including grace periods, if and only if each of the following conditions are met: (i) Mortgagor has timely made all Deposits for any purpose that may be required or demanded by Mortgagee under Paragraph 4; (ii) Mortgagor is not overdue (without regard to any applicable notice and/or cure period) in the payment of any Debt Service or Additional Payments due under this Mortgage, and no other Event of Default shall have occurred and remain uncured after any applicable notice and/or cure period; (iii) no amount advanced by Mortgagee to satisfy any obligation of Mortgagor under this Mortgage, including interest thereon computed as provided in this Mortgage, remains unpaid by Mortgagor (whether or not the failure to have paid any such amount does not yet constitute a default because of any applicable notice or cure period or otherwise); and (iv) no action to foreclose this Mortgage or to enforce the Note or any other agreement relating thereto shall be pending.

(b)     Notwithstanding anything in this Mortgage that might otherwise be construed to the contrary, in no event shall Mortgagee at any time be liable to Mortgagor for any damages, costs or expenses in excess of Mortgagee's equity in this Mortgage. All judgments against Mortgagee or any of its principals or agents shall be enforced against said equity and not against any other present or future asset of Mortgagor or any of its principals or agents.  If Mortgagee fails to pay any payments of Impositions or Insurance Premiums for which it is holding adequate Deposits, or any other payment for which Mortgagee is or may become responsible with respect to the Mortgaged Property, Mortgagor, as its sole and exclusive remedy, may pay any such payment that Mortgagee has so failed to pay to the Person to whom due and may deduct the amount so paid, including any interest and penalties due thereon, from the next regular installments of Debt Service and/or Deposits, as the case may be, due hereunder.

(c)     Whenever in this Mortgage or as a matter of law it is provided that Mortgagee's consent or approval shall not be unreasonably withheld or the actions of Mortgagee shall be reasonable, the remedy of Mortgagor, if Mortgagor shall claim or establish that Mortgagee has unreasonably withheld its consent or approval or has acted unreasonably, shall be limited to injunctive relief or declaratory judgment, and in no such event shall Mortgagor be entitled to obtain, nor shall Mortgagee be liable for, a money judgment.

31

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 06/03/2019

23.    **PREPAYMENT/ASSIGNMENT.**

This Mortgage may be prepaid, in whole but not in part. Upon payment of the obligations secured by this Mortgage (whether upon payment at maturity or as a result of prepayment, default or otherwise), the Yield Maintenance Premium shall be due and payable to Mortgagee (regardless of when such payment is made). Mortgagor and Mortgagee acknowledge and agree that the Yield Maintenance Premium does not constitute a penalty or additional interest on the loan evidenced hereby; and, notwithstanding its liability for the Yield Maintenance Premium, Mortgagor shall be fully liable for all Debt Service (including interest at the Default Rate, if applicable), Deposits, Additional Payments or any other amounts due under the Loan Documents. Mortgagor shall also be liable for damages occasioned by Mortgagee as a result of prepayment of this Mortgage. Upon acceptance of any proffered prepayment, all amounts due under the Note and this Mortgage shall be irrevocably due and payable in full on such date as if such date were the maturity date specified herein.

Upon payment in full of all of the obligations secured by this Mortgage, Mortgagee may, in Mortgagee's sole and absolute discretion (and at the request of Mortgagor made at least ten (10) days prior to the requested assignment) assign this Mortgage to another financial institution identified by Mortgagor. In connection with any such assignment, Mortgagor shall pay all of Mortgagee's reasonable attorneys fees and costs incurred in connection with such assignment.

24.    **PROCEDURE FOR PAYMENT AT MATURITY OR UPON PREPAYMENT.**

(a)    Mortgagor shall pay to Mortgagee or its designated agent at maturity, default or upon prepayment of the obligations secured by this Mortgage, accrued interest thereon, all then due and unpaid Additional Payments and the Yield Maintenance Premium, if applicable. Payment at maturity or upon prepayment permitted under Paragraph 23 shall be made as follows: (i) by unendorsed certified check or unendorsed bank cashier's check drawn in U.S. dollars to the order of Mortgagee on a New York banking institution that is a member of the New York Clearing House, and received by Mortgagee at its offices at or before 3:00 p.m. on a Banking Day, at the address of Mortgagee specified at the beginning of this Mortgage or furnished pursuant to the provisions of Paragraph 27; or (ii) at Mortgagee's sole option, by wire transfer and received in Mortgagee's bank account at or before 3:00 P.M. on a Banking Day. Payment shall include interest computed to and including the date of delivery of the check in payment or the date of receipt of the wire.

(b)    Upon the receipt of payment by Mortgagee, Mortgagee shall deliver to Mortgagor, at Mortgagor's election, either (i) a satisfaction of this Mortgage (which shall by its terms provide for discharge of all of Mortgagee's obligations hereunder from and after the date of delivery thereof), or (ii) subject to Paragraph 23, an assignment of this Mortgage without recourse and in such form as may be reasonably requested by Mortgagor and determined by Mortgagee in its sole discretion. All taxes and third-party expenses in connection with the satisfaction or assignment of this Mortgage, together with the reasonable fees and reasonable disbursements of Mortgagee's attorney for preparation of necessary documents and attendance at the Mortgage payoff closing, shall be paid by Mortgagor, and shall be deemed an Additional Payment due and payable with the payment being made on this Mortgage. Mortgagor shall

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 06/03/2019

advise Mortgagee in writing of the date, time and place scheduled for the payoff closing at least three (3) business days in advance.

25. **REDUCTION OF PRINCIPAL BALANCE BY INSURANCE AND CONDEMNATION PROCEEDS.**

If the unpaid principal balance of this Mortgage is reduced by the Mortgagee or a receiver applying insurance proceeds or condemnation awards in reduction thereof, or by prepayments made by Mortgagor with the prior written consent of Mortgagee, then notwithstanding the reduction, Debt Service shall continue to be payable in accordance with the terms of this Mortgage, and the amount of the reduction shall be applied against payments coming due under this Mortgage in the inverse order of their maturity.

26. **JUNIOR MORTGAGES.**

Mortgagor shall not place or suffer any junior mortgages or encumbrances on the Mortgaged Property or any part thereof, or otherwise create a security interest in or encumber the Mortgaged Property or any part thereof. Any breach of any provision of this Paragraph 26 shall be an Event of Default under this Mortgage and shall entitle Mortgagee, without any notice or grace period, to exercise any and all remedies provided for default in this Mortgage or otherwise permitted by law. Mortgagor shall not permit the Mortgaged Property or any part thereof to be cross-collateralized with any other property, whether owned by Mortgagor or by any other Person unless such cross-collateralization is solely for the benefit of Mortgagee.

27. **NOTICES.**

Whenever it is provided herein that notice, demand, request or other communication (a "**notice**") shall or may be given to or served upon either of the parties by the other, and whenever either of the parties shall desire to give or serve upon the other any notice with respect hereto or the Mortgaged Property, each notice shall be in writing and, any law or statute to the contrary notwithstanding, shall be effective for any purpose only if given or served as follows:

(i)    If by Mortgagee, by mailing the same to Mortgagor by certified or registered mail postage prepaid, return receipt requested, or by receipted delivery by a nationally recognized reputable overnight courier service addressed to Mortgagor at the address set forth at the beginning of this Mortgage, or at such other address as Mortgagor may from time to time designate by like notice.

(ii)    If by Mortgagor, by mailing the same to Mortgagee by registered or certified mail, postage prepaid, return receipt requested, or by receipted delivery by a nationally recognized reputable overnight courier service, addressed to Mortgagee at the address set forth at the beginning of this Mortgage, or at such other address as Mortgagee may from time to time designate by like notice.

(iii)    Every notice hereunder shall be deemed to have been given or served three days after the day that the same is deposited in the United States mail, postage prepaid, in the manner aforesaid, or one day following deposit with a nationally recognized reputable overnight courier. Refusal to accept delivery of any notice shall be deemed effective delivery thereof.

33

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

28.    **MORTGAGOR'S CERTIFICATE; STATEMENT OF BALANCES.**

(a)    Mortgagor shall, without charge, at any time and from time to time, within ten days after request by Mortgagee, certify by written instrument, duly executed, acknowledged and delivered to Mortgagee or any other Person specified by Mortgagee: (i) that this Mortgage is unmodified and in full force and effect or, if there have been any modifications or release of security from this Mortgage, that the same is in full force and effect as modified, and stating the modifications and describing any security released; (ii) whether or not there are then existing any set-offs or defenses against the Mortgage debt or the enforcement of any of the agreements, terms, covenants or conditions of this Mortgage upon the part of Mortgagor to be performed or complied with, and, if so, specifying the same; and (iii) the amount of the debt secured by this Mortgage, the outstanding principal balance, the rate of interest, and the date to which interest has been paid. Mortgagor's failure to provide the certificate within the ten day period shall be an Event of Default hereunder and shall entitle Mortgagee to exercise any or all of its remedies for default provided hereunder or by law if the Event of Default is not cured within ten days after notice is given by Mortgagee.

(b)    Mortgagee shall be entitled, at any time and from time to time, to send to Mortgagor a statement setting forth the balance of Deposits then held by Mortgagee. If Mortgagor does not dispute such balances by written notice to Mortgagee given within thirty days after delivery of the statement to Mortgagor, then Mortgagor shall be deemed to admit the correctness of such balances and of all disbursements of Deposits by Mortgagee that are reflected on the statement, and Mortgagor shall thereafter have no right to contest such balances or the correctness of any such disbursements, by legal proceedings or otherwise.

29.    **FINANCIAL STATEMENTS AND OTHER INFORMATION.**

(a)    (i)    Prior to March 31 of each calendar year, Mortgagor shall furnish to Mortgagee a balance sheet, statement of income and expense and statement of changes in financial condition and/or stockholders equity of Mortgagor, which shall be prepared by an independent certified public accountant and accompanied by the accountant's opinion, in each case stating that the financial statements present fairly the information shown therein in conformity with generally accepted accounting principles.

(ii) At any time and from time to time, but not more than once in any calendar year, within 60 days after a written request therefor has been made, Mortgagor shall furnish to Mortgagee such other financial statements for the Mortgaged Property as Mortgagee shall specify in such request. Mortgagor shall also furnish within 10 days after written request, but not more than twice in any calendar year, a current rent schedule of the Mortgaged Premises certified by Mortgagor or its agent, setting forth the name of each tenant, space occupied, monthly rent, arrears, lease security and lease expiration date, if any.

(b)    Mortgagor shall give prompt notice to Mortgagee of any actions or proceedings instituted by or against Mortgagor in any federal or state court or by any governmental department, agency or instrumentality, or any such actions or proceedings threatened against Mortgagor, affecting the Mortgaged Property or that, if adversely determined, would have a material adverse effect upon Mortgagor's business, assets or condition, financial or other, or

34

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

upon the lien of this Mortgage. Any notice so given shall specify what action Mortgagor is taking or proposes to take with respect thereto and shall include a copy of any documents relevant thereto.

## 30.    LIEN LAW.

Mortgagor agrees, in compliance with Section 13 of the Lien Law, that Mortgagor will receive the advances secured by this Mortgage and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

## 31.    GOOD STANDING OF MORTGAGOR.

If Mortgagor is a corporation, partnership, limited liability company or trust, it shall keep in effect its existence and rights as a corporation, partnership, limited liability company, or trust under the laws of the state of its incorporation or formation and its right to own property and transact business in the state in which the Premises are situated during the entire time that it has any interest in the Mortgaged Property or any part thereof. For all periods during which title or beneficial title to the Mortgaged Property or any part thereof shall be held by a partnership, trust, corporation, limited liability company or association or other entity subject to corporate franchise taxes, income taxes, license or other fees or taxes, or any taxes similar to any thereof, Mortgagor shall file returns for such taxes or license or other fees with the proper authorities, bureaus or departments and shall pay, when due and payable and before interest or penalties are due thereon, all such taxes or license or other fees owing by Mortgagor to the United States, to such state of incorporation or formation and to the state in which the Premises are situated and any political subdivision thereof. Upon written request of Mortgagee, Mortgagor shall within 15 days supply evidence satisfactory to Mortgagee of the good standing of Mortgagor in the state of its formation (and if different, in the state in which the Premises are located).

## 32.    INSTRUMENTS OF FURTHER ASSURANCE; CERTAIN SUPPLEMENTAL MANAGEMENT RIGHTS.

(a)    At any time and from time to time, upon Mortgagee's reasonable written request, Mortgagor shall make, execute and deliver or cause to be made, executed and delivered to Mortgagee and, where appropriate, shall cause to be recorded or filed and from time to time thereafter to be re-recorded or refiled at such time and in such offices and places as shall be deemed desirable by Mortgagee, without charge to Mortgagee any and all such further mortgages, instruments of further assurance, certificates, splitter agreements, severance agreements, UCC financing statements, and other documents as Mortgagee may consider necessary or desirable in order to effectuate, complete or perfect, or to continue and preserve the obligations of Mortgagor under this Mortgage and the lien of this Mortgage. Upon any failure by Mortgagor to do so, Mortgagee may make, execute, record, file, re-record or refile any and all such mortgages, instruments, certificates and documents for and in the name of Mortgagor, and Mortgagor hereby irrevocably appoints Mortgagee the agent and attorney-in-fact of Mortgagor to do so, and the cost of doing the same, including attorneys fees and disbursements, shall be payable by Mortgagor.  Mortgagor acknowledges that Mortgagee and its successors and assigns

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

may (a) sell the Mortgage, the Note and the other Loan Documents to one or more investors as a whole loan, (b) participate the Loan to one or more investors (each, a "Loan Participant"), (c) deposit the Mortgage, the Note and the other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets or (d) otherwise sell the Loan or interest therein to investors (the transactions referred to in clauses (a) through (d) are hereinafter referred to as "Secondary Market Transactions"). Mortgagor shall cooperate in good faith with Mortgagee in effecting any such Secondary Market Transaction, including, without limitation, furnishing such information and materials relating to Mortgagor, Guarantor, if any, the Mortgaged Property and any tenants of the Mortgaged Property as Mortgagee shall request and to implement all requirements imposed by any rating agency involved in any Secondary Market Transaction including, without limitation, restructuring the Loan and making modifications to any Loan Documents, delivery of opinions of counsel acceptable to the rating agency and addressing such matters as the rating agency may require; provided, however, that Mortgagor shall not be required to change (i) the interest rate payable under the Note, (ii) the stated maturity of the Note, (iii) the amortization of principal or (iv) any other material provisions of the Loan Documents. Mortgagee shall have the right to provide to prospective investors any information in its possession, including, without limitation, financial statements relating to Mortgagor, the Guarantor, the Mortgaged Property and any tenant of the Mortgaged Property, it being acknowledged that certain information regarding the Loan and the parties thereto and the Mortgaged Property may be included in a private placement memorandum, prospectus or other disclosure documents.

(b)     Mortgagee and Loan Participant shall have the following supplemental management rights:

(i)     Mortgagee and Loan Participant shall have the right to consult with and advise the management of Mortgagor, upon reasonable notice and at reasonable times, on matters relating to the operations of Mortgagor.

(ii)     Mortgagor shall not be obligated to accept the recommendations of Mortgagee or Loan Participant but Mortgagor agrees to consider, in good faith, the recommendations and advice of Mortgagee and Loan Participant from time to time hereunder. All ultimate decisions with respect to all such shall be retained by Mortgagor and neither Mortgagee nor Loan Participant shall have liability to Mortgagor with respect to the recommendations made by either or both of such parties.

(iii)     In furtherance of the Loan Documents, Mortgagor will notify Mortgagee and each Loan Participant of any material development affecting Mortgagor's business and affairs, such as significant changes in management personnel, introduction of new lines of business, important acquisitions and the proposed compromise of any significant litigation as soon as reasonably practicable, and Mortgagor shall provide Mortgagee and each Loan Participant with the opportunity, on reasonable prior written notice, to consult with and advise Mortgagor's management with respect thereto.

(iv)     In furtherance of the Loan Documents, on reasonable prior written notice, Mortgagee and Loan Participant shall have the right to discuss the business operations, properties and financial condition of Mortgagor with Mortgagor's independent certified public accountants.

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019
NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 06/03/2019

(v)    In furtherance of the Loan Documents, Mortgagor shall provide to Mortgagee and Loan Participant true and correct copies of all documents, reports, financial data and such other information as Mortgagee and each Loan Participant may reasonably request. Additionally, in furtherance of the Loan Documents, Mortgagor shall permit Mortgagee and each Loan Participant to visit and inspect any of the properties of Mortgagor, including its books of account, and to discuss its affairs, finances and accounts with its officers, all at such times as Mortgagee and each Loan Participant may reasonably request.

(vi)    Mortgagor shall deliver to Mortgagee and Loan Participant the financial reports and other materials required to be so delivered to any investor in Mortgagor pursuant to the organizational documents of Mortgagor.

(vii)    In furtherance of the Loan Documents, Mortgagee and Loan Participant shall be entitled to request that Mortgagor provide it when available, with copies of: (i) all financial statements, forecasts and projections provided to or approved by its board of directors or analogous governing authority (the *"Governing Authority"*); (ii) all notices, minutes, proxy materials, consents and correspondence and other material that it provides to its Governing Authority or equity owners; (iii) any letter issued to Mortgagor by its accountants with respect to Mortgagor's internal controls; (iv) any documents filed by Mortgagor with any regulatory or similar authority; and (v) such other business and financial data as Mortgagee or Loan Participant reasonably may request in writing from time to time.

(viii)    Mortgagor represents to Mortgagee and Loan Participant, as of the date hereof, that (i) at least 50% of Mortgagor's assets, valued at cost (other than short-term investments pending long-term commitment or distribution to investors), are invested in real estate, and (ii) Mortgagor has the right to, and actually does on a continuous basis, regularly and substantially participate directly in management and/or development activities with respect to such real estate. If any part of the foregoing sentence ceases to be true and correct in any respect after the date hereof, Mortgagor will promptly notify Mortgagee and Loan Participant of such change.

The aforementioned rights are intended to satisfy the requirement of "management rights" for purposes of qualifying the Loan as a "venture capital investment" for purposes of the DOL "plan assets" regulation, 29 C.F.R. § 2510.3-101.

The rights described in this paragraph 32(b) shall apply and continue for so long as Mortgagee or Loan Participant continues to own any interest in the Loan, which shall be deemed to be so owned and to remain outstanding notwithstanding any conversion, exercise or exchange of such Loan for securities (*"Derivative Securities"*). The rights described herein shall terminate and be of no further force or effect as of the date upon which the Mortgagee, Loan Participant and their respective affiliates cease to maintain any interest in the Loan or any Derivative Securities.

33.    **MISCELLANEOUS.**

(a)    Any payment of Debt Service, Additional Payments or Deposits due from Mortgagor to Mortgagee shall not be considered timely made when due unless it shall be actually received by Mortgagee no later than 3:00 p.m. in New York City on the date when due. Any

37

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019
NYSCEF DOC. NO. 5                                 RECEIVED NYSCEF: 06/03/2019

references to a time of day in this Mortgage shall be Eastern Standard Time or Eastern Daylight Time, as applicable.

(b)     If the holder at any time of this Mortgage shall sell, transfer or assign this Mortgage, such holder shall be and hereby is entirely discharged, released and relieved of all covenants, obligations and liabilities of Mortgagee hereunder as of the date of such sale, transfer or assignment, provided that such holder shall continue to be entitled to the benefit of all indemnities by Mortgagor in favor of Mortgagee provided in this Mortgage.

(c)     There shall be no merger of this Mortgage with the fee estate in the Mortgaged Property by reason of the fact that this Mortgage or any interest therein may be held, directly or indirectly, by or for the account of any Person or Persons who shall own the fee estate in the Mortgaged Property, or any interest therein. No such merger shall occur unless and until Mortgagee and Mortgagor shall join in a written instrument effecting such merger.

(d)     Nothing in this Mortgage shall require Mortgagor to pay any interest, liquidated damages or any other charge that might be construed as interest in an amount that would subject Mortgagee to any penalty or permit any declaration of invalidity of the Note or this Mortgage under any applicable usury or other law. If any payment of interest or any other amount that might be construed as interest pursuant to this Mortgage or the Note would subject Mortgagee to such a penalty or permit any such declaration of invalidity, then such payments of interest, liquidated damages or other charges required to be made by the Mortgagor shall not be greater than the highest amount that, if construed as interest, would be authorized under applicable law without penalty.

(e)     All interest due hereunder shall be calculated on the basis of a 360 day year for the actual number of days elapsed.

(f)     All payments received by Mortgagee under this Mortgage shall be applied, unless another provision of this Mortgage explicitly provides otherwise with respect to a particular payment, first to interest then due and payable, then to Deposits then due and payable, then to Additional Payments then due and payable and then to principal.

(g)     No grant by Mortgagor to Mortgagee of any power of attorney provided in this Mortgage shall be construed as in any way relieving Mortgagor of the obligation to execute the document or perform the act that Mortgagee is authorized by the power of attorney to execute or perform in Mortgagor's name.

(h)     In any case where Mortgagor may be required pursuant to the terms of this Mortgage to furnish any document, statement, notice or writing of any kind, the document, statement, notice or writing, at the election of Mortgagee, shall be furnished in the form reasonably specified or supplied by Mortgagee.

(i)     This Mortgage contains the entire agreement between the parties with respect to the matters set forth herein and supersedes any prior understanding or agreement, oral or written, with respect thereto. This Mortgage cannot be changed or terminated orally, but only by an instrument in writing executed by Mortgagee and Mortgagor.

38

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

(j)      If any term or provision of this Mortgage or the application thereof to any person or circumstance shall, to any extent be invalid or unenforceable, the remainder of this Mortgage, or the application of such term or provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term and provision of this Mortgage shall be valid and be enforced to the fullest extent permitted by law.

(k)      Each and every power of attorney granted in this Mortgage (i) shall be deemed to be coupled with an interest, is irrevocable and shall survive the death, disability, incompetency or bankruptcy (to the maximum extent permitted by law) of Mortgagor, and (ii) shall be exercisable by each and every Person who at any time may be the Mortgagee, shall constitute a power of attorney granted by each and every Person who at any time may be the Mortgagor and shall continue to be binding upon and effective with respect to any Person who was and is no longer the Mortgagor to the extent that Mortgagee may need to execute documents or take action in such Person's name with respect to the Mortgaged Property.

(l)      Mortgagor waives trial by jury and the right to interpose any set-off or counterclaim whatsoever (other than mandatory counterclaims), in any action or proceeding to enforce any one or more of the provisions of this Mortgage and/or the Note, and agrees not to seek consolidation or obtain a joint trial of any action or proceeding in which Mortgagor shall make a claim against Mortgagee of any nature or description.

(m)      Mortgagor hereby submits to the jurisdiction of the Supreme Court of the State of New York for any action or claim brought by the Mortgagee pursuant to this Mortgage and agrees to accept service by ordinary, registered or certified mail, whether or not return receipt is requested, sent to Mortgagor at its address for notices as provided in this Mortgage.

(n)      If Mortgagor shall be more than one Person, then all of the covenants and agreements of Mortgagor in this Mortgage shall be the joint and several covenants of each such Person.

(o)      Mortgagee, at Mortgagee's sole option and without any obligation to do so, may, at any time during the term of this Mortgage order an appraisal of the Mortgaged Property. All costs associated with the appraisal shall be at the cost and expense of Mortgagor, and shall be paid by Mortgagor on demand, or at Mortgagee's sole option, deducted from the Deposits held hereunder. Mortgagor shall cooperate with the appraiser in promptly providing access to the Mortgaged Property and in promptly supplying such information with respect to the Mortgaged Property as the appraiser may request.

(p)      Paragraph captions contained in this Mortgage are inserted only as a matter of convenience and for reference and in no way define, limit or extend or describe the scope of this Mortgage or the intent of any provision hereof.

(q)      The masculine gender shall include the feminine and neuter genders, and the singular shall include the plural, as appropriate or as the context shall require.

(r)      This Mortgage may be executed in several counterparts and all so executed shall constitute one Mortgage, binding on all the parties hereto, notwithstanding that all the parties are not signatories to the same counterparts.

Building Loan Mortgage and Assignment of Leases and Rents and Security Agreement
44601007v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

(s)    This Mortgage shall be governed by, construed in accordance with, and enforced under, the laws of the State of New York, without regard to the principles of or conflicts of law of such state.

(t)    The agreements, terms, covenants and conditions herein shall run with the land and shall bind and inure to the benefit of Mortgagee and Mortgagor and their respective heirs, personal representatives, successors and, except as otherwise provided herein, assigns.

(u)    No grant by Mortgagor to Mortgagee of any power of attorney provided in this Mortgage shall be construed as in any way relieving Mortgagor of the obligation to execute the document or perform the act that Mortgagee is authorized by the power of attorney to execute or perform in Mortgagor's name.

(v)    This Mortgage and the rights of Mortgagee hereunder shall be subject and subordinate in all respects to the mortgage and all other documents and instruments evidencing or securing the First Mortgage Loan and to the rights of the holder of such mortgage thereunder.

## 34.    **RELIEF FROM BANKRUPTCY STAY.**

Mortgagor agrees that, if Mortgagor, any guarantor of the Note or any of the persons or parties constituting Mortgagor or a guarantor of the Note shall (i) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the U.S. Code, as amended ("**Bankruptcy Code**"), (ii) be the subject of any order for relief issued under the Bankruptcy Code, (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, (iv) have sought or consented to or acquiesced in the appointment of any trustee, receiver, conservator, or liquidator, or (v) be the subject of any order, judgment, or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or relief for debtors, Mortgagee shall thereupon be entitled and Mortgagor irrevocably consents to immediate and unconditional relief from any automatic stay imposed by Section 362 of the Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to Mortgagee as provided for herein, in the Note, other loan documents delivered in connection herewith and as otherwise provided by law, and Mortgagor hereby irrevocably waives any right to object to such relief and will not contest any motion by Mortgagee seeking relief from the automatic stay, and acknowledges that no reorganization in bankruptcy is feasible.

Mortgagor waives its exclusive right pursuant to Section 1121(b) of the Bankruptcy Code to file a plan of reorganization and irrevocably consents to Mortgagee's filing a plan immediately upon the entry of an order for relief if an involuntary petition is filed against Mortgagor or upon the filing of a voluntary petition by Mortgagor. If Mortgagee shall move pursuant to Section 1121(d) of the Bankruptcy Code for an order reducing the 120-day exclusive period, Mortgagor shall not object to any such motion and Mortgagor waives any rights Mortgagor may have pursuant to Section 108(b) of the Bankruptcy Code.

Building Loan Mortgage and Assignment of Leases and Rents and Security Agreement
44601007v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019
NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 06/03/2019

35.    **1-6 RESIDENTIAL UNITS.**

_____    This Mortgage covers real property improved by one or two family dwelling only.

__X__    This Mortgage covers real property principally improved or to be improved by one or more structures containing in the aggregate not more than six (6) residential dwelling units each having its own separate cooking facilities.

_____    This Mortgage does not cover real property improved as described above.

[remainder of page intentionally left blank; signature page follows]

Building Loan Mortgage and Assignment of Leases and Rents and Security Agreement
44601007v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

IN WITNESS WHEREOF, this agreement has been duly executed by the parties hereto.

**MORTGAGEE:**

S III CAPITAL GROUP LLC,
a Delaware limited liability company

By: _____

Name: Joshua Crane

Title: Authorized Signatory

STATE OF NEW YORK   )

                        ) SS.:

COUNTY OF NEW YORK  )

On this 21 day of FEBRUARY, 2018, before me, the undersigned, personally appeared Joshua Crane, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____

Notary Public

[signatures continue on the following page]

EDWARD KIM
NOTARY PUBLIC-STATE OF NEW YORK
No. 01KI6315595
Qualified in Queens County
My Commission Expires November 24, 2018

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

**MORTGAGOR:**

**1934 Bedford LLC,**
a New York limited liability company

By: _____
Name: Arthur Gutman
Title: Authorized Signatory

STATE OF NEW YORK    )
                        ) ss.:
COUNTY OF NEW YORK  )

On this 22nd day of February, in the year 2018, before me, the undersigned, personally appeared Arthur Gutman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public

JOEL SANDER
Notary Public, State of New York
Registration #01SA6332466
Qualified In Kings County
Commission Expires Nov. 2, 2019

43

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 5

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

## SCHEDULE A

### Legal Description

Old Lot 60:
ALL that certain plot piece or parcel of land with the buildings and improvements thereon erected situate lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Bedford Avenue, distant 140 feet northerly for the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

RUNNING THENCE westerly parallel with Hawthorne Street 165 feet;

THENCE northerly at right angles to Hawthorne Street 28 feet 5 inches;

THENCE easterly in a straight line 164 feet 11 3/4 inches to a point on the westerly side of Bedford Avenue, distant 168 feet 2 3/8 inches northerly from the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

THENCE southerly along the westerly side of Bedford Avenue 28 feet 2 3/8 inches to the point or place of BEGINNING.

Old Lot 62:
All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York bounded and described as follows:

BEGINNING at a point on the westerly side of Bedford Avenue distant 106 feet northerly from the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

RUNNING THENCE westerly and parallel with Hawthorne Street 165 feet 1/4 inches;

THENCE northerly and parallel with Bedford Avenue, 34 feet;

THENCE easterly and parallel with Hawthorne Street 165 feet to the westerly side of Bedford Avenue;

THENCE southerly along the westerly side of Bedford Avenue 34 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:
Property Address: 1930-1934 Bedford Avenue Brooklyn, NY
Block: 5042              Lot: 60 f/k/a Lot 60 & 62

44

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

## SCHEDULE B

### Notes

1. Building Loan Promissory Note, dated as of December 5, 2016, made by 1934 Bedford LLC in favor of S III Capital Group LLC in the principal amount of $6,500,000.00.

2. Gap Building Loan Promissory Note, dated as of the date hereof, made by 1934 Bedford LLC in favor of S III Capital Group LLC in the principal amount of $500,000.00.

