UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re                                                                    Involuntary Chapter 11

      1934 Bedford, LLC,                                    Case no.  19-44751

                      Debtor.
--------------------------------------------------------x

## OBJECTION TO PROPOSED STIPULATION EXTENDING TIME TO ANSWER

           1930 Bedford Avenue LLC ("Mortgagee"), the holder of first mortgages on the

property owned by 1934 Bedford, LLC (the "Debtor") at 1930-1934 Bedford Avenue, Brooklyn,

New York (the "Property"), as and for its objection to proposed stipulation between the Debtor

and the Petitioners (defined below) to extend the Debtor's time to answer the August 2, 2019

involuntary petition (the "Petition"), respectfully represents as follows:

(a) **The price tag for a 30-day delay is $300,000, representing $10,000 per day in post-maturity interest,**

(b) **The Petition appears to be a sham filed to give the Debtor Chapter 11 protection with no restrictions on the use of the $200,000 of monthly income, and the Debtor's demand for an additional 30-day delay supports that bad faith motive, and**

(c) **The involuntary petition is fatally defective and must be dismissed because the petitioners failed to allege grounds for involuntary relief, so the Debtor's choice is simple – consent to Chapter 11 or not.  Even if the petition was filed in good faith, after three weeks in bankruptcy the Debtor has had more than enough time to decide.**

## BACKGROUND

        1.      On August 2, 2019, an involuntary petition was filed against the Debtor

under section 303 of the Title 11 of the United States Code, 11 U.S.C. "101 et seq. (the

"Bankruptcy Code") by Simply Brooklyn Realty asserting an $18,000 claim, HTC Construction

Management, Inc. asserting a $100,000 claim, and HTC Plumbing, Inc. asserting a $25,000 claim (the "Petitioners").

2.    The Debtor owns the real property located at 1930-1934 Bedford Avenue, Brooklyn, New York (the "Property") pictured below:



3.    The Property is a seven-story and cellar, elevator, mixed use rental building containing community facilities in the cellar, first and second floors, thirty-eight (38) apartments on the upper floors, and a 19-car parking garage. The gross building area is 59,212

square feet and the net rentable area is 50,187 square feet. When fully leased, the rent roll indicates aggregate rents of $2,436,744 per year, or more than $200,000 per month.

4.      According to an appraisal the Debtor submitted on June 23, 2019 in the foreclosure action, the Property value is $38,600,000.

5.      The Mortgagee holds first mortgages in the principal amount of $15,000,000. As set forth in Mortgagee's August 31, 2019 payoff letter (filed as Exhibit A the "Mortgagee's Receiver Motion" to continue the State Court Appointed Receiver, docket no. 6), the total amount due as of August 31, 2019 is $18,689,275. Interest accrues at $24% post maturity, i.e. $10,000 per day, under paragraph 12(a) of the Mortgages. Copies of the loan documents and assignment documents ("Loan Documents") are collectively annexed as Exhibit B to the Receiver Motion. The Mortgagee's June 3, 2019 foreclosure complaint ("Foreclosure Complaint"), a copy of which is annexed to the Receiver Motion as Exhibit C, identified additional secured claims of record against the Property totaling about $1,686,812. Secured claims thus total approximately $20,377,000. The Debtor has not disclosed the existence of unsecured claims above the $143,000 asserted by the petitioners.

6.      In summary, until the Debtor discloses its assets and liabilities and income and expenses, the claims against the Debtor appear to total about $20,500,000. Based on the Debtor's $38,600,000 appraisal, the Debtor appears to have about $18,000,000 of equity in the Property above creditor claims, and monthly income of about $200,000.

7.      The Debtor defaulted on the February 2019 note payment and the Mortgagee's loan matured by its terms on February 28, 2019. There has been no accounting for the $200,000 per month of Property income (i.e. $1,400,000) since the Debtor stopped paying in January. On June 3, 2019 the Mortgagee filed the Foreclosure Complaint based on the February

payment defaults, an unauthorized $1,500,000 subordinate mortgage dated August 29, 2018 and the existence of mechanics liens.

8.      By order dated June 11, 2019 (the "Receiver Order," Receiver Motion, Exhibit D), the Supreme Court appointed the Receiver to take possession of the Property and the rental income.

9.      On June 23, 2019, the Debtor requested an emergency order to show cause for injunctive relief vacating the Receiver Order pending determination of the Debtor's motion to vacate.

