UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re                                                                          Involuntary Chapter 11

      1934 Bedford, LLC,                                        Case no. 19-44751

                Debtor.
------------------------------------------------------x

## MOTION TO LIFT THE AUTOMATIC STAY

      1930 Bedford Avenue LLC ("Mortgagee"), the holder of first mortgages on the property owned by 1934 Bedford, LLC (the "Debtor") at 1930-1934 Bedford Avenue, Brooklyn, New York (the "Property"), as and for its motion for the entry of an order under 11 U.S.C. 543(d) excusing Gregory La Spina, as Supreme Court appointed receiver (the "Receiver") from compliance with 11 U.S.C. 543(a), and authorizing the Receiver to take possession of the Debtor's real property at 1930-1934 Bedford Avenue, Brooklyn New York and to exercise his duties under the Receiver appointment order entered by the Supreme Court of Kings County on June 11, 2019, respectfully represents as follows:

(a) **This case has earmarks of a sham involuntary petition filed to obstruct the Mortgagee's foreclosure action and to obtain control over the Property's $200,000 of monthly rental income with no obligation to pay debt service, no accountability, and none of the burdens of a Chapter 11 debtor in possession, and**

(b) **The Supreme Court and the Appellate Division have repeatedly denied the Debtor's attempts to vacate the Receiver Order; this Court should not reward the Debtor's attempt to collaterally attack that Order by abusing the Bankruptcy Code.**

## BACKGROUND

      1.    On August 2, 2019, an involuntary petition was filed against the Debtor under section 303 of the Title 11 of the United States Code, 11 U.S.C. "101 et seq. (the "Bankruptcy Code") by Simply Brooklyn Realty asserting an $18,000 claim, HTC Construction

Management, Inc. asserting a $100,000 claim, and HTC Plumbing, Inc. asserting a $25,000 claim (the "Petitioners").

2.     The Debtor owns the real property located at 1930-1934 Bedford Avenue, Brooklyn, New York (the "Property") pictured below:



3.     The Property is a seven-story and cellar, elevator, mixed use rental building containing community facilities in the cellar, first and second floors, thirty-eight (38) apartments on the upper floors, and a 19-car parking garage. The gross building area is 59,212

square feet and the net rentable area is 50,187 square feet. When fully leased, the rent roll indicates aggregate rents of $2,436,744 per year, or more than $200,000 per month.

4. According to an appraisal the Debtor submitted on June 23, 2019 in the foreclosure action, the Property value is $38,600,000.

5. The Mortgagee holds first mortgages in the principal amount of $15,000,000. As set forth in Mortgagee's August 31, 2019 payoff letter (Exhibit A), the total amount due as of August 31, 2019 is $18,689,275. Per diem 24% interest accrues at $10,000 per day. Copies of the loan documents and assignment documents ("Loan Documents") are collectively annexed hereto as Exhibit B. The Mortgagee's June 3, 2019 foreclosure complaint ("Foreclosure Complaint"), a copy of which is annexed hereto as Exhibit C, identified additional secured claims of record against the Property totaling about $1,686,812. Secured claims thus total approximately $20,377,000. The Debtor has not disclosed the existence of unsecured claims above the $143,000 asserted by the petitioners.

6. In summary, until the Debtor discloses its assets and liabilities and income and expenses, the claims against the Debtor appear to total about $20,500,000. Based on the Debtor's $38,600,000 appraisal, the Debtor appears to have about $18,000,000 of equity in the Property above creditor claims, and monthly income of about $200,000.

7. The Debtor stopped defaulted on the February 2019 note payment and the Mortgagee's loan matured by its terms on February 28, 2019. There has been no accounting for the $200,000 per month of Property income (i.e. $1,400,000) since the Debtor stopped paying in January. On June 3, 2019 the Mortgagee filed the Foreclosure Complaint based on the February payment defaults, an unauthorized $1,500,000 subordinate mortgage dated August 29, 2018 and the existence of mechanics liens.

8. By order dated June 11, 2019 (the "Receiver Order," Exhibit D), the Supreme Court appointed the Receiver to take possession of the Property and the rental income.

