**WAYNE GREENWALD, P.C.**  Hearing Date: September 11, 2019
*Attorneys for Alleged Debtor*  Hearing Time 2:00 p.m.
*1934 Bedford, LLC*
**475 Park Avenue South - 26th Floor**
**New York, NY 10016**
**212-983-1922**
**By: Wayne M. Greenwald**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
In re:                                                           Case No. 19-44751-CEC
                                                                 Involuntary
    **1934 BEDFORD, LLC,**                    Chapter 11

    **Alleged Debtor.**
-----------------------------------------------------------X

**ALLEGED DEBTOR'S VERIFIED OBJECTION TO**
**SECURED CREDITOR'S MOTION FOR ORDERS**
**RELIEVING THE STATE COURT RECEIVER**
**FROM 11 U.S.C. § 543(a) DUTIES**
<u>**WITH POINTS AND AUTHORITIES**</u>

**TO:  HON. CARLA E. CRAIG**
      **UNITED STATES CHIEF BANKRUPTCY JUDGE**

The alleged debtor, 1934 Bedford, LLC, ("Bedford"), by its attorneys

represents:

<u>**PRELIMINARY STATEMENT**</u>

1.    Bedford objects to 1930 Bedford Avenue LLC's ("1930") motion seeking

orders, pursuant to 11 U.S.C. § 543(d)(1) ("§ 543(d)"), excusing the

appointed state court receiver (the "Receiver") from complying with 11 U.S.C . § 543(a)  with respect to Bedford's real estate located at 1930-1934 Bedford Avenue, Brooklyn, New York (the "Property") (the "Motion").

2. The Motion should be denied because:

   a.) 11 U.S.C. § 543(d) does not apply as the Receiver is not "in possession, custody, or control of" the Property;

   b.) The Motion neither addresses nor satisfies the tests for § 543(d) relief, See, *In re Dill*, 163 B.R. 221, 225 (E.D.N.Y. 1994),  *In re Franklin*, 476 B.R. 545 (Bankr. N.D. Ill. 2012).

   c.) Upon information and belief, the involuntary petition commencing this case (the "Petition") is not a collusive involuntary petition filed in bad faith;

   d.) Even if the Petition is a collusive involuntary petition, that is no basis for § 543(d) relief.

These matters are elucidated herein.

## §543(d)(1) DOES NOT APPLY TO THE RECEIVER

3. § 543(d)(1) provides:

   (d) After notice and hearing, the bankruptcy court--

> (1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property, . . .

4. The Motion (¶ 30) admits that the Receiver lacks "possession, custody or control" of the Property or Bedford's business.

5. Bedford found no cases interpreting § 543(d)'s terms at issue here.

6. So, the Court must apply the "plain meaning rule" in applying § 543(d).

7. In bankruptcy cases:

> when the language of the Bankruptcy Code is clear and unambiguous, the plain meaning of the statute controls its interpretation, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters."

*U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290, 299 (1989), *In re Pincus*, 280 B.R. 303, 311–12 (Bankr. S.D.N.Y. 2002)(Applying plain language to 11 U.S.C. § 523(a)(8)), *In re Carrow,* 315 B.R. 8, 16 (Bankr. N.D.N.Y. 2004)(Applying plain meaning to

11 U.S.C. § 706), *In re Schneider*, 2013 WL 5979756, at *7–8 (Bankr. E.D.N.Y.)(Applying plain meaning and legislative history to 11 U.S.C. §522).

8. § 543(d)'s language is clear and unambiguous.

9. § 543(d)'s exemption is available to custodians already in "in possession, custody, or control of such property."

10. Nothing in § 543(d) authorizes giving "possession, custody, or control" of property to a custodian lacking it.

11. § 543(d) is inapplicable. The Motion should be denied.

## THE MOTION FAILS THE STANDARD FOR § 543(d) RELIEF

12. The Motion neither identifies nor satisfies the test for § 543(d) relief.

### The Standard for § 543(d) Relief

13. In determining § 543(d)(1) relief, courts consider:

    (1) The likelihood of reorganization, and whether the funds held by the receivers are required for reorganization;

    (2) Whether the debtor mismanaged the property;

    (3) Whether the turnover would injure the creditors;

    (4)      Whether the debtor would use the property for the creditors' benefit;

    (5)      Whether there are avoidance issues raised with respect to property retained by a receiver, because a receiver does not possess avoiding powers for the benefit of the estate; and

    (6)      The fact that the automatic stay has deactivated the state court [Receiver] Action.

