

# W FINANCIAL
SPECIAL SITUATION FINANCING
FOR COMMERCIAL REAL ESTATE

July 22, 2019

Mr. Nick Lavrinoff

Dear Mr. Lavrinoff:

W Financial ("W Financial" or "Lender") will consider a request from Borrower (as such term is defined below) that W Financial provide a loan (the "Loan") with respect to the Property (as defined below), to be secured by the Property by way of a first-mortgage and such other security as may be required by Lender, as more particularly described below, provided that the Loan is structured on the terms and conditions outlined below in this term sheet ("Application" or "Term Sheet"):

- **Borrower:** A single-purpose bankruptcy-remote entity acceptable to Lender.

- **Guarantors:** Nick Lavrinoff and any other entities or individuals having an interest in the Borrower.

- **Loan Amount:** $19,300,000  The total loan-to-value ("LTV") shall not exceed 70% of the as-is value of the subject property. The LTV shall be determined by Lender in its sole discretion.

- **Collateral:** An unconditional first mortgage lien on premises located at 1930 Bedford Avenue, Brooklyn, NY, assignment of leases and rents and a pledge of all membership interests in the Borrower or such appropriate upstream entity.

- **Interest rate:** Floating at Prime plus 2.25%, with a floor of 7.75%

- **Term:** 12 Months

1

FOR DISCUSSION PURPOSES ONLY – NOT A COMMITMENT TO LEND

60 Cuttermill Road, Suite 601 Great Neck, NY 11021

➤ **Extension Option:** There shall be one (1) extension option(s) to renew for twelve (12) months each at the same interest rate, provided that Borrower has not been in default beyond any applicable grace or cure period under the terms of any of the loan documents. In addition, all Borrower's obligations have been timely met, the financial condition and credit standing of the Borrower & Guarantors remains satisfactory to Lender in its sole discretion and payment of an extension fee equal to 1% of the original principal balance of the Loan for each renewal option (such sum shall be paid to the Lender not less than 30 days prior to the expiration of the then current term). The Borrower shall request an extension in writing at least thirty (30) days prior to the end of the current term. As a condition to any such extension, Borrower shall replenish any and all escrow and/or reserve accounts required herein in amounts determined by Lender.

➤ **Amortization:** None.

➤ **Origination Fee:** 1.50%

➤ **Loan Repayment:** monthly payments of interest only. Payments shall be due on the first (1st) day of each month and shall be paid by wire transfer only (checks are not accepted for debt service payments or any other payments made to Lender). A late fee of 6% shall apply to any payments (inclusive of any escrow payments) received after the fifth (5th) day of the month. If Lender accepts a pro rata portion of any monthly payment, Borrower shall nonetheless pay a late fee equal to 6% of the total amount that should have been paid. In the event that any monthly payment is late, an exit fee shall be imposed equal to 1% of the original principal loan balance for each late payment. Notwithstanding the foregoing, in no event shall Lender charge interest in excess of the maximum lawful rate applicable to the Loan.

➤ **Partial Interest Reserve:** Borrower shall establish at closing a Payment Reserve of $1,000,000. Said reserve shall be deposited and held during the term of the Loan, in an interest-bearing escrow account under the control of Lender. Each month Lender shall debit up to $8,333.33 from said account to pay the estimated monthly interest due on the Loan for the first twelve (12) months of the Loan. To the extent there is any shortfall between the amount due and the amount Lender has agreed to debit from the Payment Reserve, Borrower shall pay the difference in accordance with the terms of the Note. In addition, the Borrower will remit to Lender a monthly payment for the escrow of Real Estate Taxes in accordance with the tax escrow section of this Term Sheet. For the avoidance of doubt, it is anticipated that the interest reserve will be sufficient to pay approximately one-half of the required monthly interest payment and the Borrower will be responsible to pay the other one-half monthly interest payment out-of-pocket.

➤ **Cap X Reserve:** None.

FOR DISCUSSION PURPOSES ONLY – NOT A COMMITMENT TO LEND

➢ **Prepayment Premium:** The Loan may be prepaid at any time; provided, however, that if the Loan is prepaid within the first three (3) months (the "Minimum Interest Period"), there shall be a minimum prepayment premium equal to the difference between the interest collected to the date of the prepayment and the interest that would have been collected for the first three (3) months had the Loan not been prepaid. (If the Loan is not funded on the first day of the month, then the Minimum Interest Period shall begin on the first day of the month following the funding of the Loan.) Thereafter, there will be no prepayment penalty if the Loan is prepaid before the end of the term of the Loan provided that any amount prepaid shall not be less than $200,000 in each instance. Any prepayment is subject to the giving of not less than twenty (20) days prior written notice.

