**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
In re                                                              Case No.: 19-44751-CEC

**1934 BEDFORD LLC,**                                  Proceedings for
                                                                      Reorganization under
                                              **Debtor.**            Chapter 11
--------------------------------------------------------X


===========================================================

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OF THE PLAN.**

**ACCEPTANCES MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT**

**HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THE ANNEXED**

**DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT.**

===========================================================

**DISCLOSURE STATEMENT, PURSUANT TO BANKRUPTCY**
**CODE SECTION 1125, FOR 1934 BEDFORD LLC'S**
**PLAN OF REORGANIZATION**


## I. INTRODUCTION

1934 Bedford LLC, Debtor and Debtor-in-Possession ("Bedford" or the "Debtor),

prepared this disclosure statement (the "Disclosure Statement") pursuant to Bankruptcy Code

Section 1125,[1] in this Bankruptcy Case and in connection with the solicitation of acceptances or

rejections of the Debtor's Plan of Reorganization, dated December 11, 2019  (the "Plan").  The

Plan was filed on December 11, 2019.

---

[1] Capitalized or abbreviated terms contained in this Disclosure Statement shall have the same meaning as ascribed to them in Article I of the Plan, or elsewhere therein, unless otherwise defined in this Disclosure Statement.

A complete copy of the Plan is annexed to this Disclosure Statement as Exhibit A."

The purpose of this Disclosure Statement is to provide Bedford's Creditors and Interest Holders with adequate information to enable them to make an informed judgment about the acceptability of the Plan.  This Disclosure Statement aims to give Creditors and Interest Holders sufficient information, as far as it is reasonably practicable for the Debtor to provide, that would allow a hypothetical reasonable investor typical of the holders of Claims and Interests in the classes Impaired under the Plan to make an informed judgment about whether to accept or reject the Plan.

The provisions of the Plan are binding on all Creditors and Interest Holders, therefore, please read the Plan and this Disclosure Statement carefully.

**APPROVAL OF THIS DISCLOSURE STATEMENT BY THE COURT DOES NOT AMOUNT TO A RULING BY THE COURT ON THE FAIRNESS OR MERITS OF THE PLAN.**

**NO STATEMENT, INFORMATION OR REPRESENTATION CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS, PROFIT OR FINANCIAL CONDITION) IS AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE ACCEPTANCES OF THE PLAN WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION AND ANY SUCH ADDITIONAL REPRESENTATION OR INDUCEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN SHALL DELIVER**

SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS THE COURT MAY

DEEM APPROPRIATE. THE FINANCIAL INFORMATION CONTAINED HEREIN

HAS NOT BEEN SUBJECT TO AN AUDIT. THE DEBTOR IS UNABLE TO

WARRANT AND REPRESENT THE ACCURACY OF THE INFORMATION CONT-

AINED HEREIN ALTHOUGH EVERY EFFORT HAS BEEN MADE TO INSURE ITS

ACCURACY.

THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY AN ORDER OF

THE COURT, THE HONORABLE CARLA E. CRAIG, UNITED STATES CHIEF

BANKRUPTCY JUDGE.  HOWEVER, THE COURT HAS NOT DETERMINED

WHETHER THE PLAN MEETS THE REQUIREMENTS OF THE BANKRUPTCY

CODE FOR CONFIRMATION NOR IS THIS DISCLOSURE STATEMENT OR THE

ORDER APPROVING IT TO BE CONSTRUED AS AN APPROVAL OR EN-

DORSEMENT OF THE FAIRNESS OR MERITS OF THE PLAN BY THE COURT.

ALL PARTIES ENTITLED TO VOTE ON THE PLAN ARE URGED TO

REVIEW IN FULL THE PLAN AND THIS DISCLOSURE STATEMENT TOGETHER

WITH ALL EXHIBITS ATTACHED THERETO, PRIOR TO VOTING ON THE PLAN,

AND MAY DESIRE TO CONSULT LEGAL COUNSEL PRIOR TO VOTING TO

ENSURE COMPLETE UNDERSTANDING OF THEIR TREATMENT UNDER THE

PLAN. THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF

CREDITORS AND INTEREST HOLDERS OF THE DEBTOR TO ENABLE THEM TO

MAKE AN INFORMED DECISION ABOUT THE PLAN.

EACH CREDITOR AND INTEREST HOLDER IS URGED TO CONSULT ITS

**OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO IT UNDER
FEDERAL AND APPLICABLE STATE, LOCAL AND FOREIGN TAX LAWS. THE
DEBTOR MAKES NO WARRANTIES OR REPRESENTATIONS REGARDING THE
TAX IMPACT OF THE PLAN ON ANY CREDITOR OR INTEREST HOLDER.**

**A. <u>Confirmation Hearing</u>**

The court has scheduled a hearing (the "Hearing") to consider Confirmation of the Plan on   February ____ , 2020 at _____ p.m., at the United States Bankruptcy Court, Eastern District of New York, 271Cadman Plaza East, Courtroom numbered  3529, Brooklyn, New York 11201.

