UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re                                                      Chapter 11

     1934 Bedford, LLC                          Case no.  19-44751

              Debtor.

-------------------------------------------------------------x

## **AMENDED DISCLOSURE STATEMENT**

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION ANNEXED HERETO AS EXHIBIT A.  ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY.  ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE PLAN OF REORGANIZATION.**

**COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE COURT APPROVAL OF THE TERMS OF THE PLAN.**

Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

ATTORNEYS FOR THE PROPONENT

## <u>INTRODUCTION</u>

1. 1930 Bedford Avenue LLC ("Proponent" or the "Mortgagee") submits this Disclosure Statement ("Disclosure Statement") in connection with the solicitation of acceptances of its Plan of Reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code.  A copy of the Plan is attached hereto as <u>Exhibit "A"</u>.  All Creditors are urged to review the Plan, in addition to reviewing this Disclosure Statement.  <u>All capitalized terms used but not defined herein shall have the meaning set forth in the Plan.</u>

2. This Disclosure Statement is not intended to replace a review and analysis of the Plan.  Rather, it is submitted as a review of the Plan in an effort to explain the terms and implications of the Plan.  Every effort has been made to fully explain the various aspects of the Plan as it affects all Creditors.  To the extent a Creditor has any questions, the Proponent urges you to contact its counsel and every effort will be made to assist you.  THE PROPONENT URGES YOU TO VOTE IN FAVOR OF THE PLAN. THE PROPONENT'S GOAL IS FOR ALL CREDITOR CLASSES TO ACCEPT THE PLAN.  IF ALL CREDITOR CLASSES DO NOT ACCEPT THE PLAN, THE PROPONENT INTENDS TO SEEK CRAMDOWN OF THE PLAN UNDER SECTION 1129(b) OF THE BANKRUPTCY CODE AS MAY BE NECESSARY TO EFFECT CONFIRMATION OF THE PLAN.

3. On _____, after notice and a hearing, the Bankruptcy Court entered an order approving this Disclosure Statement as containing information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor

2

and the condition of the Debtor's books and records, to enable Creditors whose votes are being solicited to make an informed judgment whether to accept or reject the Plan.

4.    Creditors should read this Disclosure Statement in its entirety prior to voting on the Plan.  No solicitation of votes may be made except pursuant to this Disclosure Statement. EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS ASSETS, ITS PAST OR FUTURE OPERATIONS, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.  ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE PROPONENT.

5.    THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUPPLIED BY THE DEBTOR.  BASED UPON THE INFORMATION MADE AVAILABLE, PROPONENT'S COUNSEL HAS NO INFORMATION TO INDICATE THAT THE INFORMATION DISCLOSED HEREIN IS INACCURATE.  NEITHER THE PROPONENT NOR ITS COUNSEL, HOWEVER, IS ABLE TO STATE DEFINITIVELY THAT THERE IS NO INACCURACY HEREIN OR THAT FUTURE EVENTS MAY NOT RENDER THE INFORMATION CONTAINED HEREIN INACCURATE.

6.    After reviewing this Disclosure Statement indicate your vote to accept or to reject the Plan on the enclosed ballot and return the ballot to counsel for the Proponent so as to be received on or before _____, 2020.

3

7.  The Bankruptcy Court has entered an Order fixing _____, 2020, at ___ .m.,

before the Carla E Craig at the United States Bankruptcy Court, 271 Cadman Plaza East, Brooklyn,

New York, as the date, time and place for the hearing on confirmation of the Plan, and fixing _

_____, 2020, as the last date for the filing of any objections to confirmation of

the Plan.

## BACKGROUND

8.  On October 1, 2019, the Bankruptcy Court entered an order of relief under

Chapter 11 of Title 11 of the United States Code, 11 U.S.C. "101 et seq. (the "Bankruptcy Code").

9.  The Debtor owns the real property located at 1930-1934 Bedford Avenue,

Brooklyn, New York (the "Property") pictured below:



10.     The Property is a seven-story and cellar, elevator, mixed use rental building containing community facilities in the cellar, first and second floors, thirty-eight (38) apartments on the upper floors, and a 19-car parking garage. The gross building area is 59,212 square feet and the net rentable area is 50,187 square feet.  When fully leased, the rent roll indicates aggregate rents of $2,436,744 per year, or more than $200,000 per month.

11.     According to an appraisal the Debtor produced, the Property value is $38,600,000, but that appraisal is based on projected yearly net operating income substantially higher than the actual net operating income.

5

12.    The Mortgagee holds first mortgages in the principal amount of $15,000,000.  As set forth in Mortgagee's September 19, 2019 proof of claim, the total amount due as of September 12, 2019 is $18,809,274.  Per diem 24% interest accrues at $10,000 per day.  The Debtor's schedules disclose additional secured claims of record against the Property totaling about $1,666,429.  Scheduled Secured claims thus total approximately $20,478,703.  The Debtor's schedules disclose unsecured claims totaling $8,641,000, $8,500,000 is claimed by Nikol Vonlavrinoff, the Debtor's principal.  Based on the Schedules, the Claims in this case total about $29,119,703.

13.    Besides the Property, the only other assets identified as having value are $24,655 of cash on hand on the petition date and machinery and equipment valued at $65,000.

14.    The $1,686,812 secured lien filed against the Property on about August 29, 2018 was an event of default under the Mortgages.  The Maturity Date in each note ("Notes") annexed to the Proof of Claim is February 28, 2019.

15.    The Mortgagee commenced its Foreclosure Action on June 3, 2019 and promptly sought the appointment of a receiver.

16.    By order dated June 11, 2019 (the "Receiver Order,"), the Supreme Court appointed a receiver to take possession of the Property and the rental income.

17.    On June 23, 2019, the Debtor requested an emergency order to show cause for injunctive relief vacating the Receiver Order pending determination of the Debtor's motion to vacate.

18.     The Supreme Court denied the application for injunctive relief and set the matter down for a hearing on the merits.  The Debtor appealed both the Receiver Order and the denial of injunctive relief.  On June 27, 2019, the Appellate Division affirmed the Receiver Order.  On July 10, 2019, the Supreme Court denied the Debtor's order to show cause on the merits.

19.     Meanwhile, on June 17, 2019 the Debtor sued the Mortgagee in a special proceeding under RPL § 274-to compel the Mortgagee to retract is prior payoff letter and replace it with a payoff letter that did not include default interest and other charges.  The Debtor falsely argued that it had received oral default waivers, despite the loan documents prohibition on oral waivers to preclude such self-serving arguments.  The Debtor falsely argued further that the Mortgagee failed to give default notices, despite there being no obligation in the loan documents to give notice of unauthorized subordinate liens.  The Debtor has stated its intention to object the Mortgagee's claim on these and other grounds in the Bankruptcy Court.

20.     On August 2, 2019, the receiver filed his bond.  The same day, certain petitioners filed this bankruptcy as an involuntary case.

21.     According to the Schedules, after the Debtor stopped paying the Mortgagee, Mr. Vonlavrinoff transferred $313,024 to himself, $88,024 allegedly for "Loan Repayment," and $225,000 for "Salary."

22.     At a hearing on September 12, 2019 on the Mortgagee's motion to permit the receiver to take possession, it became clear that the involuntary filing was collusive so the Debtor could avoid filing a voluntary petition.  The Debtor then consented to an order for relief and stated that it would try to reach a consensual agreement with the Mortgagee to use cash collateral to avoid the installation of the receiver.

23.     The last pre-petition mortgage payment was in January 2019.  Since that
time, the Debtor has been collecting rent, but as of October 1, 2019, the Debtor had no money in the
bank.  Meanwhile interest is accruing a $300,000 per month.  The Debtor paid interest at the
non-default rate for the months of January and February 2020.

24.     Since the involuntary petition was commenced, therefore, the Mortgagee's
claim has increased by approximately $1,500,000.

25.     ~~The Debtor filed a plan on December 18, 2019.  The Debtor's plan
provides for a refinancing by the confirmation hearing, which is likely to be in late February or
early March.  The Debtor stated on the record in September that the Debtor was likely to have
financing in place within weeks, and has not mentioned financing since.  Financing, therefore, does
not appear to be in prospect.~~  The Bankruptcy Court has granted the Debtor 's application to sell the
Property to Oldham Properties, LLC ("Oldham") for $27,250,000, with closing to occur on or about
July 13, 2020.  It is contemplated that the Property shall be sold under a Chapter 11 plan.

26.     ~~Under the Debtor's plan, if refinancing does not materialize by March, the
Debtor proposes to first make a motion to retain a broker, which will probably take some time, and
then sell 150 days later.  That would be in September at the earliest, which probably means an
October closing.  With interest accruing at $300,000 per month, by September, the Mortgagee's
claim will have grown by $4,200,000 since this case was filed to $23,009,274, and total claims
against the estate will be $33,319,173, of which $24,675,703 represent liens against the Property,
not including the Mortgagee's fees and expenses and the unliquidated accrued interest and fees of
other Secured Creditors.~~  The Mortgagee's Plan adopts incorporates the sale to Oldham and

8

provides for the Oldham sale to close post-confirmation as provided for in the Oldham contract and the sale approval order.

27. The Mortgagee believes that it has an equity cushion now, but the cushion is eroding by $300,000 per month. The Debtor has disclosed no stalking horse bidder prepared to make an opening bid large enough to cover the Mortgagee's claim in its current amount, let alone in September when it will be millions more. The Mortgagee believes further that the Brooklyn real estate market is softening, and that it is in the best interest the Mortgagee and other creditors to sell the property before it softens more.

28. Thus, the Mortgagee's Plan is similar to the Debtor's plan but modified to ensure feasibility. Under the Mortgagee's plan, the Debtor would retain the right to refinance, but the sale date would be accelerated to the confirmation hearing date to stop the bleeding if the Debtor is unable to refinance by that time.

29. The Mortgagee's plan would therefore provide for marketing to commence upon approval of the Disclosure Statement. If refinancing did not materialize shortly before the Confirmation Hearing date, the Sale would occur at the Confirmation hearing.

30. Not only will the Mortgagee's Plan accelerate the plan process, it will solve feasibility issues the Debtor has not addressed in its disclosure statement.

31. The Debtor's plan provided for payment in full to all non-insider creditors and a settlement of the Second Mortgage Claim. That is not feasible unless the sale proceeds exceed approximately $25,200,000 which amount represents the Mortgagee's estimated $23,000,000 claims as of closing, the $1,600,000 second mortgage, claim plus about $166,000 of Scheduled mechanics liens, plus about $141,000 of non-insider general unsecured claims, plus an

9

~~estimated $100,000 of administrative claims and other amounts that may arise.  Since the Debtor has no stalking horse bidder at that amount, the sale proceeds are speculative, as is feasibility.~~

27.    ~~32. By way of contrast~~ If the Oldham sale does not close, the Mortgagee's Plan provides for an auction sale of the Property on the terms annexed to the Plan.  In the event the contingency auction sale does not generate sufficient proceeds to pay creditors to ensure payment, the Mortgagee's Plan ~~will carve~~ carves out money from the Mortgagee's first lien on the sale proceeds to pay the Debtor's bankruptcy professional fees, and priority claims, if any.  The Mortgagee's Plan ~~will carve~~ carves out an additional $25,000 for general unsecured creditors.  This represents a 15% distribution if the sale proceeds cover all Secured Claims ~~and~~ if the insider $8,500,000 claim or if Mr. Vanlavrinoff is expunged or if Mr. Vanlavrinoff honors his stated intention to waive the claim. The Mortgagee ~~will~~ has also ~~agree~~ agreed to be a stalking horse bidder, with no stalking horse fee, to ensure a sale.

