UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

In re                                              Chapter 11

1934 BEDFORD LLC,                                  Case No.: 19-44751-CEC

       Debtor and Debtor in Possession.

-------------------------------------------------------- X

---

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OF THE PLAN.
ACCEPTANCES MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT
HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THE DISCLOSURE
STATEMENT BELOW HAS NOT BEEN APPROVED BY THE COURT.**

---

**THIRD AMENDED DISCLOSURE STATEMENT,
PURSUANT TO BANKRUPTCY CODE § 1125,
FOR THE THIRD AMENDED CHAPTER 11 PLAN OF THE DEBTOR**

## I.    INTRODUCTION

1934 Bedford LLC, debtor and debtor-in-possession ("Debtor"), prepared this third

amended disclosure statement ("Disclosure Statement") pursuant to Bankruptcy Code § 1125[1],

for the Third Amended Chapter 11 Plan of the Debtor, Filed on May 27, 2020 ("Plan").

A complete copy of the Plan is annexed to this Disclosure Statement as **Exhibit A**.

The purpose of this Disclosure Statement is to provide the Debtor's Creditors and Interest

Holders with adequate information to enable them to make an informed judgment about the

acceptability of the Plan. This Disclosure Statement aims to give Creditors and Interest Holders

---

[1]    Capitalized or abbreviated terms contained in this Disclosure Statement shall have the same
meaning as ascribed to them in Article 2 of the Plan, or elsewhere therein, unless otherwise
defined in this Disclosure Statement. The Debtor reserves the right to argue that this
Disclosure Statement, and solicitation, regarding the Plan are unnecessary because there are
no impaired Claims or Interests under the Plan.

sufficient information, as far as it is reasonably practicable for the Debtor to provide, that would

allow a hypothetical reasonable investor typical of the holders of Claims and Interests in the

classes impaired under the Plan (if any) to make an informed judgment about whether to accept

or reject the Plan.

The provisions of the Plan are binding on all Creditors and Interest Holders. Therefore,

please read the Plan and this Disclosure Statement carefully.

**APPROVAL OF THIS DISCLOSURE STATEMENT BY THE COURT DOES NOT AMOUNT TO A RULING BY THE COURT ON THE FAIRNESS OR MERITS OF THE PLAN.**

**NO STATEMENT, INFORMATION OR REPRESENTATION CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS, PROFIT OR FINANCIAL CONDITION) IS AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE ACCEPTANCES OF THE PLAN WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION AND ANY SUCH ADDITIONAL REPRESENTATION OR INDUCEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS THE COURT MAY DEEM APPROPRIATE. THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AN AUDIT. THE DEBTOR IS UNABLE TO WARRANT AND REPRESENT THE ACCURACY OF THE INFORMATION CONTAINED HEREIN ALTHOUGH EVERY EFFORT HAS BEEN MADE TO INSURE ITS ACCURACY.**

**THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY AN ORDER OF THE COURT, THE HONORABLE CARLA E. CRAIG, UNITED STATES CHIEF BANKRUPTCY JUDGE. HOWEVER, THE COURT HAS NOT DETERMINED WHETHER THE PLAN MEETS THE REQUIREMENTS OF THE BANKRUPTCY CODE FOR CONFIRMATION NOR IS THIS DISCLOSURE STATEMENT OR THE ORDER APPROVING IT TO BE CONSTRUED AS AN APPROVAL OR ENDORSEMENT OF THE FAIRNESS OR MERITS OF THE PLAN BY THE COURT.**

**ALL PARTIES ENTITLED TO VOTE ON THE PLAN (IF ANY) ARE URGED TO REVIEW IN FULL THE PLAN AND THIS DISCLOSURE STATEMENT TOGETHER WITH ALL EXHIBITS ATTACHED THERETO, PRIOR TO VOTING ON THE PLAN, AND MAY DESIRE TO CONSULT LEGAL COUNSEL PRIOR TO VOTING TO ENSURE COMPLETE UNDERSTANDING OF THEIR TREATMENT UNDER THE PLAN. THIS DISCLOSURE STATEMENT IS INTENDED FOR THE**

**SOLE USE OF CREDITORS AND INTEREST HOLDERS OF THE DEBTOR TO ENABLE THEM TO MAKE AN INFORMED DECISION ABOUT THE PLAN.**

**EACH CREDITOR AND INTEREST HOLDER IS URGED TO CONSULT ITS OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO IT UNDER FEDERAL AND APPLICABLE STATE, LOCAL AND FOREIGN TAX LAWS. THE DEBTOR MAKES NO WARRANTIES OR REPRESENTATIONS REGARDING THE TAX IMPACT OF THE PLAN ON ANY CREDITOR OR INTEREST HOLDER.**

**A.**     <u>**Confirmation Hearing**</u>

The Court has scheduled a hearing ("Confirmation Hearing") to consider Confirmation of the Plan on June 24, 2020 at 2:30 p.m., at the United States Bankruptcy Court, Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York 11201.

