LOEB & LOEB LLP
Schuyler G. Carroll, Esq.
William M. Hawkins, Esq.
345 Park Avenue
New York, New York 10154
Tel.: 212-407-4000
Fax: 212-937-3326
Email: scarroll@loeb.com
whawkins@loeb.com

*Proposed Attorneys for the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------X
In re:                                    :
                                          :
1934 Bedford LLC,                         :   Chapter 11
                                          :   Case No. 19-44751
                Debtor and Debtor in Possession   :
                                          :
                                          :
                                          :
--------------------------------------------------------X
```

## THIRD AMENDED CHAPTER 11 PLAN OF THE DEBTOR

### Article 1

### INTRODUCTION

1934 Bedford LLC  ("Debtor"), debtor and debtor-in-possession proposes this third

amended plan dated May 27, 2020, for confirmation pursuant to § 1129 of the Bankruptcy Code

(as may be amended or modified from time to time by the Debtor, the "Plan").  This Plan amends

and restates in their entirety the Chapter 11 plans previously Filed in this Bankruptcy Case by the

Debtor on February 18, 2020 [Dkt. No. 109], February 28, 2020 [Dt. No. 115] and April 21,

2020 [Dkt. No. 141].  UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING

OBLIGATION BETWEEN AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS.

## Article 2

## DEFINITIONS

2.1    "Action" shall mean any action, claim, Lien, cause of action, allegation, assertion, accusation, damage, complaint, set-off, recoupment, right or any other basis for compensation, payment, cure or other remedy or enforcement (including specific performance), whether based in law or in equity, and whether arising pursuant to any agreement, contract, promise or other commitment or under Law.

2.2    "Administrative Expense" shall mean any cost or expense of administration of the Bankruptcy Case entitled to priority under § 507(a)(2) and allowed under § 503(b) of the Bankruptcy Code.

2.3    "Administrative Expense Claim" shall mean claim for payment of an Administrative Expense.

2.4    "Allowance Date" shall mean the date on which a Disputed Claim becomes an Allowed Claim or a Disputed Administrative Expense Claim becomes and Allowed Administrative Expense Claim.  Such Allowance Date may apply to only a portion of a Claim or Administrative Expense Claim, as applicable, based on the manner in which and the extent to which such Claim or Administrative Expense Claim becomes Allowed and the Allowed Amount thereof.

2.5    "Allowed Administrative Expense Claim" shall mean a claim for an Administrative Expense which is Filed on or before the Bar Date and (a) as to which the Debtor does not File an objection by the Claim Objection Deadline, or (b) if the Debtor does so File

such objection, then as to which a Final Order determines the Allowed Amount of such

Administrative Expense Claim, to the extent thereof (and the amount which is not determined as

being Allowed shall be a Disallowed Administrative Expense Claim); provided, however, that,

notwithstanding the foregoing, an Administrative Expense Claim as described in § 9.2 of this

Plan shall not be required to be Filed by the Bar Date, nor shall an objection thereto by the

Debtor be required to be Filed by the Claim Objection Deadline in order to be considered, and no

such Administrative Expense Claim or any portion thereof shall become an Allowed

Administrative Expense Claim or a Disallowed Administrative Expense Claim except by, and to

the extent of, a Final Order.  Notwithstanding anything to the contrary above, the Debtor may, at

any time and in its sole discretion, declare any Disputed Administrative Expense Claim (or any

portion of such Disputed Administrative Expense Claim) to be an Allowed Administrative

Expense Claim in the amount as it shall so determine by Filing a notice thereof and upon such

Filing, such Disputed Administrative Expense Claim shall be an Allowed Administrative

Expense Claim to the extent set forth in such notice and remain a Disputed Administrative

Expense Claim to the extent of any remaining asserted amount thereof, as the case may be.

     2.6     "Allowed Amount" shall mean the amount of an Allowed Claim or an Allowed

Administrative Expense Claim.

     2.7     "Allowed Claim" shall mean a Claim (a) to the extent that a Proof of Claim is

Filed, only if Filed on or before the Bar Date, as to which (i) no party in interest Files an

objection by the Claim Objection Deadline, or (ii) which is "allowed" by a Final Order; or (b)

which is listed on the Debtor's schedules or any amendments thereto, but which is not listed

therein as disputed, unliquidated or contingent, as such Claim is described on such schedules or

amendments thereto.  For avoidance of doubt, (y) any Claim which is described on the Debtor's

schedules or any amendments thereto and as to which a Proof of Claim was also Filed shall not be an Allowed Claim pursuant to clause "b" above, but, if at all, may be an Allowed Claim only pursuant to clause "a" above, and (z) no Claim shall become an Allowed Claim pursuant to clause "a" above if a Proof of Claim with regard thereto was filed after the Bar Date. Notwithstanding anything to the contrary above, the Debtor may, at any time and in its sole discretion, declare any Disputed Claim (or any portion of such Disputed Claim) to be an Allowed Claim in the amount as it shall so determine by Filing a notice thereof and upon such Filing, such Disputed Claim shall be an Allowed Claim to the extent set forth in such notice and remain a Disputed Claim to the extent of any remaining asserted or scheduled amount thereof, as the case may be.

2.8    "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an Allowed Claim.

2.9    "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent it is an Allowed Claim.

2.10    "Asset" shall mean any asset or property, real or personal, tangible or intangible, including Cash, and all title and other ownership interests therein and rights thereto.  The Property and every Action of the Debtor are "Assets".

2.11    "Back-up Purchaser" shall mean the Person who is the purchaser of the Property pursuant to the Marketing, if conducted, pursuant to a Back-up Sale Agreement.

2.12    "Back-up Sale Agreement" shall mean the contract of sale that replaces the Sales Contract.

2.13    "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

2.14    "Bankruptcy Code" shall mean title 11 of the United States Code (11. U.S.C.

§ 101 *et seq*.).

2.15    "Bar Date" with reference to a Claim which is not on account of the rejection of

an Executory Contract, shall mean January 21, 2020; with reference to a Claim which is on

account of the rejection of an Executory Contract, a date which occurs 30 days after the Effective

Date; and with reference to an Administrative Expense Claim shall mean a date which occurs 20

days after the Effective Date; provided, however, that, notwithstanding the foregoing, an

Administrative Expense Claim as described in § 9.2 of this Plan shall not be required to be Filed

by the Bar Date, nor shall an objection thereto by the Debtor be required to be Filed by the Claim

Objection Deadline in order to be considered, and Allowed or Disallowed, by the Court.

2.16    "Broker" shall mean a real estate broker duly licensed in New York State engaged

by the Debtor under the authority of the Responsible Officer to market the Property for sale.

2.17    "Brokerage Agreement" shall mean an agreement entered into by the Broker and

the Responsible Officer, on behalf of the Debtor, for the Marketing of the Property for sale.

