**LOEB & LOEB LLP**
Schuyler G. Carroll
William M. Hawkins
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000
Fax: (212) 407-4990
Email: scarroll@loeb.com
        whawkins@loeb.com

*For Itself and as Escrow Agent*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) )  ) |
| 1934 BEDFORD LLC, | ) ) Case No. 19-44751 (JMM) ) |
| Debtor. | ) Chapter 11 ) |
|  | ) ) |

**MOTION FOR ORDER (A) REOPENING CASE AND (B) PERMITTING
ESCROW ACCOUNT FUNDS TO BE DISBURSED FOR PAYMENT OF
POST-EFFECTIVE DATE PROFESSIONAL FEES AND EXPENSES**

Loeb & Loeb LLP ("**Loeb**"), for itself and as escrow agent of the Remaining Funds (defined below) in the Escrow Account (defined below), hereby moves ("**Motion**") this Court for an order pursuant to § 350(b) of title 11, United States Code ("**Bankruptcy Code**"), paragraph 25 of the *Order Confirming Modified Second Amended Chapter 11 Plan of Mortgagee, Approving Disclosure Statement, and Approving Amendments to the Sale Agreement* dated June 26, 2020 [Dkt. No. 243] ("**Confirmation Order**") and paragraph 107 of the *Modified Second Amended Plan of Reorganization* dated June 25, 2020 [Dkt. No. 242] ("**Plan**") (a) reopening this Chapter

11 case ("**Case**"), (b) directing payment of the $138,511.09 of remaining funds ("**Remaining Funds**") in the escrow account described in the Plan held by Loeb ("**Escrow Account**") (1) to Ira M. Spiegel, CPA ("**Spiegel**"), for post-Effective Date[1] services in the amount of $4,622.50, and (2) to Loeb, towards partial payment of invoices for post-Effective Date fees and expenses, in the amount of $133,888.59, and (c) directing Loeb to pay no amount in the Escrow Account to the Interest Holder or any other Person, all in the form of order attached as <u>Exhibit A</u>, and respectfully states as follows:

## JURISDICTION & VENUE

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334, the Confirmation Order's ¶ 22, the Plan's ¶¶ 107 and 110, and this Court's "jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

2.     Venue is appropriate pursuant to 28 U.S.C. § 1408.

## BACKGROUND

A.     <u>**1934's Bankruptcy Case**</u>.

3.     Prior to this Case, 1934 Bedford LLC ("**1934**"), the now reorganized debtor, owned a rental building located in Brooklyn, New York.  An involuntary petition for relief under Chapter 11 of the Bankruptcy Code was filed against 1934 on August 2, 2019.  This Court entered an order for relief under Chapter 11 on October 1, 2019.

4.     After representation by two other lawyers, 1934 retained Loeb as its counsel in Chapter 11 on May 20, 2020.  Soon after, a Plan was confirmed.  The Plan called for the sale of

---

[1] Capitalized terms used but not defined in this Motion shall have the meaning assigned thereto in the Confirmation Order.

1934's real property, which closed on June 26, 2020.  The gross purchase price for the property was $26,750,000.

5.      The Plan's Effective Date was June 29, 2020.  On the closing date and the Effective Date, 1934 paid creditors, administrative expenses and U. S. Trustee fees from the sale proceeds. The sole Interest Holder also received distributions totaling at least $1,572,644.86 from the proceeds.  A copy of the first three pages of the Closing Statement from the sale, showing the distributions to the Interest Holder, is attached as <u>Exhibit B</u>.[2]

6.      The Remaining Funds constitute the balance of the proceeds from the sale of the property.  The Remaining Funds now remain in the Escrow Account.  The Plan provides that Loeb may not release these funds except "upon order of [this] Court" or, absent an order, only as "consistent with [the] Plan and the Confirmation Order."  *Plan*, ¶ 107.  In light of the Closing Statement, the Remaining Funds appear to be the only, or nearly the only, remaining asset of 1934.