Which notes 1 and 2 above were consolidated, restated and extended by a Consolidated, Restated and Extended Building Loan Mortgage Note, dated as of the date hereof, made by 1934 Bedford LLC in favor of S III CAPITAL GROUP LLC in the consolidated principal amount of $7,000,000.00.

### Mortgages

1. Building Loan Mortgage and Assignment of Leases and Rents and Security Agreement, dated December 5, 2016 securing the principal amount of $6,500,000.00, made by 1934 Bedford LLC, in favor of S III Capital Group LLC and recorded in the Office of the City Register for the City of New York (Kings County) (the "**Register's Office**") on December 20, 2016 as 2016000450366; (Mortgage Tax Paid: $182,000.00).

2. Gap Building Loan Mortgage, dated as of the date hereof, made by 1934 Bedford LLC in favor of S III CAPITAL GROUP LLC in the original principal amount of $500,000.00, and submitted for recording in the Register's Office; (Mortgage Tax Paid: $14,000.00).

Which mortgages 1 and 2 above were consolidated, restated and extended by a Building Loan Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement, dated as of the date hereof, in the consolidated principal amount of $7,000,000.00, made by and between 1934 Bedford LLC and S III CAPITAL GROUP LLC and submitted for recording in the Register's Office.

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 06/03/2019

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

|||||||||||||||||||||||||||||||

2018022800520005001SE877

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

Document ID: 2018022800520005    Document Date: 02-22-2018    Preparation Date: 02-28-2018
Document Type: AGREEMENT

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT    8

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

**SECTION 255 AFFIDAVIT**

**BUILDING LOAN MORTGAGE
CONSOLIDATION MODIFICATION AND EXTENSION AGREEMENT
AND ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT**

STATE OF NEW YORK   )
                      )   ss.:
COUNTY OF NEW YORK  )

     **ARTHUR GUTMAN**, being duly sworn, deposes and says:

     1.     That he is over the age of twenty-one years, and is an authorized signatory of **1934 BEDFORD LLC**, a New York limited liability company, having a place of business at c/o Gutman Weiss PC, 2276 65th Street, 2nd Floor, Brooklyn, New York 11204 ("Mortgagor"), the owner of the premises known as Block: 5042, Lot(s): 60 (f/k/a 60 and 62) in the Borough of Brooklyn, County of Kings, City and State of New York (the "Property"), as more particularly described in Schedule A annexed hereto and that he is fully familiar with the facts set forth herein.

     2.     Mortgagor is a party to a certain Building Loan Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement (which agreement consolidated the mortgages identified therein, collectively, the "**Mortgage**"), dated as of the date hereof, securing the principal amount of $7,000,000.00, made by Mortgagor to **S III CAPITAL GROUP LLC**, a Delaware limited liability company, having a place of business at 444 Madison Avenue, 41st Floor, New York, New York 10022 ("**Mortgagee**"). The Mortgage encumbers the Property.

     3.     The maximum aggregate principal amount of indebtedness that is or may under any contingency be secured by the Mortgage is $7,000,000.00 plus accrued interest.

     4.     The mortgage recording taxes as set forth on **Schedule B**, annexed hereto and made a part hereof, with respect to the Mortgage have been duly paid in full.

     5.     That said Building Loan Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement offered for recording does not create or secure any new or further indebtedness or obligation other than the principal indebtedness secured by or which under any contingency may be secured by the Mortgage.

[Signature(s) follow.]

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

**WHEREFORE,** as of this 22nd day of February, 2018, deponent respectfully requests that the Building Loan Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement now offered for recording be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the Tax Law of the State of New York insofar as it does not create any new indebtedness.

Arthur Gutman

Sworn to before me this
22nd day of February, 2018

Notary Public

JOEL SANDER
Notary Public, State of New York
Registration #01SA6332466
Qualified In Kings County
Commission Expires Nov. 2, 2019

2

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

INDEX NO. 512224/2019

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/03/2019

## SCHEDULE A

### LEGAL DESCRIPTION

Old Lot 60:
ALL that certain plot piece or parcel of land with the buildings and improvements thereon erected situate lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Bedford Avenue, distant 140 feet northerly for the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

RUNNING THENCE westerly parallel with Hawthorne Street 165 feet;

THENCE northerly at right angles to Hawthorne Street 28 feet 5 inches;

THENCE easterly in a straight line 164 feet 11 3/4 inches to a point on the westerly side of Bedford Avenue, distant 168 feet 2 3/8 inches northerly from the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

THENCE southerly along the westerly side of Bedford Avenue 28 feet 2 3/8 inches to the point or place of BEGINNING.

Old Lot 62:
All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York bounded and described as follows:

BEGINNING at a point on the westerly side of Bedford Avenue distant 106 feet northerly from the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

RUNNING THENCE westerly and parallel with Hawthorne Street 165 feet 1/4 inches;

THENCE northerly and parallel with Bedford Avenue, 34 feet;

THENCE easterly and parallel with Hawthorne Street 165 feet to the westerly side of Bedford Avenue;

THENCE southerly along the westerly side of Bedford Avenue 34 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:
Property Address: 1930- 1934 Bedford Avenue Brooklyn, NY
Block: 5042          Lot: 60 f/k/a Lot 60 & 62

3

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

## SCHEDULE B

1. Building Loan Mortgage and Assignment of Leases and Rents and Security Agreement, dated December 5, 2016 securing the principal amount of $6,500,000.00, made by 1934 Bedford LLC, in favor of S III Capital Group LLC and recorded in the Office of the City Register for the City of New York (Kings County) (the "**Register's Office**") on December 20, 2016 as 2016000450366; (Mortgage Tax Paid: $182,000.00).

2. Gap Building Loan Mortgage, dated as of the date hereof, made by 1934 Bedford LLC in favor of S III CAPITAL GROUP LLC in the original principal amount of $500,000.00, and submitted for recording in the Register's Office; (Mortgage Tax Paid: $14,000.00).

Which mortgages 1 and 2 above were consolidated, restated and extended by a Building Loan Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement, dated as of the date hereof, in the consolidated principal amount of $7,000,000.00, made by and between 1934 Bedford LLC and S III CAPITAL GROUP LLC and submitted for recording in the Register's Office.

Section 255 Affidavit (Assignment of Leases and Rents)
44600537v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

## SECTION 255 AFFIDAVIT

### BUILDING LOAN MORTGAGE
### CONSOLIDATION MODIFICATION AND EXTENSION AGREEMENT
### AND ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

STATE OF NEW YORK   )
                          )   ss.:
COUNTY OF NEW YORK  )

**ARTHUR GUTMAN**, being duly sworn, deposes and says:

1. That he is over the age of twenty-one years, and is an authorized signatory of **1934 BEDFORD LLC**, a New York limited liability company, having a place of business at c/o Gutman Weiss PC, 2276 65th Street, 2nd Floor, Brooklyn, New York 11204 ("Mortgagor"), the owner of the premises known as Block: 5042, Lot(s): 60 (f/k/a 60 and 62) in the Borough of Brooklyn, County of Kings, City and State of New York (the "Property"), as more particularly described in Schedule A annexed hereto and that he is fully familiar with the facts set forth herein.

2. Mortgagor is a party to a certain Building Loan Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement (which agreement consolidated the mortgages identified therein, collectively, the "**Mortgage**"), dated as of the date hereof, securing the principal amount of $7,000,000.00, made by Mortgagor to **S III CAPITAL GROUP LLC**, a Delaware limited liability company, having a place of business at 444 Madison Avenue, 41st Floor, New York, New York 10022 ("**Mortgagee**"). The Mortgage encumbers the Property.

3. The maximum aggregate principal amount of indebtedness that is or may under any contingency be secured by the Mortgage is $7,000,000.00 plus accrued interest.

4. The mortgage recording taxes as set forth on **Schedule B**, annexed hereto and made a part hereof, with respect to the Mortgage have been duly paid in full.

5. That said Building Loan Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement offered for recording does not create or secure any new or further indebtedness or obligation other than the principal indebtedness secured by or which under any contingency may be secured by the Mortgage.

[Signature(s) follow.]

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

INDEX NO. 512224/2019
NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/03/2019

**WHEREFORE,** as of this 22nd day of February, 2018, deponent respectfully requests that the Building Loan Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement now offered for recording be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the Tax Law of the State of New York insofar as it does not create any new indebtedness.

_____
Arthur Gutman

Sworn to before me this
22nd day of February, 2018

_____
Notary Public

JOEL SANDER
Notary Public, State of New York
Registration #01SA6332466
Qualified In Kings County
Commission Expires Nov. 2, 2019

2

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 5

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

## SCHEDULE A

### LEGAL DESCRIPTION

Old Lot 60:
ALL that certain plot piece or parcel of land with the buildings and improvements thereon erected situate lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Bedford Avenue, distant 140 feet northerly for the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

RUNNING THENCE westerly parallel with Hawthorne Street 165 feet;

THENCE northerly at right angles to Hawthorne Street 28 feet 5 inches;

THENCE easterly in a straight line 164 feet 11 3/4 inches to a point on the westerly side of Bedford Avenue, distant 168 feet 2 3/8 inches northerly from the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

THENCE southerly along the westerly side of Bedford Avenue 28 feet 2 3/8 inches to the point or place of BEGINNING.

Old Lot 62:
All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York bounded and described as follows:

BEGINNING at a point on the westerly side of Bedford Avenue distant 106 feet northerly from the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

RUNNING THENCE westerly and parallel with Hawthorne Street 165 feet 1/4 inches;

THENCE northerly and parallel with Bedford Avenue, 34 feet;

THENCE easterly and parallel with Hawthorne Street 165 feet to the westerly side of Bedford Avenue;

THENCE southerly along the westerly side of Bedford Avenue 34 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:
Property Address: 1930- 1934 Bedford Avenue Brooklyn, NY
Block: 5042              Lot: 60 f/k/a Lot 60 & 62

3

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 5

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

## SCHEDULE B

1. Building Loan Mortgage and Assignment of Leases and Rents and Security Agreement, dated December 5, 2016 securing the principal amount of $6,500,000.00, made by 1934 Bedford LLC, in favor of S III Capital Group LLC and recorded in the Office of the City Register for the City of New York (Kings County) (the "**Register's Office**") on December 20, 2016 as 2016000450366; (Mortgage Tax Paid: $182,000.00).

2. Gap Building Loan Mortgage, dated as of the date hereof, made by 1934 Bedford LLC in favor of S III CAPITAL GROUP LLC in the original principal amount of $500,000.00, and submitted for recording in the Register's Office; (Mortgage Tax Paid: $14,000.00).

Which mortgages 1 and 2 above were consolidated, restated and extended by a Building Loan Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement, dated as of the date hereof, in the consolidated principal amount of $7,000,000.00, made by and between 1934 Bedford LLC and S III CAPITAL GROUP LLC and submitted for recording in the Register's Office.

4

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM          INDEX NO. 512224/2019
NYSCEF DOC. NO. 2                                      RECEIVED NYSCEF: 06/03/2019

# ALLONGE

ALLONGE to that certain Consolidated, Restated and Extended Promissory Note dated as of February 22, 2018, in the consolidated principal amount of EIGHT MILLION AND 00/100 DOLLARS ($8,000,000.00) executed by 1934 BEDFORD LLC, a New York limited liability company, payable to the order of S III CAPITAL GROUP LLC, a Delaware limited liability company.

Pay to the order of S3 RE FUNDING III LLC, a Delaware limited liability company, and its successors and/or assigns, without recourse, warranty or representation.

Dated: As of  August    8 , 2018

SIGNATURE ADDENDUM ATTACHED

47765785v.2

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 2

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

SIGNATURE ADDENDUM

S III CAPITAL GROUP LLC,
a Delaware limited liability company

By: _____

Name: Joshua Crane
Title: Authorized Person

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 06/03/2019

## ALLONGE TO PROMISSORY NOTE

This Allonge to Promissory Note is to be affixed to and made a part of that certain Consolidated, Restated and Extended Promissory Note, dated as of February 22, 2018, in the stated principal amount of $8,000,000.00 executed by **1934 BEDFORD LLC**, a New York limited liability company and made to the order of **S III CAPITAL GROUP LLC**, a Delaware limited liability company.

Pay to the order of **1930 BEDFORD AVE LLC**, its successors and assigns forever, without recourse or warranty.

Dated as of May 10, 2019.

S3 RE FUNDING III LLC,
a Delaware limited liability company

By: _____
Name: Robert Schwartz
Title: Authorized Signatory

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 2

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

## CONSOLIDATED, RESTATED AND EXTENDED PROMISSORY NOTE

($8,000,000.00)                                                New York, New York

**THIS CONSOLIDATED, RESTATED AND EXTENDED PROMISSORY NOTE (this "Note"), dated as of February 22, 2018, is in substitution for, replaces, extends and completely supersedes the following existing notes (the "Existing Notes") held by S III CAPITAL GROUP LLC ("Payee"):**

1. Note, dated February 19, 2016 made by 1934 Bedford LLC in favor of Congregation Bnai Jacob in the principal amount of $3,250,000.00.

2. Gap Promissory Note, dated as of December 5, 2016, made by 1934 Bedford LLC in favor of S III Capital Group LLC in the principal amount of $2,750,000.00.

   Which notes 1 and 2 above were consolidated, restated and extended by a Consolidated, Restated and Extended Promissory Note, dated as of December 5, 2016, made by 1934 Bedford LLC in favor of S III Capital Group LLC in the consolidated principal amount of $6,000,000.00.

3. Gap Promissory Note, dated as of the date hereof made by 1934 Bedford LLC in favor of S III Capital Group LLC in the principal amount of $2,000,000.00.

**This Note is being delivered concurrently with the execution and delivery of a Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement (which agreement consolidated the mortgages identified therein, collectively, the "Mortgage") dated the date hereof between Maker and Payee, which Mortgage consolidates, modifies and extends those certain mortgages described in Schedule B of the Mortgage, and secures the Existing Notes.**

**FOR VALUE RECEIVED, 1934 BEDFORD LLC,** a New York limited liability company, having an address at c/o Gutman Weiss PC, 2276 65th Street, 2nd Floor, Brooklyn, New York 11204 ("**Maker**"), promises to pay to Payee or order, at 444 Madison Avenue, 41st Floor, New York, New York 10022, or at such other place as may be designated in writing by the holder of this Note, the principal sum of **EIGHT MILLION and 00/100 DOLLARS ($8,000,000.00)** on the terms and with an interest rate as set forth herein. Capitalized terms not otherwise defined herein have the respective meanings ascribed to them in the Mortgage encumbering that certain real property located at and commonly known as 1930 and 1934 Bedford Avenue, Brooklyn, New York 11225.

### IT IS HEREBY EXPRESSLY ACKNOWLEDGED AND AGREED THAT:

1.     Payments under this Note shall be due and payable as follows:

       (a)    A payment of interest only on the date hereof, representing interest to accrue from the date hereof through and including the last day of this calendar month.

1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 06/03/2019

(b) Thereafter, payments of interest only in arrears on the first (1st) day of each calendar month, commencing on March 1, 2018 and continuing on the first (1st) day of each calendar month thereafter with a final payment on February 28, 2019 (the "Maturity Date").

(c)    On the Maturity Date, all outstanding principal, together with all accrued and unpaid interest, and any other sums payable under the Loan Documents, including, without limitation, the Yield Maintenance Premium, if any, shall be due and payable in full.

2.    The interest rate in effect on any date for the period beginning on the date hereof through and including the date that this Note is paid in full, shall be the greater of (A) the per annum rate derived by adding 6.50% to the prime, base or reference rate being quoted by the Wall Street Journal (the "Prime Rate") on any day, or (B) 10.00% per annum, and shall be computed on the basis of a three hundred sixty (360) day year and actual days elapsed. Interest shall be adjusted as and whenever the Prime Rate shall change. Notwithstanding the foregoing, upon the occurrence of an Event of Default, the rate of interest due on the Loan shall, commencing on the date of the occurrence of such Event of Default and without notice to Borrower, accrue at the Default Rate until this Note is paid in full.

3.    The principal sum secured by this Note shall become due at the option of the holder thereof (or as otherwise provided in the Mortgage) on the happening of any default or event by which, under the terms of the Mortgage securing this Note, said principal sum may or shall become due and payable; also, that all of the covenants, conditions and agreements contained in the Mortgage are hereby made part of this instrument.

4.    Presentment and demand for payment, notice of dishonor, notice of intention to accelerate, notice of acceleration, protest and notice of protest and non-payment are hereby waived.

5.    It is expressly stipulated and agreed to be the intent of Maker and Payee at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Payee to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this paragraph shall control every other covenant and agreement in this Note and the other Loan Documents (as such term is defined in the Mortgage). If the applicable law (state or federal) is ever judicially interpreted so as to render usurious any amount called for under this Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the indebtedness evidenced by this Note, or if Payee's exercise of the option to accelerate the Maturity Date, or if any prepayment results in Maker having paid any interest in excess of that permitted by applicable law, then it is Payee's express intent that all excess amounts theretofore collected by Payee shall be credited on the principal balance of this Note and the provisions of this Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Payee for the use, forbearance, or detention of the indebtedness evidenced by this Note shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full

2

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM        INDEX NO. 512224/2019
NYSCEF DOC. NO. 2                                      RECEIVED NYSCEF: 06/03/2019

stated term of the Note until payment in full so that the rate or amount of interest on account of the indebtedness evidenced by this Note does not exceed the maximum lawful rate from time to time in effect and applicable to such indebtedness for so long as such indebtedness is outstanding.

6.      This Note is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of New York and shall in all respects be governed, construed, applied and enforced in accordance with the laws of the State of New York without regard to the principles of conflicts of law of such State. No defense given or allowed by the laws of any other state or country shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of New York.  Borrower irrevocably submits to the jurisdiction of the state and federal courts sitting in the State, City and County of New York waives any objection to said venue.

7.      Borrower hereby irrevocably and unconditionally waives any and all rights to trial by jury in any action, suit or counterclaim arising in connection with, out of or otherwise relating to this Note.

8.      This Note may not be changed or terminated orally.

[signature page to follow]

44599737v.1

**IN WITNESS WHEREOF,** Maker has duly executed this Note as of the day and year first set forth above.

**MAKER:**

**1934 BEDFORD LLC,**
a New York limited liability company

By: _____
Name:  Arthur Gutman
Title:  Authorized Signatory

STATE OF NEW YORK    )
                           ) ss.:
COUNTY OF NEW YORK )

On this 22nd day of February, 2018, before me, the undersigned, personally appeared Arthur Gutman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public

JOEL SANDER
Notary Public, State of New York
Registration #01SA6332466
Qualified In Kings County
Commission Expires Nov. 2, 2019

4

44599737v.1

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2018022800520002001EE643

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 50 |
|---|---|

| Document ID: 2018022800520002 | Document Date: 02-22-2018 | Preparation Date: 02-28-2018 |
|---|---|---|
| Document Type:  AGREEMENT | | |
| Document Page Count: 48 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| LANDMARK ABSTRACT AGENCY LLC<br>207 ROCKAWAY TURNPIKE<br>LAWRENCE, NY 11559<br>LAA-2826 | SEYFARTH SHAW LLP<br>ATTN: CHRISTOPHER PALMESE<br>620 EIGHTH AVENUE<br>NEW YORK, NY 10018 |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5042 | 60 | Entire Lot | 1930 BEDFORD AVENUE |
| | Property Type: | APARTMENT BUILDING | | |

**CROSS REFERENCE DATA**

CRFN:   2016000074659
☒ Additional  Cross References on Continuation  Page

**PARTIES**

| PARTY 1: | PARTY 2: |
|---|---|
| 1934 BEDFORD LLC<br>C/O GUTMAN WEISS PC, 2276 65TH STREET<br>BROOKLYN, NY 11204 | S III CAPITAL GROUP LLC<br>444 MADISON AVENUE, 41ST FLOOR<br>NEW YORK, NY 10022 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 8,000,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | 255 | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed          03-02-2018 10:56 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | **2018000073253** | | |
| Recording Fee: | $ | 277.00 | | | |
| Affidavit Fee: | S | 8.00 | *City Register Official Signature* | | |

**FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM**
NYSCEF DOC. NO. 3

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2018022800520002001CE4C3

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 50 |
|---|---|

| Document ID: 2018022800520002 | Document Date: 02-22-2018 | Preparation Date: 02-28-2018 |
|---|---|---|

Document Type: AGREEMENT

**CROSS REFERENCE DATA**
**CRFN:** 2016000450368
**CRFN:** 2016000450369
**CRFN:** 2016000450370
**Document ID:** 2018022800520001

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 3

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

**DATED AS OF:** February 22, 2018

**RECORD AND RETURN TO:**
Seyfarth Shaw LLP
620 Eighth Avenue
New York, New York 10018
Attn: Christopher Palmese, Esq.

## MORTGAGE CONSOLIDATION, MODIFICATION AND EXTENSION AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

from

**1934 Bedford LLC, as Mortgagor**

to

**S III CAPITAL GROUP LLC, as Mortgagee**

| | |
|---|---|
| Premises: | 1930 and 1934 Bedford Avenue<br>Brooklyn, New York 11225 |
| Block: | 5042 |
| Lot(s): | 60 (f/k/a 60 and 62) |
| County: | Kings |
| State: | New York |

i

44599281v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

| | | |
|---|---|---|
| 1. | Certain Definitions | 3 |
| 2. | Payment of Indebtedness | 6 |
| 3. | Payment of Impositions, Insurance Premiums, Transfer Taxes | 6 |
| 4. | Deposits for Impositions, Insurance Premiums, Etc. | 7 |
| 5. | Insurance | 9 |
| 6. | Damage or Destruction; Application of Insurance Proceeds | 11 |
| 7. | Condemnation | 14 |
| 8. | Maintenance and Repair | 15 |
| 9. | Compliance with Laws, Ordinances; Environmental Matters | 16 |
| 10. | Mortgagee's Right to Perform | 20 |
| 11. | Liens | 21 |
| 12. | Late Charges and Default Interest | 21 |
| 13. | Right of Access and Entry; Inspections | 22 |
| 14. | Indemnity; Expenses | 22 |
| 15. | Mortgagee Not Responsible for Damage or Injury | 23 |
| 16. | Defaults | 23 |
| 17. | Remedies Upon Default | 25 |
| 18. | Waivers; Cumulative Remedies | 27 |
| 19. | Transfers of the Mortgaged Property | 28 |
| 20. | Tenant Leases | 28 |
| 21. | Assignment of Leases and Rents | 29 |
| 22. | Payments From Deposits; Mortgagee's Liability | 30 |
| 23. | Prepayment/Assignment | 31 |

i

44599281v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

24.    Procedure for Payment at Maturity or Upon Prepayment ............................................. 32

25.    Reduction of Principal Balance By Insurance and Condemnation Proceeds ................... 32

26.    Junior Mortgages ........................................................................................................ 32

27.    Notices ....................................................................................................................... 33

28.    Mortgagor's Certificate; Statement of Balances........................................................... 33

29.    Financial Statements and Other Information ................................................................ 34

30.    Lien Law .................................................................................................................... 34

31.    Good Standing of Mortgagor ...................................................................................... 34

32.    Instruments of Further Assurance; Certain Supplemental Management Rights.............. 35

33.    Miscellaneous ............................................................................................................ 37

34.    Relief From Bankruptcy Stay ...................................................................................... 39

35.    1-6 Residential Units................................................................................................... 40

44599281v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 3

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

## MORTGAGE CONSOLIDATION, MODIFICATION AND EXTENSION AGREEMENT
## AND ASSIGNMENT OF LEASES AND
## RENTS AND SECURITY AGREEMENT

THIS MORTGAGE CONSOLIDATION, MODIFICATION AND EXTENSION AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT (the "**Mortgage**"), made as of this 22nd day of February, 2018, between **1934 BEDFORD LLC**, a New York limited liability company, having an address at c/o Gutman Weiss PC, 2276 65th Street, 2nd Floor, Brooklyn, New York 11204 ("**Mortgagor**"), and S III **CAPITAL GROUP LLC**, a Delaware limited liability company, having an address at 444 Madison Avenue, 41st Floor, New York, New York 10022 ("**Mortgagee**").

WHEREAS, Mortgagee is the holder of the mortgages and notes secured thereby described on Schedule B annexed hereto and made a part hereof (the "**Existing Notes**"), which Existing Notes have been combined, consolidated, modified and extended by a Consolidated, Restated and Extended Promissory Note dated the date hereof (hereinafter, the "**Note**"); and

WHEREAS, Mortgagee and Mortgagor have agreed to combine, consolidate, coordinate, modify and extend the liens of said mortgages securing the Note as hereinafter set forth.

NOW, THEREFORE, in consideration of the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, Mortgagor and Mortgagee hereby agree that (i) the liens of the mortgages described above are hereby combined, consolidated, coordinated, modified and extended so that together they shall hereinafter constitute a single mortgage, all of the terms and provisions of which are evidenced by this Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement (which agreement consolidated the mortgages identified therein, collectively, the "**Mortgage**"); (ii) the Mortgage secures the payment of an indebtedness on the date hereof in the consolidated principal sum of EIGHT MILLION and 00/100 DOLLARS ($8,000,000.00) (the "**Loan**") lawful money of the United States, to be paid with interest thereon to be computed from the date hereof according to Paragraph 2 hereof and the other terms and provisions of this Mortgage, and further secures the payment of all amounts that are or become due under this Mortgage and the compliance with all of the terms of this Mortgage, (iii) the consolidated lien of this Mortgage is hereby spread over those portions of the Mortgaged Property (hereinafter defined) not already covered the liens of the mortgages described above, and (iv) this Mortgage constitutes a lien on, and the Mortgagor hereby grants, bargains, sells, mortgages, warrants, pledges, assigns, transfers and conveys to Mortgagee, and grants to Mortgagee a security interest in, the property described in the following paragraphs (a) through (j) (collectively, the "**Mortgaged Property**"):

(a)    the land described in Schedule "A" annexed hereto and made a part hereof;

(b)    all additional lands or estates or interests therein hereafter acquired by Mortgagor for use in connection with the land described in subclause (a) above, and all lands or estates or interests therein that may, from time to time, by supplemental mortgage or additional agreement, be made subject to the lien of this Mortgage (the land described in subclause (a) above and the

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

lands or estates or interests therein described in this subclause (b) are referred to, collectively, as the "**Land**");

(c)    all improvements, structures and buildings, and any alterations thereto or replacements thereof, now or hereafter erected upon the Land, all fixtures, fittings, appliances, apparatus, machinery, materials and replacements thereof (other than those articles of personal property owned by tenants under "Leases," as defined in paragraph (d) below), now or at any time hereafter affixed to, attached to, placed upon or used in any way in connection with the use, enjoyment, occupancy or operation of the Land or such improvements, structures or buildings, including, without limitation, furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, washtubs, sinks, gas and electric fixtures, stoves, ranges, ovens, disposals, dishwashers, hood and fan combinations, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, kitchen equipment, laundry equipment, plants and shrubbery and all other furniture, furnishings, equipment and machinery, appliances, fittings and fixtures of every nature whatsoever now or hereafter owned or acquired by the Mortgagor and located in or on, or attached to, and used or intended to be used in connection with or with the operation of, the Land, buildings, structures or improvements, or in connection with any construction being conducted or which may be conducted thereon, and owned by Mortgagor, and all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing (collectively, the "**Improvements**") (the Land and the Improvements are hereinafter referred to collectively as the "**Premises**");

(d)    any and all leases, subleases and all other occupancy agreements (written or oral), by concession, license or otherwise, for the Premises or any part thereof, now existing or hereafter entered into between Mortgagor and tenants and occupants of the Premises (the "**Leases**"), and all right, title and interest of the Mortgagor therein and thereunder, including cash or securities deposited thereunder to secure performance by the tenants and occupants under the Leases of their obligations thereunder, and any advanced rentals paid thereunder;

(e)    any and all furniture, furnishings, equipment and other articles of personal property, together with all replacements and renewals thereof, other than those articles of trade fixtures and other personal property owned by tenants under the Leases, now or at any time hereafter placed upon, located in or used in any way in connection with the use, enjoyment, occupancy and operation of the Premises (hereinafter collectively referred to as the "**Equipment**");

(f)    Mortgagor's interest in any and all agreements, contracts, certificates, licenses, permits, approvals, instruments and other documents, now or hereafter entered into pertaining to the construction, reconstruction, operation or management of the Improvements or any part thereof, and all right, title and interest of the Mortgagor therein and thereunder, including the right upon the happening of any event of default hereunder to receive and collect any sums payable to Mortgagor thereunder;

(g)    Mortgagor's interest in the franchises, permits, licenses and rights therein and thereto respecting the use, occupation and operation of the Mortgaged Property and respecting any business or activity conducted on the Premises, including, to the extent permitted by law, the

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

name or names, if any, now or hereafter used for the Improvements, and the good will associated therewith;

     (h)    Mortgagor's interest in and to the land lying in the bed of any street, road, avenue or right-of-way in front of or adjoining the Land, and any and all easements, rights-of-way, gores of land, estates, interests, hereditaments (corporeal and incorporeal), streets, ways, alleys, passages, sewer rights, water courses, water rights and powers, and all other rights, benefits, privileges and appurtenances whatsoever, in any way belonging, relating or appertaining to any of the property described in the preceding paragraphs (a) through (g), or that hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by the Mortgagor;

     (i)    any and all unearned premiums, accrued or to accrue under insurance policies now or hereafter obtained by Mortgagor, all proceeds of such insurance (including title insurance) policies, and all awards, including interest thereon, heretofore and hereafter made to Mortgagor for taking by eminent domain of the whole or any part of the property described in the preceding paragraphs (a) through (h), including any awards for change of grade of streets, which said premiums, proceeds and awards are hereby assigned to Mortgagee, which is hereby authorized to collect and receive the proceeds of such insurance policies and awards and to give proper receipts and acquittances therefor; and

     (j)    any and all rents, income and other benefits to which Mortgagor may now or hereafter be entitled to from, and all proceeds of, the property described in the preceding paragraphs (a) through (i)

     AND, without limiting any of the other provisions of this Mortgage, Mortgagor expressly grants to Mortgagee, as secured party, a security interest in all of those portions of the Mortgaged Property that are or may be subject to the provisions of the Uniform Commercial Code of the State in which the Mortgaged Property is located and of the State in which Mortgagor was organized, applicable to secured transactions, and this Mortgage shall constitute a security agreement and financing statement for purposes of the Uniform Commercial Code.