10.     The Supreme Court denied the application for injunctive relief and set the matter down for a hearing on the merits.  The Debtor appealed both the Receiver Order and the denial of injunctive relief.  On June 27, 2019, the Appellate Division affirmed the Receiver Order (Receiver Motion, Exhibit E).  On July 10, 2019, the Supreme Court denied the Debtor's order to show cause on the merits.

11.     Meanwhile, on June 17, 2019 the Debtor sued the Mortgagee in a special proceeding under RPL § 274-to compel the Mortgagee to retract is prior payoff letter and replace it with a payoff letter that did not include default interest and other charges.  The Debtor falsely argued that it had received oral default waivers, despite the loan documents prohibition on oral waivers to preclude such self-serving arguments.  The Debtor falsely argued further that the Mortgagee failed to give default notices, despite there being no obligation in the loan documents to give notice of unauthorized subordinate liens.

12.     RPL § 274-a is limited to compelling delivery of a payoff letter.  It can't be used to dispute the amounts asserted in a payoff letter.  The Supreme Court advised the

Debtor that the relief it was seeking went beyond the statute and that the Debtor must dispute the Mortgagee's payoff letter in the foreclosure action.  Since then, the Debtor has done nothing in the foreclosure action to raise any such dispute.  Instead, the Debtor retained additional foreclosure counsel who specializes in Kings County politics. There is no pending objection to the Mortgagee's claim in any  court.

13.     On August 2, 2019, the Receiver filed his bond.  The same day, the Petitioners filed this case.

**(a) The price tag for a 30-day delay is $300,000, representing $10,000 per day in post-maturity interest**

14.     Under paragraph 12(a) of the Mortgages, post-maturity interest accrues at 24%, which equates to $10,000 per day.  The cost of a 30-day extension is $300,000.

15.     Although courtesy extensions of time between counsel are routine, where the price tag is $300,000, counsel should explain the reason for such a large expenditure of estate assets.

16.     It should also not go unnoticed that it is the Debtor and Petitioners who will lose the $300,000 if the extension is granted, and the Mortgagee, as objectant who gains. Indeed, $300,000 is more than the double the Petitioners' claims.

**(b)      The Petition appears to be a sham filed to give the Debtor Chapter 11 protection with no restrictions on the use of the $200,000 of monthly income, and the Debtor's demand for an additional 30-day delay supports that bad faith motive**

17.      The only logical reason that both the Debtor and the Petitioners would agree to a $300,000 waste of estate assets for an extension of time to respond to a boilerplate involuntary petition is if the Petition is a sham, and indeed, this case has the earmarks of sham.

18.      As explained by *Collier on Bankruptcy,* the rule is that it is improper to file a collusive involuntary petition to stall a foreclosure action.  2 *Collier on Bankruptcy* para 303.06 and 303.33.  *Collier* notes further that the bankruptcy courts in *In re Stern* 268 B.R. 390 (Bankr. S.D.N.Y. 2001) and *In re Grossinger*, 268 B.R. 386, 387 (Bankr. S.D.N.Y. 2001) have given notice that such collusive involuntary petitions do not go unpunished.  In *Grossinger,* the Court observed that "[w]ithin the past year or so courts in the Southern and Eastern Districts have experienced a number of patently baseless and improper involuntary filings."  And the Court in *Stern* stated that: "Sanctions are assessed, and the decision here and in *In re Grossinger* are published, to give notice to the bar and future petitioning creditors that sham involuntary petitions may not be filed in this court without consequences."  *Stern* at 268 B.R. at 395, as cited in 2 *Collier* at para 303.33, notes 3 and 6.

19.      Here, the timing of the involuntary was no coincidence.  It was filed the day the Receiver filed his bond and was qualified to take possession of the Property and its rental income.  Having exhausted its State Court options, the only way left to obstruct the Receiver was a bankruptcy filing.  For undisclosed reasons, the Debtor was unwilling to file a voluntary petition.  The Debtor undoubtedly prevailed upon the Petitioners to file the involuntary Petition to achieve the same result.

20.    Absent collusion, it is unlikely that vendors with (alleged) claims totaling only $143,000 would track their customer's foreclosure action so closely that they would know that a receiver had been appointed, let alone when the receiver would file his bond.  And have bankruptcy counsel lined up that day to file an involuntary petition.