9. On June 23, 2019, the Debtor requested an emergency order to show cause for injunctive relief vacating the Receiver Order pending determination of the Debtor's motion to vacate.

10. The Supreme Court denied the application for injunctive relief and set the matter down for a hearing on the merits. The Debtor appealed both the Receiver Order and the denial of injunctive relief. On June 27, 2019, the Appellate Division affirmed the Receiver Order (Exhibit E). On July 10, 2019, the Supreme Court denied the Debtor's order to show cause on the merits.

11. Meanwhile, on June 17, 2019 the Debtor sued the Mortgagee in a special proceeding under RPL § 274-to compel the Mortgagee to retract is prior payoff letter and replace it with a payoff letter that did not include default interest and other charges. The Debtor falsely argued that it had received oral default waivers, despite the loan documents prohibition on oral waivers to preclude such self-serving arguments. The Debtor falsely argued further that the Mortgagee failed to give default notices, despite there being no obligation in the loan documents to give notice of unauthorized subordinate liens.

12. RPL § 274-a is limited to compelling delivery of a payoff letter. It can't be used to dispute the amounts asserted in a payoff letter. The Supreme Court advised the Debtor that the relief it was seeking went beyond the statute and that the Debtor must dispute the Mortgagee's payoff letter in the foreclosure action. Since then, the Debtor has done nothing in the foreclosure action to raise any such dispute. Instead, the Debtor retained additional

foreclosure counsel who specializes in Kings County politics. There is no pending objection to the Mortgagee's claim in any court.

13. On August 2, 2019, the Receiver filed his bond. The same day, the Petitioners filed this case.

(a) **This case has earmarks of a sham involuntary petition filed to obstruct the Mortgagee's foreclosure action and to obtain control over the Property's $200,000 of monthly rental income with no obligation to pay debt service, no accountability, and none of the burdens of a Chapter 11 debtor in possession**

14. As explained by *Collier on Bankruptcy*, the rule is that it is improper to file a collusive involuntary petition to stall a foreclosure action. 2 *Collier on Bankruptcy* para 303.06 and 303.33. *Collier* notes further that the bankruptcy courts in *In re Stern* 268 B.R. 390 (Bankr. S.D.N.Y. 2001) and *In re Grossinger*, 268 B.R. 386, 387 (Bankr. S.D.N.Y. 2001) have given notice that such collusive involuntary petitions do not go unpunished. In *Grossinger*, the Court observed that "[w]ithin the past year or so courts in the Southern and Eastern Districts have experienced a number of patently baseless and improper involuntary filings." And the Court in *Stern* stated that: "Sanctions are assessed, and the decision here and in *In re Grossinger* are published, to give notice to the bar and future petitioning creditors that sham involuntary petitions may not be filed in this court without consequences." *Stern* at 268 B.R. at 395, as cited in 2 *Collier* at para 303.33, notes 3 and 6.

15. Here, the timing of the involuntary was no coincidence. It was filed the day the Receiver filed his bond and was qualified to take possession of the Property and its rental income. Having exhausted its State Court options, the only way left to obstruct the Receiver was a bankruptcy filing. For undisclosed reasons, the Debtor was unwilling to file a voluntary

5

petition. The Debtor undoubtedly prevailed upon the Petitioners to file the involuntary Petition to achieve the same result.

16. Absent collusion, it is unlikely that vendors with (alleged) claims totaling only $143,000 would track their customer's foreclosure action so closely that they would know that a receiver had been appointed, let alone when the receiver would file his bond. And have bankruptcy counsel lined up that day to file an involuntary petition.

17. Were they following the foreclosure so closely, and their goal was to avoid non-payment, Petitioners would have known that the Debtor appears to have $18,000,000 of equity in the Property and $200,000 of monthly income.

18. Objectively, the Receiver's appointment did not put them at greater risk of nonpayment than a Chapter 11 filing. Either way, the Debtor had sufficient resources to pay Petitioners' claims, and either way Petitioners were unlikely to be paid until the Property was sold or refinanced.