Daniel A. White, *Please Excuse Me: Receiverships and Bankruptcy*, Am. Bankr. Inst. J., November 2018, at 36, 37; *In re Dill*, 163 B.R. 221, 225 (E.D.N.Y. 1994); *In re Picacho Hills Util. Co., Inc.*, 2013 WL 1788298, at *7 (Bankr. D.N.M.); *In re Franklin*, 476 B.R. 545, 551 (Bankr. N.D. Ill. 2012).

**Burden of Proof**

14.    The party seeking § 543(d) relief:

> Must show by a preponderance of evidence that the best interests of the creditors are served by permitting a custodian to retain control of the estate ...
>
> The "paramount and sole concern is the interests of *all* creditors."

*In re Picacho Hills Until. Co., Inc.*, 2013 WL 1788298, at *7 (emphasis in original)(citations omitted)(Bankr. D.N.M. Apr. 26, 2013).

15. If a showing is made, the burden shifts to the debtor to show why § 543(d) relief is inappropriate. *Id.* Citing, *In re Plihal*, 97 B.R. 561, 564 (Bankr.D.Neb.1989).

16. The Motion makes no showing at all.

17. Arguably, Bedford needs to show nothing.

18. Nevertheless, it will.

**The Likelihood of Reorganization, and Use of
Property and Funds Needed for Reorganization**

19. Bedford is poised to satisfy its creditors' legitimate claims.

20. Annexed hereto as Exhibit "A" is a term sheet for a $19,300,000 bridge loan (the "Bridge Loan").

21. The Debtor represents that the Bridge Loan lender is prepared to close.

22. All that is required is the legitimate amount owed to 1930.

23. 1930 and its predecessor resist resolving the issue.

24. They even forced the May 9, 2019, Bridge Loan closing to cancel.

25. The Property and its revenues are necessary to close and fund the Bridge Loan and operate Bedford's business.

26. They are also necessary for anticipated loans to take out the Bridge Loan.

27. Bedford considered filing a voluntary chapter 11 petition.

28. However, it is concerned about a filing's impact on the Bridge Loan and availability of future loans, at favorable terms.

29. As Bedford is poised to solve its problem with 1930, it saw filing a petition causing needless risk, delay and expense.

**Bedford Has Not Mismanaged the Property**

30. Bedford has not mismanaged the Property.

31. The Motion fails to show otherwise.

32. The Motion, ¶ 2, includes a picture of the Property.

33. The Property is in good condition.

34. The Motion offers no evidence of mismanagement.

35. The Debtor even obtained the Bridge Loan to be rid of 1930's mortgage.

36. This is not mismanagement.

37. Annexed hereto and incorporated herein as Exhibits "B" are copies of cash flow statements prepared by Bedford for June and July 2019.

38. Bedford lacks the information to prepare one for August 2019.

39. Exhibits "B" show proper management of Bedford and the Property.

**Bedford Retaining Control Would Not Injure Creditors**

40. Bedford's primary objective is closing on the Bridge Loan and paying its creditors' legitimate claims.

41. That benefits all creditors.

42. Apparently the petitioning creditors agree with this.

43. Otherwise, why did they file the Petition?

44. Likewise, Bedford retaining control benefits its creditors by continuing its business with them.

45. When receivers are imposed, they bring their own service suppliers.

46. This displaces creditors.

47. The Receiver will not benefit creditors.

**Bedford Will Use the Property for the Creditors' Benefit**

48. As discussed above, Bedford will use the Property to quickly resolve and pay its creditors' legitimate claims.

**Existence of Avoidance Issues**

49. Bedford has not determined that there are avoidance claims.

50. It may have claims against 1930 and its predecessor.

51. It is unlikely that the Receiver would pursue them.

**The Automatic Stay's Effect**

52. The Petition stayed 1930's foreclosure proceeding.

53. Nevertheless, Bedford wants the automatic stay modified so the state court can compute the amount legitimately owed to 1930.[1]

54. Bedford sought this before the Petition was filed.

55. The state court judge indicated a willingness to resolve the issue through a separate motion in 1930's foreclosure proceeding.

56. This can be done quickly.

57. This Court can modify the automatic stay, or abstain jurisdiction under 28 U.S.C. § 1334( c ), for the limited purpose of computing the amount of 1930's allowed claim. See, *In re Mill-Craft Bldg. Sys., Inc*., 57 B.R. 531, 535 (Bankr. E.D. Wis. 1986)(Mandatory abstention for state court to determine state law foreclosure issues), *In re Burrow*, 505 B.R. 838 (Bankr. E.D. Ark. 2013)(Mandatory abstention), *In re Laddusire*, 494 B.R. 383 (Bankr. W.D. Wis. 2013)(Permissive abstention), *Matter of Horace,* 54 B.R. 671, 672

---

[1] Bedford has state law challenges to the amount 1930 claims it is owed.

(Bankr. D.N.J. 1985)(Mandatory abstention).