➢ **Documentation:** Upon Borrower's acceptance of this Term Sheet and payment of the expense deposit as outlined herein, Lender shall commence its due diligence and the documentation of the Loan based on terms outlined herein. Such documentation shall include Lender's loan documentation including but not limited to: mortgages, mortgage notes, environmental indemnity agreement, security agreement, assignment of leases and rents, an opinion letter from Borrower's counsel, and other documents, instruments, and/or undertakings as required by Lender and Lender's counsel. Notwithstanding the foregoing, Lender reserves the right to modify the terms of the Loan in its sole discretion based upon facts and circumstances learned during the conduct of its due diligence.

➢ **Participants:** The Lender reserves the right to participate, sell or assign all or any portion of its interest in the Loan to another Lender or investor and that the credit information related to the Loan request may be disclosed to such participant Lender.

➢ **Title Insurance:** Simultaneously with the closing of the Loan, Lender shall be furnished with a policy of mortgage title insurance in the amount of the Loan. Such policy shall insure a first priority lien of the mortgage of Lender, subject only to those exceptions to title as are approved by Lender and its counsel and with affirmative insurance at standard rates on such matters as the Lender or its counsel may require. The title policy shall be issued directly by a nationally recognized title insurance company or only through an abstract company from the list attached hereto as Exhibit A, which company shall be authorized to issue a policy from a nationally recognized underwriter acceptable to Lender and its counsel, and shall contain such terms and coverage as the Lender and its counsel shall deem acceptable. The entire title insurance premium, recording charges, mortgage recording taxes and other expenses must be paid by the Borrower at the closing of the Loan. Lender may require such payment directly from the Loan proceeds. Lender's approval in Lender's sole discretion and in such event, Lender shall require Borrower's abstract or title company to have the loan policy co-insured through one of Lender's approved companies which shall be chosen by Lender.

➢ **Subordinate Financing:** No subordinate financing or liens shall be permitted except as stated herein. There is an existing 2nd mortgage lien from a private individual at $1,600,000.

- **Publication Release:** Borrower agrees that Lender may release publicity articles or advertisements concerning its financing of the property.

- **Tax Escrow:** At Closing an escrow of or payment of real estate taxes shall be established with Lender and each month during the term of the Loan Borrower shall remit to Lender monthly an amount sufficient to fund an escrow account for real estate taxes.

- **Insurance Escrow:** The Borrower will provide evidence that the insurance premiums for one year from the date of closing are paid in full and will provide Lender written notice of a one year extension of such policy no later than 30 days prior to the expiration of the initial term of the Loan is Borrower exercise the option to extend said policy if the option to extend.

- **Governing Law:** This agreement shall be governed by the laws of the State of New York as though it was to be wholly performed therein. Any and all controversies, claims or disputes between the parties hereto (each a "Party" and together, the "Parties") or arising out of or relating to this Term Sheet or the interpretation, performance or breach thereof ("Dispute") shall be resolved according to the following procedures, which shall constitute the sole dispute resolution mechanism under this Agreement: in the event that the Parties are unable to resolve any Dispute informally, such Dispute shall be submitted to final and binding arbitration, which arbitration shall be private and confidential. The arbitration shall be initiated and conducted according to either the JAMS Streamlined (for claims under $250,000) or the JAMS Comprehensive (for claims $250,000 and greater) Arbitration Rules and Procedures, except as modified herein, at the New York, New York office of JAMS, or its successor ("JAMS") in effect at the time the request for arbitration is made (the "Arbitration Rules"). The arbitration shall be conducted in New York, New York, before a single neutral arbitrator appointed in accordance with the Arbitration Rules ("Arbitrator"). The Arbitrator shall follow New York law and the Federal Rules of Evidence in adjudicating the Dispute. The Arbitrator has no authority to award and the Parties shall waive any right to seek punitive or other damages not measured by the prevailing Party's actual damages, and such damages shall not be recoverable by any other process or in any other proceeding.