**B. <u>Objections to Confirmation</u>**

Objections to confirmation of the Plan, if any, must be in writing and must identify the objecting party and the nature of its interest in the Bankruptcy Case and must set forth in detail the nature and basis of the objection. Objections must be filed with the Clerk of the Court with the ECF system, with a copy to the Chambers of Chief Judge Craig and served upon the following no later than February ____, 2020 at 5:00 P.M.:

Wayne Greenwald, Esq.
Wayne Greenwald, P.C.
475 Park Avenue South - 26th Floor
Yonkers, New York 10016

Office of the United States Trustee,
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY   10014
attn: Nazar.Khodorovsky, Esq.

**C. <u>Overview of Voting on the Plan</u>**

     Holders of Claims in Classes 1, 3, 4, 5, 6, 7 and Class 9 Equity Security Interest holders in all Classes are deemed to have accepted the Plan.  Their respective Allowed Claims or Interests are not impaired. Therefore, they are not entitled to vote under the Plan. In accordance with Bankruptcy Code section 1123(a).

     Holders of Claims in Classes 2 and 8 are impaired.  They are entitled to vote to accept or reject the Plan.  They are being provided a ballot for that purpose.

     Allowed Administrative Claims are not being classified under the Plan. The Plan provides that these Claims are to be paid in full on the distribution date.

**D. <u>General Description of Treatment of Claims and Interests</u>**

     Set forth in detail elsewhere in this disclosure Statement and in the Plan is a description of the technical aspects of classification of Claims and Existing Interests, the Distributions and treatment afforded to Holder of such claims and Interest Holders upon the occurrence of the Effective Date and the consequences of the proposed Reorganization of the Debtor. THE FOLLOWING IS A BRIEF SUMMARY OF THE TREATMENT AFFORDED TO CLAIMS AND CLASSES BY THE PLAN.  THIS SUMMARY IS PROVIDED FOR CONVENIENCE PURPOSES ONLY AND IS ABSOLUTELY QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE FULL TEXT OF THE PLAN.  YOU ARE URGED TO CONSULT THE ACTUAL TEXT OF THE PLAN TO DETERMINED THE TREATMENT GIVEN TO THE CLASS WHICH ENCOMPASSES YOUR TYPE OF CLAIM OR INTEREST.

| **Class** | **Description** | **Distribution & Treatment** |
|---|---|---|

| No Class | Administrative Claims | Allowed Administration Claims will be paid in full in cash on the Effective Date or entry of an order, if required, or as otherwise agreed to between the Debtor and the holder of such Claim. |
|---|---|---|
| Class 1 | Secured Claim of 1930 Bedford Avenue, LLC ("1930"), secured by the first mortgage on the Debtor's Real Property | The holders of Allowed Class 1 Claims shall be paid in full on the Effective Date. Unimpaired. |
| Class 2 | Secured Claim of Congregation Bnai Jacob ("Bnai Jacob") secured by the second mortgage on the Debtor's Real Property | Allowed Claims of Class 2 Creditors shall, on the Effective Date: <br> a.) retain their mortgage lien on the Debtor's Real Property in its existing priority; <br> b.) resume receiving monthly payments from the Debtor with the timing and amounts provided under the existing loan documents between the Debtor and Class 2 creditor; <br> c.) have all periodic payments were due, but unpaid, prior to the Effective Date become included in the Class 2 Creditor's principal balance under its loan documents; <br> d.) have the Class 2 Creditor's loan documents with the Debtor modified to: 1.) Reflect the increase of the principal balance by the amount of the unpaid payment due as of the Effective Date; and 2.) extend the payments under the loan documents to amortize the increased principal balance at the payment rate and timing of the existing loan documents. <br> Impaired |
| Class 3 | All Other Secured Creditors | Allowed Class 3 Claims shall be paid in full on the Effective Date <br> Unimpaired |

| Class 4 | All Allowed Claims Entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)). | Allowed Class 4 Claims shall be paid in full on the Effective Date Unimpaired |
|---|---|---|
| Class 5 | The Claims of Taxing Authorities | Allowed Class 5 Claims shall be paid in full on the Effective Date. Unimpaired |
| Class 6 | General Unsecured Claims | The holders of Allowed Class 6 Claims shall receive a 100% distribution on the Effective Date. Unimpaired |
| Class 7 | Claims for Tenant Security Deposits | Unless otherwise agreed to, Allowed Class 7 Claims will be paid in full in the ordinary course of the Debtor's business. Unimpaired |
| Class 8 | Unsecured Insider Creditors | Allowed Claims of Class 8 Creditors will be paid in full through periodic payments when available, provided: a.) the Claims of Classes 1, 3,4 and 5 are paid in full; b.) the Debtor is current making payments to Class 2 and 7 Creditors, pursuant to the Plan; and c.) there are sufficient net revenues to make the payment. Impaired |
| Class 9 | Equity Security Interest Holders | Allowed Class 9 Equity Security Interest holders will retain their interest in the Debtor. Unimpaired |

Allowed Administrative Claims are comprised of the claim of Wayne Greenwald, P.C., counsel to the Debtor and Debtor-in-Possession and SPIEGEL LLC, accountants to the Debtor. Wayne Greenwald, P.C. expects to apply for total compensation of approximately $      with expenses of approximately $____ SPIEGEL LLC,  expects to apply for total compensation of

approximately $_____with expenses of approximately $_____ .