~~33.    The Mortgagee's Plan also solves a problem that has infected all aspects of this case since its inception.  The Debtor is determined to maintain control and ownership over the Property and has crossed the line more than once to achieve that goal.  For example, this case was commenced by a collusive involuntary petition.  Despite consenting to Chapter 11 relief, directions from the bench at hearings, and a written order, the Debtor has concealed the Property's income and expenses, failed to pay interest to the Mortgagee, used cash collateral illegally, and filed a pleading with photos and mocking profiles of the religious practices of the Mortgagee's principals and members of their families.  There is no reason to believe such conduct will abate if and when the Debtor fails to refinance.  Simply put, the Mortgagee does not trust the Debtor to~~

implement a sale, and believes that instead, the Debtor will do whatever it can to abort or obstruct its own sale as long as possible.

34. In summary, unlike the Debtor's plan, a Mortgagee plan would be confirmable, feasible, and likely to resolve this case.

## PROPONENT'S PLAN OF REORGANIZATION

## CLASSIFICATION AND TREATMENT OF CLAIMS

### Class 1

28. 35. **Classification** – New York City real estate tax, water, sewer and other liens. . Claims total approximately $0.00.

29. 36. **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

30. 37. **Voting** -- Unimpaired and deemed to have accepted the Plan

### Class 2

31. 38. **Classification** – 1930 Bedford Avenue LLC  Claim totals approximately $18,809,274 as of the filing date, not including late charges.

32. 39. **Treatment** –  (a) If the Debtor refinancessells the Property as permitted inunder the Means for Implementation section of the PlanOldham Contract, payment in full in Cash of the Allowed Amount of the Class 2 Claim.  (b) If the Debtor fails to refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall

~~be under this subsection (b) as follows~~sell the Property under the Oldham Contract:  (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 2 Claimant shall be paid the available Cash up to Allowed Amount of Class 2 Claim plus Secured accrued amounts as of the date of payment, after payment of Administrative Claims, unclassified Priority tax claim, and the Allowed Amounts of Class 1 Claims and Class 13 Claims, (iii) in the event that there is insufficient Cash from the Sale Proceeds to make a $25,000 distribution to Class 14 Claims, the Class 2 Claimant shall cause up to $25,000 to be disbursed to fund Class 14 Claim distributions as provided for in the Class 14 treatment section of the Plan.

33.        ~~40.~~ **Voting** –  Impaired and entitled to vote to accept or reject the Plan.

**Class 3**

34.        ~~41.~~ **Classification** – Bright Light Corp.  Secured Claim arising from May 31, 2018 mechanics lien for $84,482.

35.        ~~42.~~ **Treatment** – (a) If the Debtor ~~refinances~~sells the Property ~~as permitted in~~under the ~~Means for Implementation section of the Plan~~Oldham Contract, payment in full in Cash of the Allowed Amount of the Class ~~3~~2 Claim.  (b) If the Debtor fails to ~~refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows~~sell the Property under the Oldham Contract:  (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 3 Claimant shall be paid the available Cash from the sale proceeds up to Allowed Amount of the Class 3 Claim plus Secured accrued amounts as of the date of payment, after payment of the Allowed Amounts of the Class 1 and Class 2 Claims plus Secured accrued amounts as of the date of payment, (iii) in the event that there is insufficient Cash from the Sale Proceeds to pay the Allowed

Amount of the Class 3 Claim as of the Petition Date, the Class 3 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim as of the Petition Date and the Cash paid under this subsection (b).

36. 43. **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

**Class 4**

37. 44. **Classification** – B&H Contracting Corp. Secured Claim arising from June 4, 2018 mechanics lien for $40,000.

38. 45. **Treatment** – (a) If the Debtor refinances sells the Property under the Oldham Contract, payment in full in Cash of the Allowed Amount of the Class 2 Claim. (b) If the Debtor fails to sell the Property under the Oldham Contract: (i) the Property shall be sold as permitted set forth in the Means for Implementation section of the Plan, payment in full in Cash of the Allowed Amount of(ii) the Class 4 Claim. (b) If the Debtor fails to refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows: (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 4 Claimant shall be paid the available Cash from the sale proceeds up to Allowed Amount of the Class 4 Claim plus Secured accrued amounts as of the date of payment, after payment of the Allowed Amounts of the Class 1 through Class 3 Claims plus Secured accrued amounts as of the date of payment, (iii) in the event that there is insufficient Cash from the Sale Proceeds to pay the Allowed Amount of the Class 4 Claim as of the Petition Date, the Class 4 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim as of the Petition Date and the Cash paid under this subsection (b).

13

39. ~~46.~~ **Voting** -~~-~~ Impaired and entitled to vote to accept or reject the Plan.

### Class 5

40. ~~47.~~ **Classification** – Gypsum New York Sales Corp.  Secured Claim arising from June 22, 2018 mechanics lien for $1,200.

41. ~~48.~~ **Treatment** – (a) If the Debtor ~~refinances~~sells the Property ~~as permitted in~~under the ~~Means for Implementation section of the Plan~~Oldham Contract, payment in full in Cash of the Allowed Amount of the Class ~~5~~2 Claim.  (b) If the Debtor fails to ~~refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows~~sell the Property under the Oldham Contract: (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 5 Claimant shall be paid the available Cash from the sale proceeds up to Allowed Amount of the Class 5 Claim plus Secured accrued amounts as of the date of payment, after payment of the Allowed Amounts of the Class 1 through Class 4 Claims plus Secured accrued amounts as of the date of payment, (iii) in the event that there is insufficient Cash from the Sale Proceeds to pay the Allowed Amount of the Class 5 Claim as of the Petition Date, the Class 5 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim as of the Petition Date and the Cash paid under this subsection (b).

42. ~~49.~~ **Voting** -~~-~~ Impaired and entitled to vote to accept or reject the Plan.

### Class 6

43. ~~50.~~ **Classification** – Congregation Bnai Jacob.  Second mortgage scheduled for $1,500,000 recorded on August 29, 2018.

14

44. ~~51.~~ **Treatment** – (a) If the Debtor ~~refinances~~<u>sells</u> the Property ~~as permitted in~~<u>under</u> the ~~Means for Implementation section of the Plan~~<u>Oldham Contract</u>, payment in full in Cash of the Allowed Amount of the Class ~~6~~<u>2</u> Claim.  (b) If the Debtor fails to ~~refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows~~<u>sell the Property under the Oldham Contract</u>: (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 6 Claimant shall be paid the available Cash <u>from the sale proceeds</u> up to Allowed Amount of the Class 6 Claim plus Secured accrued amounts as of the date of payment, after payment of the Allowed Amounts of the Class 1 though Class 5 Claims plus Secured accrued amounts as of the date of payment, (iii) in the event that there is insufficient Cash from the Sale Proceeds to pay the Allowed Amount of the Class 6 Claim as of the Petition Date, the Class 6 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim as of the Petition Date and the Cash paid under this subsection (b).

45. ~~52.~~ **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

**Class 7**

46. ~~53.~~ **Classification** – Rent a Unit.  Secured Claim arising from November 28, 2018 mechanics lien for $2,449.

47. ~~54.~~ **Treatment** – (a) If the Debtor ~~refinances~~<u>sells</u> the Property ~~as permitted in~~<u>under</u> the ~~Means for Implementation section of the Plan~~<u>Oldham Contract</u>, payment in full in Cash of the Allowed Amount of the Class ~~7~~<u>2</u> Claim.  (b) If the Debtor fails to ~~refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows~~<u>sell the Property under the Oldham Contract</u>: (i) the Property

15

shall be sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 7 Claimant shall be paid the available Cash from the sale proceeds up to the Allowed Amount of the Class 7 Claim plus Secured accrued amounts as of the date of payment, after payment of the Allowed Amounts of the Class 1 through Class 6 Claims plus Secured accrued amounts as of the date of payment, (iii) in the event that there is insufficient Cash from the Sale Proceeds to pay the Allowed Amount of the Class 7 Claim as of the Petition Date, the Class 7 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim as of the Petition Date and the Cash paid under this subsection (b).

48.        55. **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

### Class 8

49.        56. **Classification** – E&W Wholesale Electrical Inc.  Secured Claim arising from January 16, 2019 mechanics lien for $35,000.

50.        57. **Treatment** – (a) If the Debtor refinancessells the Property as permitted inunder the Means for Implementation section of the PlanOldham Contract, payment in full in Cash of the Allowed Amount of the Class 82 Claim.  (b) If the Debtor fails to refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as followssell the Property under the Oldham Contract:  (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 8 Claimant shall be paid the available Cash from the sale proceeds up to Allowed Amount of the Class 8 Claim plus Secured accrued amounts as of the date of payment, after payment of the Allowed Amounts of the Class 1 and through Class 7 Claims plus Secured accrued amounts as of the date of payment, (iii) in the event that there is insufficient Cash from the Sale Proceeds to pay

16

the Allowed Amount of the Class 8 Claim as of the Petition Date, the Class 8 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim as of the Petition Date and the Cash paid under this subsection (b).

51. 58. **Voting --** Impaired and entitled to vote to accept or reject the Plan.

### Class 9

52. 59. **Classification** – Certified Lumber Corp. Secured Claim arising from January 22, 2019 mechanics lien for $23,681.

53. 60. **Treatment** – (a) If the Debtor refinancessells the Property as permitted inunder the Means for Implementation section of the PlanOldham Contract, payment in full in Cash of the Allowed Amount of the Class 92 Claim. (b) If the Debtor fails to refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as followssell the Property under the Oldham Contract: (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 9 Claimant shall be paid the available Cash from the sale proceeds up to Allowed Amount of the Class 9 Claim plus Secured accrued amounts as of the date of payment, after payment of the Allowed Amounts of the Class 1 through Class 8 Claims plus Secured accrued amounts as of the date of payment, (iii) in the event that there is insufficient Cash from the Sale Proceeds to pay the Allowed Amount of the Class 9 Claim as of the Petition Date, the Class 9 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim as of the Petition Date and the Cash paid under this subsection (b).

54. 61. **Voting --** Impaired and entitled to vote to accept or reject the Plan.

## Class 10

55. ~~62.~~ **Classification** – Simply Brooklyn Realty.  Secured Claim arising from scheduled mechanics lien for $18,000.

56. ~~63.~~ **Treatment** – (a) If the Debtor ~~refinances~~sells the Property ~~as permitted in~~under the ~~Means for Implementation section of the Plan~~Oldham Contract, payment in full in Cash of the Allowed Amount of the Class ~~10~~2 Claim.  (b) If the Debtor fails to ~~refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows~~sell the Property under the Oldham Contract:  (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 10 Claimant shall be paid the available Cash from the sale proceeds up to Allowed Amount of the Class 10 Claim plus Secured accrued amounts as of the date of payment, after payment of the Allowed Amounts of the Class 1 through Class 9 Claims plus Secured accrued amounts as of the date of payment, (iii) in the event that there is insufficient Cash from the Sale Proceeds to pay the Allowed Amount of the Class 9 Claim as of the Petition Date, the Class 10 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim as of the Petition Date and the Cash paid under this subsection (b).