**B.**     <u>**Objections to Confirmation**</u>

Objections to Confirmation of the Plan, if any, must be in writing and must identify the objecting party and the nature of its interest in the Bankruptcy Case and must set forth in detail the nature and basis of the objection. Objections must be filed with the Clerk of the Court with the ECF system, with a copy to the Chambers of Chief Judge Craig and served upon the following no later than June 10, 2020 at 5:00 p.m:

Schuyler G. Carroll, Esq.
William M. Hawkins, Esq.
Loeb & Loeb LLP
345 Park Avenue
New York, New York 10154
Tel.: 212-407-4126
Email: <u>whawkins@loeb.com</u>

Office of the United States Trustee,
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

C.      **Overview of Voting on the Plan**

Holders of Claims and Interests in Classes 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15 are unimpaired and deemed to have accepted the Plan.  Their respective Allowed Claims or Interests are not impaired.  Therefore, they are not entitled to vote under the Plan in accordance with Bankruptcy Code § 1129(a)(8).

Allowed Administrative Expense Claims are not being classified under the Plan.  The Plan provides that they are to be paid in full on the later of the Effective Date or 10 days after they become Allowed Administrative Expense Clams.

D.      **General Description of Treatment of Claims and Interests**

Set forth in detail elsewhere in this Disclosure Statement and in the Plan is a description of the technical aspects of classification of Claims and Interests, the distributions and treatment afforded to Claimants and Interest Holders upon the occurrence of the Effective Date and the consequences of the Plan. THE FOLLOWING IS A BRIEF SUMMARY OF THE TREATMENT AFFORDED TO CLAIMS AND CLASSES BY THE PLAN. THIS SUMMARY IS PROVIDED FOR CONVENIENCE PURPOSES ONLY AND IS ABSOLUTELY QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE FULL TEXT OF THE PLAN. YOU ARE URGED TO CONSULT THE ACTUAL TEXT OF THE PLAN TO DETERMINE THE TREATMENT GIVEN TO THE CLASS WHICH ENCOMPASSES YOUR TYPE OF CLAIM OR INTEREST.

| **Class** | **Description**[2] | **Distribution & Treatment** |
|---|---|---|
| No class | Administrative Expense Claims | Allowed Administration Expense Claims will be paid in full in Cash on the later of |

---

[2] Descriptions shall not limit the rights of the Debtor to object to any Claim or, in the case of an asserted Secured Claim, to the Lien related thereto.

| **Class** | **Description[2]** | **Distribution & Treatment** |
|---|---|---|
| | | the Effective Date or 10 days after the Allowance Date thereof, or as otherwise agreed to between the Debtor and the holder. |
| Class 1 (Secured Class) | New York City real estate tax, water, sewer and other liens. Claims total approximately $0.00. Asserted Secured Claim. | The holders of Allowed Class 1 Claims shall be paid in full in Cash on the later of the Effective Date or 10 days after the Allowance Date thereof. Unimpaired. [3] |
| Class 2 (Secured Class) | 1930 Bedford Avenue LLC ("**1930**") (Claim totals approximately $18.8 million, not including late charges.) Asserted Secured Claim. | The holders of Allowed Class 2 Claims shall be paid in full in Cash on the later of the Effective Date or 10 days after the Allowance Date thereof. The Debtor intends to object to the default rate interest and certain other charges asserted in the Proof of Claims filed by 1930. All amounts of Disputed Claims will be reserved by the Debtor. Unimpaired. |
| Class 3 (Secured Class) | Bright Light Corp. Asserted Secured Claim arising from May 31, 2018 mechanics lien for $84,482. | Allowed Class 3 Claims shall be paid in full in Cash on the later of the Effective Date or 10 days after the Allowance Date thereof. The Debtor intends to object to this Claim. All amounts of Disputed Claims will be reserved by the Debtor. |

---

[3] The Debtor reserves its right under the Plan to object to any Claim.

| Class | Description[2] | Distribution & Treatment |
|---|---|---|
| | | Unimpaired. |
| Class 4 (Secured Class) | B&H Contracting Corp. Asserted Secured Claim arising from June 4, 2018 mechanics lien for $40,000. | Allowed Class 4 Claims shall be paid in full in Cash on the later of the Effective Date or 10 days after the Allowance Date thereof. |
| | | The Debtor intends to object to this Claim. |
| | | Unimpaired |
| Class 5 (Secured Class) | Gypsum New York Sales Corp. Asserted Secured Claim arising from June 22, 2018 mechanics lien for $1,200. | Allowed Class 5 Claims shall be paid in full in Cash on the later of the Effective Date or 10 days after the Allowance Date thereof. |
| | | Unimpaired. |
| Class 6 (Secured Class) | Congregation Bnai Jacob. Second mortgage scheduled for $1,500,000 recorded on August 29, 2018. Asserted Secured Claim. | The holders of Allowed Class 6 Claims shall be paid in full in Cash on the later of the Effective Date or 10 days after the Allowance Date thereof. |
| | | Unimpaired. |
| Class 7 (Secured Class) | Rent a Unit. Asserted Secured Claim arising from November 28, 2018 mechanics lien for $2,449. | The holders of Allowed Class 7 Claims shall be paid in full in Cash on the later of the Effective Date or 10 days after the Allowance Date thereof. |
| | | Unimpaired. |
| Class 8 (Secured Class) | E&W Wholesale Electrical Inc. Asserted Secured Claim arising from January 16, 2019 mechanics lien for $35,000. | Allowed Class 8 Claims shall be paid in full in Cash on the later of the Effective Date or 10 days after the Allowance Date thereof. |
| | | The Debtor intends to object to this Claim. |
| | | Unimpaired. |