2.18    "Cash" shall mean all cash and cash equivalents which evidence immediately

available funds in United States dollars.

2.19    "Claim" shall have the meaning of "claim" under § 101(5) of the Bankruptcy

Code.

2.20    "Claim Objection Deadline" shall mean a date which occurs 45 days after the

Effective Date.

2.21    "Claimant" shall mean the holder of a Claim.

2.22    "Confirmation, "Confirms" or the like shall be or refer to the confirmation by the

Court of this Plan pursuant to §§ 1128 and 1129 of the Bankruptcy Code.

2.23    "Confirmation Date" shall mean the date of the Entry of the Confirmation Order.

2.24    "Confirmation Hearing" shall mean the hearing at which the Court Confirms the Plan.

2.25    "Confirmation Order" shall mean the order effecting the Confirmation.

2.26    "Contract Purchaser" shall mean the "Purchaser" identified in the Sale Agreement.

2.27    "Court" shall mean the United States Bankruptcy Court for the Eastern District of New York.

2.28    "Creditor" shall mean Claimant.

2.29    "Debtor" shall mean 1934 Bedford LLC, as debtor and debtor-in-possession; provided, however, that references to the "Debtor" upon and after the Effective Date shall refer to the Reorganized Debtor.

2.30    "Deficiency Claim" shall mean the portion of an otherwise Secured Claim which exceeds the value of the underlying Estate Property on which the Lien of such Secured Claim applies; provided, however, that there shall be no Deficiency Claim for any amount of an otherwise Secured Claim which corresponds to post-petition interest, fees, costs or assessments, or any other amount accruing after the Petition Date.

2.31    "Disallowed Administrative Expense Claim" shall mean the whole or any portion of any Administrative Expense Claim that has been determined by a Final Order as not being an Allowed Administrative Expense Claim or was not Filed on or before the Bar Date (other than Administrative Expense Claims described in § 9.2 of this Plan).

2.32    "Disallowed Claim" shall mean (a) the whole or any portion of any Claim that has been determined by Final Order as not being an Allowed Claim or that has been determined by

Final Order as being Disallowed or expunged, and (b) the whole of any Claim that, on the Debtor's schedules or any amendments thereof, was listed as disputed, unliquidated or contingent and as to which no Proof of Claim was timely Filed (and, in the case of a timely Filed Proof of Claim, such Claim shall not be Disallowed pursuant to this clause "b" only to the extent of the amount asserted in such Proof of Claim).

2.33    "Disputed Administrative Expense Claim" shall mean the whole or any portion of an Administrative Expense Claim (a) as to which the Debtor Files no objection or Files no timely objection (if the Claim Objection Deadline applies to such Administrative Expense Claim) or (b) as to which an objection is timely Filed by the Debtor (if the Claim Objection Deadline applies to such Administrative Expense Claim) and (c) as to which a Final Order has not Allowed or Disallowed such Administrative Expense Claim or any portion thereof; provided, however, that an Administrative Expense Claim shall not be Disputed, and shall be Allowed, to the extent provided by the other terms of this Plan.  An Administrative Expense Claim shall also be a Disputed Administrative Expense Claim if and to the extent it is included on the Schedule of Claims Subject to Objection.

2.34    "Disputed Claim" shall mean the whole or any portion of any Claim as to which an objection is timely Filed and as to which a Final Order has not been entered Allowing or Disallowing such Claim or any portion thereof or which is not provided to be an Allowed Claim or a Disallowed Claim by the other terms of this Plan.  A Claim shall also be a Disputed Claim if and to the extent it is included on the Schedule of Claims Subject to Objection.

2.35    "Effective Date" shall mean a date which is 30 days after the Confirmation Date, if the Property is sold on or before a date which is 15 days after the Confirmation Date, or a date which is 15 days after the consummation of the sale of the Property, if the sale occurs after the

date described above in this § 2.35 of this Plan.  Notwithstanding the foregoing, the Debtor may, at its sole discretion, by Filing a notice thereof, change the Effective Date to a date which is earlier than the date on which the Effective Date would otherwise occur pursuant to the foregoing, but subject to the requirements of Article 10 of this Plan.

2.36     "Entry," "Entered" or the like shall mean the entry by the Court of an order on the official Court docket of the Bankruptcy Case, or an order which has been so entered.

2.37     "Estate" shall mean the estate of the Debtor created upon the commencement of the Bankruptcy Case pursuant to § 541 of the Bankruptcy Code.

2.38     "Estate Property" shall mean all Assets of the Estate.

2.39     "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used in § 365 of the Bankruptcy Code.

2.40     "Filing," "Filed" or the like shall mean the filing of any order, notice or other pleading on the official Court docket of the Bankruptcy Case, or an order, notice or other pleading which has been so filed.

2.41     "Federal Judgment Rate" shall mean interest calculated pursuant to 28 U.S.C. § 1961.

2.42     "Final Order" shall mean an order which has been Entered that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review, stay or certiorari thereof has expired and as to which no appeal or other review is pending.

2.43     "Governmental Unit" shall have the meaning set forth in § 101(27) of the Bankruptcy Code.

2.44     "Interest" shall mean an existing ownership or equity interest in the Debtor.

2.45     "Interest Holder" shall mean a holder and owner of an existing Interest.

2.46    "Law" shall mean any enforceable law, regulation, ruling, rule, decision or order of any Governmental Unit or any part thereof, including of any tribunal, court or arbitration panel with jurisdiction.

2.47    "Lien" shall have the meaning set forth in § 101(37) of the Bankruptcy Code. Without limiting the foregoing, "Lien" shall mean any security interest, encumbrance, pledge, mortgage, hypothecation, deed of trust, charge, right of first refusal, option, set-off, recoupment or other right against or affecting any Asset.

2.48    "Managing Member" shall mean the managing member of the Debtor, who has been and is Nikol Von Lavrinoff.

2.49    "Marketing" shall mean the process of marketing for sale the Property by a Broker or other agent which the Responsible Officer shall designate.  Such Marketing shall be conducted at the direction and discretion of the Responsible Officer (but subject to the other terms of this Plan).

2.50    "Mortgagee" shall mean 1930 Bedford Avenue LLC.

2.51    "Person" shall have the meaning set forth in § 101(41) of the Bankruptcy Code and in addition shall mean any Governmental Unit or other business or commercial association or entity not set forth in § 101(41) of the Bankruptcy Code.

2.52    "Petition Date" shall mean October 1, 2019.

2.53    "Plan" shall have the meaning set forth in the "Introduction" hereof, and shall include any and all modifications and/or amendments hereto by the Debtor.