**B.      Loeb's and Spiegel's Post-Effective Date Services.**

7.      After the June 29, 2020 Effective Date, Loeb served as counsel to 1934, as the Reorganized Debtor.  Loeb's services have included:

(a)      conduct of claims evaluation, resolution and distributions;

(b)      advise 1934 regarding potential objections to claims and time for interposing claim objections;

(c)      assure appropriate reserves for pending claims and expenses of 1934;

---

[2] Transfers on the Closing Statement to "Prospect Quarters Management LLC," a controlled company of the Interest Holder, show $862,415.36 directly distributed from the closing escrow.  The balance of $710,229.50 was distributed on July 31, 2020, to the Interest Holder (again *via* Prospect Quarters) from funds initially deposited at the closing to the Escrow Account.

(d)     prepare a proposed, multi-point post-Effective Date order regarding the Plan's consummation;

(e)     advise 1934 regarding potential appellate and other strategies against 1934's main secured creditor, including in relation to confirmation of the Plan and the ongoing dispute between 1934 and its main secured creditor;

(f)     prepare and file papers to obtain the Court's approval of 1934's settlement with its main secured creditor;

(g)     collaborate with Spiegel and 1934 on amendment of the June, 2020 monthly operating report;

(h)     communicate with the Office of the U.S. Trustee regarding disbursement reporting and fee calculation;

(i)     evaluate other professionals' fee and expense applications;

(j)     assist special real estate counsel in preparing a fee application;

(k)     assist and coordinate with special real estate counsel and special litigation counsel in preparing for hearing on and noticing of fee applications; and

(l)     prepare for and represent 1934 at post-Effective Date hearings before the Court regarding Plan consummation, claim status and payment, settlement of claims and other matters.

8.     Loeb also prepared its final fee application, evaluated and replied to the Interest Holder's objection to Loeb's application, and attended the hearing on its fee application before the Court.

9.     The amount sought by Loeb also includes substantial expenses incurred in mailing notices.

C.  **Loeb Seeks Payment for Post-Effective Date Services of Spiegel and Loeb.**

10.     After the Effective Date, Loeb and Spiegel provided their invoices for fees and expenses to 1934.  For the post-Effective Date period, the total of these invoices for both Loeb and Spiegel is $148,105.10.  Copies of Loeb's invoices are attached as Exhibit C.  A copy of Spiegel's invoice is attached as Exhibit D.

11.     Pursuant to the Confirmation Order, Loeb and Spiegel are entitled to receive payment for these fees and expenses without the need for Court approval.  *Confirmation Order*, ¶ 25.  However, because the Interest Holder opposes release of the Remaining Funds for payment to Spiegel and Loeb, Loeb moves this Court for an order authorizing the payment of the Remaining Funds to Spiegel and Loeb towards satisfaction of their post-Effective Date charges.  The Plan permits Loeb to seek such an order from this Court and contemplates that this Court would authorize payments from the Escrow Account, held at Loeb.  *Plan*, ¶ 107.

D.  **The Interest Holder Asks Loeb to Disburse the Escrow Funds to Already-Paid Professionals and to Himself, Even While Spiegel and Loeb Go Unpaid for Post-Effective Date Services.**

12.     The Interest Holder has instructed Loeb to pay the Remaining Funds only to (a) certain pre-Effective Date professionals, and (b) himself.  Yet these professionals, Law Offices of Joseph J. Haspel ("**Haspel**") and Law Office of Rachel Blumenfeld PLLC ("**Blumenfeld**"), already received full payment.  Loeb has informed the Interest Holder of those prior payments, but Loeb has not received any modified instruction from him regarding the Remaining Funds.

13.     The Interest Holder previously confirmed in writing that both Haspel and Blumenfeld were previously paid in full.  *See* Exhibit E (email dated July 23, 2020 from the Interest Holder confirming Haspel was paid in full) and Exhibit B (Closing Statement, p. 3, confirming Blumenfeld was paid in full).  Indeed, obtaining such written confirmation was necessary, because the Plan specified that creditor payments needed to be made before distribution to the Interest

Holder. *See Plan*, ¶ 94 (requiring all administrative claims and all creditor claims to be satisfied before any payment to Interest Holder); *Plan*, ¶ 107 (requiring Loeb to release funds only consistent with the Plan).