     TO HAVE AND TO HOLD the Mortgaged Property and all parts thereof unto Mortgagee, its successors and assigns forever (but subject to defeasance upon the payment of all sums at any time secured by this Mortgage), and Mortgagor hereby binds itself and its successors and assigns to warrant and forever defend title to the Mortgaged Property unto Mortgagee and its successors and assigns against any and every person whomsoever claiming the same or any part thereof.

     AND, Mortgagor covenants for the benefit of the Mortgagee as follows:

1.     <u>Certain Definitions</u>

     For purposes of this Mortgage, the following terms shall have the following meanings:

     (a)    "Additional Payment" shall mean all sums, other than Debt Service and Deposits, that may become payable by Mortgagor to Mortgagee under this Mortgage for any reason (whether or not specifically designated in this Mortgage as an Additional Payment), including,

4459928lv.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 3

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

but not limited to, (i) any late payment charge, liquidated damages or interest charge that may be assessed under this Mortgage, (ii) any fees due to Mortgagee or expenses of Mortgagee required to be paid by Mortgagor under this Mortgage, (iii) any funds advanced by Mortgagee, a receiver or any other person on Mortgagee's behalf to satisfy any obligation of Mortgagor under this Mortgage, (iv) any Yield Maintenance Premium that may be due under this Mortgage, (v) any amount of damages, costs or expenses, including reasonable attorneys' fees and disbursements, that Mortgagee may incur as a result of Mortgagor's failure to perform any of its obligations or pay any amount that it is required to pay under this Mortgage, and (vi) any amount for which Mortgagee is entitled to receive indemnity from Mortgagor under this Mortgage. All Additional Payments shall be secured by this Mortgage.

(b) "Banking Day" shall mean a day on which both state and federally chartered banks are open for business in New York City.

(c) "Debt Service" shall mean all payments of interest or principal that may at any time be due under the Note or this Mortgage, including the principal balance at such time as it may be or become payable in full.

(d) "Default Rate" shall mean a rate of interest equal to the lesser of 24% per annum or the maximum legal rate at the time any such interest is to be calculated.

(e) "Deposits" shall mean all sums that Mortgagor may be required to deposit with Mortgagee for any reason under Paragraph 4.

(f) "Impositions" shall mean all taxes, assessments, water rates, water meter charges, sewer rents, charges for public utilities, excises, levies, license and permit fees and other governmental charges, general and special, ordinary and extraordinary, unforeseen and foreseen, of any kind and nature whatsoever (including any fines, penalties or interest due as a result of the deferred or late payment of any of the foregoing) that at any time during the term of this Mortgage may be assessed, levied, confirmed, imposed upon, or grow or become due and payable out of or in respect of, or become a lien on, the Mortgaged Property or any part thereof or any appurtenance thereto, the rent and income received by Mortgagor from tenants, or for any use or occupation of the Mortgaged Property, and such franchises as may be appurtenant to the use of the Mortgaged Property, this transaction or any document to which Mortgagor is a party, creating or transferring an interest or estate in the Mortgaged Property or any part thereof.

(g) "Insurance Premiums" shall mean all premiums and any other payments that may be due with respect to all policies of insurance that Mortgagor may be obligated to maintain under Paragraph 5.

(h) "Loan Documents" shall mean the documents evidencing, securing or otherwise relating to the loan, including, without limitation, the Note, the Mortgage and any guaranty executed in connection therewith.

(i) "Mortgage" shall mean this mortgage, as the same may be amended, restated, consolidated, split, severed or otherwise modified from time to time.

4

44599281v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019
NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 06/03/2019

(j)    "Mortgagee" shall mean the Persons who at any time are the record owners of this Mortgage. The term "Mortgagee" shall not include any former owner of this Mortgage or an interest therein who is no longer a record owner thereof.

(k)    "Mortgagor" shall mean the Persons executing this Mortgage as mortgagor, and in the event of any Transfer, shall mean the Persons who at any time are the record owners of the Premises.

(l)    "Note" shall have the meaning given to such term in the recitals hereto.

(m)    "Person" shall mean any individual, corporation, partnership, trust, estate, limited liability company or other form of entity or association.

(n)    Intentionally Omitted.

(p)    "Transfer" shall mean any of the following:

(i)    any sale, transfer, assignment (including an assignment of rents), lease, ground or master lease, mortgage (including purchase money mortgage), pledge or other encumbrance of any interest of Mortgagor in the Mortgaged Property, or of any interest of any other Person in the Mortgaged Property that is derived from Mortgagor;

(ii)    any sale, transfer, assignment, pledge or other encumbrance of any ownership interest (beneficial or otherwise) in the Mortgagor or any other Person who derives from Mortgagor an interest in the Mortgaged Property (other than by reason of death);

(iii)    the execution of any agreement, however named or the occurrence of any event that has the effect of transferring dominion and control of the Mortgaged Property or any part thereof to any Person other than Mortgagor, or that has the effect of transferring control of any ownership interest (beneficial or otherwise) in Mortgagor or any other person who derives from Mortgagor an interest in the Mortgaged Property.

(q)    "Transfer Closing" shall mean the event on a Transfer Date as a result of which a Transfer occurs.

(r)    "Transfer Date" shall mean the effective date of any Transfer. For this purpose, the effective date of a Transfer shall be the earliest of the date of closing, the date of delivery of any document that conveys an interest in the Mortgaged Property or Mortgagor, or the date on which dominion or control of the Mortgaged Property or part thereof, or control of an interest in Mortgagor, passes to the transferee.

(s)    "Transfer Taxes" shall mean any and all federal, state and local taxes now or hereafter imposed on any Transfer, or that may be imposed on any other transfer of any interest in the Mortgaged Property (other than a transfer by Mortgagee of this Mortgage) that may be excluded from the definition of Transfer, or imposed on any gain resulting from any Transfer or such other transfer, or imposed by reason of the making or recording of this Mortgage or the Note or any modification, extension or termination of this Mortgage, or imposed in connection with any foreclosure of the Mortgaged Property by Mortgagee, but shall not include any regular

44599281v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 3

federal, state or local income taxes imposed on Mortgagee's income generally. Transfer Taxes shall include, but shall not be limited to, the New York City Real Property Transfer Tax and the New York State Real Estate Transfer Tax.

(t)    "Yield Maintenance Premium" shall mean an amount equal to $125,000.00. The Yield Maintenance Premium shall be in addition to all accrued interest due on the principal balance of this Mortgage through and including the date of the payment and any and all Additional Payments due hereunder. The Yield Maintenance shall be payable upon (i) payment of the obligations secured by this Mortgage (including, prepayment, whether pursuant to Paragraph 6, 7, 23 or otherwise (except prepayment resulting from acceleration following receipt of insurance proceeds)) or, (ii) Mortgagor's default and a subsequent acceleration of the maturity of this Mortgage (whether or not followed by foreclosure). Notwithstanding anything to the contrary herein, the Yield Maintenance Premium shall not be payable if payment of the obligations secured by this Mortgage occurs prior to May 31, 2018.

2.        Payment of Indebtedness

(a)    The Mortgagor covenants and agrees to pay the indebtedness evidenced by and as provided in the Note and this Mortgage.

(b)    Except as otherwise specifically provided in this Mortgage, all payments shall be made by Mortgagor to Mortgagee by good unendorsed check drawn in U.S. dollars on a New York banking institution that is a member of the New York Clearing House, and received by Mortgagee at its offices at or before 3:00 p.m. on a Banking Day, at the address of Mortgagee specified at the beginning of this Mortgage or furnished pursuant to the provisions of Paragraph 27.

3.        Payment of Impositions, Insurance Premiums, Transfer Taxes

(a)    Mortgagor shall pay all Impositions and Insurance Premiums when due. Notwithstanding that by law any Imposition may at the option of the taxpayer be paid in installments, then except if and to the extent that Mortgagor is making Deposits under Paragraph 4 specifically allocated for such Imposition, the same shall not be paid in installments but shall be paid by Mortgagor in full on the date such Imposition first becomes payable. All such payments of Impositions and Insurance Premiums shall be paid by Mortgagor by check, and Mortgagor shall obtain a receipt for payment. Mortgagor shall furnish to Mortgagee, within 10 days upon request, a copy of the bill for the Imposition or Insurance Premium, the check and the receipt for payment. Mortgagor shall be deemed to have made payment of any item of Impositions or Insurance Premiums if Mortgagor (i) has made a Deposit under Paragraph 4 specifically allocated for such item of Impositions or Insurance Premiums, (ii) has delivered to Mortgagee a copy of the bill for such item of Impositions or Insurance Premiums prior to the due date of any such Imposition or Insurance Premiums, (iii) has timely made all Deposits for any purpose that may be required or demanded by Mortgagee under Paragraph 4, and (iv) no event of default under this Mortgage has occurred and is continuing beyond any cure period provided in this Mortgage for such event of default. It shall be the express obligation of Mortgagor to obtain bills for all Impositions and Insurance Premiums from the appropriate taxing authorities or insurance broker or company, as the case may be, and forward copies of such bills to Mortgagee

6

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 3

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

no less than thirty (30) days' prior to the due date of any such Imposition or Insurance Premium. If Mortgagor pays directly any item of Imposition or Insurance Premiums, and Mortgagee makes payment of the same item from Deposits, it shall be Mortgagor's obligation to apply for any refund that may be due, and Mortgagee shall not have any obligation to apply for such refund or have any liability with respect to the double payment.

(b)     It shall be the obligation of Mortgagor to pay all Transfer Taxes when due. Notwithstanding that by law any Transfer Tax may at the option of the taxpayer be paid in installments, the same shall not be paid in installments, but shall be paid by Mortgagor in full on the date such Transfer Tax first becomes payable. All such Transfer Taxes shall be paid by Mortgagor by unendorsed certified check of Mortgagor or unendorsed bank check, drawn in U.S. dollars on a New York bank that is a member of the New York Clearing House, made payable directly to the taxing authority, title company or Mortgagee, as Mortgagee shall direct. If at any time notice is given by any taxing authority having jurisdiction that any additional mortgage tax is due on this Mortgage by reason of any Additional Payments that may become due and be secured by this Mortgage, Mortgagor shall pay such additional mortgage tax by not later than the date specified for payment in the notice from the taxing authority, or if no such date is specified, within 10 days after the date of such notice. If Mortgagor fails to pay the additional mortgage tax by such date, then Mortgagee at its option may pay any such additional mortgage tax, interest and penalties (even if a foreclosure, bankruptcy or insolvency proceeding shall have been commenced), and the amount so paid by Mortgagee shall become immediately due and payable to Mortgagee as an Additional Payment, shall be secured by this Mortgage and shall be recoverable as part of the indebtedness secured by this Mortgage in any foreclosure, bankruptcy or insolvency proceeding.

(c)     Mortgagor shall have the right to contest the amount or validity, in whole or in part, of any Imposition by appropriate proceeding diligently conducted in good faith, but only after Mortgagor has either paid such Imposition in full, or made a Deposit under Paragraph 4 specifically allocated for such Imposition, and only if Mortgagor has timely made all Deposits for any purpose that may be required or demanded by Mortgagee under Paragraph 4. Mortgagee shall be entitled to apply Deposits to the payment of such Imposition when due even though Mortgagor may be contesting such Imposition.

4.        Deposits for Impositions, Insurance Premiums, Etc.

(a)     At any time, at Mortgagee's election and upon written notice by Mortgagee to Mortgagor, in order to more fully protect the security of this Mortgage, to insure the payment of Impositions and Insurance Premiums, and as further security for the indebtedness and other obligations secured hereby, Mortgagor shall deposit funds with Mortgagee as follows:

(i)     Mortgagor shall deposit with Mortgagee, on the first day of each and every calendar month during the term of this Mortgage, an amount, calculated as provided in this paragraph, for the payment of Impositions and Insurance Premiums. The amount of the deposit due on the first day of any calendar month shall be one-twelfth of 110% of the amount of the total payments for Impositions and Insurance Premiums that shall be due at any time during the twelve month period that begins on the first day of the following month (the "Deposit Calculation Period"). For purposes of computing the deposit, "total payments for Impositions

7

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

and Insurance Premiums" as used in the preceding sentence shall mean for each item of Impositions or Insurance Premiums, the amount estimated by Mortgagee to be necessary to pay each such item that becomes due during the Deposit Calculation Period. There shall be included in the amount due in any Deposit Calculation Period any increases in or supplemental payments of Impositions or Insurance Premiums made with respect to any previous year. It is the intention of Mortgagor and Mortgagee that on a date one month prior to the due date of any Imposition or Insurance Premium, Mortgagee shall have on hand Deposits specifically allocated to such item in an amount equal to 110% of the amount of such item due on the due date thereof. The amount of the deposit that would be due on the first day of the calendar month following the date of this Mortgage shall be due instead on the date of this Mortgage.

(ii)    If at any time Mortgagee shall not have Deposits on hand equal to the amounts computed in accordance with subparagraph (i) above (based on Mortgagee's latest estimate of the total payments for Impositions and Insurance Premiums due during a Deposit Calculation Period), Mortgagor shall deposit additional funds, within ten days after demand, in order to bring the Deposits on hand up to the amount as so computed.

(iii)    If Mortgagor maintains any insurance required under this Mortgage under a blanket policy, then if Mortgagor submits to Mortgagee proof reasonably satisfactory to Mortgagee that Mortgagor has paid, under such blanket policy, the Insurance Premiums for the insurance provided by such blanket policy, and if Mortgagor has made all Deposits for any purpose that may be required or demanded by Mortgagee hereunder and is not overdue (without regard to cure periods) in the payment of any Debt Service or Additional Payments due under this Mortgage, then Mortgagee shall refund to Mortgagor the amount of Deposits made with respect to the Insurance Premiums that Mortgagor has so paid under such blanket policy.

(iv)    Mortgagor shall pay to Mortgagee a sum equal to $15 for each check paid from the Deposits held by Mortgagee hereunder and $50.00 for each bank or certified check paid from the Deposits held by Mortgagee hereunder. Mortgagee shall deduct such amount from the Deposits.

(b)    Mortgagee, at its option, and without notice to Mortgagor, may use the Deposits for one item of Impositions or Insurance Premiums for the payment of another, or for the payment of any amount of Debt Service that is not paid within any applicable grace period after the due date, or for the payment of any Additional Payments that are not paid on the date when due (without regard to grace periods), or for the payment of any Transfer Taxes or other amounts that Mortgagor may be required to pay to any party other than Mortgagee and that is not paid on the date when due taking into account any applicable grace periods. It is the intention of Mortgagee and Mortgagor that Mortgagee have the broadest possible power in applying Deposits, and the language of this Paragraph 4 should be interpreted as broadly as possible to permit any application of Deposits that Mortgagee may seek to make. Mortgagor grants to Mortgagee a security interest in Deposits as additional security for the obligations secured by this Mortgage, provided that such security interest shall not prevent the application of Deposits by Mortgagee in accordance with this Paragraph 4.

(c)    Deposits shall bear no interest. Mortgagee shall be entitled to make payment from Deposits of any Imposition for a fiscal year of the taxing authority in one lump sum, even if such

8

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 06/03/2019

payment would thereby be made prior to the date when due. Mortgagee shall not be liable or accountable for any Deposits paid over to the appropriate taxing authority, insurance company or broker (or to an escrow agent or servicing agent for any such payee), as the case may be.

(d)    Upon an assignment of this Mortgage by any Mortgagee, such Mortgagee shall have the right to pay over the balance of Deposits in its possession to the assignee, and if Mortgagee does so pay over such balance, the assigning Mortgagee shall thereupon be completely released from all liability with respect to Deposits and Mortgagor shall look solely to the assignee or transferee in reference thereto. This provision shall apply to each and every transfer of Deposits to a new assignee.

5.        Insurance

(a)    Mortgagor shall, for the benefit of Mortgagee, keep the Improvements and Equipment insured under an all-risk policy, and such other hazards as Mortgagee in its reasonable discretion may require Mortgagor, by notice, to provide, and shall also provide such comprehensive general liability insurance, loss of rent insurance, boiler and machinery insurance, workers compensation insurance, disability insurance, flood insurance and other kinds of insurance, as Mortgagee in its reasonable discretion may require Mortgagor, by notice, to provide. All amounts and scope of coverage of all such policies, and the insurers with whom such policies are carried, shall be as Mortgagee may specify in its reasonable discretion, and the amounts and scope of coverage shall be increased by Mortgagor at such times and to such amounts and scope as Mortgagee may require in its reasonable discretion.

(b)    If there is a loss or claim of liability, Mortgagor shall give immediate notice thereof to Mortgagee. Mortgagor shall obtain the written consent of Mortgagee, which consent shall not be unreasonably withheld or delayed, to the adjustment with insurance carriers of all losses or liability of any kind. The selection of the insurance adjuster shall be made by Mortgagor subject to the approval of Mortgagee, which shall not be unreasonably withheld or delayed. Notwithstanding anything herein contained to the contrary, Mortgagee may, but shall not be required to, make proof of loss to the insurance carrier. Mortgagor hereby irrevocably appoints Mortgagee as Mortgagor's attorney-in-fact, coupled with an interest, to endorse any draft for any payment under any insurance policy that is made payable to Mortgagor or to Mortgagor and Mortgagee jointly.

(c)    The following are the requirements for the policies of insurance that Mortgagor is required to provide pursuant to Paragraph 5(a):

(i)    the aggregate deductible applicable to property insured thereunder shall not be in excess of $5,000, and there shall be no deductible applicable to any other type of loss or liability insured thereunder;

(ii)    all policies applicable to property shall provide for 100% replacement cost coverage without offset for depreciation;

(iii)    all property and rental value insurance shall be provided in an amount sufficient to prevent co-insurance;

9

(iv)     except for workers' compensation insurance, all policies shall name Mortgagor and Mortgagee as insured as their respective interests may appear;

(v)      except for workers' compensation and public liability insurance, all policies shall contain a standard New York form of non-contributory mortgagee clause and lender's loss payable endorsement in favor of Mortgagee;

(vi)     each policy of insurance shall include effective waivers by the insurer of all claims for insurance premiums against Mortgagee;

(vii)    each policy of insurance shall provide that any loss shall be payable to Mortgagee notwithstanding (A) any act, failure to act or negligence of or violation of any warranty, declaration or condition contained in any such policy by any named insured, (B) the occupation or use of the Mortgaged Property for purposes more hazardous than permitted by the terms of such policy, (C) any foreclosure or other action or proceeding, taken by Mortgagee or any other holder of a mortgage on the Mortgaged Property pursuant to any provision of the Mortgage or such other mortgage, or (D) any change in title to or ownership of the Mortgaged Property or any portion thereof;

(viii)   each policy of insurance shall provide an endorsement that 30 days advance written notice of any cancellation, expiration, non-renewal or material change affecting the interest of Mortgagee shall be sent to Mortgagee in the manner provided in this Mortgage for notices;

(ix)     no policy of insurance of any kind shall provide for installment payments more frequently than annually;

(x)      each insurance company issuing any such policy of insurance shall (A) be organized and existing under the laws of one of the states of the United States and shall be licensed to do business as an insurance company and authorized to issue the type of insurance policy it is issuing with respect to the Mortgaged Property, in the State of New York, (B) have a Best's rating of at least A-, IX and (C) be satisfactory to Mortgagee in its reasonable discretion;

(xi)     where any insurance is provided under a blanket policy, the policy shall contain an endorsement specifying the amount of the total coverage of the policy that is allocated to the Mortgaged Property and that will be payable notwithstanding the amount of any losses with respect to any other properties that may be covered under such blanket policy; and

(xii)    each policy of insurance shall be satisfactory in all other respects to Mortgagee in its reasonable discretion.

(d)      Mortgagor shall deliver to Mortgagee on the date of execution of this Mortgage Evidence of Insurance (Acord Form 27) for the insurance coverage to be provided by all policies of insurance called for pursuant to this Paragraph 5 other than general public liability insurance, and Certificate of Insurance (Acord Form 25s) for all general public liability insurance. All of the actual policies (or certified copies where coverage is provided by a blanket insurance policy) shall be delivered to Mortgagee within thirty days following the commencement of the term of this Mortgage. Mortgagor shall furnish to Mortgagee, no less than thirty days prior to the

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

expiration of any insurance policy, Evidence of Insurance (Acord Form 27) and Certificate of Insurance (Acord Form 25s), in form satisfactory to Mortgagee, extending the insurance or providing new insurance to replace the same, and shall deliver the new insurance policy (or certified copies where coverage is provided by a blanket insurance policy) to Mortgagee within thirty days after the expiration of the old policy. Mortgagor shall pay to Mortgagee, immediately upon demand, a service fee of $100 each time that Mortgagee receives a notice of cancellation and/or notice of nonrenewal of any insurance policy. Mortgagee, at its election, may deduct this charge from the Deposits.

6.        Damage or Destruction; Application of Insurance Proceeds

        (a)      If the Improvements or Equipment on the date of this Mortgage or thereafter erected or acquired shall be damaged or destroyed in whole or in part by any cause, Mortgagor shall give to Mortgagee immediate notice thereof, and Mortgagor, at its own cost and expense, whether or not insurance proceeds, if any, shall be sufficient or shall be made available for the purpose, shall promptly repair, replace and rebuild the same as nearly as possible to the character and quality of the Improvements and the Equipment therein existing immediately prior to such occurrence. Mortgagee shall in no event be called upon to repair, replace or rebuild any such Improvements or Equipment, or to pay any of the costs or expenses thereof. The work of repairing, replacing or rebuilding (which shall be deemed to include the preparation of plans where necessary) damaged or destroyed Improvements or Equipment shall be commenced as soon as reasonably possible but in any event within 90 days from the date of any such damage or destruction, and after commencement thereof shall be expeditiously proceeded with to completion; provided that if the work of repairing, replacing or rebuilding cannot, in the exercise of diligence, be feasibly commenced within 90 days, then Mortgagor's time to commence such work shall be extended for such period of time as is reasonable and appropriate and during which Mortgagor is proceeding diligently and expeditiously. If any damage or destruction results in a condition dangerous to persons or property, or is causing continued damage to the Premises or Equipment or any part thereof, the work of repairing, replacing or rebuilding shall be commenced promptly so as to remove such dangerous or damaging condition. The quality of the repairs, replacement or rebuilding shall be subject to Mortgagee's review and approval, and Mortgagor shall be deemed not to have completed the repairs, replacement or rebuilding as required by this paragraph if Mortgagee shall have reasonably disapproved the quality thereof.

        (b)      (i)      If insurance proceeds received under any insurance policy required to be maintained by Mortgagor are less than 10% of the outstanding principal balance of this Mortgage on the date the proceeds are received by Mortgagee, the proceeds shall be made available by Mortgagee for application to the cost of repair, replacement or rebuilding, in accordance with the provisions of Paragraph 6(c) below. If the amount of the insurance proceeds are 10% of the outstanding principal balance of this Mortgage on the date the proceeds are received by Mortgagee or greater but less than 75% of the outstanding principal balance of the Note on the date the proceeds are received by Mortgagee, then notwithstanding the provisions of Subdivision 4 of Section 254 of the New York Real Property Law, Mortgagee may, at its option and in its absolute discretion, apply all amounts recovered under any insurance policy required to be maintained by Mortgagor in any one or more of the following ways: (A) in reduction of the outstanding principal balance of the Note, regardless of whether part or all of the balance shall then be matured or not; (B) in payment of any other monetary obligation of Mortgagor under this

11

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 3

Mortgage or the Note, or to fulfill any of the covenants of Mortgagor provided herein; or (C) to be released to Mortgagor for application to the cost of repair, replacement or rebuilding in accordance with the provisions of Paragraph 6(c) below. However, if Mortgagor has not commenced the work of repairing, replacing or rebuilding within the time required under Paragraph 6(a), or if such work is not prosecuted diligently and expeditiously to completion, as Mortgagee shall determine in its sole discretion, then notwithstanding that Mortgagee otherwise may be required or have elected under the provisions of this Paragraph 6(b)(i) to make insurance proceeds available to Mortgagor for application to the cost of repair, replacement or rebuilding, Mortgagee at its option may elect to apply insurance proceeds instead in reduction of the outstanding principal balance of the Note and in payment of any other monetary obligation of Mortgagor under this Mortgage or the Note and may elect to declare the entire remaining principal balance of the Note and all other amounts due under the Note and Mortgage to be immediately due and payable.

(ii)    If the amount of such insurance proceeds is equal to or greater than 75% of the outstanding principal balance of the Note on the date such proceeds are received by Mortgagee, then notwithstanding the provisions of Subdivision 4 of Section 254 of the New York Real Property Law, such proceeds shall be applied in reduction of the outstanding principal balance of the Note and in payment of any other monetary obligation of Mortgagor under this Mortgage or the Note, and the entire remaining principal balance of the Note and all other amounts due under the Note and Mortgage shall be immediately due and payable without notice.

(c)    If Mortgagee elects or is required pursuant to Paragraph 6(b) to make available insurance proceeds received and held by Mortgagee under insurance policies for the purpose of making payment on account of the cost of repairs, replacement or rebuilding that Mortgagor is required to perform pursuant to Paragraph 6(a), such insurance proceeds shall be made available only in accordance with the following provisions:

(i)    Net insurance proceeds (which shall mean net of all "Mortgagee's expenses" (as hereinafter defined)), shall be made available for payment to the parties whom Mortgagor may employ to perform the necessary repairs, replacement or rebuilding, as such repairs, replacement or rebuilding shall progress, or to Mortgagor as Mortgagor shall pay for such repairs, replacement or rebuilding, upon the presentation to Mortgagee of a certificate of the architect in charge of such work (or if an architect is not required, the contractor in charge of such work) certifying to the satisfactory completion of the work. The certificate shall be accompanied (as a condition to payment) by appropriate releases and lien waivers from the contractor, and by invoices for the work from the contractor (if payment is to be made directly to the contractor), or a paid receipted invoice for the work (if payment is to be made to the Mortgagor), together with copies of paid receipted invoices not previously provided to Mortgagee with respect to any prior work for which Mortgagee shall have advanced payment from net insurance proceeds.

(ii)    The disbursement of net insurance proceeds received by Mortgagee shall be made according to a schedule of payments to be prepared by Mortgagor and approved by Mortgagee, subject to the provisions of clause (vi) below if insurance proceeds held by Mortgagee at any time are insufficient. However, Mortgagee may withhold from each amount to be paid by Mortgagee 10% thereof until the work of repairing, replacing or rebuilding shall have

4459928 1v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 06/03/2019

been completed and reasonable proof shall have been furnished to Mortgagee that no lien or liability has attached or may attach to the Mortgaged Property or any part thereof or to Mortgagee in connection with such repairs, replacement or rebuilding.

(iii)    Mortgagor shall furnish to Mortgagee a list of the name, address and telephone number of each contractor and subcontractor who may perform any work or furnish any materials or services in connection with the repairs, replacement or rebuilding, and shall update the list promptly after any change in the information contained therein.

(iv)    As used herein, "Mortgagee's expenses" shall mean all reasonable costs, expenses (including fees and other charges provided for under this Mortgage) and reasonable attorneys' fees and disbursements incurred by Mortgagee in the adjustment, collection or disbursement of the insurance proceeds, or in any way arising out of the repairs, replacement or rebuilding. Mortgagee may, at any time and from time to time in its reasonable discretion, have an inspection made of the Premises by its representative as such repair, replacement and rebuilding progresses, and Mortgagor shall pay to Mortgagee a fee of $300.00 for each such inspection, such fee to be deemed part of "Mortgagee's expenses."

(v)    If in the course of such work any mechanic's or other lien or order for the payment of money shall be filed against the Mortgaged Property or any part thereof or against Mortgagee or Mortgagor, or if there shall be any overdue payment (without regard to cure periods) of any Debt Service, Additional Payment or Deposits due under this Mortgage, Mortgagee shall not be obligated to make any payment of such insurance proceeds until and unless such lien or order shall have been fully bonded, satisfied, canceled or discharged of record, and until such overdue payment of Debt Service, Additional Payment or Deposits shall have been paid.

(vi)    If the amount of insurance proceeds received and held by Mortgagee shall be insufficient at any time (whether at the commencement of the work or at any time during the work), as Mortgagee shall determine in its sole discretion, for the proper and effective repair, replacement or rebuilding of damaged or destroyed Improvements or Equipment in accordance with Paragraph 6(a), then Mortgagor shall pay all additional sums required for such repair, replacement or rebuilding, and no disbursements of net insurance proceeds held by Mortgagee shall be made until the remaining total amount of undisbursed net insurance proceeds held by Mortgagee is at least equal to the estimated remaining unpaid cost of such repair, replacement or rebuilding. If the amount of the net insurance proceeds held by Mortgagee shall be in excess of the portion of the cost of such repairs, replacement and rebuilding required to be paid from the proceeds as provided in this Paragraph 6 (c), the excess shall be paid to and retained by Mortgagee in reduction of the outstanding principal of this Mortgage.

(vii)    An architect shall be required for all repairs, replacement or rebuilding, except with respect to damage for which the estimated cost of repair is less than $50,000 and that does not involve any structural work, and the architect shall certify to the proper completion thereof in compliance with applicable codes and regulations. The selection of the architect shall be subject to the prior written approval of Mortgagee, not to be unreasonably withheld or delayed.