21.    Were they following the foreclosure so closely, and their goal was to avoid non-payment, Petitioners would have known that the Debtor appears to have $18,000,000 of equity in the Property and $200,000 of monthly income.

22.    Objectively, the Receiver's appointment did not put Petitioners at greater risk of nonpayment than a Chapter 11 filing.  Either way, the Debtor had sufficient resources to pay Petitioners' claims, and either way Petitioners were unlikely to be paid until the Property was sold or refinanced.

23.    An involuntary petition would not, therefore, benefit the Petitioners. But a *legitimate* non-collusive involuntary petition would put the Petitioners at serious risk under section 303(i) of the Bankruptcy Code for damages and legal fees if the Debtor successfully dismissed the involuntary petition.  With $38,000,000 of Property value and $200,000 of monthly income affected by an involuntary filing, such legal fees and damages could easily exceed Petitioners' (alleged) claims.  Petitioners retained experienced counsel who would not have exposed Petitioners to such serious risk for no serious benefit, absent the Debtor's support for the Petition.

24.    The conclusion that Debtor thus orchestrated a sham involuntary petition is inescapable.

25.     The Debtor's post-filing conduct confirms the likelihood that this is a collusive filing.  The Debtor has neither answered the involuntary petition nor consented to Chapter 11 relief.  Instead, the Debtor is flaunting its control over the $200,000 of monthly income while paying no debt service, providing no accounting, and answering to no one.

26.     The requested 30-day extension of time to answer indicates further that this is a sham bankruptcy.  No reasonable involuntary petitioner concerned about the Debtor's ability to pay $143,000 absent an involuntary petition would consent to the same Debtor incurring $300,000 of additional senior secured debt with no corresponding benefit to the Debtor's estate.

27.     When the Mortgagee inquired as to the Debtor's intentions regarding the involuntary Petition, the Property and the rental income, the Debtor's counsel told the Mortgagee it would consent to payment of debt service, a cash collateral stipulation and entry of an order of relief only if the Mortgagee consented to bankruptcy stay relief <u>solely</u> to permit determination of the Mortgagee's claim in the foreclosure action.  This, despite the fact that (a) there is no pending motion in the foreclosure action disputing those amounts, and (b) claims objections are subject to the Bankruptcy Court's core jurisdiction.

28.     The Mortgagee is prepared to litigate in either the Supreme Court or this Court.  But the Mortgagee will not agree to proceed in both forums with the Debtor dictating which judge hears which issues.

29.     The Debtor can't have its cake and eat it too. The Debtor should not be permitted to exploit a sham involuntary bankruptcy to delay this case while enjoying the benefits of bankruptcy with none of the burdens.  With no controls over the $200,000 of monthly cash

collateral and with interest running at $10,000 per day, the damage to the Debtor's estate accrues daily.

30.     The Debtor should appear and disclose its intentions before the estate suffers further.

**(C)     The involuntary petition is fatally defective and must be dismissed because the petitioners failed to allege grounds for involuntary relief, so the Debtor's choice is simple – consent to Chapter 11 or not.  Even if the petition was filed in good faith, after three weeks in bankruptcy the Debtor has had more than enough time to decide.**

31.     The Petitioners used Official Form 205 for the Petition.  Paragraph 11 of Form 205 requires the Petitioners to identify the basis for involuntary relief.  The Petitioners made no allegation in paragraph 11.

32.     The Petition, therefore, is fatally flawed and may be dismissed.

33.     Either way, since filing the Petition, neither the Debtor nor the Petitioners have filed anything with this Court to explain this case.  The Debtor's conduct, however, indicates that this is a collusive involuntary petition likely filed with the bad faith intention of creating the illusion of a contested matter to avoid the obligations imposed on a voluntary debtor and to improperly pressure the Mortgagee.  That alone is good cause to deny the proposed stipulation extending the Debtor's time to answer.

## **CONCLUSION**

WHEREFORE, the Mortgagee respectfully requests that the Court deny the

Debtor's request to extend time to answer, and that the Court grant such other relief as may be

just and proper.

Dated:         New York, New York
               August 26, 2019

                                    **BACKENROTH FRANKEL & KRINSKY, LLP**
                                    Attorneys for the Mortgagee

                                    By:        s/Mark A. Frankel
                                               800 Third Avenue
                                               New York, New York 10022
                                               (212) 593-1100