19. An involuntary petition would not, therefore, benefit the Petitioners. But a *legitimate* non-collusive involuntary petition would put the Petitioners at serious risk under section 303(i) of the Bankruptcy Code for damages and legal fees if the Debtor successfully dismissed the involuntary petition. With $38,000,000 of Property value and $200,000 of monthly income affected by an involuntary filing, such legal fees and damages could easily exceed Petitioners' (alleged) claims. Petitioners retained experienced counsel who would not have exposed Petitioners to such serious risk for no serious benefit, absent the Debtor's support for the Petition.

20. The conclusion that Debtor thus orchestrated a sham involuntary petition is inescapable.

21. The Debtor's post-filing conduct confirms the likelihood that this is a collusive filing. The Debtor has neither answered the involuntary petition nor consented to Chapter 11 relief. Instead, the Debtor is flaunting its control over the $200,000 of monthly income while paying no debt service, providing no accounting, and answering to no one.

22. For example, when the Mortgagee inquired as to the Debtor's intentions regarding the involuntary Petition, the Property and the rental income, the Debtor's counsel told the Mortgagee it would consent to payment of debt service, a cash collateral stipulation and entry of an order of relief only if the Mortgagee consented to bankruptcy stay relief <u>solely</u> to permit determination of the Mortgagee's claim in the foreclosure action. This, despite the fact that (a) there is no pending motion in the foreclosure action disputing those amounts, and (b) claims objections are subject to the Bankruptcy Court's core jurisdiction.

23. The Mortgagee is prepared to litigate in either the Supreme Court or this Court. But the Mortgagee will not agree to proceed in both forums with the Debtor dictating which judge hears which issues.

24. The Debtor can't have its cake and eat it too. The Debtor should not be permitted to exploit a sham involuntary bankruptcy to delay this case while enjoying the benefits of bankruptcy with none of the burdens. With no controls over the $200,000 of monthly cash collateral and with interest running at $10,000 per day, the damage to the Debtor's estate accrues daily.

## RELIEF REQUESTED HEREIN

(b) **The Supreme Court and the Appellate Division have repeatedly denied the Debtor's attempts to vacate the Receiver Order; this Court should not reward the Debtor's attempt to collaterally attack that Order by abusing the Bankruptcy Code.**

25. As security for the payment of the Mortgagee's notes, the Debtor executed the Loan Documents, which include assignments of leases and rents. The mortgages provide that, in the event of a default, the Mortgagee: "shall be entitled, as a matter of right and without regard to the adequacy of any security for the indebtedness secured hereby ( and without notice in any action to foreclose this Mortgage and in such other actions or circumstances as may be permitted by law), to the appointment of a receiver for the Mortgaged Property." See, Exhibit B, April 22, 2018 Land Loan Mortgage at § 17(f), and April 22, 2018 Building Loan Mortgage at § 17(f).

26. Under the Loan Documents and N.Y. Real Property Law § 254, the Supreme Court properly entered the Receiver Order, and the Appellate Division properly denied the Debtor's demand that it vacate that order. *See, e.g., Naar v. LJ. Litwak & Co., Inc.*, 260 A.D.2d 613 (2d Dep't 1999); *Essex v. Newman*, 220 A.D.2d 639 (2d Dep't 1995); *Bank Leumi Trust Co. of New York v. Lightning Park, Inc.*, 149 A.D.2d 692 (1st Dep't 1995); *366 Fourth Street Corp. v. Foxfire Enterprises, Inc.*, 540 N.Y.S.2d 489 (2d Dep't 1989).

27. Whether or not an order has been entered appointing a receiver before a bankruptcy is filed, once a debtor files a *voluntary* bankruptcy petition, a mortgagee's security interest in rental income is protected by sections 363 and 552 of the Bankruptcy Code. Under section 363(c)(2), a *voluntary* debtor may not use the rents, i.e. cash collateral, absent the mortgagee's consent or a bankruptcy court order.