58. Upon that determination, Bedford will promptly close on the Bridge Loan and pay its creditors.

59. If 1930 refuses that payment, absent viable alternatives, Bedford will consent to an order for relief, and promptly file a plan of reorganization paying creditors 100% of their allowed claims.

60. Upon learning of the Petition, Bedford's counsel contacted 1930's counsel about agreeing to modifying the automatic stay so 1930's claim could be liquidated in state court.

61. The Motion is their response.

62. Every reason exists to deny the Motion.

## THIS IS NOT A COLLUSIVE, BAD FAITH INVOLUNTARY PETITION

63. This is not a collusive involuntary petition filed in "bad faith.

64. Even if it was, the Motion offers no authority making it cause for § 543(d) relief.

### Communication - Not Collusion

65. Bedford discussed 1930's foreclosure action and the Receiver's appointment

with its creditors.

66. They discussed their concerns for Bedford's viability with a state court receiver and what risks they face.

67. The decision to file the Petition was not Bedford's.

68. It was its creditors.

69. The Motion, ¶ 14, cites *In re Grossinger,* 268 B.R. 386 (Bankr. S.D.N.Y.2001) and *In re Stern*, 268 B.R. 390 (Bankr. S.D.N.Y 2001) as examples of collusive bad faith involuntary petitions.

70. They may have been. But they don't apply here.

71. *In re Stern*, involved a second involuntary Chapter 11 petition filed by creditors who thereafter took no action to advance case, and who failed even to serve copy of the petition on the debtor until after bankruptcy court had Issued order to show cause why case should not be dismissed where petition was filed, not in a legitimate attempt to preserve equity in mortgaged property for payment of creditors' claims, but in effort to frustrate foreclosing mortgagee, in hopes of extracting some concession. *Id.,* at 294.

72. *In re Grossinger*, was a single creditor, with a disputed claim who filed a petition to negotiate with the Debtor. 268 B.R. 386.

73. Both cases appear to be more traditional "bad faith" involuntary cases, filed

to accomplish non-bankruptcy purposes.

74. In contrast, "Red Flags/Common Characteristics in a Collusive Involuntary Scheme," include:

    1. Debtor who is subject of a 180-day bar on refilling has an involuntary filed against him/her.

    2. Creditors have recently acquired the claim asserted in the involuntary.

    3. "Professional" creditors who reappear regularly in suspicious sounding deals.

    4. Same attorney is involved in the voluntary and involuntary bankruptcies.

    5. Creditors are "former" long-term business associates of the debtor's insider.

    6. Insider has filed several suspicious bankruptcy cases for corporate or partnership entities in a short period of time

31 No. 1 Bankr. Ct. Dec. News 7

75. None of these stigma are here.

76. None are alleged.

77. A better analogy would be *In re Kingston Square Assocs.*, 214 B.R. 713

(Bankr. S.D.N.Y. 1997)(Motion to dismiss denied).

78. That debtor recruited creditors to file involuntary petitions, to circumvent corporate bylaws restricting filing voluntary petitions, and not filed solely to delay or frustrate creditors. *Id.*

79. Bedford has a real possibility of reorganizing in or out of chapter 11.

80. It prefers not resolving its problem in chapter 11.

81. Nevertheless, consenting to an order for relief may be necessary to achieve its objective - paying its creditors.

82. Bedford sees the Petition as filed in good faith, for a legitimate bankruptcy purpose, benefitting all of Bedford's creditors and preserving value for its equity security holders.

83. The Receiver jeopardizes all of that.

84. The Motion should be denied.

**WHEREFORE,** Bedford asks this Court to issue orders: a.) denying the Motion; and b.) modifying the automatic stay so the state court can liquidate 1930's claim;

and c.) granting such other and further relief as this Court deems proper.

Dated: New York, NY
      September 4, 2019

                        WAYNE GREENWALD, P.C.
*Attorneys for Alleged Debtor*
*1934 Bedford, LLC.*
475 Park Avenue South - 26th Floor
New York, NY 10016
212-983-1922

By: /S/ Wayne M. Greenwald, Pres
     Wayne M. Greenwald

# VERIFICATION

Nikol L. Vonlavrinoff declares:

1. I am the principal of 1934 Bedford LLC.

2. I have personal knowledge of the facts stated herein.

3. I read the preceding objection to 1930 Bedford Avenue LLC's motion for relief under 11 U.S.C. § 543(d)(1), know its contents and same are true to the best of my knowledge.

4. I declare this statement of facts to be true and correct, under penalty of perjury, pursuant to 28 U.S.C. § 1746.

Dated: Brooklyn, NY
     September 4, 2019

                                  _____/s/ Nikol L. Vonlavrinoff_
                                         Nikol L. Vonlavrinoff