- **Fees, Costs and Expenses.** Borrower shall pay all costs and expenses actually incurred in connection with the preparation for and the closing of the Loan, whether the Loan is closed or not, including, but not limited to: travel expenses, appraisal fees, engineering examination fees, environmental audit fees, inspection fees, credit report fees, insurance policy review fees, surveyors' fees, zoning consultant's fees, reasonable legal fees and costs, intangibles taxes, note taxes, mortgage taxes, stamp taxes, transfer taxes, all recording costs and filing fees, all license and permit fees, all title/UCC/litigation/tax lien search fees, and all title and other insurance premiums. By signing this Term Sheet Borrower understands, agrees and hereby acknowledges that W Financial shall not bear any out-of-pocket costs or expenses whatsoever in connection with this term sheet or the Loan. This section shall survive the expiration or termination of this term-sheet and a


closing if one occurs. The Expense Deposit (as defined below) shall be refundable, less a non-refundable due diligence/underwriting fee in the amount of $10,000, and any expenses actually incurred by Lender, if for any reason (other than in the event of Borrower's breach or default hereunder) W Financial does not deliver loan documents substantially in accordance with the terms contained in this Term Sheet or, if W Financial elects, a commitment letter substantially including the terms in this Term Sheet. In the event that the Loan closes, any remaining portion of the Expense Deposit shall be credited at the closing of the Loan.  If Lender issues a commitment letter or loan documents on substantially the same terms as those outlined in this offer letter then, any unused balance of the Expense Deposit shall become non-refundable. Applicant and Guarantors hereby agree to provide additional funds to W Financial (by wire transfer or bank check) from time to time to supplement the Expense Deposit for expenses actually incurred, or to be incurred, within two (2) business days of W Financial's request for the same.

- **Broker:** Borrower represents and warrants that it has not dealt with any finder or broker in    connection    with    this    proposed    Loan    other    than    ("Brokers"). Borrower shall pay any and all commissions and fees due to any person or party including, without limitation, the Brokers, and Borrower and Guarantors hereby agree to indemnify and hold W Financial harmless from any claims for commissions or fees. Borrower acknowledges that W Financial reserves the right, in its sole discretion, to provide additional compensation to any marketers, originators, finders or brokers, at W Financial's expense. The foregoing representation and such indemnity shall survive the expiration or termination of this term sheet, or Closing, as applicable.

- **Leases:** The Lender shall be provided with true and complete copies of all leases for the Property, which leases must be satisfactory to the Lender in all respects. All leases shall be fully subordinate to the Loan in a manner satisfactory to the Lender. The Lender shall be provided with tenant estoppel certificates, executed by each commercial tenant, on the Lender's standard form, which estoppel certificates shall be satisfactory to the Lender in all respects.

- **Confidentiality:** Borrower will keep, and will instruct and cause its agents, advisors and legal counsel to keep, this term sheet strictly confidential. Borrower shall not disclose W Financial' s name or W Financial' s involvement with the transaction contemplated by this term sheet to any person without W Financial' s prior consent.  Borrower will disclose to W Financial the names of any advisors and legal counsel to whom this term sheet is provided, if any. The foregoing confidentiality provisions shall be inapplicable in the event and to the extent any court or regulatory authority having jurisdiction over the matter shall require disclosure of any such information.

- **Term Sheet Not a Commitment by Lender:** Borrower understands and agrees that this Term Sheet is provided by W Financial solely for discussion purposes and is not a commitment of any kind. As such the terms set forth herein are not binding upon W Financial. W Financial may withdraw from such discussion at any time and for any

FOR DISCUSSION PURPOSES ONLY – NOT A COMMITMENT TO LEND

reason in W Financial's sole and absolute discretion, including without limitation prior to the Return Date set forth below. Borrower further understands and agrees that W Financial is not obligated to enter into the transaction contemplated by this Term Sheet, on the terms set forth herein or on any other terms, unless and until W Financial executes and delivers to Borrower a separate written commitment letter or executes final documentation, the terms of which shall supersede in their entirety the terms set forth herein. Notwithstanding the foregoing, Borrower understands and acknowledges that all of its representations, warranties, covenants and obligations are binding and enforceable against it, and Lender is relying on same to enter into this Term Sheet.