## E. **Plan Alternatives**

The Debtor believes that the Plan provides the best means for the distribution of the proceeds of the sale or refinancing of the Debtor's assets.   The Plan provides the most expeditious and efficient means of paying Creditors.   A Chapter 7 case could reduce the payment to unsecured creditors because of the administrative  costs and the effect of the Real Property's forced sale.  It would also delay the payment to Creditors for their Allowed Claims.  A chapter 7 case also raises the specter of "claw-back" litigation to recover pre-petition payments to creditors.

## II. **EVENTS PRECEDING THE FILING**

### A. **History of the Debtor**

Bedford was formed as a New York limited liability company on or about December 17, 2014.  Bedford's primary asset is the real estate located at 19Bedford Avenue, Brooklyn, New York (the "Real Property").  In or about March 2015, Bedford began purchasing the real estate comprising the Real Property.  The Real Property is predominantly a multi-unit residential property with some commercial space.  Bedford set about developing the Real Property.  In or about January 2019, Bedford was able to start renting its units.

## B. **Loan Initiation**

In 2016 Bedford borrowed $12,500,000.00 from SIII Capital Group LLC (S3[2]) and/or its affiliates, at an annual interest rate of 10-12% per annum, collateralized by a mortgage on Bedford's Real Property (the "Loan"). In February 2018, Bedford increased the Loan by $2,500,000.   Bedford paid about$3,000,000.00 in interest, up to the last payment that S3 accepted, in  January 2019.  That was one month before the Loan's maturity date.

Bedford wanted to pay the Loan as soon as possible and was able do so.  Bedford strove to secure a new loan to pay the Loan, in full, before and after it  matured.

However, Bedford believes S3 interfered with and thwarted Bedford's efforts.  This includes preventing Bedford from obtaining a new loan in time for the targeted funding date, May 9, 2019. Bedford sees this as injuring Bedford's financial standing, reputation, ability to conduct future business and ability to finance its development.


## C. **Financing from Bnai Jacob**

In the Summer of 2018, Bedford asked S3 for additional funds. S3 rejected the request.  It also suggested that Bedford obtain the requested funds elsewhere.

So, Bedford obtained a $1,500.000 loan from Bnai Jacob, secured by a second mortgage on the Real Property.


## D. **Bedford's Frustrated Refinancing**

---

[2] In 2018 S3 assigned its interests to the Loan and mortgage to an affiliate S3 RE Funding III LLC, also referred to as S3.

On or about January 28, 2019, Bedford paid the last interest payment it would make, and it was posted on or about January 29, 2019.  On February 28, 2019, the Loan matured, according to the Loan documents.  On March 1, 2019, S3 sent out a default notice.  Bedford recalls S3's prior promises that it wouldn't.

By March 2019, S3 deposited $28,000.00 with a bank for a $25,500,000.00 bank loan at 4.65% interest per annum. This new loan was progressing toward a closing, and S3 would have been paid in full, shortly.

In April 2019, Bedford was pursuing this new loan.  Bedford had several communications with S3 about its progress.  However, S3 directed Bedford to obtain a more expensive loan from a lender it proposed.  Bedford acquiesced.  Bedford just wanted Bedford to satisfy the Loan, ASAP.

Bedford communicated with S3 about the new loan's progress with the new lender.  On or about April 17, 2019, S3 asked Bedford for its rent roll.  Concerned, Bedford's principal, Nikol Vonlavrinoff asked if S3 was planning to sell Bedford's loan.  He was assured it wasn't.

Bedford then arranged for a meeting with S3 to discuss an accurate payoff amount.  A meeting was promised for the end of April.  Bedford executed the new lender's revised term sheet and wired $17,500 as a good faith deposit and legal fees.  Shortly afterward, S3 refused to meet.


**E. Bedford's Tries to Close Its Refinancing**

In May 2019, Bedford tried coordinating loan documents for a May 9, 2019 closing and payoff of S3's Loan.  A pre-closing meeting was set,  However, S3 required a pre-negotiation agreement with waivers and concessions from Bedford.   S3 rejected Bedford's revisions to that agreement.  Neither the meeting nor closing occurred.

Bedford was prevented from paying the Loan on May 9, 2019,  as it intended.

### F.  S3 Transfers the Loan to 1930

On or about May 9, 2019,  S3 transferred the Loan to 1930.  Bedford attempted to negotiate with 1930 a means of satisfying the Loan. 1930 refused to meet with Bedford.  Bedford was told that 1930 was insulted by its proposal.

### G.  The Foreclosure Begins

In June 2019, 1930 filed a foreclosure action against the Real Property.  A receiver motion was approved.  Bedford countered with a petition determining the correct amount owed on the Loan.  At the petition's first hearing, the court told the parties to work at a settlement (the "Petition").

Bedford made an offer.  It received no response.

### H.  This Case Begins

Unsecured creditors of Bedford became aware of a receiver's appointment.  Apparently they were concerned about a receiver's impact on them and their business relationships with Bedford.   On August 2, 2019, they commenced this case by filing  an involuntary chapter 11 petition against Bedford.