57. ~~64.~~ **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

## Class 11

58. ~~65.~~ **Classification** – Eastern Funding LLC.  Secured Claim scheduled for $50,909 arising from September 17, 2018 UCC security interest in gym equipment with a scheduled value of $40,000.

18

59. ~~66.~~ **Treatment** – (a) If the Debtor ~~refinances~~sells the Property ~~as permitted in the Means for Implementation section of the Plan~~under the Oldham Contract, payment in full in Cash of the Allowed Amount of the Class ~~11~~2 Claim.  (b) If the Debtor fails to ~~refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows:  at~~sell the Property under the Oldham Contract, the Property shall be sold as set forth in the Means for Implementation section of the Plan, and the option of the Purchaser of the Property under ~~the Plan~~such sale, (i) the gym equipment securing the Class ~~10~~11 Claim shall be returned to the Class 11 Claimant and the Class 11 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim and the fair market value of the gym equipment or (ii) the Purchaser of the Property shall be entitled to cure the Debtor's defaults and assume the Debtor's obligations under the agreement between the Debtor and the Class 11 Claimant~~, or upon such other terms as the Claimant and Purchaser may agree upon~~.

60. ~~67.~~ **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

**Class 12**

61. ~~68.~~ **Classification** – Eastern Funding LLC.  Secured Claim scheduled in the amount of $33,708 arising from UCC security interest in laundry equipment with a scheduled value of $25,000.

62. ~~69.~~ **Treatment** – (a) If the Debtor ~~refinances~~sells the Property ~~as permitted in the Means for Implementation section of the Plan~~under the Oldham Contract, payment in full in Cash of the Allowed Amount of the Class ~~12~~2 Claim.  (b) If the Debtor fails to ~~refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment~~

19

~~shall be under this subsection (b) as follows:  at~~sell the Property under the Oldham Contract, the Property shall be sold as set forth in the Means for Implementation section of the Plan, and the option of the Purchaser of the Property under ~~the Plan~~such sale, (i) the ~~laundry~~gym equipment securing the Class 12 Claim shall be returned to the Class 12 Claimant and the Class 12 Claimant shall have a Class ~~12~~14 general unsecured claim for the deficiency between the Allowed Amount of its Claim and the fair market value of the ~~laundry~~gym equipment or (ii) the Purchaser of the Property shall be entitled to cure the Debtor's defaults and assume the Debtor's obligations under the agreement between the Debtor and the Class ~~14~~12 Claimant~~, or upon such other terms as the Claimant and Purchaser may agree upon~~.

63.  ~~70.~~ **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

### Class 13

64.  ~~71.~~ **Classification** –   Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code.  Claims total approximately $0.

65.  ~~72.~~ **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

66.  ~~73.~~ **Voting** -- Unimpaired and deemed to have accepted the Plan

### Class 14

67.  ~~74.~~ **Classification** –  General Unsecured Claims.  Claims total approximately $8,641,000 plus deficiency claims held by Secured Creditors.

20

68. ~~75.~~ **Treatment** – (a) If the Debtor ~~refinances~~sells the Property ~~as permitted in~~under the ~~Means for Implementation section of the Plan~~Oldham Contract, payment in full in Cash of the Allowed Amount of ~~each~~the Class ~~14~~2 Claim.  (b) If the Debtor fails to ~~refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows:~~ sell the Property under the Oldham Contract, (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii) each Class 14 Claimant shall be paid its pro-rata share of the available Cash from the sale proceeds up to Allowed Amounts of all Class 14 Claims plus interest at the Legal Rate through the date of payment, after payment of the Allowed Amounts of Administrative Claims, unclassified Priority tax claims and Class 1 through Class 13 Claims plus Secured accrued amounts as of the date of payment.  In the event insufficient cash is available for Class 14 Claims after payment of senior claims as provided for in the preceding sentence, then each Holder of a General Unsecured Claim shall be paid its pro-rata share of a $25,000 distribution fund.  To the extent necessary, such fund will be funded by the Class 2 Claimant, as set forth in the Class 2 treatment section of the Plan.  If the Sale Proceeds cover Administrative and Classes 1 through 13 Claims, and the insider claims are expunged, the Proponent estimates a 15% recovery to Class 13 creditors $25,000 distribution fund.

69. ~~76.~~ **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Class 15

70. ~~77.~~ **Classification** –  Equity Interests .

71. ~~78.~~ **Treatment**  – ~~(a) If the Debtor refinances the Property as permitted in the Means for Implementation section of the Plan, Equity Interests shall be unimpaired.  (b) If the Debtor fails to refinance in an amount sufficient to pay all classes of creditors in full in Cash from a~~

~~refinancing, treatment shall be under this subsection (b) as follows:  (i) the Property shall be sold as~~ ~~set forth in the Means for Implementation section of the Plan, (ii)~~ Each Equity Interest holder shall be paid its pro-rata share of the available Cash after payment of the Allowed Amounts of Administrative Claims and Class 1 through Class 14 Claims plus Secured accrued amounts as of the date of payment.

> 72.          ~~79.~~ **Voting** – Impaired and entitled to vote to accept or reject the Plan.

## UNCLASSIFIED PRIORITY TAX CLAIMS

73.          ~~80.~~ Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code total approximately 0 based on the Debtor's Schedules and filed proofs of claim. The treatment of such Claims shall be payment in full in Cash of the Allowed Claim on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSES

74.          ~~81.~~ Allowed Administrative Expenses shall be paid in full, in cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided, however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtor shall be paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  As of the Confirmation Date, unpaid Chapter 11 professional fees will total an amount to be determined for Debtor's counsel subject to Bankruptcy Court approval.

75. 82. All outstanding United States Trustee fees shall be paid as they come due.

## MEANS FOR IMPLEMENTATION

76. 83. **Source of Funds** – At any time at least ten (10) days prior to the auction sale described below, the Debtor shall have the right to produce evidence of available funds to pay or escrow for (a) payment in full of all Administrative Claims and (b) payment in full of Class 1 through 13 Claims(a) On or about July 13, 2020, the Debtor shall close on the Property under the Oldham Contract and order of the Bankruptcy Court dated April ___, 2020, and creditors shall be paid as set forthprovided in the Treatmentclass treatment sections of such Classes in the Plan. Such evidence must provide for payment no later than 15 days after entry of a Confirmation Order and be subject only to entry of a Confirmation Order in a form reasonably acceptable to from the Proponentsale proceeds. (b) If the Debtor fails to produce evidence of such fundssell the Property under the Oldham Contract, Effective Date payments under the Plan will be paid from the sale of the Property ('Auction Sale') subject to the Sale and Auction Procedures annexed to the Plan as Exhibit A. In the event of a credit bid by the Mortgagee, the Mortgagee shall place sufficient funds in escrow to pay Administrative Claims, Priority Claims and $25,000 for general Unsecured Claims.

77. 84. In general, theThe Sale and Auction Procedures provide for a sale of the Property at an auction sale to be conducted on a date to be announced at the offices of Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York 10022. The Property shall be sold "as is." Bidding shall be limited to all cash offers. The Proponent will make the minimum opening bid in the amount of its Claim, estimated to be $23,000,000 as of the sale

23

date.  The minimum overbig shall be $200,000.  Bidding shall be increments of $25,000. All prospective bidders except the Mortgagee are required to deposit $2,000,000 (the "Deposit") in escrow with the undersigned counsel by bank check or wire deposit. The sale contingency sale of the Property at an auction sale to be conducted on a date to be announced after the closing deadline for the Oldham sale at the offices of Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York 10022.  The Property shall be sold "as is."  Bidding shall be limited to all cash offers.  The Proponent will make the minimum opening bid in the amount of its Claim, estimated to be $23,000,000 as of the sale date.  The minimum overbig shall be $200,000.  Bidding shall be increments of $25,000. All prospective bidders except the Mortgagee are required to deposit $2,000,000 (the "Deposit") in escrow with the undersigned counsel by bank check or wire deposit. The Auction Sale will be subject to the approval of the Bankruptcy Court at the Confirmation Hearing.  The highest bidder shall be the purchaser (the "Purchaser") of the Property, free and clear of all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the proceeds of sale.  The Deposit shall be non-refundable. In the event the Purchaser closes on or before fifteen days after the entry of an order approving the sale Auction Sale, the Deposit shall be applied to the purchase price.  In the event Purchaser fails to close on or before fifteen days after the entry of an order approving the sale Auction Sale, the Deposit shall be remitted to the Proponent. Time shall be of the essence in the closing of this transaction.  In the event Purchaser fails to close as set forth herein, then the Proponent shall have the right to accept the bid next highest in amount to the original Purchaser's bid.

78.    85. The transfer of the Property under the Plan shall be free and clear of all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the

sale proceeds, and to be disbursed under the Plan, provided, however, that the Mortgagee shall have the right, but not the obligation, to provide for a split and assignment of its mortgage and an assumption by the Purchaser in connection with the sale of the Property under the Plan.

79. 86. Marketing for the Auction Sale will be performed by Schuckman Realty Inc,_____ who shall market to prospective, well-qualified purchasers that are ready, willing and able to purchase the Property.

Schuckman_____ will use its own staff to advertise and promote the saleAuction Sale of the Property through its network of contacts and database to market the Property at no cost to the Debtor. Additionally, Schuckman_____ will, among other things, (i) vet any potential buyers, (ii) conduct all property tours, and (iii) assist in price negotiations. Schuckman_____ will provide real time updates as to the status of all marketing efforts, as well as feedback from potential buyers and will conduct an auction of the Property.

80. 87. **Sale Approval** -- As part of the sale under the PlanAuction Sale under the Plan, and in order to ensure consummation of the Plan, the Auction Sale shall be subject to sale hearing in the Bankruptcy Court, and ina Bankruptcy Court order to ensure consummation of the Plan, the Plan requires that the Confirmation Ordershall contain the following findings of fact and conclusions of law: (a) that the terms and conditions of the sale are fair and reasonable, (b) that the Debtor's sale, and the purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the purchaser, as transferee of the Property, is a good faith purchaser under

Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

81.    88.    **Release of Liens** -- Except as otherwise provided for in the Plan and in connection with the assumption and assignment of the Mortgagee's mortgage, on the Effective Date, (a) each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Proponent any and all Collateral that secures or purportedly secures such Claim, as they pertain to the properties currently owned by the Debtor or such Lien shall automatically, and without further action by the Debtor or the Proponent, be deemed released, and (y) execute such documents and instruments as the Proponent requests to evidence such Claim holder's release of such property or Lien.

82.    89. **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), in connection with the sale of the Property to Purchaser, whether the Purchaser be Oldham or the Purchaser under the bidding and sale procedures, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction

contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York City Real Property Transfer Tax and New York State Documentary Tax.

83. 90. **Execution of Documents** -- The Proponent shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

84. 91. **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

## LIQUIDATION ANALYSIS

85. 92. In a liquidation under Chapter 7 of the Bankruptcy Code, the Debtor's assets would be sold and the sale proceeds distributed to creditors in their order of priority. The Proponent believes that the Plan provides a far better return for the Debtor's estate than could be

27

achieved in a liquidation.  Indeed, as set forth on Exhibit B hereto, the Proponent projects that general unsecured creditors would receive no distribution.  Furthermore, a Chapter 7 Trustee represents an additional layer of administration legal expenses and commissions, which the Proponent estimates would total at least 10% of the sale proceeds.