| Class | Description[2] | Distribution & Treatment |
|---|---|---|
| Class 9 (Secured Class) | Certified Lumber Corp. Asserted Secured Claim arising from January 22, 2019 mechanics lien for $23,681. | The holders of Allowed Class 9 Claims shall be paid in full in Cash on the later of the Effective Date or 10 days after the Allowance Date thereof. Unimpaired. |
| Class 10 (Secured Class) | Eastern Funding LLC. Asserted Secured Claim scheduled for $50,909 arising from September 17, 2018 UCC security interest in gym equipment with a scheduled value of $40,000. | The holders of Allowed Class 10 Claims shall be paid in full in Cash on the later of the Effective Date or 10 days after the Allowance Date thereof. Unimpaired. |
| Class 11 (Secured Class) | Eastern Funding LLC. Asserted Secured Claim scheduled in the amount of $33,708 arising from UCC security interest in laundry equipment with a scheduled value of $25,000. | The holders of Allowed Class 11 Claims shall be paid in full in Cash on the later of the Effective Date or 10 days after the Allowance Date thereof. Unimpaired. |
| Class 12 (Unsecured Class) | Priority Claims under Sections 507(a)(3), (4), (5), (6), (7) and (8) of the Bankruptcy Code. Claims total approximately $0. | The holders of Allowed Class 12 Claims shall be paid in full in Cash (including Federal Judgment Rate interest from the Petition Date to the Effective Date) on the later of the Effective Date or 10 days after the Allowance Date thereof. Unimpaired. |
| Class 13 (Unsecured Class) | General Unsecured Creditors. Claims total approximately $141,000. | The holders of Allowed Class 13 Claims shall be paid in full in Cash (including Federal Judgment Rate interest from the Petition Date to the Effective Date) on the later of the Effective Date or 10 days |

| Class | Description[2] | Distribution & Treatment |
|---|---|---|
| | | after the Allowance Date thereof. |
| | | Unimpaired. |
| Class 14 (Unsecured Class) | Unsecured Claim of the Managing Member<br><br>Claim totals approximately $8,500,000.<br><br>Unsecured Claim. | The holder of an Allowed Class 14 Claim shall be paid in Cash on the later of the Effective Date or 10 days after the Allowance Date thereof, to an amount that is not greater than the principal amount of the claim together with interest to the extent of sufficient funds.  No distribution shall occur on account of Claim(s) in Class 14 until all Cash amounts for all Allowed Claims have been distributed and a reserve has been established for all the Disputed Claims.<br><br>Unimpaired. |
| Class 15 | Equity Interests. | Equity Interests shall retain their ownership or equity interest in the Debtor. |

Allowed Administrative Expense Claims will include the claim of Loeb & Loeb LLP, the proposed counsel for the Debtor.  The amount of the Administrative Expense Claim of Loeb & Loeb LLP is not yet possible to be determined.

Allowed Administrative Expense Claims also include the Law Office of Rachel S. Blumenfeld PLLC, previous counsel to the Debtor; Wayne Greenwald, P.C., previous counsel to the Debtor; and SPIEGEL LLC, accountants to the Debtor. The Debtor expects that Law Office of Rachel S. Blumenfeld PLLC will apply for total compensation of approximately $50,000 with

expenses of approximately $1,000. It is anticipated that Wayne Greenwald, P.C. will apply for total compensation, too. It is also anticipated that SPIEGEL LLC will apply for total compensation of approximately $9,000. Additionally, the Debtor anticipates applying for compensation for Aaron Friedman LLC and Joseph Haspel, both counsel to the Debtor. The Debtor expects that Friedman's compensation will be approximately $25,000.

Under the Plan, the Debtor may seek the services of a Broker. If so, the amounts coming due under the Brokerage Agreement would constitute an Administrative Expense Claim. Similarly, the Debtor will be retaining a Responsible Officer, who will have experience supervising the marketing and disposition of real property and other assets. Compensation for this Person will constitute an Administrative Expense Claim.

**E.**    <u>**Plan Alternatives**</u>

The Debtor believes that the Plan provides the best means for the distribution of the proceeds of the sale of the Property. The Plan also provides the most expeditious and efficient means of paying Creditors. A Chapter 7 case could reduce the payment to unsecured creditors because of the administrative costs and the effect of the Property's forced sale in which holders of Secured Claims in the Property could exercise credit bid(s). It would also delay the payment to Creditors for their Allowed Claims.

**II.**    **EVENTS PRECEDING THE FILING**

**A.**    <u>**History of the Debtor**</u>

The Debtor was formed as a New York limited liability company on or about December 17, 2014. The Debtor's primary asset is real property located at 1930 - 1934 Bedford Avenue,

Brooklyn, New York (*i.e.*, the "**Property**"). In or about March 2015, the Debtor began purchasing the real estate comprising the Property. The Property is predominantly a multi-unit residential construction with some commercial space. The Debtor set about developing the Property. In or about January 2019, the Debtor was able to start renting its units.

**B.**    **Loan Initiation**

In 2016 the Debtor borrowed $12,500,000.00 from Sill Capital Group LLC (S3[4]) and/or its affiliates, at an annual interest rate of 10-12% per annum, collateralized by a mortgage on the Property ("Loan"). In February 2018, the Debtor increased the Loan by $2,500,000. The Debtor paid about $3,000,000.00 in interest, up to the last payment that S3 accepted.  The stated maturity date of the Loan was February 28, 2019.

The Debtor wanted to pay the Loan as soon as possible upon maturity. In early 2019, the Debtor strove to secure a new loan to pay off the Loan, in full.