2.54    "Property" shall mean collectively the "Premises" and the "Personal Property" to be sold pursuant to the Sale Agreement (subject to the limitations set forth in such Sale

Agreement), including certain condominium units owned by the Debtor at 1930-1934 Bedford Avenue, Brooklyn, New York.

2.55    [Intentionally reserved.]

2.56    "Purchaser" shall mean the purchaser of the Property pursuant to the Plan, which shall either be the Contract Purchaser or the Back-up Purchaser.

2.57    "Purchaser Cause of Action" shall mean all Actions of the Debtor (a) against any Purchaser or any other Person or Asset pursuant to the Sale Agreement or the Back-up Sale Agreement, (b) against the Broker or any other Person or Asset pursuant to the Brokerage Agreement, or (c) under any Law, which arises in relation to the Sale Agreement, the Back-up Sale Agreement or the Brokerage Agreement.

2.58    "Reorganized Debtor" shall mean 1934 Bedford LLC, upon and after the Effective Date.

2.59    "Responsible Officer Application" shall mean the Debtor's Application for Entry of an Order Authorizing Employment and Retention of a Responsible Officer of the Debtor as Chief Liquidation Officer for the Debtor, to be Filed and prosecuted by the Debtor as promptly as reasonably possible for Entry of an order approving such Responsible Officer's engagement and retention by the Debtor.

2.60    "Responsible Officer" shall mean a Person as the Debtor shall designate prior to the Confirmation Hearing who shall have the discretion and authority to act on behalf of the Debtor with regard to the Property disposition, the assumption and assignment, or rejection, of Executory Contracts, and the commencement, prosecution, enforcement and any settlement of the Purchaser Cause of Action, as further provided in Article 5 of this Plan.  The Responsible Officer shall be the same Person identified pursuant to the Responsible Officer Application.

2.61    [Intentionally reserved.]

2.62    "Sale Agreement" shall mean the Contract of Sale dated February 14, 2020, between the Debtor and the Contract Purchaser for the sale of the Property, as approved by the Sale Approval Order.

2.63    "Sale Approval Order" shall mean the Order (I) Authorizing the Sale of Property Free and Clear of All Liens, Claims and Encumbrances pursuant to 11 U.S.C. §363; (II) Authorizing the Assumption and Assignment of Residential Leases; (III) Finding Purchaser is a Good Faith Purchaser; (IV) Waiving the Stay of Sale Order Pursuant to Federal Rule of Bankruptcy Procedure 6004(h); and (V) Granting Related Relief dated April 13, 2020 [Dkt. No. 137], as Entered.

2.64    "Schedule of Claims Subject to Objection" shall mean a list of Claims and Administrative Expense Claims to be Filed by the Debtor on or before the Effective Date, indicating which Claims and Administrative Expense Claims (or portions thereof), then asserted, are subject to subsequent objection by the Debtor at a later time, on or before the Claim Objection Deadline, if applicable.

2.65    "Secured Claim" shall mean a Claim secured by a Lien on Estate Property to the extent of the value of the Estate Property which is subject to such Lien.

2.66    "Secured Creditor" shall mean the owner or holder of a Secured Claim.

2.67    "Unsecured Claim" shall mean a Claim, or any part thereof, which does not constitute a Secured Claim or an Administrative Expense Claim.  A Deficiency Claim shall be considered an Unsecured Claim.

2.68    "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

**Article 3**

**CLAIMS CLASSIFICATION AND TREATMENT**

**No Right to Vote; Claims and Classes All Unimpaired** -- No Claim or class of Claims has a right to vote; all Claims are unimpaired and deemed to have accepted the Plan.  The Interest Holders are unimpaired and are deemed to have accepted the Plan.  The classification, amounts and other information set forth below about the Claims are for description purposes only and shall not prejudice any objection of the Debtor to the amount, classification or Allowance of such Claims, nor qualify or establish any entitlement of a Claimant to an Allowed or Disputed Claim status in any amount or priority.

3.1      **Class 1**

3.1.1    **Classification** – New York City real estate tax, water, sewer and other liens.  Claims total approximately $0.00.  Secured Claim.

3.1.2    **Treatment** – Payment in full in Cash of (a) the portion of the Allowed Amount of the Secured Claim constituting the outstanding original principal amount thereof on the later of the Effective Date or a date which is 10 days following the Allowance Date of the Secured Claim, and (b), on the same date, payment in full in Cash of interest accrued through such date at the interest rate specified by applicable non-bankruptcy Law giving rise to the non-consensual Lien of such Secured Claim, at the rate provided in such non-bankruptcy Law on the principal Allowed Amount of such Secured Claim; provided, however, that, notwithstanding anything set forth above which may appear to the contrary, a distribution may only be made on account of such Allowed Claim to the extent required to render such Allowed Claim unimpaired pursuant to the Bankruptcy Code.

3.2      **Class 2**

3.2.1 **Classification** – Mortgagee Claim totals approximately $18,809,274 as of the filing date, not including late charges.  Secured Claim.

3.2.2 **Treatment** – Payment in full in Cash of the portion of the Allowed Amount of the Secured Claim constituting the outstanding original principal amount thereof and the asserted interest accrued thereon on the later of the Effective Date or a date which is 10 days following the Allowance Date of the Secured Claim; provided, however, that, notwithstanding anything set forth above which may appear to the contrary, a distribution may only be made on account of such Allowed Claim to the extent required to render such Allowed Claim unimpaired pursuant to the Bankruptcy Code.

3.3 **Class 3**

3.3.1 **Classification** – Bright Light Corp. Secured Claim arising from May 31, 2018 mechanics lien for $84,482.

3.3.2 **Treatment** – Payment in full in Cash of the portion of the Allowed Amount of the Secured Claim constituting the outstanding original principal amount thereof and the asserted interest accrued thereon on the later of the Effective Date or a date which is 10 days following the Allowance Date of the Secured Claim; provided, however, that, notwithstanding anything set forth above which may appear to the contrary, a distribution may only be made on account of such Allowed Claim to the extent required to render such Allowed Claim unimpaired pursuant to the Bankruptcy Code.

3.4 **Class 4**

3.4.1 **Classification** – B&H Contracting Corp. Secured Claim arising from June 4, 2018 mechanics lien for $40,000.

3.4.2    **Treatment** – Payment in full in Cash of the portion of the Allowed Amount of the Secured Claim constituting the outstanding original principal amount thereof and the asserted interest accrued thereon on the later of the Effective Date or a date which is 10 days following the Allowance Date of the Secured Claim; provided, however, that, notwithstanding anything set forth above which may appear to the contrary, a distribution may only be made on account of such Allowed Claim to the extent required to render such Allowed Claim unimpaired pursuant to the Bankruptcy Code.

3.5    **Class 5**

3.5.1    **Classification** – Gypsum New York Sales Corp. Secured Claim arising from June 22, 2018 mechanics lien for $1,200.