14. Loeb, as escrow agent, has refused to issue duplicate payments to these professionals. Loeb has informed the Interest Holder of its position.

15. The Interest Holder should not receive a further distribution on his interest. The Interest Holder already obtained distributions exceeding $1.5 million, even though Spiegel and Loeb have not received payment for their post-Effective Date services. *See* ¶ 5, above. While the Remaining Funds are not sufficient to pay in full even the outstanding total invoices of Spiegel and Loeb (much less the additional fees and expenses of Loeb in preparing and bringing this Motion), those monies should certainly not go to fund any further equity distribution. In addition, even if the Interest Holder were arguably entitled to payment, based on the dispute as to the disposition of the Remaining Funds and the terms of paragraph 107 of the Plan, no payment can be made without order of the Court in any case.

**E.** **Status of 1934 and Closure of the Case.**

16. The Interest Holder asserts that 1934 was dissolved on August 28, 2020.

17. The Case was closed on November 6, 2020.

## ARGUMENT

## I.

## THIS COURT SHOULD REOPEN THE CASE

18. Section 350(b) of the Bankruptcy Code authorizes a bankruptcy court to reopen a case it has closed to administer assets, accord the debtor relief, or "for other cause." A bankruptcy court has "'broad discretion'" to grant a party's request to reopen a case for such "[an]other cause."

*In re Atari, Inc.*, Case No. 13-10176 (JLG), 2016 Bankr. LEXIS 1779, at *13 (Bankr. S.D.N.Y. April 20, 2016) (citation omitted). Courts typically consider six factors in deciding to reopen a case:

(1)      the length of time that the case was closed;

(2)      whether a nonbankruptcy forum has jurisdiction to determine the issue that is the basis for reopening the case;

(3)      whether prior litigation in the bankruptcy court determined that another court would be the appropriate forum;

(4)      whether any parties would suffer prejudice should the court grant or deny the motion to reopen;

(5)      the extent of the benefit to any party by reopening; and

(6)      whether it is clear at the outset that no relief would be forthcoming if the motion to reopen is granted.

*Id. at *14.*

19.      Each of the *Atari* factors heavily favors reopening the Case so that this Court can adjudicate Loeb's request for direction on the disposition of the Remaining Funds.

20.      First, less than a month has transpired since the Case's closure. The brevity of this time supports the Case's reopening now.

21.      Second, the Plan specifically authorizes only this Court to direct Loeb to release any of the Remaining Funds. *Plan*, ¶ 107. The Remaining Funds were directed to be held in escrow by the Plan which was confirmed pursuant to an order of this Court. No other "forum has jurisdiction," satisfying the second factor. *Id.*

22.     Third, there has been no prior litigation on this question.  Accordingly, the third factor supports granting the Motion, because no prior determination by this Court indicates otherwise.

23.     Fourth, no parties would be prejudiced if the Court were to reopen the Case.  The relief requested in the Motion would permit a decision on the disposition of the Remaining Funds.  Instead, if the Court refused to reopen the Case and consider the Motion, both Spiegel and Loeb would be prejudiced because neither would receive payment for post-Effective Date invoices from the Remaining Funds.  In addition, Loeb, as escrowee, would face uncertainty in disposing of the Remaining Funds entrusted to it, a substantial prejudice.  Finally, the Interest Holder also would be prejudiced, because there would be no clear direction for the Remaining Funds' disposition.

24.     Fifth, at least four parties benefit if the relief is granted: Spiegel and Loeb, for the reasons described above, but also the Reorganized Debtor and the Interest Holder.  For them, a determination of the Remaining Fund's disposition would provide clarity, too.

25.     Sixth, it is clear that the Court has jurisdiction to rule on the Motion, and that the Plan and Confirmation Order expressly reserve the decision to the Court.  Accordingly, it is likely that the Court will issue an order, as requested by this Motion, if the Case is reopened.  The sixth factor is satisfied.