13

4459928lv.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM          INDEX NO. 512224/2019
NYSCEF DOC. NO. 3                                       RECEIVED NYSCEF: 06/03/2019

7.        Condemnation

(a)       If any portion of the Premises shall be taken or condemned by any competent authority by the exercise of any right of eminent domain or in condemnation proceedings, or if the grade of any street upon which the Premises abut shall be changed by governmental action, the entire award or the aggregate of any separate awards shall be paid to Mortgagee to the extent of an amount equal to all outstanding principal under this Mortgage, all accrued and unpaid interest and all Additional Payments that may be due under this Mortgage. Mortgagor shall have no right, title, interest, claim or demand whatsoever of, in or to any portion of the award that is due to Mortgagee as provided in the preceding sentence. Mortgagor hereby assigns to Mortgagee, as collateral security and subject to subparagraphs (c) and (d) below, all of its right, title and interest in and to any such award or awards to the extent of any amounts due to Mortgagee.

(b)       In the case of a taking or condemnation of the whole or materially all of the Premises, Mortgagor shall continue to pay Debt Service, Additional Payments and Deposits hereunder until title shall vest and thereafter until the award is paid in connection with the taking or condemnation. In the case of a taking or condemnation of only a portion of the Premises, or if there is a change of grade of a street, there shall be no reduction or change of Additional Payments, Deposits, or the rate of Debt Service.

(c)       (i)       If the proceeds paid to Mortgagee pursuant to Paragraph 7(a) are less than $20,000, such proceeds shall be made available by Mortgagee for application to the cost of restoration and repair in accordance with the provisions of Paragraph 7(d) below. If the amount of such proceeds is $20,000 or greater but less than 75% of the outstanding principal balance of the Note on the date such proceeds are received by Mortgagee, then notwithstanding any provision of applicable law, Mortgagee may, at its option and in its absolute discretion, apply proceeds paid to it pursuant to Paragraph 7(a) in any one or more of the following ways: (A) in reduction of the outstanding principal balance of the Note, regardless of whether part or all of the balance shall then be matured or not; (B) in payment of any other monetary obligation of Mortgagor under this Mortgage or the Note, or to fulfill any of the covenants of Mortgagor provided herein; or (C) to be released to Mortgagor for application to the cost of restoration or repair, in accordance with the provisions of Paragraph 7(d) below. However, if Mortgagor has not commenced the work of restoration and repair within the time required under Paragraph 6(a), or if the work is not prosecuted diligently and expeditiously to completion, as Mortgagee shall determine in its sole discretion, then notwithstanding that Mortgagee otherwise may be required or have elected under the provisions of this Paragraph 7(c)(i) to make proceeds available to Mortgagor for application to the cost of restoration and repair, Mortgagee at its option may elect to apply the proceeds instead in reduction of the outstanding principal balance of the Note and in payment of any other monetary obligation of Mortgagor under this Mortgage or the Note, and may elect to declare the entire remaining principal balance of the Note and all other amounts due under the Note and Mortgage to be immediately due and payable.

(ii)      If the amount of the proceeds is equal to or greater than 75% of the outstanding principal balance of the Note on the date the proceeds are received by Mortgagee, then notwithstanding any provision of applicable law, the proceeds shall be applied in reduction of the outstanding principal balance of the Note and in payment of any other monetary obligation

14

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

of Mortgagor under this Mortgage or the Note, and the entire remaining principal balance of the Note and all other amounts due under the Note and Mortgage shall be immediately due and payable without notice.

(d)    If a partial taking or condemnation results in damage to any of the Improvements, Mortgagor shall restore and repair the damage to the Improvements. If the portion of the award payable to Mortgagor, if any (after Mortgagee has received the portion to which it is entitled pursuant to subparagraph (a)), is insufficient to restore and repair the damage, then the portion that is paid to Mortgagee and that Mortgagee elects or is required pursuant to Paragraph 7 (c) to make available for such restoration or repair, shall be made available in the same manner, and under the same terms and conditions, as insurance proceeds may be made available for repairs, replacement or rebuilding pursuant to the provisions of Paragraph 6(c). All restoration and repair work shall be done within the time periods, and shall be of the quality subject to Mortgagee's approval, provided for repair, replacement or rebuilding pursuant to Paragraph 6(a).

(e)    In case of any governmental action not resulting in the taking or condemnation of any portion of the Premises but creating a right to compensation therefor, the compensation shall be payable to Mortgagee to the extent of an amount equal to all outstanding principal under this Mortgage, all accrued and unpaid interest, and all Additional Payments that may be due under this Mortgage, such amounts to be applied by Mortgagee in payment of such principal, interest and Additional Payments.

(f)    For purposes of this Paragraph 7, a taking of "materially all" of the Premises, as distinguished from a taking of a "portion" of the Premises, shall mean a taking of such scope that the portion of the Premises not so taken is insufficient to permit Improvements on the Premises not so taken to be restored and repaired so as to constitute a complete tenantable, rentable building.

8.    <u>Maintenance and Repair</u>

(a)    Mortgagor, at its sole cost and expense, will take good care of the Premises, will keep the same in good order and condition, and perform all necessary maintenance and make all necessary repairs thereto, interior and exterior, structural and non-structural, ordinary and extraordinary, and unforeseen and foreseen (including any repairs required as a result of any casualty loss). When used in this Paragraph 8, the terms "repairs" and "maintenance" shall include all necessary replacements, renewals, alterations, additions and betterments, and all repairs and maintenance shall be completed with first class materials and workmanship and be of a quality appropriate to the Premises and similar to that of other comparable buildings in the immediate vicinity, and in all events shall be at least equal in quality and class to the original work. Mortgagor will do or cause others to do all necessary shoring of foundations and walls of the Improvements and every other act or thing for the safety and preservation thereof that may be necessary by reason of any excavation or other building operations upon any adjoining property or street, alley or passageway. Mortgagor shall also make all necessary repairs and restorations, and maintain in good and clean condition, the sidewalks, curbs and vaults on or adjoining the Premises.

44599281v.1

(b)    Mortgagor shall promptly perform any maintenance or make any repair reasonably necessary to maintain the Premises in accordance with the standards set forth in subparagraph (a) above that Mortgagee may request. All maintenance and repair work to be performed by Mortgagor hereunder shall be commenced by Mortgagor promptly after notice from Mortgagee, and shall be pursued diligently to completion, but in all cases shall be completed within 3 months after such notice or such longer period to which Mortgagee may consent, such consent not to be unreasonably withheld if the extension is reasonably necessary to complete the maintenance and repair work.

(c)    An architect shall be required for all maintenance and repair work that costs $50,000 or more or that involves structural work, and such architect shall certify to the proper completion thereof in compliance with applicable codes and regulations. The selection of the architect shall be subject to the prior written approval of Mortgagee, not to be unreasonably withheld or delayed.

9.    Compliance with Laws, Ordinances; Environmental Matters

(a)    Mortgagor, at its sole cost and expense, shall promptly comply with all present and future laws, ordinances, orders, rules, regulations and requirements of all governments and federal, state and municipal agencies, all covenants, restrictions, easements and other matters affecting title, and all present or future orders, rules and regulations of the National Board of Fire Underwriters or any other body exercising similar functions, foreseen or unforeseen, ordinary as well as extraordinary, that now or hereafter may be applicable to the Mortgaged Property or any part thereof and the sidewalks, curbs and vaults, if any, on or adjoining the Premises, or that may be applicable to the use or manner of use of the Mortgaged Property or any part thereof, or to the owners, tenants or occupants thereof, whether or not such law, ordinance, rule, regulation or requirement shall necessitate structural changes or improvements or interfere with the use and enjoyment of the Mortgaged Property. Mortgagor shall at all times have a proper, current certificate of operation for the heating system, and any garbage disposal, compactor or incinerator on the Premises, and shall have a proper current certificate of occupancy for the Improvements (if required by law). Mortgagor shall likewise observe and comply with the requirements of all policies of insurance at any time in force with respect to the Mortgaged Property. Mortgagor shall obtain any and all permits that may be required with respect to any construction, repair or other work on the Premises, prior to the commencement of such work, and copies of all permits shall be submitted to Mortgagee promptly upon receipt by Mortgagor.

(b)    Mortgagee may at its option, and at Mortgagor's expense, not more than once each year, procure through a service agency tax, water, sewer rental charges, assessment, and/or state, county or municipal departmental searches (including fire, air resources, housing and building maintenance, highway and any and all other departments having jurisdiction) on the Premises. Mortgagor hereby grants to Mortgagee authority to act in its name, and for this purpose appoints Mortgagee, or any person so authorized by Mortgagee, as its attorney in fact (which power of attorney is coupled with an interest and is irrevocable and shall, to the extent permitted by law, survive any death, dissolution or legal incapacity of Mortgagor), for the purpose of accessing records of any federal, state or municipal government or agency relating to the Mortgaged Property. Mortgagor further agrees that, within ten days after request by

16

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 06/03/2019

Mortgagee, Mortgagor will execute any written authorization that Mortgagee may reasonably request for the purpose of permitting Mortgagee to access any such records.

(c)    No Improvement shall be altered, removed or demolished without the prior written consent of the Mortgagee, which consent Mortgagee may withhold in its absolute discretion, or may give upon such conditions as Mortgagee may impose in its absolute discretion. Notwithstanding the foregoing, Mortgagor may make non-structural alterations to the Premises that would not tend to decrease the value of the Mortgaged Property. All alterations permitted under this subparagraph (c) or under any other provision of this Mortgage shall be performed in a first class workmanlike manner using first class materials, and otherwise of a quality appropriate to the Premises and other comparable buildings in the immediate vicinity, and in all events, at least equal in quality and class to the original work.

(d)    All lease securities (if any) of tenants of the Premises shall be treated as trust funds but may be commingled with any other funds of the Mortgagor if, and only if, permitted by the terms of the Leases, and all such lease securities, and interest, if any, earned thereon, shall at all times be maintained, deposited and disposed of strictly in accordance with applicable legal requirements. Mortgagor shall on demand, but not more than twice in any calendar year, furnish to Mortgagee satisfactory evidence of compliance with this provision, together with a verified statement of all lease securities deposited by the tenants and copies of all leases in its possession or control (provided that if Mortgagor is a cooperative corporation, it shall obtain and furnish to Mortgagee copies of all proprietary leases, even if not in its possession at the time requested).

(e)    Without limiting the generality of any of the foregoing provisions of this Paragraph 9, Mortgagor, at its sole cost and expense, shall prepare and file by the applicable due date all reports or forms that now or at any time in the future may be required to be prepared and/or filed with any federal, state or municipal government or agency, including without limitation the annual filings with the New York City Division of Housing and Community Renewal ("DHCR") for the Mortgaged Property, and it shall be an event of default under this Mortgage if Mortgagor fails to prepare and file with the appropriate governmental agencies any such reports or forms on or before the date due. Mortgagor, at its sole cost and expense, shall furnish to Mortgagee a copy of the annual DHCR filings promptly upon making such filing, as well as any other reports or forms that Mortgagee may request, such copies to be date stamped or the receipt of which otherwise acknowledged by the agency with which such reports or forms are filed.

(f)    (i)    As used in this subparagraph (f), "Hazardous Substances" shall mean and include those elements or compounds that are contained in the list of hazardous substances adopted from time to time by the United States Environmental Protection Agency ("EPA") or by the New York State Department of Environmental Conservation ("DEC"), or that are on any list of toxic or polluting materials designated by Congress, the EPA or DEC, or that are defined as hazardous, toxic, pollutant, infectious or radioactive by any other federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to, or imposing liability or standards of conduct concerning, any hazardous, toxic, polluting, infectious, radioactive, or other dangerous waste, substance or material, as now or at any time hereafter in effect, as well as medical waste, mold, mildew, fungi, bacteria, viruses and other microbial matter (the "Hazardous Substance Laws").

17

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 06/03/2019

(ii)    Mortgagor covenants and agrees that (A) Mortgagor shall comply with, and insure compliance by all other parties with, all applicable Hazardous Substance Laws relating to or affecting the Mortgaged Property, and Mortgagor shall keep the Mortgaged Property free and clear of any liens imposed pursuant to any applicable Hazardous Substance Laws, all at Mortgagor's sole cost and expense; and (B) Mortgagor shall at all times obtain and/or maintain all licenses, permits and/or other governmental or regulatory authorizations and approvals necessary to comply with applicable Hazardous Substance Laws relating to or affecting the Mortgaged Property or Mortgagor's use of the Mortgaged Property (the "Permits"), and Mortgagor shall at all times be and remain in full compliance with the terms and provisions of the Permits.

(iii)    Mortgagor hereby agrees to indemnify Mortgagee and hold Mortgagee harmless from and against any and all losses, liabilities (including strict liability), damages, injuries, expenses (including reasonable attorneys' fees, disbursements and court costs suffered or paid by Mortgagee in any action or proceeding between Mortgagee and Mortgagor and any third party or otherwise), costs of any settlement or judgment and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against, Mortgagee by any person or entity or governmental agency for, with respect to, or as a result of, the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission, discharging or release from, the Mortgaged Property of any Hazardous Substance including, without limitation, any losses, liabilities (including strict liability), damages, injuries, expenses (including attorneys' fees, disbursements and court costs suffered or paid by Mortgagee in any action or proceeding between Mortgagee and Mortgagor and any third party or otherwise), costs of any settlement or judgment or claims, asserted or arising under the Comprehensive Environmental Response, Compensation and Liability Act, any so called federal, state or local "Superfund" or "Superlien" laws, and any statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to or imposing liability, including strict liability, or standards of conduct concerning any Hazardous Substance, whether or not caused by or within the control of Mortgagor.

(iv)    If Mortgagor receives any notice of (A) the happening of any event involving the use, spill, release, leak, seepage, discharge or cleanup of any Hazardous Substance on the Mortgaged Property or in connection with Mortgagor's operations thereon or (B) any complaint, order, citation or notice with regard to air emissions, water discharges, or any other environmental, health or safety matter affecting Mortgagor (an "Environmental Complaint") from any person or entity (including, without limitation, the EPA or DEC), then Mortgagor shall immediately notify Mortgagee in writing of said notice.

(v)    Mortgagee shall have the right, but not the obligation, at its sole discretion and without limitation of Mortgagee's rights under this Mortgage, to enter onto the Mortgaged Property or to take such other actions as it deems necessary or advisable, including the appointment of a receiver of the Mortgaged Property, to cleanup, remove, resolve or minimize the impact of, or otherwise deal with any such Hazardous Substance or Environmental Complaint following receipt of any notice from any person or entity (including, without limitation, the EPA or DEC) asserting the existence of any Hazardous Substance or an Environmental Complaint pertaining to the Mortgaged Property or any part thereof that, if true, could result in an order, suit, lien or other action against Mortgagor and/or that, in the sole opinion of Mortgagee, could impair Mortgagee's security under this Mortgage. All costs and

18

expenses incurred by Mortgagee in the exercise of any such rights shall be secured by this Mortgage and shall be payable by Mortgagor upon demand.

(vi)    Mortgagee shall have the right to require Mortgagor to perform at Mortgagor's expense (but not more frequently than once in any 18 month period), an environmental audit and/or an environmental risk assessment of the Premises. However, if an event of default shall have occurred and be continuing under this Mortgage, then Mortgagee shall have the right to require Mortgagor to perform at Mortgagor's expense such environmental audits and/or environmental risk assessments, without limitation on frequency, as Mortgagee may request in its absolute discretion. Promptly upon receipt of the report of any such audit or assessment, Mortgagor shall perform such remediation and make such changes in its hazardous waste management practice at the Premises as may be recommended in such report. The audit and/or risk assessment shall be performed by an environmental consultant satisfactory to Mortgagee in its absolute discretion. If Mortgagor fails to perform any such environmental audit or risk assessment within thirty (30) days of Mortgagee's written request, Mortgagee shall have the right, but not the obligation, to retain an environmental consultant to perform any environmental audit or risk assessment. All costs and expenses incurred by Mortgagee in the exercise of such rights, together with interest thereon at the Default Rate, shall be secured by this Mortgage and shall be payable to Mortgagee upon demand.

(vii)    Any breach of any warranty or representation or any breach of any covenant contained in this subparagraph 9(f) shall be an event of default under this Mortgage, and shall entitle Mortgagee, without any further notice or grace period, to exercise any and all remedies provided for default in this Mortgage, or otherwise permitted by law.

(viii)    The provisions of this subparagraph 9(f) shall survive any foreclosure or the enforcement hereof, and the provisions of clause (iii) of this subparagraph 9(f) shall survive the payment of all amounts due under this Mortgage.

(g)    Mortgagor represents and warrants to Mortgagee as follows: (i) no portion of the funds or proceeds that Mortgagor used to acquire the Mortgaged Property was obtained, directly or indirectly, from an illegal transaction or activity; (ii) Mortgagor has not used and shall not use or permit the Mortgaged Property or any portion thereof to be used for or in furtherance of any illegal purpose or activity, including, without limitation, any purpose or activity that would subject the Mortgaged Property (or any portion thereof) to the risk of seizure by or forfeiture to any governmental entity pursuant to any federal, state or local law; (iii) to Mortgagor's best knowledge, the funds or proceeds used by Mortgagor's immediate and remote predecessors in title to acquire the Mortgaged Property were not obtained, directly or indirectly, in whole or in part, from an illegal transaction or activity, and the Mortgaged Property has never been used by any person in connection with or in furtherance of any illegal purpose, activity or crime; and (iv) neither Mortgagor nor any disclosed or undisclosed principal of Mortgagor has been investigated with respect to, indicted for or otherwise formally charged with, or convicted of, any gambling offense, any violation of the federal narcotics laws, Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. § 1961 et seq., or any crime that may subject Mortgagor's property (including, without limitation, the Mortgaged Property) to the risk of seizure by or forfeiture to any governmental entity pursuant to any federal, state or local law. Mortgagor shall deliver to Mortgagee immediately upon receipt, any notice, indictment, order,

19

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 3

judgment or other communication relating to any pending or threatened action or proceeding in which Mortgagor's property or any part thereof (including, without limitation, the Mortgaged Property) may be subject to the risk forfeiture to any federal, state or local government entity. Each of the following shall be an event of default, entitling Mortgagee to exercise all of its remedies for default without notice or cure period: (x) if any representation or warranty set forth above shall be untrue when made or shall subsequently become untrue; (y) the institution or threatened institution by governmental entity (including the receipt of any notice or other communication by Mortgagor or Mortgagee from a governmental entity) of any action or proceeding seeking the forfeiture of the Mortgaged Property or any part thereof; and (z) the indictment of or the filing of formal charges by a governmental entity against, or the conviction of, Mortgagor or any disclosed or undisclosed principal of Mortgagor, or the admission by Mortgagor or any disclosed or undisclosed principal of Mortgagor that it has engaged in any crime or activity prohibited by any law that may subject the property of Mortgagor or such principal to the risk of forfeiture or seizure, including, without limitation, gambling, narcotics laws and RICO.

10.      Mortgagee's Right to Perform

(a)      If Mortgagor shall at any time fail to pay any Imposition or Transfer Taxes in accordance with the provisions hereof, or to take out, pay for, maintain or deliver as and when required under this Mortgage any of the insurance policies provided for herein, or shall fail to make any other payment or perform any other act on its part to be made or performed as and when required under this Mortgage, then Mortgagee, upon five days notice to Mortgagor (except in the case of an emergency creating a risk of immediate harm to persons or property, in which case without notice) and without waiving or releasing Mortgagor from any obligation of Mortgagor contained in this Mortgage, may (but shall be under no obligation to): (i) pay any Imposition or Transfer Taxes payable by Mortgagor pursuant to the provisions hereof; or (ii) take out, pay for and maintain any of the insurance policies provided for herein; or (iii) make any other payment or perform any other act on Mortgagor's part to be made or performed. Notwithstanding the foregoing, if Mortgagee receives any notice of cancellation of any insurance, or receives notice of amendment or modification of any insurance such that the insurance will not meet the requirements set forth in this Mortgage, Mortgagee may immediately without notice to Mortgagor take out, pay for and maintain policies of insurance that do meet the requirements set forth in this Mortgage. Mortgagee may enter upon the Premises for any such purpose and take all such action thereon as may be necessary therefor.

(b)      All sums so paid by Mortgagee and all costs and expenses (including attorney's fees and disbursements) incurred by Mortgagee in connection with the performance of any such act, together with interest thereon at the Default Rate from the respective dates of Mortgagee's making of each such payment or incurring each such cost and expense, shall constitute an Additional Payment immediately due and payable by Mortgagor to Mortgagee.

(c)      Mortgagee shall not be limited in the proof of any damages that Mortgagee may claim against Mortgagor arising out of or by reason of Mortgagor's failure to provide and keep in force insurance as aforesaid, to the amount of the Insurance Premiums not paid or incurred by Mortgagor and that would have been payable for such insurance, but Mortgagee shall also be entitled to recover as damages for such breach the uninsured amount of any loss or liability

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 3

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

(including all costs and expenses and attorneys fees and disbursements), to the extent of any deficiency in the insurance required by the provisions of this Mortgage, suffered or incurred by reason of damage to, or destruction of, or liability arising in connection with, the Mortgaged Property, occurring during any period when Mortgagor shall have failed or neglected to provide insurance as aforesaid.

(d)    Mortgagee shall have no liability, and Mortgagor waives any claim that it might be entitled to assert against Mortgagee, its employees, contractors and agents, with respect to any matter or thing resulting from any act that Mortgagee is entitled to take under this Paragraph 10, or resulting from any failure by Mortgagee to act (whether or not Mortgagee had knowledge of the condition or occurrence that required action to be taken).

11.        Liens

If any mechanic's and/or materialmen's lien is filed against the Premises on or after the date of this Mortgage, or any other lien or encumbrance is filed against the Mortgaged Property or any part thereof for any reason after the date of this Mortgage, Mortgagor shall cause such lien or encumbrance to be discharged of record by payment, bonding or otherwise, within thirty (30) days after Mortgagor is given notice thereof. Failure to discharge of record any such lien or encumbrance within such thirty (30) day period shall be an event of default under this Mortgage, and shall entitle the Mortgagee, at Mortgagee's option and without further notice or cure period, to exercise any and all of the remedies of Mortgagee for default provided under this Mortgage or by law or in equity. If Mortgagor fails to discharge of record such lien or encumbrance within such thirty (30) day period, Mortgagee may in addition, but shall not be obligated to, advance funds, bond or otherwise provide security necessary to discharge of record such lien or encumbrance, and all sums so advanced, together with interest thereon from the date of advance to the date of payment thereof at the Default Rate, shall be payable by Mortgagor to Mortgagee on demand as an Additional Payment. Any expenses incurred by Mortgagee in connection with the examination of title to the Mortgaged Property in order to ascertain the existence of any such lien or encumbrance and/or the discharge of record thereof, shall constitute advances made by Mortgagee under the provisions of this paragraph, which shall be payable by Mortgagor to Mortgagee on demand, together with interest as aforesaid, as an Additional Payment.

12.        Late Charges and Default Interest

(a)    If the entire outstanding principal balance hereof, together with all accrued interest and any unpaid Additional Payments, is not paid in full and received by Mortgagee at its office at or before 3:00 P.M. on the maturity date (whether such date is the scheduled maturity date hereof or any earlier date by reason of acceleration or notice of prepayment), the rate of interest due on the outstanding principal balance hereof shall be increased to the Default Rate from and after the date on which payment of the outstanding principal balance was due. Mortgagor and Mortgagee intend that in the event of a foreclosure proceeding or a bankruptcy, insolvency or similar proceeding following acceleration, notice of prepayment or scheduled maturity, the rate of interest that shall accrue and be payable (and be secured by this Mortgage) during the pendency of such proceeding and until this Mortgage is paid in full, shall be the Default Rate.

21

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

(b)     If any payment of Debt Service, Deposits or Additional Payments due under this Mortgage is not paid and received by Mortgagee at its office at or before 3:00 P.M. on the date on which it is due (with no grace period), a late charge of 4¢ for each $1 so overdue shall become immediately due and payable to Mortgagee as liquidated damages for failure to make prompt payment, and such charge shall be due as an Additional Payment.

(c)     If any check for any payment due under this Mortgage fails due collection, Mortgagor shall immediately pay to Mortgagee a charge of $250 to compensate Mortgagee for its administrative cost occasioned by such failure of collection.

(d)     If any document required to be delivered by Mortgagor to Mortgagee under any provision of this Mortgage is delivered more than 30 days later than the date when due, Mortgagor shall immediately pay to Mortgagee a late charge of $250 with respect to each and every document that is late.

(e)     Any sums, including any prepayment or Yield Maintenance Premium, late charges or liquidated damages, that may become due and payable pursuant to the terms of the Note and/or this Mortgage and that are in the nature of interest (i) shall for the purpose of determining the amount of mortgage recording tax due and payable on this Mortgage, be considered as additional interest, whether or not otherwise expressly so denominated, (ii) shall be secured by the lien of this Mortgage to the fullest extent possible without causing this Mortgage to be covered by Section 256 of the Tax Law of the State of New York, and (iii) shall not be deemed principal.

(f)     This Paragraph 12 shall not be deemed to limit Mortgagee's remedy of foreclosure for Mortgagor's default or any other remedy of Mortgagee hereunder (other than actual damages for which a payment of liquidated damages in lieu thereof is provided in this Paragraph 12), and no other remedy that Mortgagee may have shall limit Mortgagor's obligation to pay the charges provided in this Paragraph 12.

13.     <u>Right of Access and Entry; Inspections</u>

(a)     Mortgagor shall permit Mortgagee and its authorized representatives to enter the Premises at all reasonable times for the purpose of (i) inspecting the same, (ii) showing the same to prospective purchasers, tenants or mortgagees, and (iii) making any necessary repairs thereto and performing any work therein that may be necessary by reason of Mortgagor's failure to make any such repairs or perform any work that may be required under this Mortgage. Nothing herein shall imply any duty upon the part of Mortgagee to do any such work, and performance thereof by Mortgagee shall not constitute a waiver of Mortgagor's default in failing to perform the same. All inspections of the Premises by Mortgagee or its representatives shall be solely for the benefit of Mortgagee and shall create no obligation or responsibility whatsoever upon Mortgagee or its representatives to Mortgagor or any other party.

14.     <u>Indemnity; Expenses</u>

(a)     Mortgagor shall indemnify and save harmless Mortgagee against and from all liabilities, obligations, damages, penalties, claims, costs, charges and expenses (including, without limitation, architects, accountants, engineers and other professional fees and

44599281v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

disbursements and attorneys' fees, disbursements and court costs suffered or paid by Mortgagee in any action or proceeding between Mortgagee and Mortgagor or Mortgagor and any third party or otherwise) that may be imposed upon or incurred by or asserted against Mortgagee by reason of any matter, occurrence or thing relating to Mortgagor or the Mortgaged Property. If any action or proceeding is brought against Mortgagee by reason thereof, Mortgagor upon written notice from Mortgagee shall, at Mortgagor's reasonable expense, resist or defend such action or proceeding by counsel selected by Mortgagee, and Mortgagor's failure to so defend shall be an event of default under this Mortgage. Mortgagee nonetheless shall be entitled to retain its own counsel and conduct its own defense, and all expenses thereof, including attorneys' fees and disbursements, shall be paid by Mortgagor as an Additional Payment.

(b)    If Mortgagee employs an attorney or collection agent or otherwise incurs any expense (i) to collect all or any Debt Service, Additional Payments or Deposits due to Mortgagee hereunder, or (ii) to enforce any other provision hereof, or (iii) to foreclose this Mortgage or enforce other remedies to which Mortgagee may be entitled, or (iv) to represent Mortgagee in any action or proceeding (including, but not limited to, any bankruptcy or insolvency proceeding or any foreclosure action initiated by any other person or entity) involving Mortgagor or the Mortgaged Property, in which action or proceeding Mortgagee is named as a party, or issues relating to the priority, enforceability or collectibility of, or amounts secured by, this Mortgage are raised, or any seizure or claim of forfeiture is asserted by any federal, state or local government entity, or (v) in connection with any proposed Transfer or any other matter for which Mortgagor may request Mortgagee's consent or other action by Mortgagee; then Mortgagor shall reimburse Mortgagee, in addition to all other costs and fees allowed according to law, immediately for all costs, attorneys' fees and disbursements and collection agent charges incurred by Mortgagee, and the same shall be paid as an Additional Payment, shall be secured by this Mortgage and shall be recoverable by Mortgagee in any foreclosure, bankruptcy or insolvency proceeding.

15.    <u>Mortgagee Not Responsible for Damage or Injury</u>

Mortgagor, subject to the rights of tenants, is, and shall be in exclusive control and possession of the Mortgaged Property as provided herein, and Mortgagee shall not in any event or for any reason whatsoever be liable for any injury or damage to any property or to any person happening on or about the Premises, nor for any injury or damage to any property of Mortgagor, or of any other Person, contained therein. The provisions hereof permitting Mortgagee to enter and inspect the Premises are made for the purpose of enabling Mortgagee to be informed as to whether Mortgagor is complying with the agreements, terms, covenants and conditions hereof, and to do such acts as Mortgagor shall fail to do, and are not intended to create any obligation or impose any responsibility on Mortgagee with respect to the Premises or any condition existing thereon or therein.