28.     In an *involuntary* bankruptcy the rules are different. Pending an order for relief, the cash collateral rules do not apply. Section 303(f) of the Bankruptcy Code states that an involuntary debtor is not subject to section 363 and its limitations on the use of cash collateral, "except to the extent that the court orders otherwise."

29.     Coupled with section 543(a) of the Bankruptcy Code, which requires a receiver to surrender control of a debtor's property upon the filing of *any* bankruptcy petition – voluntary or involuntary – a mortgagee loses all protection for its cash collateral upon the filing of an involuntary petition.

30.     Even though the Debtor desperately wants to avoid the Receiver taking possession of the Property, the Debtor is exploiting this loophole to avoid filing its own voluntary petition or consenting to Chapter 11 relief. Instead, the Debtor appears to have orchestrated a sham involuntary petition to exercise unfettered use of the $200,000 of monthly rental income and to pressure the Mortgagee into permitting the Debtor to forum shop.

31.     The best way to stop such misconduct is to grant the Mortgagee relief under section 543(d) of the Bankruptcy Code excusing the Receiver from compliance with his obligation to surrender his right to control the Property.[1]

---

[1] Alternatively, the Bankruptcy Court may find that the Receiver has the right to take possession notwithstanding the Petition, following the finding of the District Court for the Eastern District of New York in *French Bourekas Inc. v. Turner*, 199 B.R. 807, 815 (E.D.N.Y. 1996), that the filing of a Chapter 11 petition does not discontinue a receivership. As stated in *French Bourekas*:

> [S]ection 959 of 28 U.S.C. provides:
>
> Except as provided in section 1166 of title 11,18 a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

32. Even if this were a legitimate involuntary filing, if the Debtor intended to dispute the involuntary petition, the Debtor would have no objection to the Receiver taking possession because that will be the result if the Petition is dismissed.

33. If this were a legitimate involuntary filing, and the Debtor intended to consent to the involuntary petition, the Debtor would have consented to order of relief already, as the only way to improve its chances of avoiding the Receivership under section 543(a) of the Bankruptcy Code.

34. In summary, this case presents itself under a cloud of Debtor misconduct both pre-petition and post-petition. To protect the Property and its rental income pending the outcome of this case, the Property should be controlled by a fiduciary with clean hands.

35. With a $38,000,000 Property and $200,000 of monthly rental income hanging in the balance, this Court should follow the lead of the Supreme Court and the Appellate Division, as well as the logic of *Stern* and *Grossinger*, and permit the Receiver to take possession under section 543(d) of the Code to block the Debtor's bad faith attempt to collaterally attack the Receiver Order through a sham involuntary petition.

36. If the Court is nonetheless unprepared to permit the Receiver to take possession, the Court should at least require the Debtor to comply with section 363(f) of the Bankruptcy Code and terminate the Debtor's use of the $200,000 of monthly cash collateral absent the Mortgagee's consent or an order of this Court.

---

The New York State Supreme Court is certainly a "court of the United States." Moreover, "the provisions of 28 U.S.C. § 959(b) have always been applicable in bankruptcy matters." 1 Colliers on Bankruptcy ¶ 3.04 at 3–205 (1993).

10

Case 1-19-44751-cec    Doc 13-1    Filed 08/29/19    Entered 08/29/19 13:11:17
Case 1-19-44751-cec    Doc 8    Filed 08/23/19    Entered 08/23/19 14:30:01

37. Again, this case has all the earmarks of a collusive involuntary petition likely filed with the bad faith intention of creating the illusion of a contested matter to avoid the obligations imposed on a voluntary debtor and to improperly pressure the Mortgagee. That alone is good cause to terminate the Debtor's use of cash collateral.

## CONCLUSION

WHEREFORE, the Mortgagee respectfully requests that the Court enter an order granting the relief requested herein, and that the Court grant such other relief as may be just and proper.

Dated:   New York, New York
         August 23, 2019

                              BACKENROTH FRANKEL & KRINSKY, LLP
                              Attorneys for the Mortgagee

                         By:  s/Mark A. Frankel
                              800 Third Avenue
                              New York, New York 10022
                              (212) 593-1100