➢ **Miscellaneous:** Borrower represents and warrants to W Financial that the subject property is currently owned, or is being acquired, by Borrower strictly for investment or business purposes and Borrower further represents and warrants to W Financial that the proceeds of the Loan are not being sought, and will not be used, for personal, family or household purposes of Borrower or any direct or indirect owner of Borrower. W Financial shall be under no obligation to make the Loan or any other loan unless and until all of the requirements hereunder have been fully satisfied as W Financial shall determine in its sole discretion. Except as otherwise specifically provided herein, all documents, certificates, permits and other items contemplated hereby, all inspections, appraisals, evaluations and approvals contemplated hereby, all payments required hereby, and all other conditions, matters or things of any nature contemplated hereby to exist, be performed or be provided, shall all be satisfactory to W Financial in its sole discretion and shall exist, be performed and be provided to W Financial prior to Closing of the Loan. Neither this Term Sheet nor any of the proceeds of the Loan shall be assignable by Borrower without the prior written consent of W Financial and any attempt to make such assignment without such consent shall be void. Execution of this Term Sheet by W Financial shall not imply the approval by W Financial of any document or information previously furnished to W Financial. This Term Sheet contains the entire agreement of Borrower and W Financial with respect to the matters referred to herein and supersedes entirely any and all prior written or oral agreements relating to the Loan. There are no contemporaneous oral agreements relating to the subject matter hereof. No change in the provisions of this Term Sheet and no approval or consent of W Financial shall be binding unless in writing and executed in the name of, and by an officer of, W Financial. Time is of the essence as to Borrower with respect to all dates and periods of time set forth in this Term Sheet. Whenever anything is described herein in general terms and one or more examples or components thereof is set forth after the word "including" or is otherwise associated with such general description, the examples or components shall be deemed illustrative only and shall not be construed as limiting the generality of the description in any way. The Loan amount set forth on page 1 hereof is based upon, among other things, information provided by Borrower and reflected on the Estimated Sources and Uses annexed hereto. In the event of any material change in the information set forth on the Estimated Sources and Uses, including, without limitation, new cash equity being provided by the Borrower or a reduction in any of the use of Funds, if any, Lender reserves the right in its sole discretion to reduce the Loan amount accordingly. **IT IS**

FOR DISCUSSION PURPOSES ONLY – NOT A COMMITMENT TO LEND

**EXPRESSLY ACKNOWLEDGED BY BORROWER THAT THIS IS A CONDITIONAL TERM SHEET.**

> **Limitation of Damages:** In no event shall W Financial or any assignee of the Loan be liable for any special, incidental, consequential or punitive damages whatsoever (including without limitation loss of business profits or opportunity) and by their execution of this Term Sheet, Borrower and Guarantors waive any right to claim or seek any such damages. W Financial's liability for any damages claimed by Borrower or any Guarantors for any cause whatsoever arising out of, or in any way related to, this Term Sheet shall be limited to the lesser of actual damages or the fees actually paid hereunder. This Section shall survive the termination of this Term Sheet or the Closing, as applicable.

The above terms and conditions are an outline only and do not purport to summarize all of the conditions, covenants, representations, warranties and other provisions that would be contained in definitive legal documentation for the Loan. It is understood that Lender has not yet completed due diligence and that making, closing and funding of the Loan is conditioned upon completion of due diligence and the execution of the loan documents, all in form and substance satisfactory to Lender.

**Acceptance:** If you would like to proceed, please sign and return this letter no later than the close of business on August 1, 2019, along with a wire transfer (instructions attached) to W Financial Fund, LP for the $30,000 expense deposit ("Expense Deposit"). If not accepted and returned on or prior thereto, this letter of interest shall be null and void. In addition, if you accept this Application letter and deliver the Expense Deposit, then the Loan must close (all conditions and requirements of the Application having been met to the satisfaction of Lender and its counsel) by the close of business on August 30, 2019 (the "Expiration Date") or this Application shall automatically expire and be canceled. Lender may extend the Expiration Date in its sole discretion and further conditioned upon receipt by Lender of an additional Expense Deposit as determined by Lender in its sole discretion.

Very truly yours,

W Financial Fund, LP
By: W Financial G.P.,
    Managing Member

_____
By: David Heiden

Read, Understood & Agreed:
Borrower:

_____
By: Nick Lavrinoff
    Manager/Managing Member

[3679-1/5052803/1]                                          8

FOR DISCUSSION PURPOSES ONLY – NOT A COMMITMENT TO LEND