## II. EVENTS IN THIS CASE

### A.  1930's Motion to Sustain the Receiver

After this Case was filed, 1930 sought an order relieving the state court receiver from the

Bankruptcy Code's requirement that they deliver to the Debtor the Debtor's property they control (the "Receiver Motion").

Bedford opposed that motion. Bedford argued that: a.) the motion was premature; b.) the receiver controlled none of the Debtor's property; and c.) 1930 failed to satisfy Bankruptcy Code § 543's requirements for that relief. The Receiver Motion was denied.

## B.  Consent to the Involuntary Petition

Bedford and the involuntary petitioning creditors stipulated to extend Bedford's time to respond to the involuntary petition. 1930 objected to the extension. One September 11, 2019, the Court held hearing on the objection. The Court would not approve the stipulation and directed Bedford to either consent to the involuntary petition or submit its opposition to it in short order.

On September 12, 2019, Bedford consented to the involuntary petition. The order for relief was entered on October 1, 2019. Shortly afterwards, Bedford filed its schedules of assets and liabilities and statement of financial affairs.

Bedford attended the meeting creditors, pursuant to Bankruptcy Code § 341(a).  No creditors attended the session.

## C.  Retaining Professionals

On the order for relief's entry, Bedford filed applications to engage Wayne Greenwald P.C. as its attorneys in this case and SPIEGEL LLC, as its accountants.

## D.  1930's Motion for Fed.R.Bankr.P. 2004 Examinations

Contemporaneously with the Receiver Motion, 1930 sought orders, pursuant to Fed.R.Bankr.P. 2004, authorizing it to examine Bedford and involuntary petition's petitioning creditors.

Bedford opposed that motion. Bedford argued that: a.) the motion was premature; b.) the discovery sought was not available through Fed.R.Bankr.P. 2004; and c.) 1930 failed to satisfy Fed.R.Bankr.P. 2004's requirements for that relief. The motion was denied.

Bedford made a second motion for the same Fed.R.Bankr.P. 2004 examination. Bedford opposed that motion for similar reasons. The motion was not granted.

## E.  Competing Motions for Stay Relief

Bedford wants to quantify and pay the Loan as soon as possible. Therefore, Bedford sought relief from the automatic stay, so it could continue its Petition in state Court.

1930 countered with its own motion for stay relief. However, 1930 wanted the entire foreclosure to proceeding to continue with the appointed receiver. 1930's motion was effectively an attempt to reargue its defeated Receiver Motion.

The Court denied both motions.

## E.  The Court Orders an Expedited Case

This case is considered a "single asset real estate" ("SARE") case. See Bankruptcy Code § 101(51B). SARE debtors usually have ninety days from the order for relief to file their plan of reorganization without consequences. See. Bankruptcy Code § 362(d)(3).

On November 12, 2019, the Bankrupt Court issued an order directing the Debtor to file its proposed Plan and Disclosure Statement by December 11, 2019. Bedford is complying with that

Order.

### G.  Use Of Cash Collateral

The Bankruptcy Code prohibits using cash collateral absent the secured creditor's permission or a court order.

Beginning September 11, 2019, Bedford and 1930 discussed the consensual use of cash collateral.  While there was some cooperation, that effort was unsuccessful.

On November 25, 2019, Bedford filed an emergency motion for orders authorizing it to use cash collateral.  A contentious hearing on that motion was heard on December 4, 2019.  The Court directed 1930 and Bedford to work out an arrangement for using cash collateral and continued the hearing to January 8, 2019.

1930 authorized Bedford to make some payments.  Additional authorizations are anticipated.

### H.  Bar Date Order

Bedford is seeking an order setting a deadline and procedures for filing proofs of claim and notice thereof.  Bedford is asking for a January 21, 2020 deadline.  When approved, notice will be sent under separate cover.

### I.  Monthly Operating Reports

Bedford is required to file monthly operating reports.  Since the order for relief, only one reporting period passed.  Bedford filed the required operating report.  Bedford expects to continue complying with this requirement.

## IV. DESCRIPTION OF THE AVAILABLE ASSETS AND THEIR VALUE DESCRIPTION OF THE LIABILITIES

The following is a description of the Debtor's available assets and their value:

**The Debtor's Assets Are**

Real Property-$38,600,000[3]

Cash- $58,697[4]

Equipment-$ 65,000[5]

Causes of Action - $ undetermined[6]

Accounts receivable pre-petition          $ 00.00[7]

Accounts receivable post-petition         $ 00.00[8]

**The Debtor's Liabilities are:**

---

[3] The Debtor bases this value on a December, 2018 appraisal of its Real Property.

[4] Based on the Debtor's Monthly Operating Report for October 2019. This figure will be updated for the final, approved Disclosure Statement.

[5] Based on the Debtor's Monthly Operating Report for October 2019. This figure will be updated for the final, approved Disclosure Statement.

[6] Bedford's schedules reflect a lender liability claim against S3 for an undetermined amount. It is investigating whether it has a similar, related claim against 1930.

[7] Schedule B filed in the Case.

[8] Based on the Debtor's Monthly Operating Report for October 2019. This figure will be updated for the final, approved Disclosure Statement.