## LITIGATION ANALYSIS

86.     93. The Proponent believes that the Debtor may contest Plan confirmation. Although the Debtor has not made its intentions known in that regard, the Proponent will address any such issues at the confirmation hearing.  Based on the Debtor's Schedules, the Proponent also believes that the Debtor has avoidance claims against the Debtor's principal for insider payments received within one year of the Petition Date, and possibly earlier.  The Proponent shall be entitled to retain counsel on the post-confirmation Debtor's behalf to prosecute avoidance actions against insiders.  The Schedules reflect lender liability claims against the Proponent.  The Debtor shall be entitled to retain counsel on the post-confirmation Debtor's behalf to prosecute such claims.

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

87.     94. The Proponent shall be disbursing agent under the Plan without a bond.  The Debtor and the Proponent shall have the right to file objections to claims in the event grounds exist to object to particular claims. Claims objections must be filed no later than 60 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Proponent shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim,

28

shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

88.        95. All unexpired leases and executory contracts not rejected prior to the Effective Date shall be assumed under the Plan.  In the event of a rejection which results in damages, a Proof of Claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the Effective Date.  All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall be treated as an Unsecured Claim.  Any Claim arising from the rejection of any Executory Contract or unexpired lease not filed with the Court within the time period provided in the preceding paragraph above shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## MANAGEMENT OF THE DEBTOR

89.        96. The Debtor appears to be managed by Nickol Vonlavrinoff . Post-confirmation management will remain unchanged, provided however, that the Plan shall be implemented by the Proponent.

## TAX CONSEQUENCES

90.        97. The Proponent does not believe that there will be any negative tax consequences to the Debtor or to Creditors under the Plan.  To the extent that a creditor is not paid in full under the Plan, such creditor may be entitled to a bad debt deduction.  To the extent that a creditor has taken a bad debt deduction, Plan distributions may be taxable as income.

91.      98. THE PROPONENT DOES NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE THE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS UNDER THE PLAN.  CREDITORS AND INTEREST HOLDER SHOULD SEEK INDEPENDENT COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.

## PLAN ALTERNATIVES

92.      99. Generally, the plan options for single asset real estate cases include selling, refinancing, recapitalizing or loan modification.  There appears to be no interest in recapitalization.  Refinancing may be possible and is contemplated by the Plan.  Absent refinancing, the Proponent believes that selling the Property is the only viable alternative.

## VOTING PROCEDURES AND REQUIREMENTS

93.      100. A ballot to be used for voting to accept or reject the Plan is enclosed with this Disclosure Statement.  Each creditor is entitled to execute the ballot and return it to the undersigned to be considered for voting purposes.  The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received no later than _____, 2020, at the following address:  Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, Floor 11, New York, New York 10022, Attn:  Mark A. Frankel, Esq.

94.      101. Each Creditor of the Debtor whose Claim is impaired under the Plan is entitled to vote, if either (i) its Claim has been scheduled by the Debtor, or (ii) it has filed a Proof of Claim on or before the last date set by the Bankruptcy Court for such filings.

30

95. 102. Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the Claim in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon motion by a Creditor whose Claim is subject to an objection.  Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Court to confirm the Plan.

96. 103. A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

97. 104. The Bankruptcy Code defines acceptance of a Plan by a class of Creditors as acceptance by holders of two-thirds in dollar amount and a majority in number of the Claims of that class which actually cast ballots for acceptance or rejection of the Plan.

98. 105. The Bankruptcy Code defines acceptance of a Plan by a class of Interests as acceptance by holders of two-thirds in amount of the allowed Interests of such class held by holders of such interests.

## CONFIRMATION OF THE PLAN

99. 106. Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing"). Section 1128(b) provides that any party in interest may object to confirmation of the Plan.

100. 107. By order of the Bankruptcy Court dated _____, 2020, the Confirmation Hearing has been scheduled for _____, 2020, at ___ .m., in the Honorable Carla E Craig's Courtroom, 271 Cadman Plaza East, Brooklyn, New York.  The Confirmation Hearing may

31

be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned Confirmation Hearing.  Any objection to confirmation of the Plan or to approval of the sale of the Property must be made in writing and filed with the Bankruptcy Court with proof of service and served upon the following on or before _____, 2020:  Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, Floor 11, New York, New York 10022, Attn:  Mark A. Frankel, Esq.  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

101.    108. At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied to enter an order confirming the Plan.  The applicable requirements are as follows:  (a)  The Plan complies with the applicable provisions of the Bankruptcy Code, (b) the Proponent has complied with the applicable provisions of the Bankruptcy Code; (c) the Plan has been proposed in good faith and not by any means forbidden by law, (d) any payment made or promised or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable, (e) the Proponent has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a Plan with the Debtor, or a successor to the Debtor under the Plan, and the appointment to, or continuance in, such office of such individual, is consistent with the interests of

Creditors and equity security holders and with public policy, and the Proponent has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider, (f) with respect to each class of impaired Claims, either each holder of a Claim or interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or interest property of a value, as of the Effective Date of the Plan, an amount that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated on such date under Chapter 7 of the Bankruptcy Code, (g) each class of Claims or interests has either accepted the Plan or is not impaired under the Plan, (h) except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Expenses and priority Claims will be paid in full on the Effective Date, (i) at least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class, and (j) confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successors to the Debtor under the Plan unless such liquidation or reorganization is proposed in the Plan.

102. 109. The Proponent believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Proponent has complied or will have complied with all of the requirements of Chapter 11, and that the proposals contained in the Plan are made in good faith.

103. 110. The Proponent contends that holders of all Claims impaired under the Plan will receive payments under the Plan having a present value as of the Effective Date in

amounts not less than the amounts likely to be received if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

## **CRAMDOWN**

104.    ~~111.~~ In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Proponent if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."

105.    ~~112.~~ The Proponent intends to invoke the cramdown provisions of section 1129(b) as to any impaired class that does not accept the plan**.**

106.    ~~113.~~ A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives less than it is legally entitled to receive for its Claims or equity interests.  "Fair and equitable" has different meanings for Secured and Unsecured Claims.

107.    ~~114.~~ With respect to a Secured Claim, "fair and equitable" means either: (a)  the impaired Secured Creditor retains its Liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its Liens; (b) property subject to the Lien of the impaired Secured Creditor is sold free and clear of that Lien, with that Lien attaching to the proceeds of the sale; or  (c) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the Plan.

108.    ~~115.~~ With respect to an Unsecured Claim, "fair and equitable" means either: (a) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or (b) the holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

109.    ~~116.~~ In the event one or more classes of impaired Claims rejects the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims.

## **CONCLUSION**

110.    ~~117.~~ The Proponent urges the Debtor's Creditors to vote to accept the Plan

and to evidence such acceptance by returning their ballots so that they will be received no later than

_____.

Dated:  New York, New York
        ~~February 5~~April 6, 2020

                                    **1930 Bedford Avenue LLC**
                                    **Plan Proponent**

                                    **By:**    s/_____

                                    **BACKENROTH FRANKEL & KRINSKY, LLP**
                                    **Attorneys for Proponent**

                                    By:    s/Mark Frankel
                                           800 Third Avenue, Floor 11
                                           New York, New York 10022
                                           (212) 593-1100

Exhibit A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re                                              Chapter 11

      1934 Bedford, LLC                        Case no.  19-44751

                Debtor.
---------------------------------------------------------x


# **<span style="color:blue">AMENDED</span> PLAN OF REORGANIZATION**


Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544


ATTORNEYS FOR THE PROPONENT

## INTRODUCTION

1930 Bedford Avenue LLC ("Proponent"), proposes this Plan of Reorganization for 1934 Bedford, LLC (the "Debtor"). UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

## DEFINITIONS

111. ~~118.~~ "Administrative Expense" Any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

112. ~~119.~~ "Administrative Expense Claim" shall mean claim for payment of an Administrative Expense.

113. ~~120.~~ "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

114. ~~121.~~ "Allowed Amount" shall mean the amount of a Claim: (a) the amount of a Claim as set forth in a Proof of Claim that is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) the amount which is listed on the Proponent's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

2

115.    122. "Allowed Claim" shall mean the amount of a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Proponent's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

116.    123. "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an Allowed Claim.

117.    124. "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent it is an Allowed Claim.

118.    "Auction Sale" shall mean the sale of the Property under the Bidding and Sale Procedures annexed to the Plan.

119.    125. "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

120.    126. "Bankruptcy Code" shall mean Title 11 of the United States Code (11. U.S.C. § 101 et. seq.

121.    127. "Bankruptcy Court" shall mean the Court as defined below.

122.    128. "Bar Date" shall mean January 21, 2020 .

123.    129. "Cash" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

124.    130. "Claim" shall mean a right to payment as set forth in § 101(5) of the Bankruptcy Code.

3

125. ~~131.~~ "Claimant" shall mean the holder of a Claim.

126. ~~132.~~ "Confirmation Date" shall mean the date of the entry of the Confirmation Order.

127. ~~133.~~ "Confirmation Hearing" shall mean the hearing pursuant to the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

128. ~~134.~~ "Confirmation Order" shall mean the order of the Court confirming the Plan.

129. ~~135.~~ "Court" shall mean the United States Bankruptcy Court for the EASTERN District of New York.

130. ~~136.~~ "Creditor" shall mean any entity that holds a Claim against the Debtor.

131. ~~137.~~ "Debtor" shall mean 1934 Bedford, LLC.

132. ~~138.~~ "Disputed Claim" shall mean the whole or any portion of any claim against a Proponent to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

133. ~~139.~~ "Effective Date" shall mean 15 days after the Confirmation Order is entered, or such other date after the Confirmation Date as may be practicable, but in no event later than 75 days after the Confirmation Order is entered without Bankruptcy Court approval.

134. ~~140.~~ "Estate" shall mean the estate of the Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

4

135. 141. "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

136. 142. "Final Order" shall mean an order of the Court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

137. 143. "Interest" shall mean an existing ownership interest in the Debtor.

138. 144. "Interest Holder" shall mean a holder and owner of an existing Interest in the Debtor.

139. 145. "Legal Rate" shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

140. 146. "Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

141. 147. "Mortgagee" shall mean 1930 Bedford Avenue LLC.

142. "Oldham" shall mean Oldham Properties, LLC.

143. 148. "Petition Date" shall mean October 1, 2019.

144. 149. "Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

145. 150. "Property" shall mean the condominium units owned by the Debtor at 1930-1934 Bedford Avenue, Brooklyn, New York.

146. 151. "Proponent" shall mean 1930 Bedford Avenue LLC.

5

147. ~~152.~~ "Purchaser" shall mean the purchaser of the Property pursuant to the Plan.

148. ~~153.~~ "Secured Claim" shall mean a Claim secured by a Lien on property included within the Debtor's Estate.

149. ~~154.~~ "Secured Creditor" shall mean the owner or holder of a Secured Claim.

150. ~~155.~~ "Unsecured Claim" shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against Debtor or the Debtor's Estate; or (b) a right to setoff to secure the payment of such Claim. An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code and does not include administrative of priority claims.

151. ~~156.~~ "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## CLAIMS CLASSIFICATION AND TREATMENT

## Class 1

1.    **Classification** – New York City real estate tax, water, sewer and other liens. . Claims total approximately $0.00.

2. **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

6

3. **Voting** --   Unimpaired and deemed to have accepted the Plan

### Class 2

4. **Classification** – 1930 Bedford Avenue LLC  Claim totals approximately $18,809,274 as of the filing date, not including late charges.