However, the Debtor believes S3 interfered with and thwarted the Debtor's efforts. S3's interference included preventing the Debtor from obtaining a new loan in time for the targeted funding date, May 9, 2019. The Debtor sees these actions by S3 as injuring the Debtor's financial standing, reputation, ability to conduct future business, and likelihood of financing its development.

**C.**    **Financing from Bnai Jacob**

In the summer of 2018, the Debtor asked S3 for additional funds. S3 rejected the request. It also suggested that the Debtor obtain the requested funds elsewhere.

---

[4]    In 2018 S3 assigned its interests to the Loan and underlying mortgage to an affiliate S3 RE Funding III LLC, also referred to as S3.

So, the Debtor obtained a $1,500,000 loan from Bnai Jacob, secured by a second mortgage on the Property.

**D.    The Debtor's Frustrated Refinancing**

On or about January 28, 2019, the Debtor paid the last interest payment it would make, and it was posted on or about January 29, 2019. On February 28, 2019, the Loan matured, according to the Loan documents. On March 1, 2019, S3 sent out a default notice, even though S3 had told the Debtor it would not call a default.

By March 2019, the Debtor was pursuing a bank loan offer from Investor's Bank, for a $25,500,000.00 loan at 4.625% interest per annum.  The Debtor paid a $28,000 good faith deposit and submitted all required documents. This new loan was progressing towards a closing, and S3 would have been paid in full, shortly, had the closing occurred.

In April 2019, while the Debtor was pursuing this new refinancing loan with the knowledge, consent and cooperation of S3, S3 suddenly shifted gears and demanded that the Debtor obtain a more expensive loan from a different lender that S3 specified. The Debtor acquiesced: the Debtor desired to satisfy the Loan promptly and followed S3's directives, eventually paying $17,500 to Emerald Creek Capital ("Emerald") towards a good faith deposit, and lender legal fees for loan document production in order to effect a closing during the first week of May, 2019.

The Debtor communicated with S3 about the Emerald loan's progress. On or about April 17, 2019, S3 asked the Debtor for its rent roll. Concerned, the Debtor's principal, Nikol Von Lavrinoff, asked if S3 was planning to sell the Loan. He was assured that S3 was not.

Robert Schwartz, principal of S3, promised a meeting with the Debtor for the end of April, 2019, to discuss and conclude an accurate payoff amount. Meanwhile, the Debtor and its

attorney at the time, Arthur Gutman, pursued and progressed towards an early May, 2019, closing with Emerald.

Schwartz cancelled the proposed "payoff" meeting on April 30, 2019 – the meeting was scheduled for that very next day.  Gutman arranged another meeting with Schwartz, set for two days before the anticipated closing with Emerald, which was scheduled for May 9, 2019. Schwartz cancelled that meeting, too, and thwarted the Emerald closing.

**E.**     **S3 Transfers the Loan to 1930**

On or about May 9, 2019, S3 transferred the Loan to 1930. The Debtor attempted to negotiate with 1930 a means of satisfying the Loan. 1930 refused to meet with the Debtor.

**F.**     **The Foreclosure Begins**

In June 2019, 1930 filed a foreclosure action against the Property in the Supreme Court of the State of New York, Kings County. The Supreme Court appointed a receiver ("Receiver") of the Property.  The Receiver never took possession. The Debtor in a separate action filed a petition to determine the correct amount owed on the Loan. The Supreme Court told the parties to work at a settlement.

The Debtor made an offer, but 1930 did not respond.

**III.     EVENTS IN THIS BANKRUPTCY CASE**

**A.**     **The Involuntary Petition**

An involuntary petition for relief under Chapter 11 of the Bankruptcy Code was filed against the Debtor on the Petition Date.

**B.**     **1930's Motion to Sustain the Receiver**

After this Bankruptcy Case was filed, 1930 sought an order relieving the Receiver from the Bankruptcy Code's requirement that it surrender the Property to the Debtor.

The Debtor opposed that motion. The Court denied the motion.

**C.     Consent to the Involuntary Petition**

The Debtor and the petitioning creditors stipulated to extend the Debtor's time to respond. 1930 objected to the extension. One September 11, 2019, the Court held hearing on the objection. The Court would not approve the stipulation and directed the Debtor to either consent to the involuntary petition or submit its opposition to it in short order.

On September 12, 2019, the Debtor consented to the involuntary petition. The order for relief was entered on October 1, 2019. Shortly afterwards, the Debtor filed its schedules of assets and liabilities and statement of financial affairs.

The Debtor's principal attended the meeting of creditors, pursuant to § 341(a) of the Bankruptcy Code. No Creditors attended.

**D.     Retaining Professionals**

On the order for relief's entry, the Debtor Filed applications to engage Wayne Greenwald P.C. and the Law Office of Rachel S. Blumenfeld PLLC as attorneys in the Bankruptcy Case, as well as SPIEGEL LLC, as the Debtor's accountant.  The Debtor intends to seek retention of Aaron Friedman LLC as the transactional attorney to close the sale, and Joseph Haspel as special real estate counsel. The Debtor may seek the services of a Broker as well as a Responsible Officer, both to help assure the fastest, surest sale of the Property to pay Creditors.  The Debtor is in the process of seeking the retention of Loeb & Loeb LLP as the Debtor's general bankruptcy counsel.

**E.     1930's Motion for Fed. R. Bankr. P. 2004 Examinations**

Early in the Bankruptcy Case, 1930 sought orders, pursuant to Fed. R. Bankr. P. 2004, authorizing the examination of the Debtor and the petitioning creditors.