3.5.2    **Treatment** – Payment in full in Cash of the portion of the Allowed Amount of the Secured Claim constituting the outstanding original principal amount thereof and the asserted interest accrued thereon on the later of the Effective Date or a date which is 10 days following the Allowance Date of the Secured Claim; provided, however, that, notwithstanding anything set forth above which may appear to the contrary, a distribution may only be made on account of such Allowed Claim to the extent required to render such Allowed Claim unimpaired pursuant to the Bankruptcy Code.

3.6    **Class 6**

3.6.1    **Classification** – Congregation Bnai Jacob. Second mortgage scheduled for $1,500,000 recorded on August 29, 2018.

3.6.2    **Treatment** – Payment in full in Cash of the portion of the Allowed Amount of the Secured Claim constituting the outstanding original principal amount thereof and the asserted interest accrued thereon on the later of the Effective Date or a date which is 10 days

following the Allowance Date of the Secured Claim; provided, however, that, notwithstanding anything set forth above which may appear to the contrary, a distribution may only be made on account of such Allowed Claim to the extent required to render such Allowed Claim unimpaired pursuant to the Bankruptcy Code.

    3.7    **<u>Class 7</u>**

    3.7.1   **Classification** – Rent a Unit. Secured Claim arising from November 28, 2018 mechanics lien for $2,449.

    3.7.2   **Treatment** – Payment in full in Cash of the portion of the Allowed Amount of the Secured Claim constituting the outstanding original principal amount thereof and the asserted interest accrued thereon on the later of the Effective Date or a date which is 10 days following the Allowance Date of the Secured Claim; provided, however, that, notwithstanding anything set forth above which may appear to the contrary, a distribution may only be made on account of such Allowed Claim to the extent required to render such Allowed Claim unimpaired pursuant to the Bankruptcy Code.

    3.8    **<u>Class 8</u>**

    3.8.1   **Classification** – E&W Wholesale Electrical Inc. Secured Claim arising from January 16, 2019 mechanics lien for $35,000.

    3.8.2   **Treatment** – Payment in full in Cash of the portion of the Allowed Amount of the Secured Claim constituting the outstanding original principal amount thereof and the asserted interest accrued thereon on the later of the Effective Date or a date which is 10 days following the Allowance Date of the Secured Claim; provided, however, that, notwithstanding anything set forth above which may appear to the contrary, a distribution may only be made on

account of such Allowed Claim to the extent required to render such Allowed Claim unimpaired pursuant to the Bankruptcy Code.

      3.9    **Class 9**

      3.9.1  **Classification** – Certified Lumber Corp. Secured Claim arising from January 22, 2019 mechanics lien for $23,681.

      3.9.2  **Treatment** – Payment in full in Cash of the portion of the Allowed Amount of the Secured Claim constituting the outstanding original principal amount thereof and the asserted interest accrued thereon on the later of the Effective Date or a date which is 10 days following the Allowance Date of the Secured Claim; provided, however, that, notwithstanding anything set forth above which may appear to the contrary, a distribution may only be made on account of such Allowed Claim to the extent required to render such Allowed Claim unimpaired pursuant to the Bankruptcy Code.

      3.10   **Class 10**

      3.10.1  **Classification** – Eastern Funding LLC. Secured Claim scheduled for $50,909 arising from September 17, 2018 UCC security interest in gym equipment with a scheduled value of $40,000.

      3.10.2  **Treatment** – Payment in full in Cash of the portion of the Allowed Amount of the Secured Claim constituting the outstanding original principal amount thereof and the asserted interest accrued thereon on the later of the Effective Date or a date which is 10 days following the Allowance Date of the Secured Claim; provided, however, that, notwithstanding anything set forth above which may appear to the contrary, a distribution may only be made on account of such Allowed Claim to the extent required to render such Allowed Claim unimpaired pursuant to the Bankruptcy Code.

3.11    **Class 11**

3.11.1  **Classification** – Eastern Funding LLC. Secured Claim scheduled in the amount of $33,708 arising from UCC security interest in laundry equipment with a scheduled value of $25,000.

3.11.2  **Treatment** – Payment in full in Cash of the portion of the Allowed Amount of the Secured Claim constituting the outstanding original principal amount thereof and the asserted interest accrued thereon on the later of the Effective Date or a date which is 10 days following the Allowance Date of the Secured Claim; provided, however, that, notwithstanding anything set forth above which may appear to the contrary, a distribution may only be made on account of such Allowed Claim to the extent required to render such Allowed Claim unimpaired pursuant to the Bankruptcy Code.

3.12    **Class 12**

3.12.1  **Classification** – Priority Claims under Sections 507(a)(3), (4), (5), (6), (7) and (8) of the Bankruptcy Code. Claims total approximately $0.

3.12.2  **Treatment** – Payment in full in Cash of (a) the Allowed Amount of the Claim on the later of the Effective Date or a date which is 10 days following the Allowance Date of the Claim, and (b), on the same date, interest on the principal Allowed Amount of such Claim at the Federal Judgment Rate accruing from the Petition Date through the Effective Date.

3.13    **Class 13**

3.13.1  **Classification** – General Unsecured Claims.  Claims total approximately $ 141,000.

3.13.2  **Treatment** – Payment in full in Cash of (a) the Allowed Amount of the Claim on the later of the Effective Date or a date which is 10 days following the Allowance Date

of the Claim, and (b), on the same date, interest on the principal Allowed Amount of such Claim

at the Federal Judgment Rate accruing from the Petition Date through the Effective Date.

    3.14   **Class 14**

       3.14.1  **Classification** – Unsecured Claim of Managing Member.  Claim is an

Unsecured Claim for $8,500,000.  This Claim is deemed an Allowed Claim.

       3.14.2  **Treatment** – The holder of this Claim shall receive Cash, to the extent

available, on the later of the Effective Date or the first date after all other Allowed Claims and

Allowed Administrative Expense Claims are paid in full in Cash under this Plan and reserve(s)

as contemplated by the other terms of this Plan has / have been established on account of all

Disputed Claims and Disputed Administrative Expense Claims.  The Cash received by the holder

of this Claim on account thereof shall not exceed the outstanding original principal amount of

such Claim together with the interest accrued on such amount through the date of payment of the

outstanding original principal amount.

    3.15   **Class 15**

       3.15.1  **Classification** – Equity Interests.

       3.15.2  **Treatment** – Interest Holder(s) shall retain its / their Interest(s).