26.     All of the *Atari* factors are met, and demonstrate the substantial benefit, and lack of prejudice, for this Court to exercise its discretion reopen the Case under § 350(b) of the Bankruptcy Code.

## II.

### THIS COURT SHOULD ORDER PAYMENT

### OF SPIEGEL AND LOEB FROM THE REMAINING FUNDS

27.     Both Spiegel and Loeb provided extensive post-Effective Date services as accountant and counsel, respectively, for the Reorganized Debtor.  *See* ¶ 10, above, and Exhibits C and D.  Both Spiegel and Loeb should receive payment from the Remaining Funds.[3]

28.     This Court should order payment from the Remaining Funds to Spiegel and Loeb, as they are the only post-Effective Date creditors of the Reorganized Debtor.  The Confirmation Order provides that the Remaining Funds may be used to make these payments.  *Confirmation Order*, ¶ 25.  The Plan contemplates that this Court will decide on the disposition of the Remaining Funds and authorizes this Court to direct their payment.  *Plan*, ¶ 107.  Thus, as permitted by the Plan, Loeb hereby requests that this Court issue an order for Loeb, as escrow agent of the Escrow Account, "to release [the] funds" to Spiegel and Loeb.  *Id*.

## III.

### THIS COURT SHOULD PRECLUDE ANY PAYMENT

### FROM THE REMAINING FUNDS TO THE INTEREST HOLDER

29.     Section 508(a) of New York's Limited Liability Company Law ("**NY LLC Law**") prohibits members from receiving any distribution which would cause the company's liabilities (other than those owed to members) to "exceed the fair market value of the assets of the limited liability company."  *NY CLS LLC § 508(a)*.  New York law also precludes an LLC's dissolution

---

[3] Loeb proposes to pay Spiegel's post-Effective Date invoice in full from the Remaining Funds.  Loeb's post-Effective Date amounts due would not be paid in full from the Remaining Funds.  Loeb reserves its rights regarding the amount of its post-Effective Date fees and expenses that would remain outstanding.

from providing members a way around this statutory primacy of creditor payment. Under § 704(a) of the NY LLC Law, non-member creditors must be paid before members, even in the dissolution of a limited liability company. *NY CLS LLC § 704(a)*.

30.     Of course, no company in New York is permitted to pay *former* creditors, whose claims have already been paid in full, while current creditors remain unpaid. At minimum, such a transfer, so blatantly without consideration, would be voidable under New York law. *NY CLS Dr. & Cr. § 273(a)*. No court should authorize such an illegitimate payment.

31.     Here, 1934 owes its creditors, Spiegel and Loeb, more money than it has in the Escrow Account. *See* ¶ 15, above. Until payment in full of creditors' claims, NY LLC Law -- both § 508(a) and § 704(a) – demands that the only assets of 1934, the Remaining Funds, go to pay creditors Spiegel and Loeb.

32.     Faced with the request from the Interest Holder for payments to Haspel and Blumenfeld from the Remaining Funds, even though these professionals have already received payment in full, and a distribution of more than $1.5 million to the Interest Holder having already been made, Loeb now moves the Court for a direction *not* to make these payments to Haspel and Blumenfeld *nor* any distribution to the Interest Holder. The former would constitute a voidable transfer. *NY CLS Dr & Cr § 273(a)*. The latter would violate §§ 508(a) and 704(a) of the NY LLC Law, by paying a member even while creditors receive nothing. This Court should direct Loeb, as escrow agent, that no transfer from the Escrow Account be made to Haspel, Blumenfeld or the Interest Holder.

WHEREFORE, Loeb respectfully requests that the Court grant the Motion and enter an order in the form attached as <u>Exhibit A</u>, together with such other and further relief as shall appear appropriate under the circumstances.

Dated:    December 1, 2020
            New York, New York

LOEB & LOEB LLP

By:   */s/ William M. Hawkins*
    Schuyler G. Carroll
    William M. Hawkins
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000
Fax: (212) 407-4990
scarroll@loeb.com
whawkins@loeb.com

*For Itself and Escrow Agent*