16.    <u>Defaults</u>

(a)    Each of the following shall be an event of default hereunder: (i) failure to pay any Debt Service, Additional Payment, Deposit or Transfer Taxes when due in connection with this Mortgage within five (5) days of the date such payments are due; or (ii) failure to pay any Imposition or Insurance Premiums when required to be paid by the terms of this Mortgage, or if

4459928lv.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

a notice to redeem relating to the Premises has been served in a proceeding under Article 11 of the Real Property Tax Law; or (iii) failure to exhibit to Mortgagee, within ten days after demand, receipts showing payment of all Impositions, Insurance Premiums or Transfer Taxes (except where payment of the specific item of Impositions or Insurance Premiums has been made by Mortgagee on Mortgagor's behalf from Deposits); or (iv) actual structural alteration, demolition or removal of any Improvement, or non-structural alteration of any Improvement for which Mortgagee's consent is required under Paragraph 9(c), without the prior written consent of Mortgagee; or (v) failure to comply with (and where applicable, obtain a discharge of record of) any requirement or order or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the Premises within sixty days from notice thereof (or, for violations existing on the date of this Mortgage, within six months after the date of this Mortgage), to the reasonable satisfaction of Mortgagee, provided that if same cannot be discharged of record within such sixty-day (or six-month, as the case may be) period, it shall not be an event of default hereunder if Mortgagor shall obtain the discharge of such violation within such longer period as is reasonably necessary to obtain the discharge of record (provided that Mortgagor has completed the work necessary to correct the violation within sixty days from notice thereof, or within six months from the date of this Mortgage for violations existing on the date of this Mortgage, and is diligently pursuing the discharge of record and the failure to obtain such discharge of record is beyond the reasonable control of the Mortgagor); or (vi) if on application of Mortgagee or Mortgagor to two or more insurance companies lawfully doing business in the state where the Premises are located refuse to issue policies insuring the Improvements on the terms and conditions required by this Mortgage; or (vii) in the event of the removal, demolition or destruction in whole or in part of any of the Equipment, unless the same are promptly replaced by similar Equipment at least equal in quality and condition to that replaced, free from chattel mortgage, security interest or other encumbrances thereon and free from any reservation of title thereto; or (viii) in the event of the passage of any law deducting from the value of land for the purposes of taxation, any lien thereon, or changing in any way the taxation of the mortgages or debts secured thereby for state or local purposes; or (ix) if Mortgagor fails to keep, observe and perform any of the other covenants, conditions or agreements contained in this Mortgage for which no specific event of default is provided in this Mortgage following not less than thirty (30) days' notice and opportunity to cure; or (x) if proceedings under any bankruptcy or insolvency law are commenced by Mortgagor, or if proceedings under any bankruptcy or insolvency law are commenced against Mortgagor and not dismissed within 60 days, or if general assignment for the benefit of creditors is made by Mortgagor or if a trustee or receiver of the property of Mortgagor is appointed and not dismissed within ninety days (except that the appointment of an administrator under Article 7-A of the New York Real Property Actions and Proceedings Law shall be an immediate event of default with no grace period in which to obtain the dismissal of such appointment); or (xi) if Mortgagor requests or consents to any change in zoning affecting the Premises or any waiver of or exemption from enforcement of any applicable zoning requirement affecting the Premises, or materially varies the character or use of the Premises, or amends the certificate of occupancy, without in each such instance first obtaining the prior consent in writing thereto of Mortgagee, which consent may be withheld by Mortgagee for any or no reason; or (xii) if any representation or warranty made by Mortgagor or any of its affiliates, or any guarantor of the Mortgage and/or the Note, or in any other document or information submitted to Mortgagee by Mortgagor, any such affiliate or any

24

such guarantor in connection with this Mortgage shall have been untrue or inaccurate in any material respect when made or on the date of the Mortgage.

(b)     Upon the occurrence of any event of default described in Paragraph 16(a) or in any other provision of this Mortgage, and in the case of events of default for which a notice and/or cure period is expressly set forth, upon the expiration of such notice and/or cure period without the event of default having been cured, a default shall have occurred under this Mortgage that shall entitle Mortgagee, without further notice and without any further right to cure being allowed to Mortgagor, to immediately exercise any and all of its rights provided under this Mortgage or by law or in equity for default. Mortgagor acknowledges and agrees that except where this Mortgage expressly provides that Mortgagor is entitled to notice and/or an opportunity to cure a specified event of default, each and every event of default provided in this Mortgage shall, immediately upon its occurrence, constitute a default entitling Mortgagee to exercise all of such remedies. Mortgagor further acknowledges that wherever in this Mortgage it is provided that Mortgagor is entitled to notice and/or an opportunity to cure with respect to any event of default, then immediately following the satisfaction of any such notice requirement and/or the expiration of the specified cure period, without further notice, the event of default shall become a default entitling Mortgagee to exercise all of such remedies.

17.     <u>Remedies Upon Default</u>

(a)     Upon any default under this Mortgage (after the expiration of any applicable notice and/or cure period provided in this Mortgage), all principal due under this Mortgage, all accrued interest, the Yield Maintenance Premium, and all other Additional Payments shall, at the option of Mortgagee, become immediately due and payable; provided that upon any default described in Section 16(a)(x) above, the all principal due under this Mortgage, all accrued interest, the Yield Maintenance Premium, and all other Additional Payments shall immediately and automatically become due and payable, without notice or demand, and Mortgagor hereby expressly waives any such notice or demand, anything contained herein or in any other Loan Document to the contrary notwithstanding. If, following an exercise by Mortgagee of its option to declare such sums immediately due and payable, Mortgagor shall tender payment of an amount that by law otherwise would entitle Mortgagor to redeem the Mortgaged Property from foreclosure prior to a sale thereof, then Mortgagor shall not be entitled to so redeem the Mortgaged Property unless Mortgagor shall include in such tender, in addition to all accrued interest and the principal balance, the Yield Maintenance Premium, and all other unpaid Additional Payments.

(b)     Following an exercise by Mortgagee of its option to declare all sums immediately due and payable, Mortgagee may exercise any and all rights and remedies available hereunder and at law and in equity including the right, when authorized by law, to sell the Premises by the exercise of the power of sale hereby granted to Mortgagee, and at Mortgagee's sole option to foreclose the Mortgage by a judicial proceeding or by a non-judicial proceeding in the manner prescribed in Article 14 of the Real Property Actions and Proceedings Law, as the same may be amended from time to time.

(c)     In the event of a foreclosure of this Mortgage, the Premises or so much thereof as may be affected by this Mortgage may be sold in one parcel, any provision of law to the contrary

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

INDEX NO. 512224/2019

NYSCEF DOC. NO. 3

RECEIVED NYSCEF: 06/03/2019

notwithstanding. Failure to join tenants as defendants shall not constitute any defense to the foreclosure action.

(d)    In the event of any foreclosure of this Mortgage, Mortgagee shall be entitled to apply any balance of Deposits held by Mortgagee against its costs, expenses and damages incurred by reason of such foreclosure of this Mortgage, and for this purpose shall be entitled to retain all Deposits until a final determination of such costs, expenses and losses is made. Mortgagor shall also pay to Mortgagee on demand, as an Additional Payment, all Transfer Taxes for which Mortgagor is liable under this Mortgage, and all tenant security deposits held by Mortgagor or as may be reflected in leases or by receipts held by tenants, all accrued interest thereon and any penalties and/or expenses relating thereto, except that Mortgagor shall not be required to pay to Mortgagee any such security deposits that were lawfully applied by Mortgagor, as landlord, upon default of and vacating of the Premises by any tenant. All such Transfer Taxes, interest and penalties, if any, and other sums may be paid by a receiver appointed in the foreclosure action.

(e)    Nothing in this Paragraph 17 shall limit or prejudice the right of Mortgagee to prove and obtain as liquidated damages in any bankruptcy, insolvency, receivership, reorganization or dissolution proceeding an amount equal to the maximum allowed by any statute or rule of law governing such proceeding and in effect at the time when such damages are to be proved, whether or not such amount is greater, equal to or less than any amount of damages provided herein.

(f)    Upon any default under this Mortgage (after the expiration of any applicable notice and/or cure period provided in this Mortgage), or upon the occurrence of any threatened alteration or demolition of the Mortgaged Property not permitted hereunder, or any actual or threatened waste to the Mortgaged Property, Mortgagee shall be entitled, as a matter of right and without regard to the adequacy of any security for the indebtedness secured hereby (and without notice in any action to foreclose this Mortgage and in such other actions or circumstances as may be permitted by law), to the appointment of a receiver for the Mortgaged Property, whether such receivership is incidental to a proposed sale of the Mortgaged Property or otherwise. Mortgagor hereby consents to the appointment of a receiver and shall not oppose any such appointment or the exercise by such receiver of all rights of Mortgagee and/or Mortgagor arising from or related to the Mortgaged Property and the enjoyment of all benefits therefrom, whether or not expressly provided herein.

(g)    Upon any default of the Mortgagor (after the expiration of any applicable notice and/or cure period provided in this Mortgage) in complying with or performing any warranty or covenant herein, Mortgagee may, at Mortgagee's option, comply with or perform the same, and the cost thereof together with interest thereon at the Default Rate, shall be paid by Mortgagor to Mortgagee on demand as an Additional Payment. If upon any default (after the expiration of any applicable notice and/or cure period provided in this Mortgage), Mortgagee or a receiver enters upon and takes possession of the Premises, Mortgagee or the receiver shall be entitled to collect the rents therefrom and apply the same to the payment of Debt Service, Additional Payments and Deposits, and to the expenses of operating the Premises, which expenses are deemed to include, without limitation, all costs of repairs and capital improvements, reasonable reserves set aside for repairs and capital improvements, management fees, receiver's fees, Impositions, Insurance

26

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

Premiums and Transfer Taxes, and all other costs or expenses of any kind or nature that Mortgagee or a receiver may deem necessary or advisable to pay, or create reserves for, in connection with the Mortgaged Property. Mortgagor shall pay to Mortgagee, on demand as an Additional Payment, the amount, if any, by which all such expenses of operating the Premises exceed the net revenues collected from the Premises, together with interest thereon at the Default Rate. Mortgagee or the receiver shall be entitled to exercise all the rights and authority of Mortgagor in the operation of the Premises, including, without limitation, leasing vacant space in the Premises, or extending or modifying the term of any lease on such terms as Mortgagee or the receiver may determine in its discretion, and to make or not to make the repairs or capital improvements as Mortgagee or the receiver deems advisable in its discretion. Mortgagee or the receiver shall have no liability to Mortgagor for any action taken or not taken. Nothing in this subparagraph (f) shall in any way obligate Mortgagee or a receiver to advance any money to pay any expenses (including repairs or capital improvements) of the Premises, or to take any specific action in the operation of the Premises.

(h)     Mortgagee may, at Mortgagee's option, foreclose this Mortgage for any portion of the debt or any other sums secured hereby that are then due and payable, subject to the continuing lien of this Mortgage for the balance of the debt not then due.

(i)     With respect to any portion of the Mortgaged Property in which this Mortgage grants to Mortgagee a security interest under the Uniform Commercial Code, in addition to and without limiting any other remedies available to Mortgagee under this Mortgage or by law or in equity, Mortgagee shall be entitled to exercise all of the remedies of a secured party upon default available under the Uniform Commercial Code.

18.     Waivers; Cumulative Remedies

(a)     No failure by Mortgagee to insist upon the strict performance of any covenant, agreement, term or condition of this Mortgage or to exercise any right or remedy consequent upon a breach thereof, and no acceptance of full or partial Debt Service during the continuance of any such breach, shall constitute a waiver of any such breach or of such covenant, agreement, term or condition. No covenant, agreement, term or condition of this Mortgage to be performed or complied with by Mortgagor, and no breach thereof, shall be waived, altered or modified except by written instrument executed by Mortgagee. No waiver of any breach shall affect or alter this Mortgage, but each and every covenant, agreement, term and condition of this Mortgage shall continue in full force and effect with respect to any other then existing or subsequent breach thereof.

(b)     In the event of any breach or threatened breach by Mortgagor of any of the covenants, agreements, terms or conditions contained in this Mortgage, Mortgagee shall be entitled to enjoin such breach or threatened breach and shall have the right to invoke any right and remedy allowed at law or in equity or by statute or otherwise, including proving actual damages, as though no other remedies were provided for in this Mortgage.

(c)     Each right and remedy of Mortgagee provided for in this Mortgage shall be cumulative and shall be in addition to every other right or remedy provided for in this Mortgage or now or hereafter existing at law or in equity or by statute or otherwise, and the exercise or

44599281v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

beginning of the exercise by Mortgagee of any one or more of the rights or remedies provided for in this Mortgage or now or hereafter existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise, or be deemed a waiver, by Mortgagee of any or all other rights or remedies. Specifically, the enforcement of any provision of this Mortgage providing for payment by Mortgagor of liquidated damages, interest, costs or other charges upon the occurrence of any event of default hereunder shall not preclude Mortgagee from exercising any other remedies, including foreclosure, or proving actual damages, that it may have upon such event of default. It is also expressly agreed that Mortgagee's right to interest upon any sum in arrears owed by Mortgagor does not deprive Mortgagee of any other remedies respecting the event of default in question.

19.    Transfers of the Mortgaged Property

Any Transfer made or permitted by Mortgagor shall be an event of default under this Mortgage, entitling Mortgagee immediately, without notice or cure period, to exercise any or all of its remedies for default provided herein or by law. Notwithstanding anything in any Loan Document to the contrary, encumbrance of the Mortgaged Property by a building loan mortgage made by Mortgagor in favor of Mortgagee shall not be considered a "Transfer".

20.    Tenant Leases

Reference is made to Section 291-f of the New York Real Property Law. Mortgagor covenants and agrees to each of the following provisions with respect to Leases:

(a)    Each Lease made after the date of this Mortgage shall be subject to Mortgagee's prior written approval and shall contain language expressly subordinating the lease to all mortgages now or hereafter affecting the Premises.

(b)    All Leases shall be made only in accordance with all applicable rent regulations. Mortgagor shall comply with all applicable orders of rent regulatory authorities, and shall promptly refund all rent or other overcharges found to be due with respect to periods on or subsequent to the date of this Mortgage, and if Mortgagor or an affiliate shall have owned the Mortgaged Property prior to the date of this Mortgage, then also with respect to such period prior to the date of this Mortgage during which Mortgagor or an affiliate owned the Mortgaged Property, and pay when due any penalties, fees or damages that may be assessed, with respect to the Premises and the tenants and leases thereof.

(c)    Upon any foreclosure of this Mortgage, Mortgagor shall deliver to Mortgagee all leases, contracts, documents, rent rolls and other records used in the operation of the Premises, together with security deposits held by Mortgagor or as reflected in Leases or by receipts held by tenants, and all accrued interest due thereon. Except to the extent any security deposits have actually been delivered to Mortgagee, Mortgagor agrees to indemnify and save Mortgagee harmless from and against any claim or lien against Mortgagee or the Mortgaged Property for the return of any security deposits and interest under any leases with tenants.

(d)    Mortgagor shall not with respect to any present or future leases accept prepayment of rent prior to its due date in excess of one month.

44599281v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

(e)     Mortgagor shall furnish to Mortgagee, within 30 days after execution thereof, a full copy of each and every residential and commercial lease, lease renewal or lease extension, modification or amendment with respect to the Premises. Mortgagor shall exhibit to Mortgagee original signed counterparts of all leases upon request within ten days.

(f)     Except as required by law, residential leases and renewals thereof shall be for a term not exceeding two years and shall be at the maximum rental permitted by law (or if less, fair market rental). Commercial leases and renewals thereof shall be for a term not to exceed ten years and at a monthly rental of not less than the highest monthly rental of the prior leasing period (or if less, fair market rental). No lease, either residential or commercial, shall contain any right by tenant to renew or extend the same.

21.     Assignment of Leases and Rents

(a)     Mortgagor hereby assigns to Mortgagee all of Mortgagor's right, title and interest as landlord under all existing and future leases and the rents, issues and profits of the Mortgaged Property as further security for the payment of Debt Service, Additional Payments, Deposits and Transfer Taxes, and if Mortgagee exercises its rights pursuant to Paragraph 21(b), as further security for the payment of all charges and expenses of operating the Premises, and all fees, disbursements and expenses of receivers, legal counsel, accountants, managing agents and other persons employed in connection with the Mortgaged Property.

(b)     In furtherance of the assignment provided in Paragraph 21 (a), Mortgagor hereby grants to Mortgagee the following rights and powers: (i) to enter upon and take possession of the Premises; (ii) to demand payment of and collect the rents and other amounts payable under Leases, and to demand and enforce performance of the terms, covenants and conditions of Leases, by legal proceedings or otherwise; (iii) to exercise all of Mortgagor's rights, interests and remedies in and under the Leases; (iv) to settle, adjust or compromise the rents and other amounts payable under the Leases, and to settle, adjust or compromise any legal proceeding brought to collect the rents and other amounts payable thereunder or to obtain performance thereof; (v) to prepare, file and sign Mortgagor's name on any proof of claim in bankruptcy, or similar document in a similar proceeding, against obligors of the Leases; (vi) to endorse the name of Mortgagor upon any payment or proceeds of the rents and other amounts payable under the Leases and to deposit the same to the account of Mortgagee; (vii) to hold, manage, lease and operate the Mortgaged Property as Mortgagee may deem proper; (viii) to make necessary capital expenditures; (ix) to apply such rents, income and profits to the payment of all charges and expenses of operating the Premises, fees, disbursements and expenses of receivers, legal counsel, accountants, managing agents and other persons employed in connection with the Mortgaged Property, and to the payment of Debt Service, Additional Payments, Deposits, Impositions, Insurance Premiums and Transfer Taxes due under this Mortgage; and (x) to do all acts and things necessary, in Mortgagee's sole discretion, to carry out any or all of the foregoing.

(c)     If the Mortgagor or any Person controlled by, controlling or under common control with, Mortgagor is an occupant of the Premises, then upon any default under this Mortgage (after the expiration of any applicable notice and/or cure period), Mortgagor or such Person will pay monthly in advance to the Mortgagee, or to any receiver appointed to collect the rents, issues and profits, the fair and reasonable rental value for the use and occupation of the

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM          INDEX NO. 512224/2019

NYSCEF DOC. NO. 3                                      RECEIVED NYSCEF: 06/03/2019

Premises or of such part thereof as may be in the possession of the Mortgagor or such Person, and upon failure to make any such payment will vacate and surrender the possession of the Premises to the Mortgagee or to the receiver, and upon failure to vacate and surrender possession, may be evicted by summary proceedings.

(d)      Mortgagee hereby waives the right to enter upon and to take possession of the Premises for the purposes above set forth, including the right to take possession of the Premises for the purpose of collecting rents, issues and profits, and Mortgagor shall be entitled to collect and receive rents, issues and profits until the occurrence of any event of default under this Mortgage (prior to the expiration of any applicable notice and/or cure period). Mortgagor agrees to use rents, issues and profits in payment of Debt Service, Additional Payments and Deposits, and in payment of Impositions, Insurance Premiums, Transfer Taxes and expenses of operating the Premises, and after payment of all such amounts that are then due, Mortgagor shall be entitled to retain any balance of rents, issues and profits then collected by it. The right of Mortgagor to collect and receive the rents, issues and profits may be revoked by Mortgagee upon the occurrence of any event of default upon five days' written notice. The right of revocation by Mortgagee shall become effective whether or not any other required notice has been given or applicable cure period has expired, whether or not foreclosure has been instituted and without applying for a receiver.

(e)      The covenants herein contained on the part of Mortgagor shall be deemed to be covenants running with the land and shall be binding upon Mortgagor and any subsequent owner or owners of the Mortgaged Property or any portions thereof and its or their respective successors and assigns.  This assignment of leases and rents, together with all the covenants herein contained on the part of Mortgagor shall inure to the benefit of Mortgagee and any subsequent holder or holders of this Mortgage and its or their respective successors and assigns.

(f)      Nothing herein contained shall be construed to bind Mortgagee to the performance of any of the covenants, conditions or provisions contained in the Leases, or otherwise to impose any obligation on Mortgagee with respect thereto (including any liability under a covenant of quiet enjoyment contained in any tenant lease or under applicable law if any tenant shall have been joined as a party defendant in any foreclosure action and shall have been foreclosed of all right, title and interest and all equity of redemption in the Mortgaged Property), except that Mortgagee shall be accountable for any money actually received pursuant to this assignment of leases and rents.

(g)      Mortgagor irrevocably authorizes and directs the tenant under any tenant lease, upon demand and notice from Mortgagee of Mortgagor's default under this Mortgage, to pay all rents and other sums due under the respective tenant lease to Mortgagee without liability to the tenant for the determination of the existence of any default claimed by Mortgagee.

22.      <u>Payments From Deposits; Mortgagee's Liability</u>

(a)      Mortgagee shall make all payments of Impositions and Insurance Premiums for which it is holding Deposits by their respective due dates, including grace periods, if and only if each of the following conditions are met: (i) Mortgagor has timely made all Deposits for any purpose that may be required or demanded by Mortgagee under Paragraph 4; (ii) Mortgagor is

30

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

INDEX NO. 512224/2019

NYSCEF DOC. NO. 3

RECEIVED NYSCEF: 06/03/2019

not overdue (without regard to any applicable notice and/or cure period) in the payment of any Debt Service or Additional Payments due under this Mortgage, and no other event of default shall have occurred and remain uncured after any applicable notice and/or cure period; (iii) no amount advanced by Mortgagee to satisfy any obligation of Mortgagor under this Mortgage, including interest thereon computed as provided in this Mortgage, remains unpaid by Mortgagor (whether or not the failure to have paid any such amount does not yet constitute a default because of any applicable notice or cure period or otherwise); and (iv) no action to foreclose this Mortgage or to enforce the Note or any other agreement relating thereto shall be pending.

(b)    Notwithstanding anything in this Mortgage that might otherwise be construed to the contrary, in no event shall Mortgagee at any time be liable to Mortgagor for any damages, costs or expenses in excess of Mortgagee's equity in this Mortgage. All judgments against Mortgagee or any of its principals or agents shall be enforced against said equity and not against any other present or future asset of Mortgagor or any of its principals or agents. If Mortgagee fails to pay any payments of Impositions or Insurance Premiums for which it is holding adequate Deposits, or any other payment for which Mortgagee is or may become responsible with respect to the Mortgaged Property, Mortgagor, as its sole and exclusive remedy, may pay any such payment that Mortgagee has so failed to pay to the Person to whom due and may deduct the amount so paid, including any interest and penalties due thereon, from the next regular installments of Debt Service and/or Deposits, as the case may be, due hereunder.

(c)    Whenever in this Mortgage or as a matter of law it is provided that Mortgagee's consent or approval shall not be unreasonably withheld or the actions of Mortgagee shall be reasonable, the remedy of Mortgagor, if Mortgagor shall claim or establish that Mortgagee has unreasonably withheld its consent or approval or has acted unreasonably, shall be limited to injunctive relief or declaratory judgment, and in no such event shall Mortgagor be entitled to obtain, nor shall Mortgagee be liable for, a money judgment.

23.    Prepayment/Assignment

This Mortgage may be prepaid, in whole but not in part. Upon payment of the obligations secured by this Mortgage (whether upon payment at maturity or as a result of prepayment, default or otherwise), the Yield Maintenance Premium shall be due and payable to Mortgagee (regardless of when the payment is made). Mortgagor and Mortgagee acknowledge and agree that the Yield Maintenance Premium does not constitute a penalty or additional interest on the Loan evidenced hereby; and, notwithstanding its liability for the Yield Maintenance Premium, Mortgagor shall be fully liable for all Debt Service (including interest at the Default Rate, if applicable), Deposits, Additional Payments or any other amounts due under the Loan Documents. Mortgagor shall also be liable for damages occasioned by Mortgagee as a result of prepayment of this Mortgage. Upon acceptance of any proffered prepayment, all amounts due under the Note and this Mortgage shall be irrevocably due and payable in full on such date as if such date were the maturity date specified herein.

Upon payment in full of all of the obligations secured by this Mortgage, Mortgagee may, in Mortgagee's sole and absolute discretion (and at the request of Mortgagor made at least ten (10) days prior to the requested assignment) assign this Mortgage to another financial institution

identified by Mortgagor. In connection with any such assignment, Mortgagor shall pay all of Mortgagee's reasonable attorneys fees and costs incurred in connection with such assignment.

24.    Procedure for Payment at Maturity or Upon Prepayment

(a)    Mortgagor shall pay to Mortgagee or its designated agent at maturity or upon prepayment of the obligations secured by this Mortgage, accrued interest thereon, all then due and unpaid Additional Payments and the Yield Maintenance Premium, if applicable. Payment at maturity or upon prepayment permitted under Paragraph 23 shall be made as follows: (i) by unendorsed certified check or unendorsed bank cashier's check drawn in U.S. dollars to the order of Mortgagee on a New York banking institution that is a member of the New York Clearing House, and received by Mortgagee at its offices at or before 3:00 p.m. on a Banking Day, at the address of Mortgagee specified at the beginning of this Mortgage or furnished pursuant to the provisions of Paragraph 27; or (ii) at Mortgagee's sole option, by wire transfer and received in Mortgagee's bank account at or before 3:00 P.M. on a Banking Day. Payment shall include interest computed to and including the date of delivery of the check in payment or the date of receipt of the wire.

(b)    Upon the receipt of payment by Mortgagee, Mortgagee shall deliver to Mortgagor, at Mortgagor's election, either (i) a satisfaction of this Mortgage (which shall by its terms provide for discharge of all of Mortgagee's obligations hereunder from and after the date of delivery thereof), or (ii) an assignment of this Mortgage without recourse and in such form as may be reasonably requested by Mortgagor and determined by Mortgagee in its sole discretion. All taxes and third-party expenses in connection with the satisfaction or assignment of this Mortgage, together with the reasonable fees and reasonable disbursements of Mortgagee's attorney for preparation of necessary documents and attendance at the Mortgage payoff closing, shall be paid by Mortgagor, and shall be deemed an Additional Payment due and payable with the payment being made on this Mortgage. Mortgagor shall advise Mortgagee in writing of the date, time and place scheduled for the payoff closing at least three business days in advance.

25.    Reduction of Principal Balance By Insurance and Condemnation Proceeds

If the unpaid principal balance of this Mortgage is reduced by the Mortgagee or a receiver applying insurance proceeds or condemnation awards in reduction thereof, or by prepayments made by Mortgagor with the prior written consent of Mortgagee, then notwithstanding the reduction, Debt Service shall continue to be payable in accordance with the terms of this Mortgage, and the amount of the reduction shall be applied against payments coming due under this Mortgage in the inverse order of their maturity.

26.    Junior Mortgages

Mortgagor shall not place or suffer any junior mortgages or encumbrances on the Mortgaged Property or any part thereof, or otherwise create a security interest in or encumber the Mortgaged Property or any part thereof. Any breach of any provision of this Paragraph 26 shall be an event of default under this Mortgage and shall entitle Mortgagee, without any notice or grace period, to exercise any and all remedies provided for default in this Mortgage or otherwise permitted by law. Mortgagor shall not permit the Mortgaged Property or any part thereof to be

32

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

cross-collateralized with any other property, whether owned by Mortgagor or by any other Person unless such cross-collateralization is solely for the benefit of Mortgagee. Notwithstanding anything in any Loan Document to the contrary, the Mortgaged Property may be encumbered by a building loan mortgage made by Mortgagor in favor of Mortgagee.

27.     Notices

Whenever it is provided herein that notice, demand, request or other communication (a "notice") shall or may be given to or served upon either of the parties by the other, and whenever either of the parties shall desire to give or serve upon the other any notice with respect hereto or the Mortgaged Property, each notice shall be in writing and, any law or statute to the contrary notwithstanding, shall be effective for any purpose only if given or served as follows:

(i)     If by Mortgagee, by mailing the same to Mortgagor by certified or registered mail postage prepaid, return receipt requested, or by receipted delivery by a nationally recognized reputable overnight courier service addressed to Mortgagor at the address set forth at the beginning of this Mortgage, or at such other address as Mortgagor may from time to time designate by like notice.

(ii)     If by Mortgagor, by mailing the same to Mortgagee by registered or certified mail, postage prepaid, return receipt requested, or by receipted delivery by a nationally recognized reputable overnight courier service, addressed to Mortgagee at the address set forth at the beginning of this Mortgage, or at such other address as Mortgagee may from time to time designate by like notice.

(iii)     Every notice hereunder shall be deemed to have been given or served three days after the day that the same is deposited in the United States mail, postage prepaid, in the manner aforesaid, or one day following deposit with a nationally recognized reputable overnight courier. Refusal to accept delivery of any notice shall be deemed effective delivery thereof.

28.     Mortgagor's Certificate; Statement of Balances

(a)     Mortgagor shall, without charge, at any time and from time to time, within ten days after request by Mortgagee, certify by written instrument, duly executed, acknowledged and delivered to Mortgagee or any other Person specified by Mortgagee: (i) that this Mortgage is unmodified and in full force and effect or, if there have been any modifications or release of security from this Mortgage, that the same is in full force and effect as modified, and stating the modifications and describing any security released; (ii) whether or not there are then existing any set-offs or defenses against the Mortgage debt or the enforcement of any of the agreements, terms, covenants or conditions of this Mortgage upon the part of Mortgagor to be performed or complied with, and, if so, specifying the same; and (iii) the amount of the debt secured by this Mortgage, the outstanding principal balance, the rate of interest, and the date to which interest has been paid. Mortgagor's failure to provide the certificate within the ten day period shall be an event of default hereunder and shall entitle Mortgagee to exercise any or all of its remedies for default provided hereunder or by law if the event of default is not cured within ten days after notice is given by Mortgagee.

44599281v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 3
INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

(b)    Mortgagee shall be entitled, at any time and from time to time, to send to Mortgagor a statement setting forth the balance of Deposits then held by Mortgagee. If Mortgagor does not dispute such balances by written notice to Mortgagee given within thirty days after delivery of the statement to Mortgagor, then Mortgagor shall be deemed to admit the correctness of such balances and of all disbursements of Deposits by Mortgagee that are reflected on the statement, and Mortgagor shall thereafter have no right to contest such balances or the correctness of any such disbursements, by legal proceedings or otherwise.

29.    <u>Financial Statements and Other Information</u>

(a)    (i)    Prior to March 31 of each calendar year, Mortgagor shall furnish to Mortgagee a balance sheet, statement of income and expense and statement of changes in financial condition and/or stockholders equity of Mortgagor, which, following an event of default, shall be prepared by an independent certified public accountant.