- 15 -

1) Secured Claims (Real estate mortgages) - $20,478,704 (disputed in part)[9]

2) Other Secured Claims $289,428.90 (disputed in part)[10]

3) Priority tax claim-$00.00[11]

4) General Unsecured Claims-$641,000 (disputed in part)

5) Insider Unsecured Claims- $8,000,000

Total Liabilities            $29,409,129.90

## IV. ANTICIPATED FUTURE OF THE COMPANY

If the Debtor refinances the Real Property, it shall continue to operate the Real Property. The Debtor may sell or refinance the Real Property within years of the Effective Date.

Annexed hereto as Exhibit "B" is a copy of the Debtor's projections for 2020 and 2021.

If the Debtor sells its Real Property the Debtor will determine what to do with the net proceeds after paying Creditors under the Plan.

## V. SOURCE OF INFORMATION CONTINED IN THIS STATEMENT

The sources of information in this statement are Nikol Vonlavrinoff, the Debtor's principal, the Debtor's books and records and public records.

## VI. DEBTOR'S OPERATIONS IN CHAPTER 11

---

[9] Monthly operating report

[10] Schedule D filed in this case.

[11] Schedules and Monthly operating report

The Debtor operated its business in the ordinary course during this case.

Critical to the Debtor's reorganization is securing the Refinancing or sale for its Real Property. The Debtor interviewed several potential funders for a refinancing and purchaser for a sale.  It hopes to have a firm commitment, sufficient to fund the Plan before the Confirmation Date.

## VII. <u>LIQUIDATION ANALYSIS</u>

Based on the assets and liabilities discussed above, the Debtor estimates that there is approximately at least $10,000,000 equity in the Debtor's assets.  However, if this case was a liquidation under Chapter 7, that value would be drastically reduced by 1930'a  ability to credit-bid its Secured Claim and the Real Property being sold in a forced sale.

## VIII. <u>ACCOUNTING METHOD USED TO PRODUCE THE FINANCIAL DATA</u>

Cash method of accounting.

## IX. <u>THE FUTURE MANAGEMENT OF THE COMPANY</u>

The Debtor's management will continue to operate the Debtor after confirmation of the Plan of reorganization.  Nikol Vonlavrinoff , the Debtor's principal, shall remain the Debtor's chief executive officer.

## X. <u>ESTIMATED ADMINISTRATIVE EXPENSES</u>

Wayne Greenwald, P.C., the Debtor's bankruptcy counsel expects to apply for total compensation of approximately $_____with expenses of approximately $ _____.   SPIEGEL

- 17 -

LLC, the Debtor's accountants counsel expects to apply for total compensation of approximately $\_\_\_\_

\_with expenses of approximately $ _____.

## XI.  U.S. TRUSTEE FEES

The Debtor is current with the fees due to the Office of the United States Trustee under 28

U.S.C. § 1930.   The U.S. Trustee's fees will continue to be due and payable until a Final Decree is

entered or the case is dismissed or converted, whichever is earlier.  After confirmation of the Plan of

Reorganization, the Litigation Trust will be responsible for the payment of U.S. Trustee fees.

## XIII.  AMOUNT REALIZABLE FROM PREFERENCE AND FRAUDULENT CONVEYANCES

The Debtor's counsel examined the Debtor's financial history and determined that there are no

viable fraudulent conveyance or preferential transfer actions.

## XIV. LITIGATION LIKELY TO ARISE IN A NON-BANKRUPTCY CONTEXT

The Debtor's schedules and this Disclosure Statement indicates the Debtor's belief that it has

actionable claims against S3 and potentially 1930.  Bedford anticipates pursuing viable claims.

## XV.  THE TAX ATTRIBUTES OF THE DEBTOR

The Debtor is investigating whether it has any loss-carry forward.   The Dehbtor does not

expect the Plan or its consummation to have any negative tax consequences.

## XVI. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor will assume all of its executory contracts and unexpired leases.

## XVII. **THE PLAN OF REORGANIZATION**

**THE FOLLOWING IS A SUMMARY OF THE PROVISIONS OF THE PLAN AND, ACCORDINGLY, IS NOT AS COMPLETE AS THE FULL TEXT OF THE PLAN THAT ACCOMPANIES THIS DISCLOSURE STATEMENT.  THE PLAN ITSELF SHOULD BE READ IN ITS ENTIRETY. IN THE EVENT OF ANY INCONSISTENCIES BETWEEN THE DESCRIPTION OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT AND THE PLAN ITSELF, THE PROVISIONS OF THE PLAN SHALL CONTROL.**

### A. **General**

The Debtor believes that under the circumstances, the Plan provides for the best possible recovery to and a fair treatment in accordance with the provisions of and restrictions imposed by the Bankruptcy Code of each Class of Claims or Interests.  The Plan contains different articles detailing definitions, classification, treatment of Claims and Existing Equity Interests, means of implementation and other miscellaneous provisions that will, if the Plan is confirmed after appropriate notice and a hearing, be binding on the Debtor, any Entity acquiring property under the Plan and all Creditors and Existing Interests Holders.  If confirmed, the Plan will be binding whether or not a Claim or Interest is impaired under the Plan and whether or not a Creditor or Interest Holder has accepted the Plan.