5. **Treatment** –  (a) If the Debtor ~~refinances~~sells the Property ~~as permitted in~~under the ~~Means for Implementation section of the Plan~~Oldham Contract, payment in full in Cash of the Allowed Amount of the Class 2 Claim.  (b) If the Debtor fails to ~~refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows~~sell the Property under the Oldham Contract:  (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 2 Claimant shall be paid the available Cash up to Allowed Amount of Class 2 Claim plus Secured accrued amounts as of the date of payment, after payment of Administrative Claims, unclassified Priority tax claim, and the Allowed Amounts of Class 1 Claims and Class 13 Claims, (iii) in the event that there is insufficient Cash from the Sale Proceeds to make a $25,000 distribution to Class 14 Claims, the Class 2 Claimant shall cause up to $25,000 to be disbursed to fund Class 14 Claim distributions as provided for in the Class 14 treatment section of the Plan.

6. **Voting** –  Impaired and entitled to vote to accept or reject the Plan.

### Class 3

1.        ~~7.~~**Classification** – Bright Light Corp.  Secured Claim arising from May 31, 2018 mechanics lien for $84,482.

**2.** ~~8.~~ **Treatment** – (a) If the Debtor ~~refinances~~sells the Property ~~as permitted in~~under the ~~Means for Implementation section of the Plan~~Oldham Contract, payment in full in Cash of the Allowed Amount of the Class ~~3~~2 Claim.  (b) If the Debtor fails to ~~refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows~~sell the Property under the Oldham Contract:  (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 3 Claimant shall be paid the available Cash from the sale proceeds up to Allowed Amount of the Class 3 Claim plus Secured accrued amounts as of the date of payment, after payment of the Allowed Amounts of the Class 1 and Class 2 Claims plus Secured accrued amounts as of the date of payment, (iii) in the event that there is insufficient Cash from the Sale Proceeds to pay the Allowed Amount of the Class 3 Claim as of the Petition Date, the Class 3 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim as of the Petition Date and the Cash paid under this subsection (b).

**3.** ~~9.~~ **Voting --** Impaired and entitled to vote to accept or reject the Plan.

**Class 4**

**4.** ~~10.~~ **Classification** – B&H Contracting Corp.  Secured Claim arising from June 4, 2018 mechanics lien for $40,000.

**5.** ~~11.~~ **Treatment** – (a) If the Debtor ~~refinances~~sells the Property ~~as permitted in~~under the ~~Means for Implementation section of the Plan~~Oldham Contract, payment in full in Cash of the Allowed Amount of the Class ~~4~~2 Claim.  (b) If the Debtor fails to ~~refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows~~sell the Property under the Oldham Contract:  (i) the Property shall be

8

sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 4 Claimant shall be paid the available Cash from the sale proceeds up to Allowed Amount of the Class 4 Claim plus Secured accrued amounts as of the date of payment, after payment of the Allowed Amounts of the Class 1 through Class 3 Claims plus Secured accrued amounts as of the date of payment, (iii) in the event that there is insufficient Cash from the Sale Proceeds to pay the Allowed Amount of the Class 4 Claim as of the Petition Date, the Class 4 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim as of the Petition Date and the Cash paid under this subsection (b).

6. 12. **Voting --** Impaired and entitled to vote to accept or reject the Plan.

### Class 5

7. 13. **Classification** – Gypsum New York Sales Corp.  Secured Claim arising from June 22, 2018 mechanics lien for $1,200.

8. 14. **Treatment** – (a) If the Debtor refinancessells the Property as permitted inunder the Means for Implementation section of the PlanOldham Contract, payment in full in Cash of the Allowed Amount of the Class 52 Claim.  (b) If the Debtor fails to refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as followssell the Property under the Oldham Contract:  (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 5 Claimant shall be paid the available Cash from the sale proceeds up to Allowed Amount of the Class 5 Claim plus Secured accrued amounts as of the date of payment, after payment of the Allowed Amounts of the Class 1 through Class 4 Claims plus Secured accrued amounts as of the date of payment, (iii) in the event that there is insufficient Cash from the Sale Proceeds to pay the Allowed Amount of the Class

9

5 Claim as of the Petition Date, the Class 5 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim as of the Petition Date and the Cash paid under this subsection (b).

9. ~~15.~~ **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

### Class 6

10.        ~~16.~~ **Classification** – Congregation Bnai Jacob.  Second mortgage scheduled for $1,500,000 recorded on August 29, 2018.

11.        ~~17.~~ **Treatment** – (a) If the Debtor ~~refinances~~sells the Property ~~as permitted in~~under the ~~Means for Implementation section of the Plan~~Oldham Contract, payment in full in Cash of the Allowed Amount of the Class ~~6~~2 Claim.  (b) If the Debtor fails to ~~refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows~~sell the Property under the Oldham Contract: (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 6 Claimant shall be paid the available Cash from the sale proceeds up to Allowed Amount of the Class 6 Claim plus Secured accrued amounts as of the date of payment, after payment of the Allowed Amounts of the Class 1 though Class 5 Claims plus Secured accrued amounts as of the date of payment, (iii) in the event that there is insufficient Cash from the Sale Proceeds to pay the Allowed Amount of the Class 6 Claim as of the Petition Date, the Class 6 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim as of the Petition Date and the Cash paid under this subsection (b).

12.        ~~18.~~ **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

10

**Class 7**

13. ~~19.~~ **Classification** – Rent a Unit.  Secured Claim arising from November 28, 2018 mechanics lien for $2,449.

14. ~~20.~~ **Treatment** – (a) If the Debtor ~~refinances~~sells the Property ~~as permitted in~~under the ~~Means for Implementation section of the Plan~~Oldham Contract, payment in full in Cash of the Allowed Amount of the Class ~~7~~2 Claim.  (b) If the Debtor fails to ~~refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows~~sell the Property under the Oldham Contract:  (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 7 Claimant shall be paid the available Cash from the sale proceeds up to the Allowed Amount of the Class 7 Claim plus Secured accrued amounts as of the date of payment, after payment of the Allowed Amounts of the Class 1 through Class 6 Claims plus Secured accrued amounts as of the date of payment, (iii) in the event that there is insufficient Cash from the Sale Proceeds to pay the Allowed Amount of the Class 7 Claim as of the Petition Date, the Class 7 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim as of the Petition Date and the Cash paid under this subsection (b).

15. ~~21.~~ **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

**Class 8**

16. ~~22.~~ **Classification** – E&W Wholesale Electrical Inc.  Secured Claim arising from January 16, 2019 mechanics lien for $35,000.

17.    23. **Treatment** – (a) If the Debtor ~~refinances~~sells the Property ~~as permitted in~~under the ~~Means for Implementation section of the Plan~~Oldham Contract, payment in full in Cash of the Allowed Amount of the Class 82 Claim.  (b) If the Debtor fails to ~~refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows~~sell the Property under the Oldham Contract: (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 8 Claimant shall be paid the available Cash from the sale proceeds up to Allowed Amount of the Class 8 Claim plus Secured accrued amounts as of the date of payment, after payment of the Allowed Amounts of the Class 1 and through Class 7 Claims plus Secured accrued amounts as of the date of payment, (iii) in the event that there is insufficient Cash from the Sale Proceeds to pay the Allowed Amount of the Class 8 Claim as of the Petition Date, the Class 8 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim as of the Petition Date and the Cash paid under this subsection (b).

18.    24. **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

### Class 9

19.    25. **Classification** – Certified Lumber Corp.  Secured Claim arising from January 22, 2019 mechanics lien for $23,681.

20.    26. **Treatment** – (a) If the Debtor ~~refinances~~sells the Property ~~as permitted in~~under the ~~Means for Implementation section of the Plan~~Oldham Contract, payment in full in Cash of the Allowed Amount of the Class 92 Claim.  (b) If the Debtor fails to ~~refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows~~sell the Property under the Oldham Contract: (i) the Property

12

shall be sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 9 Claimant shall be paid the available Cash from the sale proceeds up to Allowed Amount of the Class 9 Claim plus Secured accrued amounts as of the date of payment, after payment of the Allowed Amounts of the Class 1 through Class 8 Claims plus Secured accrued amounts as of the date of payment, (iii) in the event that there is insufficient Cash from the Sale Proceeds to pay the Allowed Amount of the Class 9 Claim as of the Petition Date, the Class 9 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim as of the Petition Date and the Cash paid under this subsection (b).

21.        27. **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

## Class 10

22.        28. **Classification** – Simply Brooklyn Realty.  Secured Claim arising from scheduled mechanics lien for $18,000.

23.        29. **Treatment** – (a) If the Debtor refinances sells the Property as permitted in under the Means for Implementation section of the Plan Oldham Contract, payment in full in Cash of the Allowed Amount of the Class 102 Claim.  (b) If the Debtor fails to refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows sell the Property under the Oldham Contract:  (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii) the Class 10 Claimant shall be paid the available Cash from the sale proceeds up to Allowed Amount of the Class 10 Claim plus Secured accrued amounts as of the date of payment, after payment of the Allowed Amounts of the Class 1 through Class 9 Claims plus Secured accrued amounts as of the date of payment, (iii) in the event that there is insufficient Cash from the Sale Proceeds to pay the

13

Allowed Amount of the Class 9 Claim as of the Petition Date, the Class 10 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim as of the Petition Date and the Cash paid under this subsection (b).

24.    30. **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

**Class 11**

25.    31. **Classification** – Eastern Funding LLC.  Secured Claim scheduled for $50,909 arising from September 17, 2018 UCC security interest in gym equipment with a scheduled value of $40,000.

26.    32. **Treatment** – (a) If the Debtor refinancessells the Property as permitted in the Means for Implementation section of the Planunder the Oldham Contract, payment in full in Cash of the Allowed Amount of the Class 112 Claim.  (b) If the Debtor fails to refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows:  atsell the Property under the Oldham Contract, the Property shall be sold as set forth in the Means for Implementation section of the Plan, and the option of the Purchaser of the Property under the Plansuch sale, (i) the gym equipment securing the Class 1011 Claim shall be returned to the Class 11 Claimant and the Class 11 Claimant shall have a Class 14 general unsecured claim for the deficiency between the Allowed Amount of its Claim and the fair market value of the gym equipment or (ii) the Purchaser of the Property shall be entitled to cure the Debtor's defaults and assume the Debtor's obligations under the agreement between the Debtor and the Class 11 Claimant, or upon such other terms as the Claimant and Purchaser may agree upon.

27.    33. **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

14

**Class 12**

28.    ~~34.~~ **Classification** – Eastern Funding LLC.  Secured Claim scheduled in the amount of $33,708 arising from UCC security interest in laundry equipment with a scheduled value of $25,000.

29.    ~~35.~~ **Treatment** – (a) If the Debtor ~~refinances~~sells the Property ~~as permitted in the Means for Implementation section of the Plan~~under the Oldham Contract, payment in full in Cash of the Allowed Amount of the Class ~~12~~2 Claim.  (b) If the Debtor fails to ~~refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows:  at~~sell the Property under the Oldham Contract, the Property shall be sold as set forth in the Means for Implementation section of the Plan, and the option of the Purchaser of the Property under ~~the Plan~~such sale, (i) the ~~laundry~~gym equipment securing the Class 12 Claim shall be returned to the Class 12 Claimant and the Class 12 Claimant shall have a Class ~~12~~14 general unsecured claim for the deficiency between the Allowed Amount of its Claim and the fair market value of the ~~laundry~~gym equipment or (ii) the Purchaser of the Property shall be entitled to cure the Debtor's defaults and assume the Debtor's obligations under the agreement between the Debtor and the Class ~~14~~12 Claimant~~, or upon such other terms as the Claimant and Purchaser may agree upon~~.