The Debtor opposed this request for discovery. The Court denied the motion under Fed. R. Bankr. P. 2004 both when initially made and when 1930 later renewed its request for 2004 discovery.

## F.    Competing Motions for Stay Relief

The Debtor wanted (and wants) to quantify and pay the Loan as appropriate, as soon as possible. Therefore, the Debtor sought relief from the automatic stay, so the Debtor could continue prosecuting its petition in Supreme Court for a determination of the amount due on the Loan.

1930 countered with its own motion for stay relief. 1930 wanted the entire foreclosure to continue in the Supreme Court.

The Court denied both motions.

## G.    Use Of Cash Collateral

The Bankruptcy Code prohibits using cash collateral absent the secured creditor's permission or Court order.

Beginning September 11, 2019, the Debtor and 1930 discussed the consensual use of cash collateral. While there was some cooperation, that effort was unsuccessful.

On November 25, 2019, the Debtor filed an emergency motion for the Court's authority to use cash collateral. A contentious hearing on that motion was heard on December 4, 2019. The Court directed 1930 and the Debtor to work out an arrangement for consensual cash collateral use and continued the hearing to January 8, 2020.

1930 authorized the Debtor to use cash for some expenses.

**H.**    **Bar Date Order**

An order was sought for a deadline for filing proofs of claim and notice thereof. The deadline for filing Proofs of Claims occurred on February 17, 2020 (other than Governmental Units). The deadline for Governmental Units to file Proofs of Claims was March 30, 2020.

**I.**    **Monthly Operating Reports**

The Debtor is required to file monthly operating reports. The Debtor expects to continue complying with this requirement.

**J.**    **Sales Order**

The Debtor brought a motion for an order ("Sale Approval Order"): (i) authorizing the sale of the Property free and clear of Liens, Claims and interests pursuant to the Sale Agreement with the Contract Purchaser pursuant to §§ 105, and 363(b) and (f) of the Bankruptcy Code; (ii) authorizing the assumption and assignment of the residential and nonresidential leases located at the Property; (iii) determining that the Contract Purchaser was a good faith purchaser and thereby is entitled to the protections afforded by § 363(m) of the Bankruptcy Code; (iv) waiving the 14-day stay required by Fed. R. Bankr. P. 6004(h); and (v) granting such other relief as this Court deemed just and proper.

On April 12, 2020 the Court Entered the Sale Approval Order. Dkt. No.  137.

## DESCRIPTION OF THE AVAILABLE

## ASSETS AND THEIR VALUE; DESCRIPTION OF THE LIABILITIES

The following is a description of the Debtor's available assets and their estimated value:

**The Debtor's Assets Are:**

The Property-approximately $26 million, net [5]

Cash - $58,697[6]

Equipment - $65,000[7]

Actions - undetermined[8]

Accounts receivable pre-petition - $00.00[9]

Accounts receivable post-petition - $00.00[10]

**The Debtor's Liabilities Are:**

1)      Secured Claims (real estate mortgages) - $20,478,704 (disputed in part)[11]

2)      Other Secured Claims $289,428.90 (disputed in part)[12]

3)      Priority tax claim-$00.00[13]

4)      General Unsecured Claims (other than the Unsecured Claim of the Managing Member)-$141,000 (possibly disputed in part)

   Total of Non-Subordinated Liabilities -- $20,909,132.90

5)      General Unsecured Claim of the Managing Member -- $8,500,000 (principal)

---

[5]    *See* Sale Agreement.

[6]    Based on the Debtor's Monthly Operating Report for October 2019.

[7]    Based on the Debtor's Monthly Operating Report for October 2019.

[8]    The Debtor's schedules reflect a lender liability claim against S3 for an undetermined amount. It is investigating whether it has a similar, related claim against 1930.

[9]    Schedule B filed in the Case.

[10]   Based on the Debtor's Monthly Operating Report for October 2019.

[11]   Monthly operating report.

[12]   Schedule D filed in this case.

[13]   Schedules and Monthly operating report.

<u>Total of Subordinated Liability -- $8,500,000 (principal only)</u>[14]

## IV.    DEBTORS PROPOSED PLAN OF REORGANIZATION

The Contract Purchaser has agreed to pay $27,250,000 for the Property. The Sale Agreement appears at Dkt. No. 125.

The Plan provides for the retention by the Debtor of a Responsible Officer, whose retention should assure the other parties in interest as well as the Court that the sale of the Property will be accomplished expeditiously.  This Responsible Officer will have the exclusive authority to enforce the Debtor's rights under the Sale Agreement and against the Contract Purchaser.

Should the Contract Purchaser fail to close the sale and the Sale Agreement is terminated, the Plan provides that the Responsible Officer will retain a Broker under a Brokerage Agreement, with the Court's approval.  Under the Responsible Officer's direction, the Broker will Market the Property for sale for a specified period, seeking a Back-up Purchaser to sign a Bank-up Sales Contract.  If successful the Marketing period, the proceeds of the sale would pay the Allowed Claims and Allowed Administrative Expense Claims to the same extent that the Plan otherwise provides.  Importantly, the Responsible Officer would have the discretion to accept a sale of the Property pursuant to a Back-up Sale Agreement, helping to assure that the Property is sold and creditors are paid.