**Article 4**

**ADMINISTRATIVE EXPENSE CLAIMS**

    4.1   Allowed Administrative Expense Claims shall be paid in full in Cash on the

Effective Date, or the date which is 10 days after such Administrative Expense Claim becomes

Allowed, whichever occurs later, except to the extent that the holder of an Allowed

Administrative Expense Claim agrees to a different treatment; provided however, that Allowed

Administrative Expense Claims representing obligations incurred in the ordinary course of

business or expressly assumed by the Debtor in writing on or after the Confirmation Date and on or before the Effective Date shall be paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  Any outstanding U.S. Trustee fees shall be paid in full in Cash on the Effective Date.  U. S. Trustee fees will be paid, and operating reports will be filed, as they come due by the Debtor through and including the Confirmation Date.  The Debtor shall file post-confirmation quarterly status and disbursement reports (which are to be filed by the 20th day after the conclusion of the relevant reporting quarter) until the Bankruptcy Case is dismissed, converted, or closed by means of a final decree (whichever happens earliest).  The Debtor shall pay U.S. Trustee quarterly fees and any applicable interest thereon until the Bankruptcy Case is dismissed, converted, or closed by means of a final decree (whichever happens earliest).

## Article 5

## MEANS FOR PLAN IMPLEMENTATION

5.1    **Responsible Officer** – The Responsible Officer shall have the exclusive authority to cause the Debtor to act, or to refrain from acting, with regard to the Marketing and sale of the Property, including with regard to the Sale Agreement, the Brokerage Agreement and the Back-up Sale Agreement and against the Contract Purchaser, the Broker and the Back-up Purchaser, for the purpose of selling the Property for the maximum amount of net Cash.

5.2    **Source of Funds and Responsibilities of the Responsible Officer** -- As soon as reasonably possible after Confirmation, the Responsible Officer, on behalf of the Debtor, shall sell the Property in accordance with the Sale Agreement to the Contract Purchaser or otherwise enforce the Purchaser Cause of Action against the Contract Purchaser.  The sale of the Property pursuant to the Sale Agreement has been, and shall be deemed to have been, conducted pursuant

to the Sale Approval Order.  Such sale and the reserving and distribution of net proceeds thereof shall enjoy all the benefits and protections set forth in the Sale Approval Order including that all distributions and reserving of such proceeds shall be protected by § 363(m) and, once effected by the Debtor, such sale, distribution and reserving shall not be subject to any appeal, rehearing or reconsideration of any type (provided, however, that the distribution and reserving of such proceeds shall occur in accordance with the other terms of this Plan).  Should the sale of the Property pursuant to the Sale Agreement not be consummated due to a termination of the Sale Agreement, the Responsible Officer shall identify a Back-up Purchaser via the Marketing, negotiate and execute a Back-up Sale Agreement with a Back-up Purchaser, and thereafter sell the Property pursuant to such Back-up Sale Agreement or otherwise enforce the Purchaser Cause of Action against such Back-up Purchaser.  The net Cash proceeds of the sale of the Property and the Purchaser Cause of Action shall provide the major source of Cash for the distributions on Allowed Claims and Allowed Administrative Expense Claims and all reserves for Disputed Claims and Disputed Administrative Expense Claims.  Any sale of the Property pursuant to a Back-up Sale Agreement shall be free and clear of all Liens, Claims and interests, which Liens, Claims and interests shall attach to the net proceeds thereof, subject to the other terms of this Plan.

     5.3    **Brokerage Agreement for Marketing; Auction; Sale --**

    5.3.1    Should the sale of the Property pursuant to the Sale Agreement not be consummated due to a termination of the Sale Agreement, the Responsible Officer shall, on behalf of the Debtor, negotiate with and engage a Broker pursuant to a Brokerage Agreement.

    5.3.2    In an initial Marketing period, the time for which shall be determined by the Responsible Officer after consultation with the Broker, the Broker shall Market the Property

for sale, seeking to identify a Back-up Purchaser to execute a Back-up Sale Agreement,
acceptable to the Responsible Officer.  A Back-up Sale Agreement shall only be acceptable for
the purposes of this subsection 5.3.2 of this Plan if the Responsible Officer believes that it will
yield sufficient net Cash proceeds to pay all Allowed Claims and Allowed Administrative
Expense Claims as contemplated by the other terms of this Plan.  Should such an acceptable
Back-up Sale Agreement be executed and delivered, the Responsible Officer shall enforce the
Back-up Sale Agreement on behalf of the Debtor and prosecute the rights of the Debtor pursuant
to this Back-up Sale Agreement through closing.  In this Marketing period, the Broker will,
among other things, (a) develop and implement an appropriate Marketing plan, (b) vet any
potential buyers, (c) conduct all Property tours, and (d) assist the Responsible Officer in any
negotiations.  For the sake of clarity, the Broker shall not receive any commission or other
compensation for the Sale Agreement or the sale of the Property to the Contract Purchaser.

   5.3.3 Should the Marketing described in subsection 5.3.2 of this Plan not yield
an acceptable Back-up Sale Agreement, or should such a Back-up Sale Agreement be terminated
without a closing, the Responsible Officer shall direct the Broker, or such other agent as the
Responsible Officer shall deem capable and qualified, to organize and schedule an auction of the
property for sale of the Property and to conduct appropriate Marketing for the auction.  It is
contemplated that the highest and best offer at such an auction would yield a Back-up Sale
Agreement.  The Responsible Officer would enforce the Debtor's rights under such Back-up Sale
Agreement to consummate the sale of the Property.

   5.4 **Responsible Officer Moves the Court** – Upon the Responsible Officer engaging
a Broker pursuant to the Brokerage Agreement, the Responsible Officer shall have the authority
to move the Court for the approval the Brokerage Agreement and the Debtor's engagement of

the Broker.  The Responsible Officer shall also move the Court on a timely basis for approval of

the agreements and Marketing and selling procedures set forth in subparagraphs 5.3.2 and 5.3.3

of this Plan, including obtaining the Court's authorization to enter into the Back-up Sale

Agreement(s) pursuant to § 363 of the Bankruptcy Code, such that all Liens, Claims and interests

which may affect the Property shall attach only to the net Cash proceeds thereof, permitting the

sale to the Back-up Purchaser to occur free and clear of all such Liens, Claims and interests, and

protecting such sale and the subsequent distribution and reserving of proceeds thereof pursuant

to the other terms of this Plan as contemplated by § 363(m) of the Bankruptcy Code.