(ii)    At any time and from time to time, but not more than once in any calendar year, within 60 days after a written request therefor has been made, Mortgagor shall furnish to Mortgagee such other financial statements for the Mortgaged Property as Mortgagee shall specify in such request. Mortgagor shall also furnish within 10 days after written request, but not more than twice in any calendar year, a current rent schedule of the Mortgaged Premises certified by Mortgagor or its agent, setting forth the name of each tenant, space occupied, monthly rent, arrears, lease security and lease expiration date.

(b)    Mortgagor shall give prompt notice to Mortgagee of any actions or proceedings instituted by or against Mortgagor in any federal or state court or by any governmental department, agency or instrumentality, or any such actions or proceedings threatened against Mortgagor, affecting the Mortgaged Property or that, if adversely determined, would have a material adverse effect upon Mortgagor's business, assets or condition, financial or other, or upon the lien of this Mortgage. Any notice so given shall specify what action Mortgagor is taking or proposes to take with respect thereto and shall include a copy of any documents relevant thereto.

30.    <u>Lien Law</u>

Mortgagor agrees, in compliance with Section 13 of the Lien Law, that Mortgagor will receive the advances secured by this Mortgage and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

31.    <u>Good Standing of Mortgagor</u>

If Mortgagor is a corporation, partnership, limited liability company or trust, it shall keep in effect its existence and rights as a corporation, partnership, limited liability company, or trust under the laws of the state of its incorporation or formation and its right to own property and transact business in the state in which the Premises are situated during the entire time that it has any interest in the Mortgaged Property or any part thereof. For all periods during which title or beneficial title to the Mortgaged Property or any part thereof shall be held by a partnership, trust,

44599281v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 06/03/2019

corporation, limited liability company or association or other entity subject to corporate franchise taxes, income taxes, license or other fees or taxes, or any taxes similar to any thereof, Mortgagor shall file returns for such taxes or license or other fees with the proper authorities, bureaus or departments and shall pay, when due and payable and before interest or penalties are due thereon, all such taxes or license or other fees owing by Mortgagor to the United States, to such state of incorporation or formation and to the state in which the Premises are situated and any political subdivision thereof. Upon written request of Mortgagee, Mortgagor shall within 15 days supply evidence satisfactory to Mortgagee of the good standing of Mortgagor in the state of its formation (and if different, in the state in which the Premises are located).

32.    Instruments of Further Assurance; Certain Supplemental Management Rights

(a)    At any time and from time to time, upon Mortgagee's reasonable written request, Mortgagor shall make, execute and deliver or cause to be made, executed and delivered to Mortgagee and, where appropriate, shall cause to be recorded or filed and from time to time thereafter to be re-recorded or refiled at such time and in such offices and places as shall be deemed desirable by Mortgagee, without charge to Mortgagee any and all such further mortgages, instruments of further assurance, certificates, splitter agreements, severance agreements, UCC financing statements, and other documents as Mortgagee may consider necessary or desirable in order to effectuate, complete or perfect, or to continue and preserve the obligations of Mortgagor under this Mortgage and the lien of this Mortgage. Upon any failure by Mortgagor to do so, Mortgagee may make, execute, record, file, re-record or refile any and all such mortgages, instruments, certificates and documents for and in the name of Mortgagor, and Mortgagor hereby irrevocably appoints Mortgagee the agent and attorney-in-fact of Mortgagor to do so, and the cost of doing the same, including attorneys fees and disbursements, shall be payable by Mortgagor. Mortgagor acknowledges that Mortgagee and its successors and assigns may (a) sell the Mortgage, the Note and the other Loan Documents to one or more investors as a whole loan, (b) participate the Loan to one or more investors (each, a "Loan Participant"), (c) deposit the Mortgage, the Note and the other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets or (d) otherwise sell the Loan or interest therein to investors (the transactions referred to in clauses (a) through (d) are hereinafter referred to as "Secondary Market Transactions"). Mortgagor shall cooperate in good faith with Mortgagee in effecting any such Secondary Market Transaction, including, without limitation, furnishing such information and materials relating to Mortgagor, Guarantor, if any, the Mortgaged Property and any tenants of the Mortgaged Property as Mortgagee shall request and to implement all requirements imposed by any rating agency involved in any Secondary Market Transaction including, without limitation, restructuring the Loan and making modifications to any Loan Documents, delivery of opinions of counsel acceptable to the rating agency and addressing such matters as the rating agency may require; provided, however, that Mortgagor shall not be required to change (i) the interest rate payable under the Note, (ii) the stated maturity of the Note, (iii) the amortization of principal or (iv) any other material provisions of the Loan Documents. Mortgagee shall have the right to provide to prospective investors any information in its possession, including, without limitation, financial statements relating to Mortgagor, the Guarantor, the Mortgaged Property and any tenant of the Mortgaged Property, it being acknowledged that certain information regarding the Loan and the parties thereto and the Mortgaged Property may be included in a private placement memorandum, prospectus or other disclosure documents.

44599281v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 06/03/2019

(b)    Mortgagee and Loan Participant shall have the following supplemental management rights:

(i)    Mortgagee and Loan Participant shall have the right to consult with and advise the management of Mortgagor, upon reasonable notice and at reasonable times, on matters relating to the operations of Mortgagor.

(ii)    Mortgagor shall not be obligated to accept the recommendations of Mortgagee or Loan Participant but Mortgagor agrees to consider, in good faith, the recommendations and advice of Mortgagee and Loan Participant from time to time hereunder. All ultimate decisions with respect to all such shall be retained by Mortgagor and neither Mortgagee nor Loan Participant shall have liability to Mortgagor with respect to the recommendations made by either or both of such parties.

(iii)    In furtherance of the Loan Documents, Mortgagor will notify Mortgagee and each Loan Participant of any material development affecting Mortgagor's business and affairs, such as significant changes in management personnel, introduction of new lines of business, important acquisitions and the proposed compromise of any significant litigation as soon as reasonably practicable, and Mortgagor shall provide Mortgagee and each Loan Participant with the opportunity, on reasonable prior written notice, to consult with and advise Mortgagor's management with respect thereto.

(iv)    In furtherance of the Loan Documents, on reasonable prior written notice, Mortgagee and Loan Participant shall have the right to discuss the business operations, properties and financial condition of Mortgagor with Mortgagor's independent certified public accountants.

(v)    In furtherance of the Loan Documents, Mortgagor shall provide to Mortgagee and Loan Participant true and correct copies of all documents, reports, financial data and such other information as Mortgagee and each Loan Participant may reasonably request. Additionally, in furtherance of the Loan Documents, Mortgagor shall permit Mortgagee and each Loan Participant to visit and inspect any of the properties of Mortgagor, including its books of account, and to discuss its affairs, finances and accounts with its officers, all at such times as Mortgagee and each Loan Participant may reasonably request.

(vi)    Mortgagor shall deliver to Mortgagee and Loan Participant the financial reports and other materials required to be so delivered to any investor in Mortgagor pursuant to the organizational documents of Mortgagor.

(vii)    In furtherance of the Loan Documents, Mortgagee and Loan Participant shall be entitled to request that Mortgagor provide it when available, with copies of: (i) all financial statements, forecasts and projections provided to or approved by its board of directors or analogous governing authority (the "*Governing Authority*"); (ii) all notices, minutes, proxy materials, consents and correspondence and other material that it provides to its Governing Authority or equity owners; (iii) any letter issued to Mortgagor by its accountants with respect to Mortgagor's internal controls; (iv) any

36

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
INDEX NO. 512224/2019
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 06/03/2019

documents filed by Mortgagor with any regulatory or similar authority; and (v) such other business and financial data as Mortgagee or Loan Participant reasonably may request in writing from time to time.

(viii) Mortgagor represents to Mortgagee and Loan Participant, as of the date hereof, that (i) at least 50% of Mortgagor's assets, valued at cost (other than short-term investments pending long-term commitment or distribution to investors), are invested in real estate, and (ii) Mortgagor has the right to, and actually does on a continuous basis, regularly and substantially participate directly in management and/or development activities with respect to such real estate. If any part of the foregoing sentence ceases to be true and correct in any respect after the date hereof, Mortgagor will promptly notify Mortgagee and Loan Participant of such change.

The aforementioned rights are intended to satisfy the requirement of "management rights" for purposes of qualifying the Loan as a "venture capital investment" for purposes of the DOL "plan assets" regulation, 29 C.F.R. § 2510.3-101.

The rights described in this paragraph 32(b) shall apply and continue for so long as Mortgagee or Loan Participant continues to own any interest in the Loan, which shall be deemed to be so owned and to remain outstanding notwithstanding any conversion, exercise or exchange of such Loan for securities ("*Derivative Securities*"). The rights described herein shall terminate and be of no further force or effect as of the date upon which the Mortgagee, Loan Participant and their respective affiliates cease to maintain any interest in the Loan or any Derivative Securities.

33.      Miscellaneous

(a)      Any payment of Debt Service, Additional Payments or Deposits due from Mortgagor to Mortgagee shall not be considered timely made when due unless it shall be actually received by Mortgagee no later than 3:00 p.m. in New York City on the date when due. Any references to a time of day in this Mortgage shall be Eastern Standard Time or Eastern Daylight Time, as applicable.

(b)      If the holder at any time of this Mortgage shall sell, transfer or assign this Mortgage, such holder shall be and hereby is entirely discharged, released and relieved of all covenants, obligations and liabilities of Mortgagee hereunder as of the date of such sale, transfer or assignment, provided that such holder shall continue to be entitled to the benefit of all indemnities by Mortgagor in favor of Mortgagee provided in this Mortgage.

(c)      There shall be no merger of this Mortgage with the fee estate in the Mortgaged Property by reason of the fact that this Mortgage or any interest therein may be held, directly or indirectly, by or for the account of any Person or Persons who shall own the fee estate in the Mortgaged Property, or any interest therein. No such merger shall occur unless and until Mortgagee and Mortgagor shall join in a written instrument effecting such merger.

(d)      Nothing in this Mortgage shall require Mortgagor to pay any interest, liquidated damages or any other charge that might be construed as interest in an amount that would subject Mortgagee to any penalty or permit any declaration of invalidity of the Note or this Mortgage

37

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

under any applicable usury or other law. If any payment of interest or any other amount that might be construed as interest pursuant to this Mortgage or the Note would subject Mortgagee to such a penalty or permit any such declaration of invalidity, then such payments of interest, liquidated damages or other charges required to be made by the Mortgagor shall not be greater than the highest amount that, if construed as interest, would be authorized under applicable law without penalty.

(e)    All interest due hereunder shall be calculated on the basis of a 360 day year for the actual number of days elapsed.

(f)    All payments received by Mortgagee under this Mortgage shall be applied, unless another provision of this Mortgage explicitly provides otherwise with respect to a particular payment, first to interest then due and payable, then to Deposits then due and payable, then to Additional Payments then due and payable and then to principal.

(g)    No grant by Mortgagor to Mortgagee of any power of attorney provided in this Mortgage shall be construed as in any way relieving Mortgagor of the obligation to execute the document or perform the act that Mortgagee is authorized by the power of attorney to execute or perform in Mortgagor's name.

(h)    In any case where Mortgagor may be required pursuant to the terms of this Mortgage to furnish any document, statement, notice or writing of any kind, the document, statement, notice or writing, at the election of Mortgagee, shall be furnished in the form reasonably specified or supplied by Mortgagee.

(i)    This Mortgage contains the entire agreement between the parties with respect to the matters set forth herein and supersedes any prior understanding or agreement, oral or written, with respect thereto. This Mortgage cannot be changed or terminated orally, but only by an instrument in writing executed by Mortgagee and Mortgagor.

(j)    If any term or provision of this Mortgage or the application thereof to any person or circumstance shall, to any extent be invalid or unenforceable, the remainder of this Mortgage, or the application of such term or provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term and provision of this Mortgage shall be valid and be enforced to the fullest extent permitted by law.

(k)    Each and every power of attorney granted in this Mortgage (i) shall be deemed to be coupled with an interest, is irrevocable and shall survive the death, disability, incompetency or bankruptcy (to the maximum extent permitted by law) of Mortgagor, and (ii) shall be exercisable by each and every Person who at any time may be the Mortgagee, shall constitute a power of attorney granted by each and every Person who at any time may be the Mortgagor and shall continue to be binding upon and effective with respect to any Person who was and is no longer the Mortgagor to the extent that Mortgagee may need to execute documents or take action in such Person's name with respect to the Mortgaged Property.

(l)    Mortgagor waives trial by jury and the right to interpose any set-off or counterclaim whatsoever (other than mandatory counterclaims), in any action or proceeding to enforce any one or more of the provisions of this Mortgage and/or the Note, and agrees not to

44599281 v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019
NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 06/03/2019

seek consolidation or obtain a joint trial of any action or proceeding in which Mortgagor shall make a claim against Mortgagee of any nature or description.

(m)    Mortgagor hereby submits to the jurisdiction of the Supreme Court of the State of New York for any action or claim brought by the Mortgagee pursuant to this Mortgage and agrees to accept service by ordinary, registered or certified mail, whether or not return receipt is requested, sent to Mortgagor at its address for notices as provided in this Mortgage.

(n)    If Mortgagor shall be more than one Person, then all of the covenants and agreements of Mortgagor in this Mortgage shall be the joint and several covenants of each such Person.

(o)    Mortgagee, at Mortgagee's sole option and without any obligation to do so, may, at any time during the term of this Mortgage order an appraisal of the Mortgaged Property. All costs associated with the appraisal shall be at the cost and expense of Mortgagor, and shall be paid by Mortgagor on demand, or at Mortgagee's sole option, deducted from the Deposits held hereunder. Mortgagor shall cooperate with the appraiser in promptly providing access to the Mortgaged Property and in promptly supplying such information with respect to the Mortgaged Property as the appraiser may request.

(p)    Paragraph captions contained in this Mortgage are inserted only as a matter of convenience and for reference and in no way define, limit or extend or describe the scope of this Mortgage or the intent of any provision hereof.

(q)    The masculine gender shall include the feminine and neuter genders, and the singular shall include the plural, as appropriate or as the context shall require.

(r)    This Mortgage may be executed in several counterparts and all so executed shall constitute one Mortgage, binding on all the parties hereto, notwithstanding that all the parties are not signatories to the same counterparts.

(s)    This Mortgage shall be governed by, construed in accordance with, and enforced under, the laws of the State of New York, without regard to the principles of or conflicts of law of such state.

(t)    The agreements, terms, covenants and conditions herein shall run with the land and shall bind and inure to the benefit of Mortgagee and Mortgagor and their respective heirs, personal representatives, successors and, except as otherwise provided herein, assigns.

(u)    No grant by Mortgagor to Mortgagee of any power of attorney provided in this Mortgage shall be construed as in any way relieving Mortgagor of the obligation to execute the document or perform the act that Mortgagee is authorized by the power of attorney to execute or perform in Mortgagor's name.

34.    Relief From Bankruptcy Stay

(a)    Mortgagor agrees that, if Mortgagor, any guarantor of the Note or any of the persons or parties constituting Mortgagor or a guarantor of the Note shall (i) file with any

44599281v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the U.S. Code, as amended ("Bankruptcy Code"), (ii) be the subject of any order for relief issued under the Bankruptcy Code, (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, (iv) have sought or consented to or acquiesced in the appointment of any trustee, receiver, conservator, or liquidator, or (v) be the subject of any order, judgment, or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or relief for debtors, Mortgagee shall thereupon be entitled and Mortgagor irrevocably consents to immediate and unconditional relief from any automatic stay imposed by Section 362 of the Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to Mortgagee as provided for herein, in the Note, other loan documents delivered in connection herewith and as otherwise provided by law, and Mortgagor hereby irrevocably waives any right to object to such relief and will not contest any motion by Mortgagee seeking relief from the automatic stay, and acknowledges that no reorganization in bankruptcy is feasible.

(b)     Mortgagor waives its exclusive right pursuant to Section 1121(b) of the Bankruptcy Code to file a plan of reorganization and irrevocably consents to Mortgagee's filing a plan immediately upon the entry of an order for relief if an involuntary petition is filed against Mortgagor or upon the filing of a voluntary petition by Mortgagor. If Mortgagee shall move pursuant to Section 1121(d) of the Bankruptcy Code for an order reducing the 120-day exclusive period, Mortgagor shall not object to any such motion and Mortgagor waives any rights Mortgagor may have pursuant to Section 108(b) of the Bankruptcy Code.

35.       1-6 Residential Units.

_____   This Mortgage covers real property improved by one or two family dwelling only.

_X_   This Mortgage covers real property principally improved or to be improved by one or more structures containing in the aggregate not more than six (6) residential dwelling units each having its own separate cooking facilities.

_____   This Mortgage does not cover real property improved as described above.

[remainder of page intentionally left blank; signature page follows]

40

IN WITNESS WHEREOF, this agreement has been duly executed by the parties hereto.

**MORTGAGEE:**

S III CAPITAL GROUP LLC,
a Delaware limited liability company

By: _____
Name: Joshua Crane
Title: Authorized Signatory


STATE OF NEW YORK      )

                                        ) SS.:

COUNTY OF NEW YORK   )


On this 21 day of FEBRUARY, 2018, before me, the undersigned, personally appeared Joshua Crane, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public


[signatures continue on the following page]


EDWARD KIM
NOTARY PUBLIC-STATE OF NEW YORK
No. 01KI6315595
Qualified in Queens County
My Commission Expires November 24, 2018

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 06/03/2019

**MORTGAGOR:**

**1934 BEDFORD LLC,**
a New York limited liability company

By: _____

Name:  Arthur Gutman

Title:  Authorized Signatory

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

    On this 22nd day of February, 2018, before me, the undersigned, personally appeared Arthur Gutman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public

JOEL SANDER
Notary Public, State of New York
Registration #01SA6332466
Qualified In Kings County
Commission Expires Nov. 2, 2019

42

44599281v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 3

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

# SCHEDULE A

## Description of Land

Old Lot 60:
ALL that certain plot piece or parcel of land with the buildings and improvements thereon erected situate lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Bedford Avenue, distant 140 feet northerly for the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

RUNNING THENCE westerly parallel with Hawthorne Street 165 feet;

THENCE northerly at right angles to Hawthorne Street 28 feet 5 inches;

THENCE easterly in a straight line 164 feet 11 3/4 inches to a point on the westerly side of Bedford Avenue, distant 168 feet 2 3/8 inches northerly from the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

THENCE southerly along the westerly side of Bedford Avenue 28 feet 2 3/8 inches to the point or place of BEGINNING.

Old Lot 62:
All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York bounded and described as follows:

BEGINNING at a point on the westerly side of Bedford Avenue distant 106 feet northerly from the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

RUNNING THENCE westerly and parallel with Hawthorne Street 165 feet 1/4 inches;

THENCE northerly and parallel with Bedford Avenue, 34 feet;

THENCE easterly and parallel with Hawthorne Street 165 feet to the westerly side of Bedford Avenue;

THENCE southerly along the westerly side of Bedford Avenue 34 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:
Property Address: 1930- 1934 Bedford Avenue Brooklyn, NY
Block: 5042          Lot: 60 f/k/a Lot 60 & 62

43

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019

NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 06/03/2019

## SCHEDULE B

### Notes And Mortgages

#### Notes

1.  Note, dated February 19, 2016 made by 1934 Bedford LLC in favor of Congregation Bnai Jacob in the principal amount of $3,250,000.00.

2.  Gap Promissory Note, dated as of December 5, 2016, made by 1934 Bedford LLC in favor of S III Capital Group LLC in the principal amount of $2,750,000.00.

    Which notes 1 and 2 above were consolidated, restated and extended by a Consolidated, Restated and Extended Promissory Note, dated as of December 5, 2016, made by 1934 Bedford LLC in favor of S III Capital Group LLC in the consolidated principal amount of $6,000,000.00.

3.  Gap Promissory Note, dated as of the date hereof made by 1934 Bedford LLC in favor of S III Capital Group LLC in the principal amount of $2,000,000.00.

    Which notes 1, 2 and 3 above were consolidated, restated and extended by a Consolidated, Restated and Extended Promissory Note, dated as of the date hereof made by 1934 Bedford LLC in favor of S III Capital Group LLC in the consolidated principal amount of $8,000,000.00.

#### Mortgages

1.  Mortgage, dated February 19, 2016, securing the principal amount of $3,250,000, made by 1934 Bedford LLC in favor of Congregation Bnai Jacob and recorded in the Office of the City Register for the City of New York (Kings County) (the "**Register's Office**") on March 4, 2016 as CRFN 2016000074659; (Mortgage Tax Paid: $91,000.00).

    Which mortgage was assigned by Congregation Bnai Jacob to S III Capital Group LLC by an Assignment of Mortgage dated as of December 5, 2016 and duly submitted for recording in the Register's Office. Recorded: 12/20/16 on CRFN: 2016000450368

2.  Gap Mortgage, dated as of December 5, 2016, made by 1934 Bedford LLC in favor of S III Capital Group LLC, securing the original principal amount of $2,750,000.00, and recorded on December 20, 2016 as CRFN 2016000450369; (Mortgage Tax Paid: $77,000.00).

    Which mortgages 1 and 2 above were consolidated, restated and extended by a Mortgage Spreader, Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement, dated as of December 5, 2016, securing the consolidated principal amount of $6,000,000.00, made by and between 1934 Bedford

44

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

LLC and S III Capital Group LLC and recorded on December 20, 2016 as CRFN 2016000450370;

3. Gap Mortgage, dated as of the date hereof, made by 1934 Bedford LLC in favor of S III Capital Group LLC, securing the original principal amount of $2,000,000.00, and submitted for recording in the Register's Office; (Mortgage Tax Paid: $56,000.00).

Which mortgages 1, 2 and 3 above were consolidated, restated and extended by a Mortgage Spreader, Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement, dated as of the date hereof, securing the consolidated principal amount of $8,000,000.00, made by and between 1934 Bedford LLC and S III Capital Group LLC and submitted for recording in the Register's Office.

44599281v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019
NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 06/03/2019



**NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER**

2018022800520002001S28C2

| SUPPORTING DOCUMENT COVER PAGE | | PAGE 1 OF 1 |
|---|---|---|
| **Document ID: 2018022800520002** | Document Date: 02-22-2018 | Preparation Date: 02-28-2018 |
| Document Type: AGREEMENT | | |

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT    8

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
.NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

### SECTION 255 AFFIDAVIT
### MORTGAGE CONSOLIDATION MODIFICATION AND EXTENSION AGREEMENT
### AND ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

STATE OF NEW YORK    )
                       )   ss.:
COUNTY OF NEW YORK  )

**ARTHUR GUTMAN**, being duly sworn, deposes and says:

1.    That he is over the age of twenty-one years, and is an authorized signatory of **1934 BEDFORD LLC**, a New York limited liability company, having a place of business at c/o Gutman Weiss PC, 2276 65th Street, 2nd Floor, Brooklyn, New York 11204 ("Mortgagor"), the owner of the premises known as Block: 5042, Lot(s): 60 (f/k/a 60 and 62) in the Borough of Brooklyn, County of Kings, City and State of New York (the "Property"), as more particularly described in Schedule A annexed hereto and that he is fully familiar with the facts set forth herein.

2.    Mortgagor is a party to a certain Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement (which agreement consolidated the mortgages identified therein, collectively, the "**Mortgage**"), dated as of the date hereof, securing the principal amount of $8,000,000.00, made by Mortgagor to S III CAPITAL GROUP LLC, a Delaware limited liability company, having a place of business at 444 Madison Avenue, 41st Floor, New York, New York 10022 ("**Mortgagee**"). The Mortgage encumbers the Property.

3.    The maximum aggregate principal amount of indebtedness that is or may under any contingency be secured by the Mortgage is $8,000,000.00 plus accrued interest.

4.    The mortgage recording taxes as set forth on **Schedule B**, annexed hereto and made a part hereof, with respect to the Mortgage have been duly paid in full.

5.    That said Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement offered for recording does not create or secure any new or further indebtedness or obligation other than the principal indebtedness secured by or which under any contingency may be secured by the Mortgage.

[Signature(s) follow.]

**WHEREFORE**, as of this 22nd day of February, 2018, deponent respectfully requests that the Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement now offered for recording be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the Tax Law of the State of New York insofar as it does not create any new indebtedness.

_____
Arthur Gutman

Sworn to before me this
22nd day of February, 2018

_____
Notary Public

JOEL SANDER
Notary Public, State of New York
Registration #01SA6332466
Qualified In Kings County
Commission Expires Nov. 2, 2019

Section 255 Affidavit (Assignment of Leases and Rents)
44600220v.1

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

## SCHEDULE A

### LEGAL DESCRIPTION

Old Lot 60:
ALL that certain plot piece or parcel of land with the buildings and improvements thereon erected situate lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Bedford Avenue, distant 140 feet northerly for the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

RUNNING THENCE westerly parallel with Hawthorne Street 165 feet;

THENCE northerly at right angles to Hawthorne Street 28 feet 5 inches;

THENCE easterly in a straight line 164 feet 11 3/4 inches to a point on the westerly side of Bedford Avenue, distant 168 feet 2 3/8 inches northerly from the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

THENCE southerly along the westerly side of Bedford Avenue 28 feet 2 3/8 inches to the point or place of BEGINNING.

Old Lot 62:
All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York bounded and described as follows:

BEGINNING at a point on the westerly side of Bedford Avenue distant 106 feet northerly from the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

RUNNING THENCE westerly and parallel with Hawthorne Street 165 feet 1/4 inches;

THENCE northerly and parallel with Bedford Avenue, 34 feet;

THENCE easterly and parallel with Hawthorne Street 165 feet to the westerly side of Bedford Avenue;

THENCE southerly along the westerly side of Bedford Avenue 34 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:
Property Address: 1930- 1934 Bedford Avenue Brooklyn, NY
Block: 5042          Lot: 60 f/k/a Lot 60 & 62

3

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

## SCHEDULE B

1. Mortgage, dated February 19, 2016, securing the principal amount of $3,250,000, made by 1934 Bedford LLC in favor of Congregation Bnai Jacob and recorded in the Office of the City Register for the City of New York (Kings County) (the "**Register's Office**") on March 4, 2016 as CRFN 2016000074659; (Mortgage Tax Paid: $91,000.00).

   Which mortgage was assigned by Congregation Bnai Jacob to S III Capital Group LLC by an Assignment of Mortgage dated as of December 5, 2016 and duly submitted for recording in the Register's Office. Recorded: 12/20/16 on CRFN: 2016000450368

2. Gap Mortgage, dated as of December 5, 2016, made by 1934 Bedford LLC in favor of S III Capital Group LLC, securing the original principal amount of $2,750,000.00, and recorded on December 20, 2016 as CRFN 2016000450369; (Mortgage Tax Paid: $77,000.00).

   Which mortgages 1 and 2 above were consolidated, restated and extended by a Mortgage Spreader, Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement, dated as of December 5, 2016, securing the consolidated principal amount of $6,000,000.00, made by and between 1934 Bedford LLC and S III Capital Group LLC and recorded on December 20, 2016 as CRFN 2016000450370;

3. Gap Mortgage, dated as of the date hereof, made by 1934 Bedford LLC in favor of S III Capital Group LLC, securing the original principal amount of $2,000,000.00, and submitted for recording in the Register's Office; (Mortgage Tax Paid: $56,000.00).

   Which mortgages 1, 2 and 3 above were consolidated, restated and extended by a Mortgage Spreader, Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement, dated as of the date hereof, securing the consolidated principal amount of $8,000,000.00, made by and between 1934 Bedford LLC and S III Capital Group LLC and submitted for recording in the Register's Office.

4

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

## SECTION 255 AFFIDAVIT
## MORTGAGE CONSOLIDATION MODIFICATION AND EXTENSION AGREEMENT
## AND ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

STATE OF NEW YORK   )
                             )    ss.:
COUNTY OF NEW YORK  )

**ARTHUR GUTMAN**, being duly sworn, deposes and says:

1.      That he is over the age of twenty-one years, and is an authorized signatory of **1934 BEDFORD LLC**, a New York limited liability company, having a place of business at c/o Gutman Weiss PC, 2276 65th Street, 2nd Floor, Brooklyn, New York 11204 ("Mortgagor"), the owner of the premises known as Block: 5042, Lot(s): 60 (f/k/a 60 and 62) in the Borough of Brooklyn, County of Kings, City and State of New York (the "Property"), as more particularly described in Schedule A annexed hereto and that he is fully familiar with the facts set forth herein.

2.      Mortgagor is a party to a certain Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement (which agreement consolidated the mortgages identified therein, collectively, the "**Mortgage**"), dated as of the date hereof, securing the principal amount of $8,000,000.00, made by Mortgagor to **S III CAPITAL GROUP LLC**, a Delaware limited liability company, having a place of business at 444 Madison Avenue, 41st Floor, New York, New York 10022 ("**Mortgagee**"). The Mortgage encumbers the Property.

3.      The maximum aggregate principal amount of indebtedness that is or may under any contingency be secured by the Mortgage is $8,000,000.00 plus accrued interest.

4.      The mortgage recording taxes as set forth on **Schedule B**, annexed hereto and made a part hereof, with respect to the Mortgage have been duly paid in full.

5.      That said Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement offered for recording does not create or secure any new or further indebtedness or obligation other than the principal indebtedness secured by or which under any contingency may be secured by the Mortgage.

[Signature(s) follow.]

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 3

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

**WHEREFORE**, as of this 22nd day of February, 2018, deponent respectfully requests that the Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement now offered for recording be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the Tax Law of the State of New York insofar as it does not create any new indebtedness.