***Solicitation of Acceptance of the Plan***. This Disclosure Statement was approved by the Bankruptcy Court in accordance with Bankruptcy Code § 1125.   It has been provided to all Creditors

- 19 -

and Interest Holders in this Case. This Disclosure Statement is intended to assist Creditors and Interest Holders in evaluating the Plan and their decision to accept or reject the Plan. Your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement at the time of, or before, such solicitation.

*Votes Considered in Determining Acceptance of the Plan*. Classes 1,3,4,5,6,7, and 9 are unimpaired under the Plan.  Therefore,  Classes 1,3,4,5,6,7, and 9 Creditors and Interest Holder are deemed to have accepted the Plan, and are not entitled to vote.

Classes 2 and 8 are impaired.  They are entitled to vote to accept or reject the Plan.  Creditors entitled to vote are receiving ballots.

*Voting Requirements with Respect to the Plan* The Plan will be confirmed if it is accepted by the requisite majorities of the Debtor's Creditors.  The requisite majorities with respect to each class are at least two-thirds (2/3) in dollar amount, and more than one-half (½) in number of allowed eligible claims that actually vote within the time period prescribed by the Court.

Ballots for voting are enclosed.  Ballots should be completed as promptly as possible and returned to the Debtor, c/o its counsel, Wayne Greenwald, P.C., 475 Park Avenue South 26th Floor, New York, New York  10016 Attn:  W. M. Greenwald, Esq.,  The Bankruptcy Court has set February _____, 2020, at 5:00 Eastern Time  as the last date for receipt of ballots.  That date may be extended only by further Order of the Bankruptcy Court.

In addition to voting, a creditor or party in interest has the right to object to the Plan, in writing, on any appropriate grounds.

**ANY BALLOT RECEIVED AFTER THE LAST DATE FOR
RECEIPT OF BALLOTS WILL NOT BE COUNTED IN THE
DETERMINATION OF WHETHER A CLASS HAS APPROVED
THE PLAN OF REORGANIZATION**

*Hearing on Confirmation of the Plan*. The Bankruptcy Court has set a hearing to

determine if the Plan has been accepted by the required number of holders of Claims and Interests and

if other requirements for Confirmation of the Plan outlined in the Bankruptcy Code have been

satisfied. The hearing on Confirmation of the Plan shall commence on February __, 2020, at the

United States Bankruptcy Court, located at the Hon. Conrad Duberstein United States Courthouse,

271 Cadman Plaza East,  Brooklyn, New York. Any objections to confirmation of the Plan must be in

writing and must be filed with the Clerk of the Bankruptcy Court and served on counsel for the

Debtor on or before three days prior to the Confirmation Hearing.

**B. <u>Underlying and Summary of Plan Provisions</u>**

The Plan is a 100% plan. The source of the funds or the procedures to satisfy Claims and

Existing Interests are set forth more fully below.  The following sections describe in detail why the

Plan is feasible and where and how the Debtor will obtain the proceeds to make the payments or

provide the treatment and to assume the obligations set forth in the Plan.

Article I of the Plan contains a series of definitions that are applicable to both the Plan and this

Disclosure Statement.  Readers are referred to the text of Article I of the Plan for a description of each

defined term.

Article II of the Plan describes the classification of Claims and Interests.  The Plan classifies

Claims and Interests separately in accordance with the Bankruptcy Code and provides different

treatment to different Classes.  The Plan provides for eight  (8) separate Classes of Claims and one (1) Class of Interests each of which is accorded the treatment proposed for such Class or group  under the Plan.  Article III of the Plan describes how the Classes of Claims and Interests are treated by the Plan. Article V provides how the Plan will be executed.

The Plan classifies Claims and Interests separately in accordance with the Bankruptcy Code and provides different treatment to different Classes.  Payments, Distributions and treatment provided under the Plan to, or for the benefit of, all Creditors and will be in full satisfaction and discharge of Claims and Interests, as more particularly explained in other Articles of the Plan.

Pursuant to section 1141 of the Bankruptcy Code, upon Confirmation of the Plan and achievement of the Effective Date, and except as otherwise provided for in the Plan, the Debtor will be discharged from all Claims and Interests that have arisen before Confirmation of the Plan.

## C. Summary of Treatment of Unclassified Claims

### 1. Allowed Administrative Claims

Allowed Administrative Claims are Claims against the Debtor and the Estate for administrative expenses (normally expenses accruing during the Bankruptcy Case) referred to in and allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code including, but not limited to, actual and necessary costs and expenses of preserving the Estate.  Administrative Claims include, by way of example only, wages, salaries, or commissions for services rendered after the Relief Date, compensation and reimbursement of expenses awarded by Final Order of the Bankruptcy Court to Professional Persons, and costs associated with solicitation of acceptances and rejections of the Plan.

Administrative Claims representing liabilities incurred in the ordinary course of the Debtor's business are being paid in due course during the Bankruptcy Case, or will be paid thereafter, when same become owing pursuant to their terms.  To the extent any such liabilities remain unpaid and are due pursuant to terms as of the Effective Date, they will be paid by the Debtor Post-Effective Date pursuant to and in accordance with ordinary business terms.

Claims for unpaid compensation and reimbursement of expenses to Professional Persons will be paid in Cash on the Effective Date, subject to same having been allowed and approved by the Bankruptcy Court, unless the Debtor and the holders of such Allowed Claims agree to other payment terms.