30.    ~~36.~~ **Voting --** Impaired and entitled to vote to accept or reject the Plan.

**Class 13**

31.    ~~37.~~ **Classification** –   Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code.  Claims total approximately $0.

15

32. 38. **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

33. 39. **Voting** -- Unimpaired and deemed to have accepted the Plan

**Class 14**

34. 40. **Classification** – General Unsecured Claims. Claims total approximately $8,641,000 plus deficiency claims held by Secured Creditors.

35. 41. **Treatment** – (a) If the Debtor refinancessells the Property as permitted inunder the Means for Implementation section of the PlanOldham Contract, payment in full in Cash of the Allowed Amount of eachthe Class 142 Claim. (b) If the Debtor fails to refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows: sell the Property under the Oldham Contract, (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii) each Class 14 Claimant shall be paid its pro-rata share of the available Cash from the sale proceeds up to Allowed Amounts of all Class 14 Claims plus interest at the Legal Rate through the date of payment, after payment of the Allowed Amounts of Administrative Claims, unclassified Priority tax claims and Class 1 through Class 13 Claims plus Secured accrued amounts as of the date of payment. In the event insufficient cash is available for Class 14 Claims after payment of senior claims as provided for in the preceding sentence, then each Holder of a General Unsecured Claim shall be paid its pro-rata share of a $25,000 distribution fund. To the extent necessary, such fund will be funded by the Class 2 Claimant, as set forth in the Class 2 treatment section of the Plan. If

16

the Sale Proceeds cover Administrative and Classes 1 through 13 Claims, and the insider claims are expunged, the Proponent estimates a 15% recovery to Class 13 creditors $25,000 distribution fund.

36.    ~~42.~~ **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Class 15

37.    ~~43.~~ **Classification** –  Equity Interests .

38.    ~~44.~~ **Treatment** ~~– (a) If the Debtor refinances the Property as permitted in the Means for Implementation section of the Plan, Equity Interests shall be unimpaired.  (b) If the Debtor fails to refinance in an amount sufficient to pay all classes of creditors in full in Cash from a refinancing, treatment shall be under this subsection (b) as follows:  (i) the Property shall be sold as set forth in the Means for Implementation section of the Plan, (ii)~~ Each Equity Interest holder shall be paid its pro-rata share of the available Cash after payment of the Allowed Amounts of Administrative Claims and Class 1 through Class 14 Claims plus Secured accrued amounts as of the date of payment.

39.    ~~45.~~ **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### UNCLASSIFIED PRIORITY TAX CLAIMS

40.    Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code total approximately 0 based on the Debtor's Schedules and filed proofs of claim. The treatment of such Claims shall be payment in full in Cash of the Allowed Claim on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATION CLAIMS

41.    ~~46.~~ Allowed Administrative Expenses shall be paid in full in Cash on the Effective Date, or the date such Administrative Expense becomes Allowed, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Proponent shall be Paid in full or performed by the Proponent in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  Any outstanding U.S. Trustee fees shall be paid in full in Cash on the Effective Date. United States Trustee fees will be paid, and operating reports will be filed as they come due by the Debtor.

## MEANS FOR IMPLEMENTATION

42.    ~~47.~~ **Source of Funds** ~~—~~ (a) On or about July 13, 2020, the Debtor shall close on the Property under the Oldham Contract and order of the Bankruptcy Court dated April ___, 2020, and creditors shall be paid as provided in the class treatment sections of the Plan from the sale proceeds.  (b) If the Debtor fails to sell the Property under the Oldham Contract, Effective Date payments under the Plan will be paid from the sale of the Property ~~pursuant~~('Auction Sale") subject to the Sale and Auction Procedures annexed to the Plan as Exhibit A.  In the event of a credit bid by the Mortgagee, the Mortgagee shall place sufficient funds in escrow to pay Administrative Claims, Priority Claims and $25,000 for general Unsecured Claims.

43.    The Sale and Auction Procedures provide for a contingency sale of the Property at an auction sale to be conducted on a date to be announced after the closing deadline for the Oldham sale at the offices of Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New

York, New York 10022.  The Property shall be sold "as is."  Bidding shall be limited to all cash offers.  The Proponent will make the minimum opening bid in the amount of its Claim, estimated to be $23,000,000 as of the sale date.  The minimum overbid shall be $200,000.  Bidding shall be increments of $25,000. All prospective bidders except the Mortgagee are required to deposit $2,000,000 (the "Deposit") in escrow with the undersigned counsel by bank check or wire deposit.  The Auction Sale will be subject to the approval of the Bankruptcy Court at the Confirmation Hearing.  The highest bidder shall be the purchaser (the "Purchaser") of the Property, free and clear of all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the proceeds of sale.  The Deposit shall be non-refundable. In the event the Purchaser closes on or before fifteen days after the entry of an order approving the Auction Sale, the Deposit shall be applied to the purchase price.  In the event Purchaser fails to close on or before fifteen days after the entry of an order approving the Auction Sale, the Deposit shall be remitted to the Proponent.  Time shall be of the essence in the closing of this transaction.  In the event Purchaser fails to close as set forth herein, then the Proponent shall have the right to accept the bid next highest in amount to the original Purchaser's bid.

44.    The transfer of the Property under the Plan shall be free and clear of all commercial leases not assumed under the Plan, as well as all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the sale proceeds, and to be disbursed under the Plan, provided, however, that the Mortgagee shall have the right, but not the obligation, to provide for a split and assignment of its mortgageemortgage and an assumption by the purchaserPurchaser in connection with the sale of the Property under the Plan. In the event of a

19

~~credit bid by the Mortgagee, the Mortgagee shall place sufficient funds in escrow to pay~~

~~Administrative Claims, Priority Claims and $25,000 for general Unsecured Claims.~~

45.    ~~48.~~ Marketing for the Auction Sale will be performed by ~~Schuckman~~

~~Realty Inc,~~ _____ who shall market to prospective, well-qualified

purchasers that are ready, willing and able to purchase the Property.

~~Schuckman~~ _____ will use its own staff to advertise and promote the

~~sale~~Auction Sale of the Property through its network of contacts and database to market the

Property at no cost to the Debtor.  Additionally, ~~Schuckman~~ _____ will,

among other things, (i) vet any potential buyers, (ii) conduct all property tours, and (iii) assist in

price negotiations. ~~Schuckman~~ _____ will provide real time updates

as to the status of all marketing efforts, as well as feedback from potential buyers and will conduct

an auction of the Property. ~~Schuckman's commission is 3% with a co-broker, and 2% if Schuckman~~

~~sources the purchaser.~~

46.    **Sale Approval** -- As part of the Auction Sale under the Plan, and in order

to ensure consummation of the Plan, the Auction Sale shall be subject to sale hearing in the

Bankruptcy Court, and a Bankruptcy Court order that shall contain the following findings of fact

and conclusions of law: (a) that the terms and conditions of the sale are fair and reasonable, (b) that

the Debtor's sale, and the purchaser's purchase, of the Property pursuant to the Plan, is

non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer

of the Property to the purchaser represents an arm's-length transaction and was negotiated in good

faith between the parties, (d) that the purchaser, as transferee of the Property, is a good faith

purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of

Bankruptcy Code § 363(m), (e) the sale of the Property to the purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

47.    49.    **Release of Liens** –-- Except as otherwise provided for in the Plan and in connection with the assumption and assignment of the Mortgagee's mortgage, on the Effective Date, (a) each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Proponent any and all Collateral that secures or purportedly secures such Claim, as they pertain to the properties currently owned by the Debtor or such Lien shall automatically, and without further action by the Debtor or the Proponent, be deemed released, and (y) execute such documents and instruments as the Proponent requests to evidence such Claim holder's release of such property or Lien.

48.    50.  **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), in connection with the sale of the Property to Purchaser, whether the Purchaser be Oldham or the Purchaser under the bidding and sale procedures, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of

21

the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York City Real Property Transfer Tax and New York State Documentary Tax.

49.    51. **Execution of Documents** -- The Proponent shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

50.    52. **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

## PRESERVATION OF CLAIMS

51.    53. All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to Section 547 of the Bankruptcy Code, all fraudulent transfer claim pursuant to Section 548 of the Bankruptcy Code, and all claims relating to post-petition transactions under Section 549 of the Bankruptcy Code shall be preserved for the

22

benefit of the Debtor's estate, provided, however, that the Proponent shall have sole authority for prosecuting any such claims.

## DISTRIBUTIONS TO CREDITORS

52. ~~54.~~ The Proponent shall be disbursing agent under the Plan without a bond.  The Debtor and the Proponent shall have the right to file objections to claims in the event grounds exist to object to particular claims. Claims objections must be filed no later than 60 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Proponent shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

53. ~~55.~~ All unexpired leases and executory contracts not rejected prior to the Effective Date shall be assumed under the Plan.  In the event of a rejection which results in damages, a Proof of Claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the Effective Date.  All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall be treated as an Unsecured Claim.  Any Claim arising from the rejection of any Executory Contract or unexpired lease not filed with the Court

within the time period provided in the preceding paragraph above shall be deemed discharged and

shall not be entitled to participate in any distribution under the Plan.

## RETENTION OF JURISDICTION

54.    ~~56.~~ Retention of Jurisdiction.  The Court shall have jurisdiction over all

matters arising under, arising in, or relating to the Debtor's Bankruptcy Case including, but not

limited to, proceedings: (a) to consider any modification of the Plan under section 1127 of the

Bankruptcy Code; (b) to hear and determine all Claims, controversies, suits and disputes against the

Debtor to the full extent permitted under 18 U.S.C. §1334 and 28 U.S.C. §157; (c) to hear,

determine and enforce all Claims  and causes of action which may exist on behalf of the Debtor or

the Debtor's estate, including, but not limited to, any right of the Debtor or the Debtor's Estate to

recover assets pursuant to the provisions of the Bankruptcy Code; (d) to hear and determine all

requests for compensation and/or reimbursement of expenses which may be made; (e) to value

assets of the Estate; (f) To enforce the Confirmation Order, the final decree, and all injunctions

therein; (g) to enter an order concluding and terminating the Bankruptcy Case; (h) to correct any

defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order; (i)

to determine all questions and disputes regarding title to the assets of the Debtor; (j) to re-examine

Claims which may have been allowed for purposes of voting, and (k) to determine objections which

may be filed to any Claims.

## GENERAL PROVISIONS

55.    ~~57.~~ Headings.  The headings in the Plan are for convenience of reference

only and shall not limit or otherwise affect the meaning of the Plan.

56. 58. Disputed Claims.  The Proponent shall hold in escrow the distribution that would be due on account of any Disputed Claim.  No Disputed Claims shall be paid, nor shall distributions be made to a creditor holding a Disputed Claim, until such Claim becomes an Allowed Claim.

57. 59. Calculation of Time Periods.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

58. 60. Other Actions.  Nothing contained herein shall prevent the Proponent, Debtor, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

59. 61. Modification of Plan.  The Proponent may seek amendments or modifications to the Plan in accordance with section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Proponent may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan

## INJUNCTION AND PROPERTY OF THE ESTATE

60. 62. Injunction.  The confirmation of this Plan shall constitute an injunction of the Court against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Debtor or its property or properties, any obligation or debt except pursuant to the terms of the Plan.