Nevertheless, if the period of Marketing does not achieve a sale, then the Responsible Officer would be required to schedule, cause appropriate marketing for, and hold an auction to

---

[14] The Plan provides that the Unsecured Claim of the Managing Member will be subordinated to the payment of the Allowed Amounts of other Claims.

sell the Property.  Under the Responsible Officer's direction, the highest and best offer assuring the greatest amount of net Cash would be selected for the sale of the Property following the auction.

## V.      SOURCE OF INFORMATION CONTINUED IN THIS STATEMENT

The sources of information in this statement are Mr. Von Lavrinoff, the Debtor's principal, the Debtor's books and records, and public records.

## VI.     DEBTOR'S OPERATIONS IN CHAPTER 11

The Debtor operated its business in the ordinary course during the Bankruptcy Case.

Critical to the Debtor's reorganization was securing of a refinancing or sale for the Property. The Debtor interviewed several potential funders for a refinancing and purchasers for a sale.

These efforts lead to the Sale Agreement.

## VII.    LIQUIDATION ANALYSIS

Based on the assets and liabilities discussed above, the Debtor estimates that there is approximately $5,000,000 value of the Property which exceeds the Allowed Amounts of the Claims other than the Claim of the Managing Member. However, if this Bankruptcy Case were a liquidation under Chapter 7, that value would be drastically reduced, including by 1930's ability to credit-bid its Secured Claim and the Property being sold in a forced liquidation.

## VIII.   ACCOUNTING METHOD USED TO PRODUCE THE FINANCIAL DATA

Cash method of accounting.

## IX.     THE FUTURE MANAGEMENT OF THE COMPANY

The Debtor's management will continue to operate the Debtor after Confirmation and the Effective Date, subject to the exclusive authority of the Responsible Officer over the Marketing

and sale of the Property.  Mr. Von Lavrinoff will remain the Managing Member of the Debtor throughout.

## X.      ESTIMATED ADMINISTRATIVE EXPENSES

The Debtor anticipates that the Allowed Administrative Expense Claims will total less than $500,000.

## XI.     U.S. TRUSTEE FEES

The Debtor is current with the fees due to the Office of the United States Trustee. The U.S. Trustee's fees will continue to be due and payable until a Final Decree is entered or the Bankruptcy Case is dismissed or converted, whichever is earlier.

## XII.    AMOUNT REALIZABLE FROM PREFERENCE AND FRAUDULENT CONVEYANCES

The Debtor has determined that there are no viable fraudulent conveyance or preferential transfer actions.

## XIII.   LITIGATION LIKELY TO ARISE IN A NON-BANKRUPTCY CONTEXT

The Debtor's schedules and this Disclosure Statement set forth grounds for the Debtor's belief that it has actionable claims against S3 and potentially 1930. The Debtor anticipates pursuing viable claims.

## XIV.    THE TAX ATTRIBUTES OF THE DEBTOR

The Debtor is investigating whether it has any loss-carry forward. The Debtor does not expect the Plan or its consummation to have any negative tax consequences.

## XV.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor intends to assume Executory Contracts which are leases at the Property and assign them to the Contract Purchaser as part of the sale. The Debtor intends to reject other Executory Contracts.

## XVI.   THE PLAN OF REORGANIZATION

**THE FOLLOWING IS A SUMMARY OF THE PROVISIONS OF THE PLAN AND, ACCORDINGLY, IS NOT AS COMPLETE AS THE FULL TEXT OF THE PLAN THAT ACCOMPANIES THIS DISCLOSURE STATEMENT. THE PLAN ITSELF SHOULD BE READ IN ITS ENTIRETY. IN THE EVENT OF ANY INCONSISTENCIES BETWEEN THE DESCRIPTION OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT AND THE PLAN ITSELF, THE PROVISIONS OF THE PLAN SHALL CONTROL.**

### A.   <u>General</u>

The Debtor believes that, under the circumstances, the Plan provides for the best possible recovery to and a fair treatment in accordance with the provisions of and restrictions imposed by the Bankruptcy Code of each Class of Claims or Interests. The Plan contains different articles detailing definitions, classification, treatment of Claims and Equity Interests, means of implementation and other miscellaneous provisions that will, if the Plan is Confirmed after appropriate notice and a hearing, be binding on the Debtor, the Creditors and the Interest Holder(s). If Confirmed, the Plan will be binding regardless whether or not a Claim or Interest is impaired under the Plan or whether or not a Creditor or Interest Holder has accepted the Plan.

***Solicitation of Acceptance of the Plan.*** This Disclosure Statement was approved by the Bankruptcy Court in accordance with Bankruptcy Code § 1125. It has been provided to all Creditors and Interest Holders in this Bankruptcy Case. This Disclosure Statement is intended to assist Creditors and Interest Holders in evaluating the Plan and their decision to accept or reject the Plan. Your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement at the time of, or before, such solicitation.

Votes Considered in Determining Acceptance of the Plan. Classes 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15 are unimpaired under the Plan. Therefore, Classes 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15 of Creditors and Interest Holders are deemed to have accepted the Plan, and are not entitled to vote.

A party in interest may object to the Plan, in writing, on any appropriate grounds.

**ANY BALLOT RECEIVED AFTER THE LAST DATE FOR RECEIPT OF BALLOTS WILL NOT BE COUNTED IN THE DETERMINATION OF WHETHER A CLASS HAS APPROVED THE PLAN OF REORGANIZATION**

***Hearing on Confirmation of the Plan.*** The Bankruptcy Court has set a hearing to determine if the Plan has been accepted by the required number of holders of Claims and Interests and if other requirements for Confirmation of the Plan outlined in the Bankruptcy Code have been satisfied. The hearing on Confirmation of the Plan shall commence on June 24, 2020, at the United States Bankruptcy Court, located at the Hon. Conrad Duberstein United States Courthouse, 271 Cadman Plaza East, Brooklyn, New York. Any objections to Confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on counsel for the Debtor on or before June 10, 2020.