      5.5     **Release of Liens** – Upon the sale of the Property by the Debtor as contemplated

by the other terms of this Plan, all Liens and Claims affecting the Property shall automatically,

and without further action by the Debtor, be deemed permanently and irrevocably released

(attaching only to the net proceeds of such sale, subject to the other terms of this Plan).  Each

holder of a Secured Claim and any other Person (other than the Debtor), shall, upon the sale of

the Property by the Debtor as contemplated by the other terms of this Plan, turn over and release

to the Debtor any and all Assets that secure or purportedly secure such Claim (if such holder or

other Person has not previously done so) and (b) execute such documents and instruments as the

Debtor may request to evidence such Claim holder's release of all Assets and any Lien (any such

Lien, however, being preserved in the net proceeds of the sale of the Property, only for

distribution and reserving as provided in this Plan); provided, however, that nothing in this § 5.5

of this Plan shall limit the rights of the Debtor under §§ 541 or 542 of the Bankruptcy Code,

which are preserved.  Notwithstanding any term of this § 5.5 of this Plan set forth above to the

contrary, (a) upon the request of the Responsible Officer, the holder of any Secured Claim shall,

contemporaneously with the sale of the Property and at no cost to the Debtor, the Estate or the

Responsible Officer, execute and deliver such documents and instruments as the Responsible

Officer may request, to the recipient as the Responsible Officer may request, which such

documents and instruments shall effect the assignment of any mortgage or other Lien to any

assignee as the Responsible Officer may designate, and (b) the execution and delivery of the

documents and the instruments described in the preceding clause "(a)" shall not affect the rights

of the holder of the Secured Claim concerning any distributions and reserves on account of such

Secured Claim as set forth in the other terms of this Plan nor the Lien attributable to such

Secured Claim attaching to the proceeds of the sale of the Property as described in the first

sentence of this § 5.5 of this Plan.

      5.6    **Stamp Tax** -- Pursuant to § 1146(c) of the Bankruptcy Code, (a) the issuance,

transfer or exchange of any securities, instruments or documents, (b) the creation of any Lien, (c)

the making or assignment of any lease or sublease or the making or delivery of any deed or other

instrument of transfer under, pursuant to, in furtherance of, or in connection with, or as

contemplated by this Plan or the Confirmation Order, including any deeds, bills of sale,

assignments or mortgages executed, delivered or assigned in connection with the sale of the

Property to, and purchase of the Property by, the Purchaser and any other transaction

contemplated under the Plan or the re-vesting, transfer or sale of any Asset of the Debtor

pursuant to, in furtherance of, in connection with, or as contemplated in the Plan or the

Confirmation Order, and (d) the issuance, renewal, modification or securing of indebtedness by

such means, and the making, delivery or recording of any deed or other instrument of transfer

under, in furtherance of, or in connection with, the Plan or the Confirmation Order, shall not be

subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax,

mortgage tax, mortgage recording tax, real estate transfer tax, or other similar tax or assessment

by or on behalf of any Governmental Unit (even if assigned or acquired by any other Person) including New York City Real Property Transfer Tax, New York State Documentary Tax, and New York Mortgage Recording Tax for the benefit of the Debtor, the Estate, the Purchaser and any mortgagee of the Purchaser, as the case may be.  The intention of this § 5.6 of this Plan is to provide the maximum benefit of § 1146(c) of the Bankruptcy Code to the Debtor, the Estate, the Purchaser and any mortgagee of the Purchaser in relation to the sale of the Property or any other Asset of the Estate.

5.7    **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or interest not expressly preserved in the Plan and deliver such notices to any and all federal, state and local Governmental Units for filing and recordation.

5.8    **Recording Documents** -- Each and every federal, state and local Governmental Unit shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including any and all notices of satisfaction, release or discharge of any Lien, Claim or interest not expressly preserved by the Plan or the Confirmation Order.

5.9    **Re-vesting of Assets** – Upon the distribution in Cash of payment in full on Allowed Claims in Classes 1 -13, the distribution of Cash as may then be available on the Claim in Class 14, and the establishment of reserves as contemplated by the other terms of this Plan for Disputed Claims, all other Assets of the Estate shall re-vest in the Debtor as the Reorganized Debtor, free and clear of any Liens, Claims or Administrative Expense Claims.  On and after the Effective Date, the Debtor shall have the authority and discretion to retain, compensate and pay any attorneys, accountants, officers and other professionals as the Debtor may determine,

without any notice, motion or application to the Court being required, though the Debtor shall

have the right, at its discretion, to seek the Court's approval for such retention.  The costs and

expenses incurred by the Debtor for such professionals shall be subject to the approval of the

Court.

<strong>Article 6</strong>

<strong><u>PRESERVATION OF CLAIMS</u></strong>

6.1     All rights and Actions of the Debtor and its Estate pursuant to §§ 502, 542, 544,

545 and 546 of the Bankruptcy Code, all Actions pursuant to § 547 of the Bankruptcy Code, all

Actions pursuant to § 548 of the Bankruptcy Code, and all Actions relating to post-petition

transactions under § 549 of the Bankruptcy Code shall be preserved for the benefit of the Estate;

provided, however, that the Debtor shall have sole authority for prosecuting any such Actions;

provided further, however, that nothing in this § 6.1 of this Plan shall limit any rights or

discretion of the Responsible Officer as described in the other terms of this Plan.  Certain

preserved Actions are further detailed on <u>Schedule A</u> of this Plan.

<strong>Article 7</strong>

<strong><u>DISTRIBUTIONS TO CREDITORS</u></strong>

7.1     The Debtor shall be disbursing agent under the Plan without a bond.  The Debtor

shall have the right to file objections to Claims in the event grounds exist to object to any Claim

(or there is a good faith belief that such grounds exist), subject to the timing requirements for

such objections set forth in the other terms of this Plan.  The Debtor shall maintain a Disputed

Claims distribution reserve for the holders of Disputed Claims and Disputed Administrative

Expense Claims in a sum not less than the amount required to pay each such Disputed Claim and

Disputed Administrative Expense Claim if it were Allowed in full.  The reserve described in the

immediately preceding sentence shall not limit the Debtor from reserving any additional amount as the Debtor may determine in good faith to be appropriate.  To the extent that a Disputed Claim or Disputed Administrative Expense Claim becomes an Allowed Claim or an Allowed Administrative Expense Claim, the distributions reserved for such Allowed Claim or such Allowed Administrative Expense Claim shall be released from reserve and paid to the applicable Claimant or holder of Allowed Administrative Expense Claim.  After all the amounts of all Disputed Claims and Disputed Administrative Expense Claims have been fixed as either Allowed or Disallowed (and, in the case of "Allowed," paid in Cash), and the Debtor determines that no good-faith basis exists to continue the reserve for any other reason, the balance of the Cash in reserve shall thereafter be paid first to the Claimant of the Class 14 Claim until paid in full and, thereafter, to the Interest Holders, *pro rata*.  Payments and distributions to each holder of a Disputed Claim or a Disputed Administrative Expense Claim that ultimately becomes an Allowed Claim or an Allowed Administrative Expense Claim shall be made in accordance with the terms of this Plan as soon as practicable after the Allowance Date but not later than a date which is 10 days after such Allowance Date unless the Claimant or the holder of the Allowed Administrative Expense Claim and the Debtor agree to the contrary.  The Debtor shall pay any distributions on any Claim or Administrative Expense Claim for which the Debtor cannot locate the corresponding Claimant or holder and any returned distributions to the holder of the Allowed Claim in Class 14 until paid in full and, thereafter, to the Interest Holder(s).