Arthur Gutman

Sworn to before me this
22nd day of February, 2018

Notary Public

JOEL SANDER
Notary Public, State of New York
Registration #01SA6332466
Qualified In Kings County
Commission Expires Nov. 2, 2019

2

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
INDEX NO. 512224/2019

NYSCEF DOC. NO. 3

RECEIVED NYSCEF: 06/03/2019

## SCHEDULE A

## LEGAL DESCRIPTION

Old Lot 60:

ALL that certain plot piece or parcel of land with the buildings and improvements thereon erected situate lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Bedford Avenue, distant 140 feet northerly for the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

RUNNING THENCE westerly parallel with Hawthorne Street 165 feet;

THENCE northerly at right angles to Hawthorne Street 28 feet 5 inches;

THENCE easterly in a straight line 164 feet 11 3/4 inches to a point on the westerly side of Bedford Avenue, distant 168 feet 2 3/8 inches northerly from the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

THENCE southerly along the westerly side of Bedford Avenue 28 feet 2 3/8 inches to the point or place of BEGINNING.

Old Lot 62:

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York bounded and described as follows:

BEGINNING at a point on the westerly side of Bedford Avenue distant 106 feet northerly from the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

RUNNING THENCE westerly and parallel with Hawthorne Street 165 feet 1/4 inches;

THENCE northerly and parallel with Bedford Avenue, 34 feet;

THENCE easterly and parallel with Hawthorne Street 165 feet to the westerly side of Bedford Avenue;

THENCE southerly along the westerly side of Bedford Avenue 34 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:

Property Address: 1930- 1934 Bedford Avenue Brooklyn, NY

Block: 5042            Lot: 60 f/k/a Lot 60 & 62

3

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 3

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

## SCHEDULE B

1. Mortgage, dated February 19, 2016, securing the principal amount of $3,250,000, made by 1934 Bedford LLC in favor of Congregation Bnai Jacob and recorded in the Office of the City Register for the City of New York (Kings County) (the "**Register's Office**") on March 4, 2016 as CRFN 2016000074659; (Mortgage Tax Paid: $91,000.00).

   Which mortgage was assigned by Congregation Bnai Jacob to S III Capital Group LLC by an Assignment of Mortgage dated as of December 5, 2016 and duly submitted for recording in the Register's Office. Recorded: 12/20/16 on CRFN: 2016000450368

2. Gap Mortgage, dated as of December 5, 2016, made by 1934 Bedford LLC in favor of S III Capital Group LLC, securing the original principal amount of $2,750,000.00, and recorded on December 20, 2016 as CRFN 2016000450369; (Mortgage Tax Paid: $77,000.00).

   Which mortgages 1 and 2 above were consolidated, restated and extended by a Mortgage Spreader, Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement, dated as of December 5, 2016, securing the consolidated principal amount of $6,000,000.00, made by and between 1934 Bedford LLC and S III Capital Group LLC and recorded on December 20, 2016 as CRFN 2016000450370;

3. Gap Mortgage, dated as of the date hereof, made by 1934 Bedford LLC in favor of S III Capital Group LLC, securing the original principal amount of $2,000,000.00, and submitted for recording in the Register's Office; (Mortgage Tax Paid: $56,000.00).

   Which mortgages 1, 2 and 3 above were consolidated, restated and extended by a Mortgage Spreader, Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement, dated as of the date hereof, securing the consolidated principal amount of $8,000,000.00, made by and between 1934 Bedford LLC and S III Capital Group LLC and submitted for recording in the Register's Office.

**FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM**    INDEX NO. 512224/2019

NYSCEF DOC. NO. 7    RECEIVED NYSCEF: 06/03/2019

## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2019052801008001001E5E1D

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 5 |
|---|---|

**Document ID:** 2019052801008001    Document Date: 05-10-2019    Preparation Date: 05-28-2019
**Document Type:** ASSIGNMENT, MORTGAGE
**Document Page Count:** 3

| PRESENTER: | RETURN TO: |
|---|---|
| BETTER RESEARCH LLC<br>1 PARAGON DRIVE - RALS-36265-NY<br>SUITE 150B<br>MONTVALE, NJ 07645<br>REC@BETTERTITLERESEARCH.COM | BETTER RESEARCH LLC<br>1 PARAGON DRIVE - RALS-36265-NY<br>SUITE 150B<br>MONTVALE, NJ 07645<br>REC@BETTERTITLERESEARCH.COM |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 5042 | 1101 | Entire Lot | CF | 1930 BEDFORD AVENUE |

**Property Type:** COMMERCIAL CONDO UNIT(S)

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 5042 | 1102 | Entire Lot | RS | 1930 BEDFORD AVENUE |

**Property Type:** BULK SALE OF CONDOMINIUMS

### CROSS REFERENCE DATA

**CRFN:** 2016000074659
☒ Additional Cross References on Continuation Page

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| S3 RE FUNDING III LLC<br>444 MADISON AVENUE, 41ST FLOOR<br>NEW YORK, NY 10022 | 1930 BEDFORD AVE LLC<br>C/O ANDRIOLA LAW, PLLC, 1385 BROADWAY, 22ND FLOOR<br>NEW YORK, NY 10018 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | RECORDED OR FILED IN THE OFFICE | |
| MTA: | $ | 0.00 | OF THE CITY REGISTER OF THE | |
| NYCTA: | $ | 0.00 | CITY OF NEW YORK | |
| Additional MRT: | $ | 0.00 | Recorded/Filed  05-31-2019 10:26 | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 61.00 | 2019000169877 | |
| Affidavit Fee: | $ | 0.00 | | |

*Annette M. Hill*

*City Register Official Signature*

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 7

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2019052801008001001C5C9D

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 5 |
|---|---|---|
| Document ID: 2019052801008001 | Document Date: 05-10-2019 | Preparation Date: 05-28-2019 |
| Document Type: ASSIGNMENT, MORTGAGE | | |

**CROSS REFERENCE DATA**
**CRFN:** 2016000450369
**CRFN:** 2018000073252

## ASSIGNMENT OF MORTGAGE

**KNOW ALL MEN BY THESE PRESENTS** that **S3 RE FUNDING III LLC**, a Delaware limited liability company ("**Assignor**") with an office and place of business located at 444 Madison Avenue, 41st Floor, New York, New York 10022, in consideration of $10.00 and other good and valuable consideration paid by **1930 BEDFORD AVE LLC**, a New York limited liability company, having an address at c/o Andriola Law, PLLC, 1385 Broadway, 22nd Floor, New York, New York 10018 ("**Assignee**"), hereby assigns unto Assignee all of its right, title and interest in and to the mortgage set forth in **Schedule A** annexed hereto and made a part hereof (the "**Mortgage**"), together with the bonds, notes or other obligations described in the Mortgage and the monies due and to become due thereon, including interest, from and after the date hereof.

The Mortgage covers premises located at Block: 5042, Lots: 1101 and 1102, F/K/A Lot: 60 in the Borough of Brooklyn, County of Kings, City and State of New York, commonly known as 1930-1934 Bedford Avenue, Brooklyn, NY.

**THIS ASSIGNMENT OF MORTGAGE IS MADE WITHOUT ANY REPRESENTATION, WARRANTY AND RECOURSE WHATSOEVER.**

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

**TO HAVE AND TO HOLD** the same unto Assignee, and to the successors, legal representatives and assigns of Assignee forever.

[signature page follows]

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM                    INDEX NO. 512224/2019
NYSCEF DOC. NO. 7                                                            RECEIVED NYSCEF: 06/03/2019

**IN WITNESS WHEREOF**, Assignor has hereunto set its hand and seal this 10th day of May, 2019.

ASSIGNOR:

**S3 RE FUNDING III LLC,**
a Delaware limited liability company

By: _____
Name: Robert Schwartz
Title: Authorized Signatory

STATE OF NEW YORK          )
                           )ss:
COUNTY OF NEW YORK         )

On the 10 day of May, in the year 2019, before me, personally appeared Robert Schwartz, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Edward Kim
Notary Public - State of New York
No.01KI6315595
Qualified in New York County
My Commission Expires November 24, 20 22

Signature Page to Assignment of Mortgage

## SCHEDULE A

### Mortgages

1. Mortgage dated February 19, 2016 in the original principal amount of $3,250,000.00 made by 1934 Bedford LLC in favor of Congregation Bnai Jacob and recorded in the Office of the City Register for the City of New York (Kings County) (the "Register's Office") on March 4, 2016 as CRFN 2016000074659; (Mortgage Tax Paid: $91,000.00);

   Which mortgage was assigned by Congregation Bnai Jacob to S III Capital Group LLC by an Assignment of Mortgage dated as of December 5, 2016 and recorded in the Register's Office on December 20, 2016 as CRFN 2016000450368.

2. Gap Mortgage dated as of December 5, 2016 made by 1934 Bedford LLC in favor of S III Capital Group LLC in the original principal amount of $2,750,000.00 and recorded in the Register's Office on December 20, 2016 as CRFN 2016000450369; (Mortgage Tax Paid: $77,000.00);

   Which mortgages 1 and 2 above were consolidated, restated and extended by a Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement dated as of December 5, 2016 in the consolidated principal amount of $6,000,000.00 made by and between 1934 Bedford LLC and S III Capital Group LLC and recorded in the Register's Office on December 20, 2016 as CRFN 2016000450370.

3. Gap Mortgage dated as of February 22, 2018 made by 1934 Bedford LLC in favor of S III Capital Group LLC in the original principal amount of $2,000,000.00 and recorded in the Register's Office on March 2, 2018 as CRFN 2018000073252; (Mortgage Tax Paid: $56,000.00);

   Which mortgages 1,2 and 3 above were consolidated, restated and extended by a Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement dated as of February 22, 2018 in the consolidated principal amount of $8,000,000.00 made by and between 1934 Bedford LLC and S III Capital Group LLC and recorded in the Register's Office on March 2, 2018 as CRFN 2018000073253;

   Which mortgage was assigned by S III Capital Group LLC to S3 RE Funding III LLC by an Assignment of Mortgage dated as of August 8, 2018 and recorded in the Register's Office on August 28, 2018 as CRFN 2018000288023.

**FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM**                INDEX NO. 512224/2019

NYSCEF DOC. NO. 7                                                RECEIVED NYSCEF: 06/03/2019



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2019052801008002001E5E59

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 6 |
|---|---|

**Document ID:** 2019052801008002    Document Date: 05-10-2019    Preparation Date: 05-28-2019
**Document Type:** ASSIGNMENT, MORTGAGE
**Document Page Count:** 4

| PRESENTER: | RETURN TO: |
|---|---|
| BETTER RESEARCH LLC | BETTER RESEARCH LLC |
| 1 PARAGON DRIVE - RALS-36265-NY | 1 PARAGON DRIVE - RALS-36265-NY |
| SUITE 150B | SUITE 150B |
| MONTVALE, NJ 07645 | MONTVALE, NJ 07645 |
| REC@BETTERTITLERESEARCH.COM | REC@BETTERTITLERESEARCH.COM |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 5042 | 1101 | Entire Lot | CF | 1930 BEDFORD AVENUE |

**Property Type:** COMMERCIAL CONDO UNIT(S)

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 5042 | 1102 | Entire Lot | RS | 1930 BEDFORD AVENUE |

**Property Type:** BULK SALE OF CONDOMINIUMS

**CROSS REFERENCE DATA**

**CRFN:** 2016000450366
☒ Additional Cross References on Continuation Page

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| S3 RE FUNDING III LLC | 1930 BEDFORD AVE LLC |
| 444 MADISON AVENUE, 41ST FLOOR | C/O ANDRIOLA LAW, PLLC, 1385 BROADWAY, 22ND |
| NEW YORK, NY 10022 | FLOOR |
| | NEW YORK, NY 10018 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 69.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed    05-31-2019 10:26
City Register File No.(CRFN):
**2019000169878**

*Annette M. Hill*

*City Register Official Signature*

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

**NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER**



2019052801008002001C5CD9

## RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)  PAGE 2 OF 6

| | | |
|---|---|---|
| **Document ID: 2019052801008002** | Document Date: 05-10-2019 | Preparation Date: 05-28-2019 |
| Document Type: ASSIGNMENT, MORTGAGE | | |

**CROSS REFERENCE DATA**
**CRFN:** 2018000073255

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM     INDEX NO. 512224/2019
NYSCEF DOC. NO. 7                                 RECEIVED NYSCEF: 06/03/2019

# ASSIGNMENT OF MORTGAGE

made by

### S3 RE FUNDING III LLC, Assignor

to

### 1930 BEDFORD AVE LLC, Assignee

**The within premises lie in:**

**1930-1934 Bedford Avenue
Brooklyn, NY**

**Block: 5042
Lots: 1101 and 1102, F/K/A Lot: 60**

**Borough of Brooklyn
County of Kings
City and State of New York**

**Dated as of: May 10th, 2019**

AA

### RECORD AND RETURN TO:

**Andriola Law, PLLC
1385 Broadway, 22nd Floor
New York, New York 10018
Attn: James M. Andriola, Esq,**

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 7

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

## ASSIGNMENT OF MORTGAGE

**KNOW ALL MEN BY THESE PRESENTS** that **S3 RE FUNDING III LLC**, a Delaware limited liability company ("**Assignor**") with an office and place of business located at 444 Madison Avenue, 41st Floor, New York, New York 10022, in consideration of $10.00 and other good and valuable consideration paid by **1930 BEDFORD AVE LLC**, a New York limited liability company, having an address at c/o Andriola Law, PLLC, 1385 Broadway, 22nd Floor, New York, New York 10018 ("**Assignee**"), hereby assigns unto Assignee all of its right, title and interest in and to the mortgage set forth in **Schedule A** annexed hereto and made a part hereof (the "**Mortgage**"), together with the bonds, notes or other obligations described in the Mortgage and the monies due and to become due thereon, including interest, from and after the date hereof.

The Mortgage covers premises located at Block: 5042, Lots: 1101 and 1102, F/K/A Lot: 60 in the Borough of Brooklyn, County of Kings, City and State of New York, commonly known as 1930-1934 Bedford Avenue, Brooklyn, NY.

**THIS ASSIGNMENT OF MORTGAGE IS MADE WITHOUT ANY REPRESENTATION, WARRANTY AND RECOURSE WHATSOEVER.**

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

**TO HAVE AND TO HOLD** the same unto Assignee, and to the successors, legal representatives and assigns of Assignee forever.

[signature page follows]

**IN WITNESS WHEREOF**, Assignor has hereunto set its hand and seal this 10th day of May, 2019.

**ASSIGNOR:**

**S3 RE FUNDING III LLC,**
a Delaware limited liability company

By: _____
Name: Robert Schwartz
Title: Authorized Signatory

STATE OF NEW YORK          )
                                                )ss:
COUNTY OF NEW YORK       )

On the 10 day of May, in the year 2019, before me, personally appeared Robert Schwartz, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Edward Kim
Notary Public - State of New York
No.01KI6315595
Qualified in New York County
My Commission Expires November 24, 20 22

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 7

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

## SCHEDULE A

### Mortgages

1. Building Loan Mortgage and Assignment of Leases and Rents and Security Agreement dated December 5, 2016 in the original principal amount of $6,500,000.00 made by 1934 Bedford LLC in favor of S III Capital Group LLC and recorded in the Office of the City Register for the City of New York (Kings County) (the "Register's Office") on December 20, 2016 as CRFN 2016000450366; (Mortgage Tax Paid: $182,000.00);

2. Gap Building Loan Mortgage dated as of February 22, 2018 made by 1934 Bedford LLC in favor of S III Capital Group LLC in the original principal amount of $500,000.00 and recorded in the Register's Office on March 2, 2018 as CRFN 2018000073255; (Mortgage Tax Paid: $14,000.00);

Which mortgages 1 and 2 above were consolidated, restated and extended by a Building Loan Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement dated as of February 22, 2018 in the consolidated principal amount of $7,000,000.00 made by and between 1934 Bedford LLC and S III Capital Group LLC and recorded in the Register's Office on March 2, 2018 as CRFN 2018000073256;

Which mortgage was assigned by S III Capital Group LLC to S3 RE Funding III LLC by an Assignment of Mortgage dated as of August 8, 2018 and recorded in the Register's Office on August 28, 2018 as CRFN 2018000288025.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2018082700777001001E9246

## RECORDING AND ENDORSEMENT COVER PAGE                    PAGE 1 OF 7

| | | |
|---|---|---|
| Document ID: 2018082700777001 | Document Date: 08-08-2018 | Preparation Date: 08-27-2018 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 5 | | |

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| GOTHAM ABSTRACT & SETTLEMENT, LLC | SEYFARTH SHAW LLP |
| 370 LEXINGTON AVENUE, SUITE 800 | 620 8TH AVENUE |
| NEW YORK, NY 10017 | NEW YORK, NY 10018 |
| 212-767-0707 | |
| RECORDINGS@GOTHAMABSTRACT.COM | |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5042 | 60 | Entire Lot | 1930-1934 BEDFORD AVENUE |

Property Type: APARTMENT BUILDING

### CROSS REFERENCE DATA

CRFN: 2016000074659
☒ Additional Cross References on Continuation Page

### PARTIES

| **ASSIGNOR/OLD LENDER:** | **ASSIGNEE/NEW LENDER:** |
|---|---|
| S III CAPITAL GROUP LLC | S3 RE FUNDING III LLC |
| 444 MADISON AVENUE, 41ST FL | 444 MADISON AVENUE, 41ST FL |
| NEW YORK, NY 10022 | NEW YORK, NY 10022 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 62.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed          08-28-2018 09:26
City Register File No.(CRFN):
                        2018000288023

*Annette M Hill*

*City Register Official Signature*

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019
NYSCEF DOC. NO. 6                                                    RECEIVED NYSCEF: 06/03/2019

---

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2018082700777001001C90C6

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 7 |
|---|---|

**Document ID:** 2018082700777001     Document Date: 08-08-2018        Preparation Date: 08-27-2018
Document Type: ASSIGNMENT, MORTGAGE

**CROSS REFERENCE DATA**
**CRFN:** 2016000450368
**CRFN:** 2016000450369
**CRFN:** 2016000450370
**CRFN:** 2018000073252
**CRFN:** 2018000073253

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM          INDEX NO. 512224/2019
NYSCEF DOC. NO. 6                                       RECEIVED NYSCEF: 06/03/2019

# ASSIGNMENT OF MORTGAGE

## S III CAPITAL GROUP LLC

(Assignor)

to

## S3 RE FUNDING III LLC

(Assignee)

(w)
Dated as of _August 8_, 2018
+ Effective

| | |
|---|---|
| Premises: | 1930 and 1934 Bedford Avenue<br>Brooklyn, New York 11225 |
| Block: | 5042 |
| Lots: | 60 (f/k/a 60 and 62) |
| County of: | Kings (the "**County**") |
| State of: | New York (the "**State**") |

47765785v.247765785v.2

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM    INDEX NO. 512224/2019
NYSCEF DOC. NO. 6                                RECEIVED NYSCEF: 06/03/2019

## ASSIGNMENT OF MORTGAGE

S III CAPITAL GROUP LLC, a Delaware limited liability company, whose address is 444 Madison Avenue, 41st Floor, New York, New York 10022 (the "**Assignor**") in consideration of One Dollar ($1.00) and other good and valuable consideration paid by S3 RE FUNDING III LLC, a Delaware limited liability company, whose address is 444 Madison Avenue, 41st Floor, New York, New York 10022 (the "**Assignee**"), hereby endorses, assigns, sells, transfers and delivers to Assignee, its successors, participants and assigns, all right, title and interest of Assignor in and to those certain mortgage(s) set forth in Exhibit A attached hereto and made a part hereof by this reference (the "**Mortgage**"), encumbering the property described in Exhibit B attached hereto and made a part hereof by this reference;

TOGETHER WITH any and all notes and obligations therein described, the debt and claims secured thereby and all sums of money due and to become due thereon, with interest provided for therein, and Assignor hereby irrevocably appoints Assignee hereunder its attorney to collect and receive such debt, and to foreclose, enforce and satisfy the foregoing the same as it might or could have done were these presents not executed, but at the cost and expense of Assignee; and

TOGETHER WITH any and all other liens, privileges, security interests, rights, entitlements, equities, claims and demands as to which Assignor hereunder possesses or to which Assignor is otherwise entitled as additional security for the payment of the notes and other obligations described herein.

This Assignment shall be governed in all respects by the laws of the State and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

[NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, Assignor has caused this instrument to be executed by its duly authorized officer as of as of the day and year first above written.

S III CAPITAL GROUP LLC,
a Delaware limited liability company

By: _____
Name: Joshua Crane
Title: Authorized Person

STATE OF NEW YORK          )
                           ) SS:
COUNTY OF NEW YORK         )

On this 30th day of July, in the year 2018, before me, the undersigned, a Notary Public in and for said state, personally appeared Joshua Crane, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

PHILIP TSOUKANOV
Notary Public, State of New York
# 01TS6338837
Qualified in Westchester County
Commission Expires 03/21/20 _20_

_____
Notary Public

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 6

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

EXHIBIT A

(Mortgage Schedule)

1.  Mortgage, dated February 19, 2016, securing the principal amount of $3,250,000, made by 1934 Bedford LLC in favor of Congregation Bnai Jacob and recorded in the Office of the City Register for the City of New York (Kings County) (the "**Register's Office**") on March 4, 2016, as CRFN 2016000074659; (Mortgage Tax Paid: $91,000.00).

    Which mortgage was assigned by Congregation Bnai Jacob to S III Capital Group LLC by an Assignment of Mortgage dated as of December 5, 2016, and duly submitted for recording in the Register's Office on December 20, 2016, as CRFN 2016000450368.

2.  Gap Mortgage, dated as of December 5, 2016, made by 1934 Bedford LLC in favor of S III Capital Group LLC, securing the original principal amount of $2,750,000.00, and recorded on December 20, 2016, as CRFN 2016000450369; (Mortgage Tax Paid: $77,000.00).

    Which mortgages 1 and 2 above were consolidated, restated and extended by a Mortgage Spreader, Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement, dated as of December 5, 2016, securing the consolidated principal amount of $6,000,000.00, made by and between 1934 Bedford LLC and S III Capital Group LLC and recorded on December 20, 2016, as CRFN 2016000450370;

3.  Gap Mortgage, dated as of February 22, 2018, made by 1934 Bedford LLC in favor of S III Capital Group LLC, securing the original principal amount of $2,000,000.00, and recorded in the Register's Office on March 2, 2018, as CRFN 2018000073252; (Mortgage Tax Paid: $56,000.00).

    Which mortgages 1, 2 and 3 above were consolidated, restated and extended by a Mortgage Spreader, Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement, dated as of February 22, 2018, securing the consolidated principal amount of $8,000,000.00, made by and between 1934 Bedford LLC and S III Capital Group LLC and recorded in the Register's Office on March 2, 2018, as CRFN 2018000073253.

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 6

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

## EXHIBIT B

### (Legal Description)

Old Lot 60:

ALL that certain plot piece or parcel of land with the buildings and improvements thereon erected situate lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Bedford Avenue, distant 140 feet northerly for the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

RUNNING THENCE westerly parallel with Hawthorne Street 165 feet;

THENCE northerly at right angles to Hawthorne Street 28 feet 5 inches;

THENCE easterly in a straight line 164 feet 11 3/4 inches to a point on the westerly side of Bedford Avenue, distant 168 feet 2 3/8 inches northerly from the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

THENCE southerly along the westerly side of Bedford Avenue 28 feet 2 3/8 inches to the point or place of BEGINNING.

Old Lot 62:

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York bounded and described as follows:

BEGINNING at a point on the westerly side of Bedford Avenue distant 106 feet northerly from the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

RUNNING THENCE westerly and parallel with Hawthorne Street 165 feet 1/4 inches;

THENCE northerly and parallel with Bedford Avenue, 34 feet;

THENCE easterly and parallel with Hawthorne Street 165 feet to the westerly side of Bedford Avenue;

THENCE southerly along the westerly side of Bedford Avenue 34 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:

Property Address: 1930- 1934 Bedford Avenue Brooklyn, NY

Block: 5042          Lot: 60 f/k/a Lot 60 & 62

**FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM**        INDEX NO. 512224/2019

NYSCEF DOC. NO. 6                                         RECEIVED NYSCEF: 06/03/2019

## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2018082700777003001E523F

### RECORDING AND ENDORSEMENT COVER PAGE                PAGE 1 OF 7

| | | |
|---|---|---|
| **Document ID:** 2018082700777003 | Document Date: 08-08-2018 | Preparation Date: 08-27-2018 |
| **Document Type:** ASSIGNMENT, MORTGAGE | | |
| **Document Page Count:** 5 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| GOTHAM ABSTRACT & SETTLEMENT, LLC<br>370 LEXINGTON AVENUE, SUITE 800<br>NEW YORK, NY 10017<br>212-767-0707<br>RECORDINGS@GOTHAMABSTRACT.COM | SEYFARTH SHAW LLP<br>620 8TH AVENUE<br>NEW YORK, NY 10018 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5042 | 60 | Entire Lot | 1930-1934 BEDFORD AVENUE |
| **Property Type:** | APARTMENT BUILDING | | | |

### CROSS REFERENCE DATA

CRFN:    2016000450366
☒ Additional Cross References on Continuation Page

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| S III CAPITAL GROUP LLC<br>444 MADISON AVENUE, 41ST FL<br>NEW YORK, NY 10022 | S3 RE FUNDING III LLC<br>444 MADISON AVENUE, 41ST FL<br>NEW YORK, NY 10022 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 62.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed        08-28-2018 09:26
City Register File No.(CRFN):
                2018000288025

*Annette M Hill*

*City Register Official Signature*

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 6

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2018082700777003001C50BF

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 7 |
|---|---|

| | | |
|---|---|---|
| Document ID: 2018082700777003 | Document Date: 08-08-2018 | Preparation Date: 08-27-2018 |
| Document Type: ASSIGNMENT, MORTGAGE | | |

**CROSS REFERENCE DATA**
**CRFN:** 2018000073255
**CRFN:** 2018000073256

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 6

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

# ASSIGNMENT OF MORTGAGE

## S III CAPITAL GROUP LLC

(Assignor)

to

## S3 RE FUNDING III LLC

(Assignee)

Dated as of _August 8_, 2018
+ Effective

| | |
|---|---|
| Premises: | 1930 and 1934 Bedford Avenue<br>Brooklyn, New York 11225 |
| Block: | 5042 |
| Lots: | 60 (f/k/a 60 and 62) |
| County of: | Kings (the "**County**") |
| State of: | New York (the "**State**") |

47765785v.2

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM INDEX NO. 512224/2019

NYSCEF DOC. NO. 6 RECEIVED NYSCEF: 06/03/2019

## ASSIGNMENT OF MORTGAGE

S III CAPITAL GROUP LLC, a Delaware limited liability company, whose address is 444 Madison Avenue, 41st Floor, New York, New York 10022 (the "**Assignor**") in consideration of One Dollar ($1.00) and other good and valuable consideration paid by S3 RE FUNDING III LLC, a Delaware limited liability company, whose address is 444 Madison Avenue, 41st Floor, New York, New York 10022 (the "**Assignee**"), hereby endorses, assigns, sells, transfers and delivers to Assignee, its successors, participants and assigns, all right, title and interest of Assignor in and to those certain mortgage(s) set forth in Exhibit A attached hereto and made a part hereof by this reference (the "**Mortgage**"), encumbering the property described in Exhibit B attached hereto and made a part hereof by this reference;

TOGETHER WITH any and all notes and obligations therein described, the debt and claims secured thereby and all sums of money due and to become due thereon, with interest provided for therein, and Assignor hereby irrevocably appoints Assignee hereunder its attorney to collect and receive such debt, and to foreclose, enforce and satisfy the foregoing the same as it might or could have done were these presents not executed, but at the cost and expense of Assignee; and

TOGETHER WITH any and all other liens, privileges, security interests, rights, entitlements, equities, claims and demands as to which Assignor hereunder possesses or to which Assignor is otherwise entitled as additional security for the payment of the notes and other obligations described herein.

This Assignment shall be governed in all respects by the laws of the State and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

[NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, Assignor has caused this instrument to be executed by its duly authorized officer as of as of the day and year first above written.

S III CAPITAL GROUP LLC,
a Delaware limited liability company

By: _____

Name: Joshua Crane

Title: Authorized Person

STATE OF NEW YORK        )
                         ) SS:
COUNTY OF NEW YORK       )

On this 30th day of July, in the year 2018, before me, the undersigned, a Notary Public in and for said state, personally appeared Joshua Crane, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

PHILIP TSOUKANOV
Notary Public, State of New York
# 01TS6338837
Qualified in Westchester County
Commission Expires 03/21/20 20

_____
Notary Public

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
INDEX NO. 512224/2019

NYSCEF DOC. NO. 6

RECEIVED NYSCEF: 06/03/2019

EXHIBIT A

(Mortgage Schedule)

1. Building Loan Mortgage and Assignment of Leases and Rents and Security Agreement, dated December 5, 2016, securing the principal amount of $6,500,000.00, made by 1934 Bedford LLC, in favor of S III Capital Group LLC and recorded in the Office of the City Register for the City of New York (Kings County) (the "**Register's Office**") on December 20, 2016, as 2016000450366; (Mortgage Tax Paid: $182,000.00).

2. Gap Building Loan Mortgage, dated February 22, 2018, made by 1934 Bedford LLC in favor of S III CAPITAL GROUP LLC in the original principal amount of $500,000.00, and recorded in the Register's Office on March 2, 2018 as CRFN 2018000073255; (Mortgage Tax Paid: $14,000.00).

Which mortgages 1 and 2 above were consolidated, restated and extended by a Building Loan Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement, dated February 22, 2018, in the consolidated principal amount of $7,000,000.00, made by and between 1934 Bedford LLC and S III CAPITAL GROUP LLC and recorded in the Register's Office on March 2, 2018, as CRFN 2018000073256.