**D. <u>Summary of Treatment of Classes of Claims and Interests</u>**

**<u>Class 1 - The Secured Claim of 1930 Bedford Avenue, LLC</u>:**

Allowed Claims of Class  1 Creditors will be paid, in full, on the Effective Date.  If the Plan is being executed through  the sale of the Debtor's Real Property which sale is being financed by a Person other than that purchaser (the "Funder"), then upon the Funder making: a.)  available sufficient funds to pay the Class 1 Claim in full; and b.) making demand on the Class 1 Creditor, the Class 1 Creditor will assign to the Funder, the Class 1 Creditor's Secured Claim, lien on the Real Property and Loan Documents evidencing its Secured Claim against the Debtor.

**<u>Class 2 - The Secured Claim of Congregation Bnai Jacob:</u>**

Allowed Claims of Class 2 Creditors shall, on the Effective Date:

a.)    retain their mortgage lien on the Debtor's Real Property in its existing priority;

b.)      resume receiving monthly payments from the Debtor with the timing and amounts provided under the existing loan documents between the Debtor and Class 2 creditor;

c.)      have all periodic payments were due, but unpaid, prior to the Effective Date become included in the Class 2 Creditor's principal balance under its loan documents;

d.)      have the Class 2 Creditor's loan documents with the Debtor modified to: I.) Reflect the increase of the principal balance by the amount of the unpaid payment due as of the Effective Date; b.) extend the payments under the loan documents to amortize the increased principal balance at the payment rate and timing of the existing loan documents.

**<u>Class 3 Claims - All Other Secured Claims</u>:**

Unless otherwise agreed to Allowed Class 3 Claims will be paid in full on the Effective Date.

**Class 4 Claims Entitled to Priority under § 507 of the Code (Except § 507(a)(2) <u>Administrative Expense Claims and  § 507(a)(8)</u>) Priority Tax Claims)**

 Unless otherwise agreed to Allowed Class 4 Claims will be paid in full on the Effective Date

.

**<u>Class 5 Claims- The Claims of Taxing Authorities</u>:**

Unless otherwise agreed to Allowed Class 4 Claims will be paid in full on the Effective Date.

**<u>Class 6 Claims - General Unsecured Creditors</u>:**

Unless otherwise agreed to Allowed Class 6 Claim  will be paid in full on the Effective Date.

**Class 7 Claims -Tenant Security Deposits**:

Unless otherwise agreed to, Allowed Class 7 Claims will be paid in full in the ordinary course of the Debtor's business.

**Class 8 Claims -Unsecured Insider Creditors**:

Allowed Claims of Class 8 Creditors will be paid in full through periodic payments when available, provided: a.) the Claims of Classes 1, 3,4, 5 and 6 are paid in full; b.) the Debtor is current making payments to Class 2 and 6 Creditors, pursuant to the Plan; and c.) there are sufficient net revenues to make the payment.

**Class 9 - Holders of Equity Security Interests**:

 Equity Security holders will retain their  Equity Security Interests in the Debtor.

**E. Summary Description Plan Concerning Rejection And Assumption Of Executory Contracts**

The Plan  provides for the assumption of all of the Debtor's unexpired executory contracts or leases.

**F. Summary Description Of Plan With Regard To Provisions Concerning Distribution**

The Plan provides that payments and Distributions to be made by the Debtor on the Effective Date shall be made on that date, or in certain instances within a reasonable period thereafter, except as is otherwise ordered by the Court or agreed to by the Debtor and a Creditor.  If any payment or Distribution shall be due on a day other than a Business Day, the payment or Distribution shall be made on the next Business Day. At the election of the Debtor, Distributions to be made in Cash shall be made by check drawn on a domestic bank or by a wire transfer from a domestic bank.  No payments of fractional cents shall be made.  In the event any Entity fails to claim the distribution within one hundred and eighty (180) days from the date of such Distribution, then such payment shall be deemed Unclaimed Property.  In such event, the unclaimed monies shall be placed back into the Debtor's Confirmation Fund and redistributed to the creditor body.

### G. Summary Description Of Plan Concerning Discharge and Injunctions

The Plan provides specific provisions regarding discharge of Claims and Interests, releases and terminations.  All Creditors, Interest Holders and parties in interest should refer specifically to the Plan with regard to provisions concerning discharge of Claims and interests vesting of property in the Debtor, injunctions, releases, effect on certain Claims and Interests and  certain terminations.  If Confirmation of the Plan does not occur, the Plan shall be deemed null and void and, in such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, the rights of Existing Interests Holders, or any other Entity or to prejudice in a manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor. Nothing contained herein or in the Plan is nor shall such be deemed an admission of any fact by the Debtor.  Only the Plan, when confirmed, will govern the rights and liabilities as between and among

the Debtor, and any Creditor, Interest Holder or party-in-interest or such other Person or Entity  whose rights are affected by the Plan.