## **CLOSING THE CASE**

61.    63. Upon substantial consummation, the Debtor or the Proponent may

move for a final decree to close the Bankruptcy Case and to request such other orders as may be

just.

Dated:  New York, New York
         February     April 6, 2020

                                    1930 Bedford Avenue LLC

                                    Plan Proponent


By:    s/_____

                                    BACKENROTH FRANKEL & KRINSKY, LLP
                                    Attorneys for Proponent


By:    s/Mark A. Frankel
                                    800 Third Avenue
                                    Floor 11
                                    New York, New York 10022
                                    (212) 593-1100

**EXHIBIT A TO PLAN**

**BIDDING AND AUCTION PROCEDURES**

These Terms and Conditions of Sale are promulgated in connection with the auction sale (the "Sale") of the real property at 1930-1934 Bedford Avenue, Brooklyn, New York (the "Property").

Time and Place of Sale:  The Sale will be held on _____, 2020 at ____ __ m. at the ~~United States Bankruptcy Court, 271 Cadman Plaza East, Brooklyn~~offices of Backenroth Frankel & Krinsky, LLP, 800 3rd Avenue, Floor 11, New York, New York, 10022.

Sale Pursuant to Chapter 11 Plan:  The Seller of the Property is 1934 Bedford, LLC (the "Debtor").  The sale shall be conducted pursuant to Bankruptcy Code section 363 and the Chapter 11 Plan of Reorganization (the "Plan") proposed by 1930 Bedford Avenue LLC, the Plan proponent ("Proponent").

Sale free and Clear of Liens:  The Sale of the Property shall be conducted pursuant to the Proponent's Plan of Reorganization free and clear of liens, claims, and encumbrances, with any such liens, claims and encumbrances to attach to the sale proceeds, and disbursed under the Plan.

Qualification to Bid:   In order to be qualified to bid on the Property, within seven days prior to the commencement of the Sale, each prospective bidder (except the Proponent's nominee) must deliver to the Proponent (a) a bank check in the amount of Two Million Dollars ($2,000,000.00) (the "Qualifying Deposit") payable to "Backenroth Frankel & Krinsky, LLC, as Attorneys" (b) evidence reasonably demonstrating such bidder's ability to consummate a sale on the terms proposed, and (c) a written offer to purchase substantially in the form annexed hereto.  No later than one business day before the Sale, each bidder will be notified by the Proponent as to whether the Proponent deems such bidder qualified to bid at the Sale.

Bidding: Bidding shall be conducted openly at the Sale.  The opening bid shall be _____ ($_____).  Minimum bidding increments shall be _____ ($_____).  Proponent may credit bid its claim up to $_____.

Successful Bidder Additional Deposit: At the Sale, once a bidder is determined to have made the highest or best bid for the Property at the Sale (the "Successful Bidder"), bidding shall be deemed closed and no additional bids will be considered.  Within one business day after the Successful Bidder is determined, the Successful Bidder (except for the Proponent's nominee) shall be required to increase the Qualifying Deposit to an amount equal to ten percent of the winning bid, which amount shall serve as a good faith deposit against payment of the Purchase Price.  At the conclusion of the Sale, the Proponent's counsel will return the Qualifying Deposits to all other bidders.

Hearing if Disputed Sale:  ~~In the event that an issue exists as to which competing bid is higher or better, a~~The sale subject to approval by the Bankruptcy Court.  A hearing will be conducted by the Bankruptcy Court ~~on that issue at the Plan Confirmation Hearing~~ on the ___ day of _____, 2020 _____, at the United States Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York.

Sale Approval Order:  ~~the Confirmation Order confirming the Proponent's Plan shall approve the Sale, and in connection therewith, the Confirmation Order~~An order approving the Sale shall contain the following findings of fact and conclusions of law: (a) that the Terms and Conditions of the Sale are fair and reasonable, (b) that the Sale and the Purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the Purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the Purchaser, as transferee of the Property, is a good faith Purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the Purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

Closing:  The Successful Bidder must pay the balance of the Purchase Price for the Property (the difference between the amount of the successful bid and the Qualifying Deposit) to the Proponent, by bank check, or wire transfer at the closing of title to the Property (the "Closing"). The Successful Bidder must close title to the Property at a date that is no more than fifteen (15) days after the Order by the Bankruptcy Court is entered, TIME BEING OF THE ESSENCE as to the Successful Bidder, although such date may be extended solely by the Proponent.

Transfer Tax:  Under the Plan, pursuant to section 1146(c) Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York State Documentary Tax.

Damages for Failure to Close:  Time is of the Essence as Against the Successful Bidder and the failure of the Successful Bidder to either timely pay the additional Qualifying Deposit or timely close for any reason whatsoever (except as otherwise provided below) including its failure to pay

the balance of the Purchase Price on the Closing Date, will result in the Proponent retaining the deposit as liquidated damages and the termination of the Successful Bidder's right to acquire the Property under these Terms and Conditions of Sale.  The Successful Bidder shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel or avoid its obligation under these Terms and Conditions of Sale other than the Debtor's inability to deliver a bargain and sale deed to the Property.  Expenses incurred by the Successful Bidder, or any competing bidder relating to any due diligence, such as obtaining title reports or environmental inspections, shall be the sole responsibility of such bidder, and under no circumstances shall the Proponent or the Proponent's professionals be responsible for, or pay, such expenses.

Backup Bidder:  In the event that the Successful Bidder for the Property fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these Terms and Conditions of Sale, the Proponent, at its sole option, shall be authorized to sell the Property to the Second Highest Bidder without any further notice without giving credit for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Proponent deems appropriate.  Should the Second Highest Bidder fail to close on the Property, within such time as the parties may agree but not to exceed thirty (30) days after notice from the Proponent to the Second Highest Bidder, the Proponent shall be authorized to sell the Property to the next highest or best bidder, without the necessity of any further notice.  All bidders will be bound by these Terms and Conditions of Sale, including, without limitation, those items set forth in the paragraphs above, except that the Second Highest Bidder must close within thirty (30) days of notification that his bid is accepted.  TIME IS OF THE ESSENCE.

No Representations:  the Proponent, the Proponent's professional, the Debtor, and the Debtor's professionals have not made and do not make any representations as to the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property or the Sale, which might be pertinent to the purchase of the Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Property; (vi) the present and future condition and operating state of any and all machinery or equipment on the Property and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (vii) the ownership or state of title of any personal property on the Property; (viii) the presence or absence of any laws, ordinances, rule or regulations issued by any governmental authority, agency or board and any violations thereof; (ix) any present or future issues concerning subdivision or non-subdivision of

3

the Property; or (x) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere on the Property.  Each bidder shall be deemed to have agreed and acknowledged that no such representations have been made.  the Proponent is not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property, made or furnished by the Proponent or Debtor or any real estate broker agent, employee, servant or other person or professional representing or purporting to represent the Proponent or Debtor unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by the Proponent.  For the avoidance of doubt, neither the Debtor nor the Debtor's professionals are authorized to provide any such warranties, guaranties, promises, statements, representations or information.

As Is Sale: The Property is being sold free and clear of all liens, claims, commercial leases not assumed under the Plan and encumbrances, with any such liens, claims and encumbrances to attach to the net proceeds of sale after deduction of any expenses of sale.  Furthermore, the Property is being sold "AS IS", "WHERE IS" "WITH ALL FAULTS", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions, including, without limitation, the Property's compliance (or lack of compliance) with environmental laws and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the Property. By delivering their respective Qualifying Deposits, each bidder is deemed to have acknowledged that it has had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigations and inspections of the Property in making its bid.  Neither the Proponent nor any of its representatives make any representations or warrantees with respect to the permissible uses of the Property, including but not limited to, the zoning of the Property.  All bidders are deemed to have acknowledged that they have conducted their own due diligence in connection with the Property, and are not relying on any information provided by the Debtor, Proponent or their professionals.

Deed:  The Debtor, or the Proponent acting on the Debtor's behalf, shall convey the Property by delivery of a bargain and sale deed without covenants against grantor's acts.

Broker:  Neither the Debtor nor the Proponent nor their professionals are liable or responsible for the payment of fees of any broker.

Conduct of Sale: These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Sale of the Property.  By making a bid for the Property, all bidders will be required to acknowledge these Terms and Conditions of Sale and agree to be bound by them.

<u>Failure to Close</u>:  If the Debtor, or the Proponent on the Debtor's behalf, is unable to deliver title to the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever or in the event that the Bankruptcy Court refuses to confirm the Proponent's Chapter 11 plan or approve the sale of the Property pursuant to Section 363 of the Bankruptcy Code, the Proponent's only obligation will be to refund the Deposit, together with interest earned thereon, if any, to the Successful Bidder, and upon such refund, the Successful Bidder will have no claim or recourse against the Proponent, the Debtor or their professionals.

<u>Right to Withdraw Sale</u>:  The Proponent reserves its right to withdraw the Property from the Sale, either prior or subsequent to the Sale, for any reasonable reason, as the Proponent deems necessary or appropriate.

<u>Plan Confirmation</u>:  The Sale of the Property is ~~subject~~<u>pursuant</u> to ~~confirmation of~~ the Proponents' Plan ~~and approval~~<u>confirmed</u> by the Bankruptcy Court <u>by order dated _____</u>.

<u>Breakup Fee</u>: None

<u>Proponent's Designee</u>:  Notwithstanding anything to the contrary herein, the Proponent shall be entitled to name a designee or designees who shall be deemed qualified to bid without posting a Qualifying Deposit or complying with the other requirements otherwise necessary to bid, and, if the Successful Bidder and Purchaser, shall be entitled to purchase the Property subject to some or all of the Proponent's mortgage.

<u>Bankruptcy Court Jurisdiction</u>:  The Bankruptcy Court shall determine any disputes concerning the Sale of the Property.  By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending case.

CONTRACT dated as of the _____ day of _____, 2020 (this "Contract") , between 1934 Bedford, LLC, (the "Seller" or "Debtor") and _____ having an address at _____ _____ ("Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

1. Sale of Property

Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this Contract: the real property located at 1930-1934 Bedford Avenue, Brooklyn, New York (the "Property").  The sale of the Property includes (a) all of its appurtenances, including any estate, right, title, interest, property, claim and demand of Seller in and to all streets, alleys, rights-of-way, sidewalks, easements, any adjoining gores or strips of land and utility lines or agreements, including, without limitation, all development rights and "air rights"; (b) all improvements, buildings and structures located on or at the Property and the facilities located thereon, and any apparatus, equipment, appliances and fixtures incorporated therein and used exclusively in connection with the operation and occupancy thereof; (c)  all plans, specifications, budgets, schedules, surveys, drawings, reports and governmental applications, permits, approvals and licenses issued by any federal, state or local governmental authority or agency pertaining to the ownership, operation, maintenance, development, construction or use of  the Property, including, without limitation, the building plans approved by the City of New York,  Department of Buildings on June 26, 2014 (collectively, the "Plans and Permits"); and (d) all of its rights and licenses in and to use the Plans and Permits.

Paragraph 1.02.   Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Court") in Case No. 19-44751, entitled "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") which was approved by the Bankruptcy Court on _____ and is deemed annexed to this Contract.

Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above, and (4) the Bidding and Auction Procedures approved pursuant to the motion of 1930 Bedford Avenue LLC (the "Plan Proponent" or Mortgagee").

1

2. Purchase Price, Acceptable Funds

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Property is (                    ) Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

(A) on the signing of this Contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof (the "Down Payment").