**B.**     <u>**Summary of Plan Provisions**</u>

The Plan is a 100% plan. The source of the Cash and the procedures to satisfy Claims and Interests are set forth more fully below. The following sections describe in detail why the Plan is feasible and where and how the Debtor will obtain the proceeds to make the payments or provide the treatment and to assume the obligations set forth in the Plan.

Article 2 of the Plan contains a series of definitions that are applicable to both the Plan and this Disclosure Statement. Readers are referred to the text of Article 2 of the Plan for a description of each defined term.

Article 3 of the Plan describes the classification of Claims and Interests. The Plan classifies Claims and Interests separately in accordance with the Bankruptcy Code and provides different treatment to different Classes. The Plan provides for 14 separate Classes of Claims and 1 Class of Interests each of which is accorded the treatment proposed for such Class or group

under the Plan. Article 3 of the Plan describes how the Classes of Claims and Interests are treated by the Plan. Article 5 provides how the Plan will be executed.

The Plan classifies Claims and Interests separately in accordance with the Bankruptcy Code and provides different treatment to different Classes. Payments, distributions and treatment provided under the Plan to, or for the benefit of, all Creditors will be in full satisfaction and discharge of Claims and Interests, as more particularly explained in the Plan.

**C.**     **Summary of Treatment of Unclassified Claims**

**Allowed Administrative Expense Claims**

Allowed Administrative Expense Claims are claims against the Debtor and the Estate for administrative expenses (normally expenses accruing during the Bankruptcy Case) referred to in and allowed under §§ 503(b) and 507(a)(2) of the Bankruptcy Code, including actual and necessary costs and expenses of preserving the Estate. Administrative Expense Claims typically include, by way of example only, wages, salaries, or commissions for services rendered during the Bankruptcy Case, compensation and reimbursement of expenses awarded by Final Order of the Bankruptcy Court to retained professional Persons, and costs associated with providing notice to Creditors of the Plan.

Administrative Expense Claims representing liabilities incurred in the ordinary course of the Debtor's business are being paid in due course during the Bankruptcy Case, or will be paid thereafter, when same become owing pursuant to their terms. To the extent any such liabilities remain unpaid and are due pursuant to terms as of the Effective Date, they will be paid by the Debtor after the Effective Date pursuant to and in accordance with ordinary business terms.

Claims for unpaid compensation and reimbursement of expenses to professional Persons will be paid in Cash on the Effective Date, subject to same having been allowed and approved by

the Bankruptcy Court, unless the Debtor and the holders of such Allowed Claims agree to other payment terms.

**D.**     **Summary of Treatment of Classes of Claims and Interests**

**Classes 1-13:**

Claims of Classes 1-13 Creditors will be paid, in full, on the later of the Effective Date or within 10 days after each Claim becomes an Allowed Claim. As noted, the Debtor intends to object to certain Claims and the Debtor reserves its right to object to any of the Claims. However, pursuant to the Plan the Debtor will reserve the amount corresponding to all Disputed Claim.

**Class 14 - Unsecured Claim of the Managing Member:**

This Claimant shall receive Cash up to the full amount of principal and interest on this Claim after all other Allowed Claims have been paid in full under the Plan and all Disputed Claims have been fully reserved by the Debtor.

**Class 15 - Holders of Equity Security Interests:**

Interest Holder(s) will retain their Interest(s).

**E.**     **Summary Description of the Plan Concerning Rejection And Assumption Of Executory Contracts**

The Plan provides for the assumption of all of the Debtor's Executory Contracts which are leases at the Property and their assignment to the Contract Purchaser.  Otherwise, the Debtor intends to reject all other Executory Contracts.

**F.**     **Summary Description Of the Plan With Regard To Provisions Concerning Distribution**

The Plan provides that payments and distributions to be made by the Debtor on the later of the Effective Date or 10 days after the Allowance Date of any specific Claim.

G.     **Summary Description Of the Plan Concerning Discharge and Injunctions**

The Plan provides specific provisions regarding the discharge of Claims, releases and injunctions. All Creditors, Interest Holders and other parties in interest should refer specifically to the Plan with regard to these provisions. Nothing contained herein or in the Plan is nor shall such be deemed an admission of any fact by the Debtor. Only the Plan, when confirmed, will govern the rights and liabilities as between and among the Debtor, and any Creditor, Interest Holder or party-in-interest or such other Person whose rights are affected by the Plan.

H.     **Summary Description Of Provisions Regarding Procedures For Resolving Disputed Claim Objections**

The Plan grants the Debtor the right to serve and file objections to the allowance, amount or classification of any Claim as late as 45 days after the Effective Date.

**Claim Reserve:** Where there is an unresolved objection to a Claim rendering it a Disputed Claim, the Debtor shall reserve a sum not less than the amount required to pay the Disputed Claim if it were Allowed, in full. Disputed Claims that are resolved shall be satisfied from the reserve. If the reserve exceeds the full amount of a Disputed Claim or Claims, any excess will be returned to the Debtor.