## Article 8

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1     The Sale Agreement provides that the Contract Purchaser shall accept the assignment of all Executory Contracts constituting leases by lessees of the Property (or part

thereof) upon the sale closing.  The Confirmation Order shall provide that all Executory Contracts described in this § 8.1 under the Plan shall be subject to assumption by the Debtor as of the closing of the sale under the Sale Agreement.

8.2     Should there be a Back-up Sale Agreement, the Responsible Officer shall assure that the Back-up Agreement provides that the Back-up Purchaser shall accept the assignment of all Executory Contracts constituting leases by lessees of the Property (or part thereof) upon the sale closing.  The Responsible Officer shall require the Back-up Purchaser to accept the assignment of such Executory Contracts as a condition to the closing.  The Confirmation Order shall provide that all Executory Contracts described in this § 8.2 under the Plan shall be subject to assumption by the Debtor as of the closing of the sale under the Back-up Sale Agreement; provided, however, that the obligation to cure defaults (if any) under such Executory Contracts shall be exclusively the obligation of the Back-up Purchaser, without any recourse to the Debtor, the Estate, the Managing Member or the Responsible Officer.

8.3     All Executory Contracts not assumed prior to, on or as of the Effective Date or subject to a motion for assumption prior to the Effective Date (whether by virtue of §§ 8.1 or 8.2 of the Plan or by separate motion brought by the Debtor) shall be automatically rejected under the Plan.  In the event of a rejection that results in damages, a Proof of Claim for such damages must be filed by the damaged party with the Court on or before a date which is 30 days after the Effective Date.  All Allowed Claims arising from the rejection of any Executory Contract shall be treated as an Allowed Unsecured Claim.  Any Claim arising from the rejection of any Executory Contract not filed with the Court within the time period provided in this § 8.3 of this Plan shall be deemed discharged and shall not be entitled to participate in any distribution under this Plan.  Such Claim shall also be considered a Disallowed Claim.

**Article 9**

## RELEASES & INDEMNIFICATION

9.1	Each of the Debtor, the Responsible Officer, the Managing Member, and each

other officer, owner, manager, member, attorney, accountant and agent of the Debtor shall be,

and hereby is, released from any Lien or Action, asserted or brought by or in the name of, or for

the benefit of or belonging to, the Estate or any creditor thereof, including the holder of any

Claim or Administrative Expense Claim, which Action arises from or relates to the Filing,

prosecution and conduct of the Bankruptcy Case or the negotiation, drafting, prosecution and

Filing of the Plan or the Confirmation Order, or the Confirmation, including any terms included

in or omitted from the Plan or the Confirmation Order; provided, however, that nothing in this

§ 9.1 shall release or waive any obligations of the Debtor pursuant to the other terms of this Plan.

9.2	Each of the Responsible Officer, the Managing Member, and all other officers,

owners, managers, members, attorneys, accountants and agents of the Debtor shall have no

liability to any holder of a Claim or the Debtor with regard to any acts any of them may take, or

may omit to take, post-Confirmation with regard to the implementation of the Plan or the

performance under the Plan, including as may arise regarding the Sale Agreement, the Brokerage

Agreement, or any Back-up Sale Agreement or the preservation or enforcement of any Assets of

the Estate or the Debtor except to the extent such action or omission is due to the gross

negligence or willful misconduct of such Person, as demonstrated before the Court.  The burden

of proof and persuasion with regard to any allegation of gross negligence or willful misconduct

shall be on the Person making such allegation against any of the Responsible Officer, the

Managing Member, or any other officer, owner, manager, member, attorney, accountant or agent

of the Debtor.  Unless and until a final determination against the Responsible Officer, the

Managing Member, or any other officer, owner, manager, member, attorney, accountant or agent of the Debtor concluding by Final Order that one of them committed gross negligence or willful misconduct, the Estate shall defend (and advance for such defense), indemnify and hold harmless such Person, as the case may be, against any Action alleging gross negligence or willful misconduct.  The right to such defense and indemnification shall continue against the Estate even if not asserted as an Administrative Expense Claim.  The obligation and liability of the Estate pursuant to this § 9.2 of the Plan shall have priority over any other Administrative Expense Claim or any Claim, and the Managing Member shall have the discretion to reserve Cash of the Estate for the purpose of assuring that the any liability or obligation of the Estate pursuant to this § 9.2 of the Plan is fulfilled.

## Article 10

## <u>CONDITIONS PRECEDENT TO THE EFFECTIVE DATE</u>

The following shall be conditions precedent to the occurrence of the Effective Date; provided, however, that the Debtor may waive any of these conditions, in whole or in part; provided further, however, that the Debtor's waiver of any condition must be approved by the Responsible Officer if so indicated below:

10.1    The Property shall have been sold to a Purchaser pursuant to the Sale Agreement or the Back-up Sale Agreement (waived upon approval of the Responsible Officer).

10.2    The Debtor shall have received net Cash from the sale of the Property and such other sources as described in § 5.2 of this Plan sufficient to pay in full all Allowed Claims and Allowed Administrative Expense Claims and to reserve for Disputed Claims and Disputed Administrative Expense Claims, and for any other reserves contemplated by the other terms of this Plan.

10.3    The Confirmation Order has become a Final Order.

10.4    The Debtor has Filed the Schedule of Claims Subject to Objection.

**Article 11**

**RETENTION OF JURISDICTION**

11.1    The Court shall have jurisdiction over all matters arising under, arising in, or relating to the Bankruptcy Case and this Plan, including proceedings: (a) to consider any modification of the Plan under § 1127 of the Bankruptcy Code; (b) to hear and determine all Claims, controversies, suits and disputes against the Debtor to the full extent permitted under 28 U.S.C. § 1334 and 28 U.S.C. § 157; (c) to hear, determine and enforce all Actions which may exist on behalf of the Debtor or the Estate or to which the Debtor is a party as of the Petition Date, the Confirmation Date or the Effective Date, including any right of the Debtor or the Estate to recover assets or damages pursuant to the provisions of the Bankruptcy Code; (d) to hear and determine all requests for compensation and/or reimbursement of expenses which may be made and any professional Person compensation issues; (e) to value Assets of the Estate; (f) to interpret and enforce, and adjudicate disputes regarding, the Confirmation Order, the Plan, the final decree, orders of the Court, and all releases, indemnifications, waivers and other injunctions therein; (g) to enter an order concluding and terminating the Bankruptcy Case; (h) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order; (i) to determine all questions and disputes regarding title to the Assets of the Debtor as well as any matters concerning the Debtor's property and rights; (j) to determine objections which may be Filed by the Debtor to any Claims or Administrative Expense Claims; and (k) to consider and approve any settlements presented by the Debtor under Federal Rule of Bankruptcy Procedure 9019 with regard to the foregoing.