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 6

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

## EXHIBIT B

### (Legal Description)

Old Lot 60:
ALL that certain plot piece or parcel of land with the buildings and improvements thereon erected situate lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Bedford Avenue, distant 140 feet northerly for the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

RUNNING THENCE westerly parallel with Hawthorne Street 165 feet;

THENCE northerly at right angles to Hawthorne Street 28 feet 5 inches;

THENCE easterly in a straight line 164 feet 11 3/4 inches to a point on the westerly side of Bedford Avenue, distant 168 feet 2 3/8 inches northerly from the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

THENCE southerly along the westerly side of Bedford Avenue 28 feet 2 3/8 inches to the point or place of BEGINNING.

Old Lot 62:
All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York bounded and described as follows:

BEGINNING at a point on the westerly side of Bedford Avenue distant 106 feet northerly from the corner formed by the intersection of the westerly side of Bedford Avenue with the northerly side of Hawthorne Street;

RUNNING THENCE westerly and parallel with Hawthorne Street 165 feet 1/4 inches;

THENCE northerly and parallel with Bedford Avenue, 34 feet;

THENCE easterly and parallel with Hawthorne Street 165 feet to the westerly side of Bedford Avenue;

THENCE southerly along the westerly side of Bedford Avenue 34 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:
Property Address: 1930- 1934 Bedford Avenue Brooklyn, NY
Block: 5042          Lot: 60 f/k/a Lot 60 & 62

47765785v.2

Exhibit C

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 1

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF KINGS

1930 BEDFORD AVE LLC,

                    Plaintiff,

       - v -

1934 BEDFORD LLC, NIKOL VONLAVRINOFF, CONGREGATION BNAI JACOB, THE BOARD OF MANAGERS OF 1930 BEDFORD AVENUE CONDOMINIUM, BRIGHT LIGHT CORP., B&H CONTRACTING CORP., GYPSUM NEW YORK SALES CORP., RENT A UNIT, E&W WHOLESALE ELECTRICAL INC., CERTIFIED LUMBER CORP. and JOHN DOE #1 THROUGH JOHN DOE #10 (said John Doe defendants being fictitious, it being intended to name all other parties who may have some interest in or lien upon the premises sought to be foreclosed),

                    Defendants.

Index No.:
Date Purchased:

### SUMMONS

**Commercial Foreclosure of:**

**1930-1934 Bedford Avenue**
**Brooklyn, New York**
**Block 5042;**
**Lots 1101 and 1102 (F/K/A Lot 60)**

TO THE ABOVE NAMED DEFENDANTS:

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your Answer, or, if the Complaint is not served with a Summons, to serve a Notice of Appearance, on the Plaintiff's attorney within twenty (20) days after the service of this Summons, exclusive of the date of service, or within thirty (30) days after the service is complete if this Summons is not personally delivered to you within the State of New York; and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Plaintiff designates Kings County as the place of trial. The basis of the venue is the location of the subject premises.

Dated:   New York, New York
         June 3, 2019

                    ANDRIOLA LAW, PLLC

                    /s/ James M. Andriola
                    James M. Andriola, Esq.
                    1385 Broadway, 22nd Floor
                    New York, New York 10018
                    (646) 209-9863
                    james@andriolalaw.com
                    Attorneys for Plaintiff
                    1930 Bedford Ave LLC

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 1

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| 1930 BEDFORD AVE LLC,<br><br>                              Plaintiff,<br><br>        - v -<br><br>1934 BEDFORD LLC, NIKOL VONLAVRINOFF, CONGREGATION BNAI JACOB, THE BOARD OF MANAGERS OF 1930 BEDFORD AVENUE CONDOMINIUM, BRIGHT LIGHT CORP., B&H CONTRACTING CORP., GYPSUM NEW YORK SALES CORP., RENT A UNIT, E&W WHOLESALE ELECTRICAL INC., CERTIFIED LUMBER CORP. and JOHN DOE #1 THROUGH JOHN DOE #10 (said John Doe defendants being fictitious, it being intended to name all other parties who may have some interest in or lien upon the premises sought to be foreclosed),<br><br>                              Defendants. | Index No.:<br>Date Purchased:<br><br>**COMPLAINT**<br><br>**Commercial Foreclosure of:**<br><br>**1930-1934 Bedford Avenue**<br>**Brooklyn, New York**<br>**Block 5042;**<br>**Lots 1101 and 1102 (F/K/A Lot 60)** |

The Plaintiff 1930 Bedford Ave LLC, by and through its undersigned attorneys, Andriola Law, PLLC, as and for its Complaint against defendants, respectfully alleges as follows:

1.     The Plaintiff 1930 Bedford Ave LLC is a New York limited liability company, having an address at c/o Andriola Law, PLLC, 1385 Broadway, 22nd Floor, New York, NY 10018.

2.     The Defendant 1934 Bedford LLC (the "Borrower") is a New York limited liability company having an address at c/o Gutman Weiss P.C., 2276 65th Street, 2nd Floor, Brooklyn, New York

3.     The Defendant Nikol Vonlavrinoff (the "Guarantor") is an individual having an address at 1568 49th Street, Brooklyn, New York 11219.

4.     Congregation Bnai Jacob is named as a defendant herein because it may have a lien upon the Mortgaged Premises (defined hereunder), which lien is subject and subordinate to the lien of the Mortgages (defined hereunder).

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 1

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

5.    The Board of Managers of 1930 Bedford Avenue Condominium is named as a defendant herein because it may have a lien upon the Mortgaged Premises, which lien is subject and subordinate to the lien of the Mortgages.

6.    Bright Light Corp. is named as a defendant herein because it recorded a mechanic's lien in the amount of $84,482.00 on May 31, 2018, under Control # 003755138 01, which mechanic's lien is subject and subordinate to the lien of the Mortgages.

7.    B&H Contracting Corp. is named as a defendant herein because it recorded a mechanic's lien in the amount of $40,000.00 on June 4, 2018, under Control # 003755560 01, which mechanic's lien is subject and subordinate to the lien of the Mortgages.

8.    Gypsum New York Sales Corp. is named as a defendant herein because it recorded a mechanic's lien in the amount of $1,200.00 on June 22, 2018, under Control # 003763744 01, which mechanic's lien is subject and subordinate to the lien of the Mortgages.

9.    Rent a Unit is named as a defendant herein because it recorded a mechanic's lien in the amount of $2,448.59 on November 28, 2018, under Control # 003813851 05, which mechanic's lien is subject and subordinate to the lien of the Mortgages.

10.    E&W Wholesale Electrical Inc. is named as a defendant herein because it recorded a mechanic's lien in the amount of $35,000.00 on January 16, 2019, under Control # 003829201 01, which mechanic's lien is subject and subordinate to the lien of the Mortgages.

11.    Certified Lumber Corp. is named as a defendant herein because it recorded a mechanic's lien in the amount of $23,681.00 on January 22, 2019, under Control # 003830854 01, which mechanic's lien is subject and subordinate to the lien of the Mortgages.

12.    The Defendants John Doe #1 through John Doe #10 (fictitious names) are named as defendants herein to represent all other parties, including, without limitation, tenants, other

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM

NYSCEF DOC. NO. 1

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/03/2019

occupants, or lien holders, who may have some interest in or lien upon the Mortgaged Premises, which interest or lien is subject and subordinate to the lien of the Mortgages.

13.    On or about February 22, 2018, the Borrower, for good and valuable consideration, executed and delivered to S III Capital Group LLC, a Consolidated, Restated and Extended Promissory Note to evidence its obligations for a loan in the principal amount of $8,000,000.00 (together with any amendments and/or modifications, the "Land Note"). A copy of the Land Note (along with the subsequent allonges to same) is annexed hereto at Exhibit 1 and its terms are incorporated herein by reference.

14.    As security for the payment of the Land Note, the Borrower, as mortgagor, executed, acknowledged, and delivered to S III Capital Group LLC, as mortgagee, the Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement, dated February 22, 2018 (together with any amendments and/or modifications, the "Land Mortgage"). A copy of the Land Mortgage is annexed hereto at Exhibit 2 and its terms are incorporated by reference. The Land Mortgage was recorded in the Office of the City Register on March 2, 2018 at CRFN 2018000073253 and the mortgage recording tax was duly paid.

15.    On or about February 22, 2018, the Borrower, for good and valuable consideration, executed and delivered to S III Capital Group LLC, a Consolidated, Restated and Extended Building Loan Promissory Note to evidence its obligations for a loan in the principal amount of $7,000,000.00 (together with any amendments and/or modifications, the "Building Note"). A copy of the Building Note (along with the subsequent allonges to same) is annexed hereto at Exhibit 3 and its terms are incorporated herein by reference. (Hereinafter, where no distinction is necessary, the Land Note and the Building Note will be referred to collectively as "the Notes").

- 3 -

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 1

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

16.    As security for the payment of the Building Note, the Borrower, as mortgagor, executed, acknowledged, and delivered to S III Capital Group LLC, as mortgagee, the Building Loan Mortgage Consolidation, Modification and Extension Agreement and Assignment of Leases and Rents and Security Agreement, dated February 22, 2018 (together with any amendments and/or modifications, the "Building Mortgage"). A copy of the Building Mortgage is annexed hereto at Exhibit 4 and its terms are incorporated by reference. The Building Mortgage was recorded in the Office of the City Register on March 2, 2018 at CRFN 2018000073256 and the mortgage recording tax was duly paid. (Hereinafter, where no distinction is necessary, the Land Mortgage along with the Building Mortgage will be referred to collectively as "the Mortgages").

17.    On February 22, 2018, the Borrower and S III Capital Group LLC entered into an Amended and Restated Building Loan and Project Loan Agreement which was docketed on February 27, 2018 in Control # 003723244-01 (and said agreement has now been assigned to the above-named Plaintiff 1930 Bedford Ave LLC).

18.    Pursuant to the Mortgages, the Borrower pledged and assigned to the mortgagee all of its estate, right, title and interest in and to that certain real property, and the improvements and chattel located thereon, in the County of Kings, State of New York, having an address of 1930-1934 Bedford Avenue, Brooklyn, New York, also known as Block 5042, Lots 1101 (Unit CF) and 1102 (Unit RS), F/K/A Lot 60, on the official Tax Map of the City of New York, and more particularly described in Schedule A of the Mortgages (the "Mortgaged Premises").

19.    Pursuant to an Assignment of Mortgage dated August 8, 2018, S III Capital Group LLC assigned all of its right, title and interest in and to the Land Note and the Land Mortgage to S3 RE Funding III LLC. Pursuant to an Assignment of Mortgage dated August 8, 2018, S III Capital Group LLC assigned all of its right, title and interest in and to the Building Note and the Building Mortgage to S3 RE Funding III LLC. Copies of these assignments are collectively

annexed hereto at Exhibit 5 and their terms are incorporated herein by reference. These assignments were recorded in the Office of the City Register on August 28, 2018 at CRFN 2018000288023 and CRFN 2018000288025, respectively.

20.    S III Capital Group LLC also executed and delivered to S3 RE Funding III LLC an allonge with respect to each of the Notes. These allonges are annexed hereto as part of Exhibits 1 and 3, and their terms are incorporated herein by reference.

21.    Pursuant to an Assignment of Mortgage dated May 10, 2019, S3 RE Funding III LLC assigned all of its right, title and interest in and to the Land Note and the Land Mortgage to 1930 Bedford Ave LLC. Pursuant to an Assignment of Mortgage dated May 10, 2019, S3 RE Funding III LLC assigned all of its right, title and interest in and to the Building Note and the Building Mortgage to 1930 Bedford Ave LLC. Copies of these assignments are collectively annexed hereto at Exhibit 6 and their terms are incorporated herein by reference. These assignments were each recorded in the Office of the City Register on May 31, 2019 at CRFN 2019000169877 and CRFN 2019000169878, respectively.

22.    S3 RE Funding III LLC also executed and delivered to 1930 Bedford Ave LLC an allonge with respect to each of the Notes. These allonges are annexed hereto as part of Exhibits 1 and 3, and their terms are incorporated herein by reference.

23.    1930 Bedford Ave LLC is in physical possession of the Notes and the allonges.

24.    1930 Bedford Ave LLC is the sole, true, and lawful owner and holder of the Notes and the Mortgages and will hereinafter be referred to as "Plaintiff."

25.    To induce Plaintiff's predecessor-in-interest to make the loans evidenced by the Notes and secured by the Mortgages, on or about February 22, 2018, the Guarantor executed a separate Guaranty in connection with each loan (the "Guaranties"). Copies of the two Guaranties are collectively annexed hereto at Exhibit 7 and their terms are incorporated herein by

- 5 -

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM          INDEX NO. 512224/2019
NYSCEF DOC. NO. 1                                       RECEIVED NYSCEF: 06/03/2019

reference. The Guaranties were also assigned to Plaintiff on or about May 10, 2019. Pursuant to

the Guaranties, the Guarantor guaranteed to the mortgagee the full payment of all amounts due

and owing from the Borrower to the mortgagee under the Notes and the Mortgages, which amounts

include reasonable attorneys' fees and expenses and all other costs incurred by the mortgagee in

connection with the Notes and the Mortgages.

26.    Pursuant to the terms of the Notes, the Borrower promised to make monthly

payments of interest until the Maturity Date (as such term is defined in the respective Notes) at

which time the principal balance of the Notes and all accrued and unpaid interest thereon was

payable in full.

27.    The Mortgages provide, among other things, that the Borrower's failure to make

any payment due under the Notes is an event of default under the Mortgages and upon such an

event of default, Plaintiff may institute foreclosure proceedings and sell the Mortgaged Premises

according to law.

28.    The Maturity Date as set forth in each of the Notes is February 28, 2019. The

Borrower was therefore obligated to pay all outstanding principal and interest due under the Notes

on February 28, 2019, but the Borrower failed to do so. As a result, one or more events of default

have occurred under the Notes and the Mortgages.

29.    Additional events of default include but are not limited to: (i) Borrower's failure to

make the monthly payments due under the Notes on February 1, 2019; (ii) Borrower's failure to

obtain the mortgagee's consent prior to granting a subordinate mortgage against the Mortgaged

Premises on or about August 29, 2018; and (iii) Borrower's failure to clear a series of mechanic's

liens recorded against the Mortgaged Premises, the first of which was recorded on May 31, 2018.

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 1

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

30.    Pursuant to the terms of the Notes and the Mortgages, upon the occurrence of any event of default, all outstanding indebtedness, together with accrued interest becomes immediately due and payable, at the mortgagee's option.

31.    By a letter dated March 1, 2019 (*see* Exhibit 8, hereto), Plaintiff's predecessor-in-interest advised the Borrower and Guarantor of one or more of the foregoing events of default and demanded the immediate payment in full of all of Borrower's obligations.

32.    Additionally, pursuant to the terms of the Notes and the Mortgages, the Borrower is responsible for all costs and expenses, including attorneys' fees and costs, incurred by the mortgagee in enforcing its rights under the Notes and the Mortgages.

33.    By reason of the foregoing, there is now due and owing from the Borrower to Plaintiff, under the Notes and the Mortgages, principal in the aggregate amount of $15,000,000.00, plus interest and fees from before and after the date of this Complaint, and attorney's fees and costs.

34.    In order to protect its security, Plaintiff may during the pendency of this action be compelled to pay sums for taxes, assessments, and/or other charges affecting the Mortgaged Premises. Plaintiff prays that all sums so paid, together with interest at the default rate set forth in the Notes and the Mortgages from the date of such payments, together with Plaintiff's costs and expenses in enforcing the sums secured by the Mortgages, including Plaintiff's reasonable attorneys' fees, shall be added to Plaintiff's claim as secured by the Mortgages, and be adjudged a valid lien on the Mortgaged Premises such that Plaintiff be paid such sums out of the proceeds of the sale of the Mortgaged Premises.

35.    Each of the above-named defendants has or claims to have or may claim to have some interest in or lien upon the Mortgaged Premises or some part thereof, which interest or lien,

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 1

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

if any, has accrued subsequent to, and is subject and subordinate to, the lien of Plaintiff's Mortgages.

36.    No other action or proceeding has been commenced or maintained or is now pending at law or otherwise for the foreclosure of the Mortgages or for recovery of the sums secured by the Notes and the Mortgages or any part thereof.

37.    In the event that Plaintiff possesses any other lien(s) against the Mortgaged Premises either by way of judgment, junior mortgage or otherwise, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's cause(s) of action set forth herein, but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings.

38.    Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made by reason of any payments made after the date of the commencement of this action.

WHEREFORE, Plaintiff demands judgment that the defendants and each of them and all persons claiming under them or any of them, subsequent to the commencement of this action and the filing of a notice of pendency thereof, be barred and foreclosed of and from all estate, right, title, interest, claim, lien and equity of redemption of, in and to the Mortgaged Premises and each and every part and parcel thereof; that the Mortgaged Premises may be decreed to be sold, according to law; that the monies arising from the sale thereof may be brought into Court; that Plaintiff may be paid the amount due on the Notes and the Mortgages as set forth herein, with interest and late charges to the time of such payment and the expense of such sale, plus reasonable attorney's fees, together with the costs, allowances and disbursements of this action, together with any sums incurred by Plaintiff pursuant to any term or provision of the Notes and the Mortgages

FILED: KINGS COUNTY CLERK 06/03/2019 01:35 PM
NYSCEF DOC. NO. 1

INDEX NO. 512224/2019
RECEIVED NYSCEF: 06/03/2019

set forth herein, or to protect the lien of Plaintiff's Mortgages, together with interest upon said sums from the dates of the respective payments and advances thereof, so far as the amount of such monies properly applicable thereto will pay the same; that this Court forthwith appoint a receiver of the rents and profits of the Mortgaged Premises during the pendency of this action with the usual powers and duties; that the Borrower and Guarantor may be adjudged to pay the whole residue, or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after a sale of the Mortgaged Premises and the application of the proceeds pursuant to the directions contained in such judgment; that in the event that Plaintiff possesses any other lien(s) against the Mortgaged Premises either by way of judgment, junior mortgage or otherwise, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's cause(s) of action set forth herein but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings; and that Plaintiff may have such other and further relief, or both, in the Mortgaged Premises, as may be just and equitable.

Dated:    New York, New York
          June 3, 2019

                                    ANDRIOLA LAW, PLLC


                                    /s/ James M. Andriola
                                    James M. Andriola, Esq.
                                    1385 Broadway, 22nd Floor
                                    New York, New York 10018
                                    (646) 209-9863
                                    james@andriolalaw.com
                                    Attorneys for Plaintiff
                                    1930 Bedford Ave LLC

Exhibit D

FILED: KINGS COUNTY CLERK 06/13/2019                    INDEX NO. 512224/2019

NYSCEF DOC. NO. 17                                      RECEIVED NYSCEF: 06/19/2019

At Part comp of the Supreme Court of the State
of New York held in and for the County of
Kings at the Courthouse, at 360 Adams
Street, Brooklyn, New York, on the 11th day of
June , 2019

PRESENT: HON. DAVID B. VAUGHAN , J.S.C.

---

1930 BEDFORD AVE LLC,

                Plaintiff,

        - v -

1934 BEDFORD LLC, NIKOL VONLAVRINOFF,
CONGREGATION BNAI JACOB, THE BOARD OF
MANAGERS OF 1930 BEDFORD AVENUE
CONDOMINIUM, BRIGHT LIGHT CORP., B&H
CONTRACTING CORP., GYPSUM NEW YORK
SALES CORP., RENT A UNIT, E&W WHOLESALE
ELECTRICAL INC., CERTIFIED LUMBER CORP.
and JOHN DOE #1 THROUGH JOHN DOE #10 (said
John Doe defendants being fictitious, it being intended to
name all other parties who may have some interest in or
lien upon the premises sought to be foreclosed),

                Defendants.

Index No. 512224/2019

**ORDER APPOINTING
RECEIVER
IN MORTGAGE
FORECLOSURE ACTION**

---

Upon the Summons and Complaint filed by Plaintiff 1930 Bedford Ave LLC (the

"Plaintiff") in the office of the Clerk of Kings County on June 3, 2019, and upon reading and filing

the affidavit of Ralph Dweck in Support of Plaintiff's Application for an Order Appointing

Receiver in Commercial Mortgage Foreclosure Action; it is

       ORDERED, that GREGORY LA SPINA ESQ of Borchert & Laspina, P.C. 1902 Whitestone Expy, Ste 302, Whitestone, NY 11357 (718) 767-3333

New York, be and is hereby appointed, with the usual powers and directions Temporary Receiver

(the "Receiver") for the benefit of the Plaintiff of all the rents and profits now due and unpaid or

to become due during the pendency of this action and issuing out of the mortgaged premises

FILED: KINGS COUNTY CLERK 06/13/2019

NYSCEF DOC. NO. 17

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/19/2019

mentioned in the Complaint, more particularly described in Schedule A hereto, and known as and by the street address of 1930-1934 Bedford Avenue, Brooklyn, New York, also known as Block 5042, Lots 1101 (Unit CF) and 1102 (Unit RS), F/K/A Lot 60, on the official Tax Map of the City of New York (the "Mortgaged Premises"); and it is further,

**ORDERED** that the said Receiver is authorized to forthwith take charge and enter into possession of the Mortgaged Premises; and it is further

**ORDERED** that, before entering upon his/her duties, said Receiver shall be sworn to fairly and faithfully discharge the duties committed to him/her and shall execute to the People of the State of New York and file with the Clerk of this Court an undertaking in the penal sum of $ 1,100,000.00 conditioned for the faithful discharge of his/her duties as such Receiver; and it is further,

**ORDERED** that said Receiver be and is hereby directed to demand, collect and receive from the occupants, tenants, and licensees in possession of said premises, or other persons liable therefore, inclusive of the mortgagor, all the rents and license fees thereof now due and unpaid or hereafter to become fixed or due, and that said Receiver be and is hereby authorized to institute and carry on all legal proceedings necessary for the protection of said premises or to recover possession of the whole, or any part thereof, and/or apply to the Court to fix reasonable rental value and license fee value and to compel the tenants and occupant(s) to attorn to the Receiver; and it is further

**ORDERED** that the Receiver may institute and prosecute suits for the collection of rent, license fees and other charges now due or hereafter to become due or fixed, and summary proceedings for the removal of any tenants or licensees or other persons therefrom; and it is further,

- 2 -

**ORDERED** that, pursuant to the provisions of the General Obligations Law section 7-105, anybody holding any deposits or advances of rental as security under any lease or license agreement affecting space in the premises affected by this action shall turn same over to said Receiver within five (5) days after said Receiver shall have qualified; and thereupon the said Receiver shall hold such security subject to such disposition thereof as shall be provided in an Order of this Court to be made and entered in this action; and it is further,

**ORDERED** that anybody in possession of same shall turn over to said Receiver all rent lists, orders, unexpired and expired leases, agreements, correspondence, notices and registration statements relating to rental space or facilities in the premises; and it is further,

**ORDERED** that, notwithstanding anything to the contrary contained in this order, the said Receiver shall not, without the further prior order of this Court, upon prior notice to plaintiff, make improvements or substantial repairs to the property at a cost in excess of $1,000.00; and it is further,

**ORDERED** that said Receiver forthwith deposit all monies received by him/her at the time he/she receives same in an account at _STATE EMPIRE BANK_ _____ (the "Depository") or in an account established by the Receiver for the purposes of receipt of such funds, such account to be in his/her name, as Receiver, and to show the name of the instant case; the Depository shall furnish monthly statements regarding such account to the Receiver, who will in turn provide such statements to Plaintiff's counsel _and the surety_ on a timely basis; and it is further

**ORDERED** that said Receiver be and is authorized from time to time to rent or lease any part of the premises for terms not exceeding one (1) year or such longer terms as may be required _or years_ by the State of New York; to keep said premises insured against loss by damage or fire; to pay the taxes, assessments, water rates, sewer rents, vault rents, salaries of employees, supplies and other

- 3 -

charges; to comply with all the lawful requirements of any municipal department or other authority

of the municipality in which the mortgaged premises are situated; and to procure such fire, plate

glass, liability and other insurance as may be reasonably necessary; and it is further,

**ORDERED** that the tenants, licensees or other persons in possession of said premises

attorn to said Receiver and pay over to said Receiver all rents, license fees and other charges of

such premises now due and unpaid or that may hereafter become due; and that the defendants be

enjoined and restrained from collecting the rents, license fees and other charges of said premises

and from interfering in any manner with the property or its possession; and from transferring,

removing or in any way disturbing any of the occupants or employees; and that all tenants,

occupants, employees and licensees of the premises and other persons liable for the rents be and

hereby are enjoined and restrained from paying any rent or license fees or other charges for such

premises to the defendants, their agents, servants or attorneys; and it is further,

**ORDERED** that the Receiver is prohibited from incurring obligations in excess of the

monies in his/her hands without further Order of this Court or written consent of the Plaintiff's

attorney; and it is further,

**ORDERED** that the Owner turn over to the Receiver all rents collected from and after the

date of this Order; and it is further,

**ORDERED** that all persons now or hereafter in possession of said premises, or any part

thereof, and not holding such possession under valid and existing leases or tenancies, do forthwith

surrender such possession to said Receiver, subject to emergency laws, if any; and it is further,

**ORDERED** that said Receiver after paying the expenses of the management and care of

the said premises as above provided retain the balance of the monies which may come into his/her

hands until the sale of the said premises under the judgment to be entered in this action and/or until further Order of this Court; and it is further,

ORDERED that if it is necessary in the fulfillment of the Receiver's duties, Plaintiff may, but shall not be required, to advance funds to the Receiver for the payment of repairs, maintenance, insurance, taxes, the curing of violations or any other expense which may be necessary for the preservation and protection of the Mortgaged Premises by the Receiver and to the extent that the rents, issues and profits collected by the Receiver and remaining in the Receiver's account are insufficient to reimburse Plaintiff for such advances, all such advances made by Plaintiff shall be secured by its mortgage and shall be added to and included to the debt thereupon due and in the judgment of foreclosure and sale; and it is further

ORDERED that said Receiver shall file a monthly accounting with Plaintiff's counsel _and the surety_ beginning with the date of this Order and monthly thereafter during the term of the receivership; and it is further

ORDERED that said Receiver, or any party hereto, may at any time, on proper notice to all parties who may have appeared in this action, apply to this Court for further or other instructions or powers necessary to enable said Receiver to properly fulfill his/her duties; and it is further

ORDERED that for his/her services, Receiver shall be compensated for the faithful _as_ discharge of his/her duties provided for in Section 8004 of the Civil Practice Law and Rules; and it is further

ORDERED that the appointee named as Receiver herein shall comply with the provisions of Section 35(a) of the Judiciary Law, Sections 6401-6405 of the Civil Practice Law and Rules, and Article 13 of the Real Property Actions and Proceedings Law and Rule 36 of the Chief Judge.

FILED: KINGS COUNTY CLERK 06/13/2019

NYSCEF DOC. NO. 17

INDEX NO. 512224/2019

RECEIVED NYSCEF: 06/19/2019

NOTWITHSTANDING ANY OTHER PROVISION OF THE ORDER TO THE CONTRARY, THE RECEIVER SHALL NOT APPOINT AN ATTORNEY, AGENT, APPRAISER, AUCTIONEER OR ACCOUNTANT WITHOUT PRIOR ORDER OF THIS COURT.

ENTER

J.S.C.

HON. DAVID B. VAUGHAN
J.S.C.

2019 JUN 13 AM 10: 52

Exhibit E



JACOBOWITZ
NEWMAN TVERSKY

July 3, 2019

**VIA ECF AND E-MAIL**
Hon. David B. Vaughan
Kings Supreme Court
360 Adams Street
Brooklyn, NY 11201

     Re:    **1930 Bedford Ave LLC v. 1934 Bedford LLC et al, Index No. 51224/2019**

Dear Judge Vaughan:

    Our office represents defendants 1934 Bedford LLC and Nikol Vonlavrinoff ("Defendants") in the above-referenced action. Enclosed please find courtesy copies of two orders issued by the Appellate Division on June 27, 2019. The first order, 2019-0261, granted Defendants' CPLR 5704(a) application seeking the interim relief that the court declined to grant in the order to show cause on June 24, 2019. The second order, 2019-07263, denied Defendants' CPLR 5704(a) application seeking to vacate the court's June 11, 2019 order appointing a receiver.

        Respectfully Submitted,

Nathan Cohen

Enclosures

copies: James Andriola, Esq. (<u>via</u> ECF and E-mail)
       Gregory Laspina, Esq. (<u>via</u> E-mail)

*1930 Bedford Ave LLC v 1934 Bedford LLC,*
Kings County Supreme Court Index No.: 512224/2019

## Supreme Court of the State of New York
## Appellate Division: Second Judicial Department

2019-07263

BEFORE:  REINALDO RIVERA, J.P., CHERYL E. CHAMBERS, ROBERT J. MILLER,
SYLVIA HINDS-RADIX, JJ.

Application by defendants 1934 Bedford LLC and Nikol Vonlavrinoff pursuant to CPLR 5704(a) to vacate an order appointing a receiver in a mortgage foreclosure action, dated June 11, 2019, executed by the Supreme Court, Kings County.

ORDERED that the application is DENIED.

Dated:        Brooklyn, New York
              June 27, 2019

FOR THE COURT:

Hon. Sylvia O. Hinds-Radix
Associate Justice
Appellate Division 2nd Dept.

*1930 Bedford Ave LLC v 1934 Bedford LLC,*
Kings County Supreme Court Index No.: 512224/2019

## Supreme Court of the State of New York
## Appellate Division: Second Judicial Department

2019-07261

        BEFORE: REINALDO RIVERA, J.P., CHERYL E. CHAMBERS, ROBERT J. MILLER, SYLVIA HINDS-RADIX, JJ.

        Application by defendants 1934 Bedford LLC and Nikol Vonlavrinoff pursuant to CPLR 5704(a) to grant the interim relief requested in the foregoing order to show cause dated June 24, 2019, which the Supreme Court, Kings County, declined to grant.

        ORDERED that the application is GRANTED.

Dated:      Brooklyn, New York
             June 27, 2019

                      FOR THE COURT:

                      Hon. Sylvia O. Hinds-Radix
                      Associate Justice
                Appellate Division 2nd Dept.