## H. **Summary Description Of  Provisions Regarding Procedures For Resolving Disputed Claims**

**Claim Objections**.  The Plan grants the Debtor the right to serve and file objections to the allowance, amount or classification of any Claim or Interest not later than sixty (60) days after the Confirmation Date or such other time as may be fixed by the Court.  At the Debtor's election, the objection to a claim can be prosecuted in the Bankruptcy Court or such other court where litigation with the Creditor was pending prior to the Case.

**Reserve Fund**: Where there is an unresolved objection to a Claim as of the Confirmation Date of this Plan or afterward, the Debtor shall reserve in the Debtor' Estate a sum not less than the principal amount required to pay the Disputed Claim was allowed, in full, and deposit that amount in a reserve fund (the "Reserve Fund").  Disputed Claims that are resolved shall be satisfied from the Reserve Fund.  If the Reserve Fund exceeds the full amount of a Disputed Claim or Claims, any excess will be returned to the Reorganized Debtor.

**Payment of Disputed Claims**.  In the event that any payment or Distribution must be made to a holder of a Disputed Claim which become an Allowed Claim, the treatment or Distribution shall be made in accordance with the provisions of the Plan with respect to the Class of Creditors to which the respective Holder of such Claim belongs.

## I. **Summary Description Of Plan Provisions Regarding Retention of Jurisdiction**

The Plan provides that the Court shall retain jurisdiction of the Bankruptcy Case following Confirmation of the Plan for a wide range of matters and issues and for various purposes, including interpretation of the Plan, resolution of disputes concerning orders of the Court, pending litigation, Professional Persons compensation issues, determination of disputes and issues regarding property and rights of the Debtor. All Claimants, Interest Holders and parties-in-interest should refer specifically to the Plan for a full and complete statement of the various matters in which the Bankruptcy Court shall, under the terms of the Plan, retain jurisdiction.

**J**. **Summary Description Of Plan Provisions Regarding Retention Of Assets And Title To Property**

Confirmation of the Plan title to the Real Property and Assets of the Estate shall vest in the Debtor.

**K.  Disbursing Agent**

All Distributions pursuant to the Plan will be made when due, in accordance with the Plan. The Debtor is designating its attorneys, Wayne Greenwald P.C., to be the Disbursing Agent.  The Debtor or Disbursing Agent shall establish such accounts or funds which will be held for the Creditors entitled to distribution, which shall not constitute property of the Estate.

**L. Summary Description Of General Provisions Of The Plan**

The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan.  The Plan also prescribes certain rules pertaining to notice to the Debtor, as well as notice to all other Entities post-Confirmation.  The Plan shall, except to the extent governed by the Bankruptcy

Code or applicable federal law, be governed, construed and enforced in accordance with the laws of the State of New York.

## XVIII.  PLAN FUNDING AND MEANS FOR EXECUTION OF THE PLAN

The Plan is to be implemented in a manner consistent with Bankruptcy Code § 1123, which essentially sets forth the minimum requirements and elements that a plan of Reorganization must contain in order to meet the standards for Confirmation.

### A. Funding

The Plan will be funded from the proceeds of Refinancing of the Real Property or the sale of the Debtor's Real Property.

### B. Summary of Vesting Of Interests And Title

As of the Effective Date, the Debtor shall retain all legal title to its property to which it has good title as of the Relief Date, including all leasehold interests being assumed under Article X of the Plan or to which it received title during the Bankruptcy Case.  All Assets possessed by or titled to the Debtor or the Estate will vest in the Debtor free and clear of all Claims and Existing Equity Interests, except as may be provided for in the Plan.

### C.  Summary of Transfer Charges Treatment : Pursuant to Bankruptcy Code § 1146, all transfers of any interest which are made pursuant to or contemplate by the Plan, once subject to a Confirmation Order, shall be exempt from all otherwise applicable transfer taxes, stamp taxes, recording fees and

other such charges assessed by the New York State and New York City taxing authorities for the recording and filing of any instruments of transfer. (the "Exempt Taxes") and such Exempt Taxes shall not be paid, for the transactions contemplated in the Plan.

## XIX.  **ALTERNATIVES TO THE PLAN**

A potential alternative to the Plan would be converting this Case to Chapter 7 liquidation or liquidation within Chapter 11 through a liquidating trustee.  It is unlikely that there will be no distribution to Unsecured Creditors in a Chapter 7 case. However, distributions could be reduced and significantly delayed.  Dismissing the Case is another alternative to the Plan.  However, then the Debtor would be litigating with 1930 in state court.  That litigation would use substantial financial resources and time.

**Essentially, the Debtor believes that there is <u>no</u> viable better alternative to the Plan.  Any alternative would be significantly prejudicial to all Creditors and parties-in-interest.**

**For all of the above reasons, the Debtor believe that the Plan meets the best interests of creditors test.  The Debtor is soliciting your vote in favor of the Plan.**

Dated:  New York, New York
     December 11, 2019

1934 BEDFORD LLC

By:   /s/ Nikol Vonlavrinoff_____
       Nikol Vonlavrinoff
       Managing Member

WAYNE  GREENWALD, P.C.
Attorney for 1934 Bedford LLC
Debtor and Debtor-in-Possession

By: /s/ Wayne M. Greenwald_  Officer
     Wayne M. Greenwald
     at 475 Park Avenue South - 26th Floor
     New York,  New York 10016
     Tel. No. 212-983-1922