(B) THIS CONTRACT IS "ALL CASH" AS KNOWN IN THE COMMON PARLANCE.  PURCHASER'S OBLIGATIONS UNDER THIS CONTRACT ARE NOT CONDITIONED UPON PURCHASER'S ABILITY TO SECURE FINANCING OF ANY KIND OR NATURE.

(C) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "Cash Balance")

Paragraph 2.02. All monies payable under this Contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any federally insured bank, savings bank, trust company or savings and loan association having a banking office in the City of New York; (b) official bank checks drawn by any such banking institution, payable to the order of Seller (or as Seller shall direct) and bearing no endorsements; or (c) wire transfer of immediately available federal funds.  Attorney's Escrow Checks of Purchaser payable to the order of Seller (or as Seller directs) up to the amount of $1,000.00 in the aggregate shall be acceptable for sums other than the Purchase Price payable to Seller at Closing.

3. Escrow of Down Payment

Paragraph 3.01. (a) The Down Payment shall be paid by check or checks drawn to the order of and delivered to Backenroth Frankel & Krinsky LLP ("Escrowee").  The Escrowee shall hold the Down Payment in escrow in a non-interest-bearing IOLA Account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section.  At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding Procedures.  If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment.  If Escrowee does receive such written objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or pursuant to an

order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for 1930 Bedford Avenue LLC (the "Proponent" or the "Mortgagee") in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

4. The Closing

Paragraph 4.01. The conveyance of title to the Property by the Seller to Purchaser, and payment of the Cash Balance by Purchaser shall take place 15 days following the entry of an Order approving the Contract and the transaction embodied therein if that is a business day, and if not, the following business day (the "Closing"). The Closing is to be held at the office of the Escrowee, or such other location as designated by the Proponent within the Southern or Eastern District of New York. Purchaser will have a one time right to adjourn the Closing for up to five Business Days from the original date (such adjourned date, "Purchaser's Mandatory Closing Date"). Time is of the essence with respect to Purchaser's obligations to close title in accordance with this Contract on or before Purchaser's Mandatory Closing Date.

5. Acknowledgments and Representations of Purchaser

Purchaser acknowledges and represents that:

Paragraph 5.01. Purchaser has inspected the Property, made all appropriate inquiries into the previous ownership and uses of the Property, is fully familiar with the physical condition and state of repair thereof, and shall accept the Property "as is" and in their present condition, including, without limitation, the environmental conditions as reflected in the Terms of Sale

annexed hereto, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this Contract.  The Terms of Sale set forth conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

Paragraph 5.02. Before entering into this Contract, Purchaser has made such examination of the Property, the physical condition and state of repair thereof including the environmental conditions. Purchaser acknowledges that it is an experienced real estate owner/operator and is relying solely on its own expertise and investigations and inspections in entering into this Contract and has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other representative of Seller or by any other person representing or purporting to represent Seller or Proponent, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser in the terms of this Contract, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the amount of the Down Payment, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain with mathematical precision and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Paragraph 5.04. Purchaser represents that (a) it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by Purchaser in connection with the entering into this Contract and the consummation of the transactions contemplated hereby;  (b) this Contract and all documents required hereby to be executed by Purchaser are and will be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms (c) Purchaser, and all direct or indirect beneficial owners of Purchaser, are in compliance with all applicable laws, statutes, rules and regulations of any federal, state or local governmental authority in the United States of America, including the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFAC") and in any related enabling legislation or other Executive Orders (collectively, the "Orders"). Neither Purchaser nor any of the direct or indirect beneficial owners of Purchaser  (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "Lists") or is owned or controlled by, or acts for or on behalf of, any Person on the Lists or who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (ii) has been arrested for money laundering or for predicate crimes to money laundering, convicted or pled nolo contendere to charges involving money laundering or predicate crimes to money laundering; or (iii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iv) is owned or controlled by, nor acts for or on behalf of, any natural person or entity (a "Person") on the Lists

4

or any other Person who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (v) will transfer or permit the transfer of any interest in Purchaser or such parties to any Person who is, or whose beneficial owners are, listed on the Lists; or (vi) will assign this Agreement or any interest herein, to any Person who is listed on the Lists or who is engaged in illegal activities.

6.  Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this Contract and Purchaser agrees to close title to the Property regardless of any destruction, damage or condemnation that occurs after the execution and delivery of this Contract.

7.  Seller's Closing Obligations

At the closing, Seller, or the Plan Proponent on the Seller's behalf, shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A bargain and sale deed without covenants against grantor's acts, executed by the Debtor, or the Plan Proponent on the Debtor's behalf, in proper form for recording so as to convey to Purchaser the fee title to the Property, subject to recorded encumbrances and the other conditions of this Contract.

Paragraph 7.02. All required New York City and State transfer tax returns executed by the Debtor, or the Plan Proponent on the Debtor's behalf, to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.03. The right to possession of the Property in condition required by this Contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures.  Seller shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Property, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.04. An assignment of all of Seller's right, title and interest in and to the Plans and Permits in the form attached hereto as Exhibit A executed by Seller, or the Plan Proponent on the Seller's behalf.

Paragraph 7.05.  Any other documents required by this Contract or by law to be delivered by Seller to consummate this transaction.

8.  Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01.  The Cash Balance to the Mortgagee.

Paragraph 8.02.  All required New York City and State transfer tax returns, and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.  Purchaser will pay any and all applicable transfer taxes and recording fees.

Paragraph 8.03.  Any other documents required by this Contract or by law or reasonably required by Seller to be executed and/or delivered by Purchaser to consummate this transaction.

9.  Apportionments

Paragraph 9.01. The parties specifically acknowledge that there shall be no apportionments made as of the date of Closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

10.  Objections to Sale

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Property to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures.  Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to convey, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller; or (ii) to terminate this Contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability. Neither Seller nor Mortgagee shall be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this Contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the Property "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the City of New York.  Purchaser is aware of and agrees to the Terms of Sale which are attached to this Contract and which are incorporated in this Contract by this reference as though fully set forth herein at length.

11.  Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Mortgagee's Attorney, on behalf of the Seller, at the address set forth below, and to Purchaser addressed to Purchaser's Attorney at the address set forth below.

Mortgagee's attorneys, Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York 10022.

Purchaser's Attorney:

12.  Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this Contract, no representations, warranties, covenants or other obligations of Seller or Plan Proponent and/or Purchaser set forth herein shall survive the Closing except as specifically provided to survive, and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the deed by the Seller and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this Contract to survive.

13.  Assignment of Contract

Paragraph 13.01.  Purchaser shall not assign this Contract or its rights hereunder without the prior written consent of the Proponent, whose consent will not be unreasonably withheld or delayed. Additionally, Purchaser may assign its rights under this Contract, but only immediately before the Closing and only simultaneously with the payment of the Cash Balance, to any wholly owned subsidiary of Purchaser, or to any entity in which Purchaser, or its principals, has an equity interest of at least fifty-one (51%) percent and control of management (a "Controlled Entity"), upon appropriate proof of same delivered to Proponent.  Any purported assignment without Proponent's consent or that is not to a Controlled Entity with proof of such relationship given to Proponent shall be void.  Any sale, transfer or assignment of any interests in Purchaser will be deemed an assignment of this Contract and is subject to the same conditions as an assignment of this Contract. Nevertheless, an assignment of Purchaser's rights under this Contract, if and when consented to by Proponent, shall not be effective unless and until an executed counterpart of the instrument of assignment and of an assumption agreement by the assignee shall have been delivered to Proponent.

Paragraph 13.02.  Seller shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Seller, except to execute such documents as may be necessary to effectuate such assignment.

14.  Miscellaneous Provisions

Paragraph 14.01 THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03.  This Contract shall be governed by, and construed in accordance with, the Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Code or any Order of the Bankruptcy Court, the laws of the State of New York. The Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes concerning the sale of the Property or any other matters under this Contract.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to 2.0l (A) hereto.  This Contract may be executed in counterparts each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement.  A signed counterpart of this Contract delivered by electronic transmission will be treated as an original.

Paragraph 14.07. As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail.

IN WITNESS WHEREOF, the parties hereto have executed this Contract as of the date first above written.

1934 Bedford, LLC                                    Purchaser:


By: _____
    Name:                                          By: _____

8

Title:                                                    Name:
                                                         Title:

Backenroth Frankel & Krinsky, LLP,
Escrowee:


By: _____
        Name:
        Title:

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                                        Chapter 11
     1934 Bedford, LLC                    Case no.  19-44751
             Debtor.
-------------------------------------------------------------x

## NOTICE OF SALE

       PLEASE TAKE NOTICE, that upon the application of 1930 Bedford Avenue LLC ("Proponent") in the case of 1934 Bedford, LLC ("Debtor"), the real property located at 1930-1934 Bedford Avenue, Brooklyn, New York shall be sold to the highest bidder at an auction sale to be conducted on _____, 2020 at _____ at the United States Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York.  The Property shall be sold "as is."  Bidding shall be limited to all cash offers, and the minimum opening bid shall be $_____, and bidding shall be increments of $_____. All prospective bidders except Proponent or its designee shall be required to deposit $2,000,000 (the "Deposit") in escrow with the undersigned counsel by bank check or wire deposit on or before _____, 2020 at 5:00 p.m.  Subject to the approval of the Bankruptcy Court at a hearing ("Hearing") to be held immediately following the sale, or as soon thereafter as counsel can be heard, the highest bidder shall be the purchaser (the "Purchaser") of the Property, free and clear of all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the proceeds of sale.  The Deposit shall be non-refundable. In the event the Purchaser closes on or before fifteen days after the entry of an order approving the sale, the Deposit shall be applied to the purchase price.  In the event Purchaser fails to close on or before fifteen days after the entry of an order approving the sale, the Deposit shall be remitted to the Proponent.  Time shall be of the essence in the closing of this transaction.  In the event Purchaser fails to close as set forth herein, then the Proponent shall have the right to accept the bid next highest in amount to the original Purchaser's bid.

       PLEASE TAKE FURTHER NOTICE, that a complete copy of the terms and conditions of sale is attached to the Proponent's Chapter 11 plan filed in the Bankruptcy Court and is available upon request of the undersigned.

Dated:  New York, New York
        _____, 2020

                              Backenroth Frankel & Krinsky, LLP
                              800 Third Avenue
                              New York, New York 10022
                              (212) 593-1100

**EXHIBIT B to DISCLSOURE STATEMENT**

**ASSETS AND LIABILITIES AS OF PETITION DATE**

| Assets | |
|---|---|
| Real Property and misc. personal property | Unliquidated |

| Liabilities | |
|---|---|
| Administration Claims | $50,000 |
| New York City real estate tax, water, sewer and other liens. | $0.00 |
| 1930 Bedford Avenue LLC | $18,809,274 |
| Other Secured Claims | $1,666,429 |
| Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. | 0 |
| General Unsecured Claims | $8,641,000 |
| **Total** | $29,166,703 |

Document comparison by Workshare 10.0 on Wednesday, April 8, 2020 4:20:24 PM

| Input: | |
|---|---|
| Document 1 ID | file://F:\1930 Bedford\Disclosure Statement-002.docx |
| Description | Disclosure Statement-002 |
| Document 2 ID | file://F:\1930 Bedford\Disclosure Statement-003.docx |
| Description | Disclosure Statement-003 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 415 |
| Deletions | 371 |
| Moved from | 11 |
| Moved to | 11 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 808 |