**Payment of Disputed Claims.** In the event that any payment or distribution must be made to a holder of a Disputed Claim which becomes an Allowed Claim, the treatment or distribution shall be made in accordance with the provisions of the Plan with respect to the Class of Creditors to which the respective holder of such Claim belongs.

I.     **Summary Description Of the Plan Provisions Regarding Retention of Jurisdiction**

The Plan provides that the Court shall retain jurisdiction of the Bankruptcy Case following Confirmation of the Plan for a wide range of matters and issues and for various purposes, including interpretation of the Plan, resolution of disputes concerning orders of the

Court, pending litigation, professional Persons compensation issues, determination of disputes and issues regarding property and rights of the Debtor. All Claimants, Interest Holders and parties-in-interest should refer specifically to the Plan for a full and complete statement of the various matters in which the Bankruptcy Court shall, under the terms of the Plan, retain jurisdiction.

**J.** **Summary Description Of the Plan Provisions Regarding Retention Of Assets And Title To Property**

Upon Confirmation, title to the Property and other Assets of the Estate shall remain in the Debtor.  Upon the Effective Date, title to the Assets of the Estate shall be vested in the Reorganized Debtor.

**K.** **Disbursing Agent**

All distributions pursuant to the Plan will be made when due, in accordance with the Plan. The Debtor shall be the disbursing agent and shall be responsible for making the distributions. The Debtor may establish accounts or funds which will be held for the Creditors entitled to distribution.

**L.** **Summary Description Of General Provisions Of the Plan**

The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan. The Plan also prescribes certain rules pertaining to notice to the Debtor. The Plan shall, except to the extent governed by the Bankruptcy Code or applicable federal law, be governed, construed and enforced in accordance with the laws of the State of New York.

**XVII.  PLAN FUNDING AND MEANS FOR EXECUTION OF THE PLAN**

The Plan is to be implemented in a manner consistent with § 1123 of the Bankruptcy Code, which essentially sets forth the minimum requirements and elements that a plan must contain in order to meet the standards for Confirmation.

A.     <u>**Funding**</u>

The Plan will be funded predominantly from the proceeds of the sale of the Property.

B.     <u>**Summary of Vesting Of Interests And Title**</u>

As of the Effective Date, the Debtor shall retain all legal title to its Assets. All Assets then possessed by or titled to the Debtor or the Estate will vest in the Debtor free and clear of all Liens, Claims and interests, provided that the Interest Holders shall retain their Interests in the Reorganized Debtor.

C.     <u>**INJUNCTIVE PROVISIONS IN THE PLAN**</u>

**The Plan includes the following terms which include an injunction: "The Confirmation shall constitute an injunction of the Court against the commencement or continuation of any Action, the employment of process, or any act, to collect from, or recover or offset against, the Debtor, its Assets, the Managing Member or the Responsible Officer, or their Assets, or any of the other officers, owners, managers, members, attorneys, accountants and agents of the Debtor, or any of their Assets, any obligation or debt, except pursuant to the other terms of this Plan. The Confirmation shall further constitute an injunction of the Court against any Person bringing any Action in violation of any waiver or release set forth in, or any other term of, this Plan or the Confirmation Order."**

D.     <u>**Summary of Transfer Charges Treatment**</u>

Pursuant to Bankruptcy Code § 1146, all transfers of any interest which are made pursuant to or contemplate by the Plan shall be exempt from all otherwise applicable transfer taxes, stamp taxes, recording fees and other such charges assessed by the New York State and New York City taxing authorities ("Exempt Taxes") for the recording and filing of any instruments of transfer and such Exempt Taxes shall not be paid, for the transactions

contemplated in the Plan, and shall accrue to the benefit of the Debtor and the Estate. The Plan also provides that any mortgage recording taxes which might otherwise be payable by a mortgagee of the Purchaser in relation to the acquisition of the Property shall be an "Exempt Tax" and enjoy the exemption under § 1146 of the Bankruptcy Code.

## XVIII. ALTERNATIVES TO THE PLAN

A potential alternative to the Plan would be converting this Bankruptcy Case to Chapter 7 liquidation or liquidation within Chapter 11 through a liquidating trustee. It is unlikely that there would be no distribution to Unsecured Creditors in a Chapter 7 case. However, distributions would likely be substantially reduced and significantly delayed. Dismissing the Case is another alternative to the Plan. Dismissal, however, would make distribution to Creditors more complex and would also be likely to cause delay and reduce recovery, at least to Unsecured Creditors.

**Essentially, the Debtor believes that there is no viable better alternative to the Plan. Any alternative would be significantly prejudicial to Creditors in general and other parties-in-interest. Instead, the Plan provides for a payment of the full Allowed Amount of all Creditor Claims, except for the Unsecured Claim of the Managing Member.**

For all the above reasons, the Debtor believes that the Plan meets the best interest of creditors test. The Debtor encourages the Creditors to support the Plan.

Dated: New York, New York
     May 27, 2020

1934 BEDFORD LLC


By: s/ Nikol Von Lavrinoff
    Nikol Von Lavrinoff
    Managing Member

*Debtor and Debtor-in-Possession*
*and Plan Proponent*

LOEB & LOEB LLP

By_s/ William M. Hawkins
    Schuyler G. Carroll, Esq.
    William M. Hawkins, Esq.
345 Park Avenue
New York, New York 10154
Tel.: 212-407-4126
Email: whawkins@loeb.com

*Proposed Attorneys for the Debtor and*
*Debtor-in-Possession*

EXHIBIT A

[The Plan is not included but has been separately Filed on the date hereof.]