## Article 12

## GENERAL PROVISIONS

**12.1    Headings**. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

**12.2    Disputed Claims**. The Debtor shall hold in reserve the distribution that would be due on account of any Disputed Claim.  No Disputed Claims shall be paid, nor shall distributions be made to a creditor on account of such Disputed Claim, until such Claim becomes an Allowed Claim.

**12.3    Calculation of Time Periods**. Federal Rule of Bankruptcy Procedure 9006 is incorporated herein for purposes of calculating the dates set forth herein.

**12.4    Other Actions**. Nothing contained herein shall prevent the Debtor, Interest Holder(s), or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

**12.5    Modification of Plan**. The Debtor may seek amendments or modifications to this Plan in accordance with § 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtor may seek to remedy any defect or omission or reconcile any inconsistencies in this Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.  Material modifications to this Plan will not take place post-Confirmation without notice and an opportunity to object.

**12.6    Claims Objections; Estimation**.  The Debtor shall have the standing, authority, right and discretion to File and serve objections to the allowance, amount, priority or classification (*e.g*., Secured or Unsecured) of any Claim not later than a date which is 45 days after the Effective Date or such other time as may be fixed by the Court.  At the Debtor's

election, the objection to a Claim may be prosecuted in the Court or such other court, tribunal or arbitration panel where litigation with the Claimant in question was pending prior to the Petition Date or to which such Claimant has consented or does consent to jurisdiction. On and after the Confirmation Date, only the Debtor shall have the authority to interpose, continue, prosecute, enforce, settle or withdrawal any objection to the allowance, amount, priority or classification of any Claim or Administrative Expense Claim, including any objection as may have been interposed or prosecuted theretofore by another Person. The Debtor shall have the discretion to object to all or any portion of any Claim or Administrative Expense Claim, including the asserted amounts of (a) principal, (b) contract, statutory, simple, compound, default or penalty interest, (c) fees or costs, (d) assessments, or (e) any other component or portion of any Claim or Administrative Expense Claim. The Debtor's discretion to object to all or a portion of a Secured Claim shall include the discretion to object to the alleged Lien related to such Secured Claim, including its alleged existence, extent, effect, value, perfection, enforceability and non-avoidability, in whole or in part. On and after the Confirmation Date, no estimation of Claims shall be permitted and no such procedure shall continue or occur, except as may be brought or prosecuted by the Debtor. To the extent that any Claim has been estimated to any extent as of the Confirmation Date, such estimation shall have no effect on any rights of any Person pursuant to this Plan, including with regard to the treatment of any Claim or Administrative Expense Claim.

      12.7    **Successors and Assigns**. The rights and benefits of this Plan attributed to the Debtor shall accrue to the Debtor and its successors and assigns.

      12.8    **"Including," *Etc***. As used in this Plan, "including," "includes" or the like shall mean "including, without limitation," "includes, without limitation," or the like.

12.9    **Notices**.  Any notice to the Debtor under this Plan shall be in writing and sent by U.S. first class mail, postage prepaid, or overnight courier, all charges prepaid, the following address (or such substitute address as the Debtor may indicate by Filing notice of such new address not less than 5 days before the new address is to come into effect): 1934 Bedford LLC, c/o Loeb & Loeb LLP, 345 Park Avenue, New York, New York 10154, Attn: Schuyler G. Carroll, Esq. and William M. Hawkins, Esq.

12.10    **Governing Law**.  The Plan shall, except to the extent governed by the Bankruptcy Code or applicable federal law, be governed, construed and enforced in accordance with the laws of the State of New York.

## Article 13

## INJUNCTION AND PROPERTY OF THE ESTATE

13.1    **Injunction**.  **The Confirmation shall constitute an injunction of the Court against the commencement or continuation of any Action, the employment of process, or any act, to collect from, or recover or offset against, the Debtor, its Assets, the Managing Member or the Responsible Officer, or their Assets, or any of the other officers, owners, managers, members, attorneys, accountants and agents of the Debtor, or any of their Assets, any obligation or debt, except pursuant to the other terms of this Plan.  The Confirmation shall further constitute an injunction of the Court against any Person bringing any Action in violation of any waiver or release set forth in, or any other term of, this Plan or the Confirmation Order.**

**Article 14**

**<u>CLOSING THE CASE</u>**

14.1    Within 14 days following the full administration of the Estate, but not later than 18 months following the Confirmation Date, the Debtor shall file, on notice to the U.S. Trustee, an application and a proposed order for a final decree pursuant to Federal Rule of Bankruptcy Procedure 3022.

14.2    Within 14 days after the Confirmation Date, the Debtor shall file on presentment a proposed order that shall contain a timetable with the steps proposed for achieving substantial consummation of the Plan and entry of a final decree, including resolution of Claims and resolution of avoidance and other Court litigation outstanding or contemplated.  The Persons responsible for safeguarding and accounting for the proceeds of all recoveries on behalf of the Estate shall be identified therein.

14.3    The Managing Member shall manage the Debtor and its affairs post-Confirmation and will not be receiving compensation; provided, however, that the Managing Member shall not have authority to, and shall not, manage such aspects of the Debtor's operations and Assets that are reserved to the Responsible Officer pursuant to the other terms of this Plan.  The Debtor shall be the distribution agent under the Plan and shall be responsible for the maintenance of all reserves as may be required by this Plan.  It shall be sufficient for the Debtor to fulfill the requirement of any reserve of any Cash amount to maintain an entry in the Debtors' books and records indicating the reserving of such Cash.  No separate or specially-titled bank account or sub-account shall be required, nor shall any formal escrow or similar agreement.  None of the Debtor, the Managing Member or the Responsible Officer shall be required to post a bond or any other type of security or guaranty with regard to the Cash reserved or to be reserved under the

Plan or any responsibility, obligation, duty or discretion that any of them may have under the

Plan.


Dated: New York, New York
          May 27, 2020

                                        LOEB & LOEB LLP

                                        By:s/ William M. Hawkins
                                            Schuyler G. Carroll, Esq.
                                            William M. Hawkins, Esq.
                                        345 Park Avenue
                                        New York, NY  10154
                                        Tel.:  212.407.4000
                                        Fax:  212-937-3326
                                        Email: scarroll@loeb.com
                                        whawkins@loeb.com


                                        *Proposed Attorneys for the Debtor and Debtor-in-Possession*


                                        and




                                        1934 BEDFORD LLC


                                        By: s/Nikol Von Lavrinoff
                                            Nikol Von Lavrinoff
                                            Managing Member


                                        *Debtor and Debtor-in-Possession and Plan Proponent*

## **Schedule A**

## **Actions Preserved on and after the Effective Date**

[To be filed by the Debtor prior to the Effective Date.]